## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

In re:

**WATER'S EDGE LIMITED PARTNERSHIP**,

Debtor.

Chapter 11
Case No. 24-12445-CJP

## MOTION OF DIV OA LENDER, LLC FOR ENTRY OF AN ORDER DISMISSING DEBTOR'S CHAPTER 11 CASE

DIV OA Lender, LLC ("<u>DIV OA</u>"), through this motion (the "<u>Motion</u>"), moves for entry of an order (i) substantially in the form attached hereto as **Exhibit 1**, dismissing with prejudice the chapter 11 case of Water's Edge Limited Partnership ("<u>Water's Edge</u>" or the "<u>Debtor</u>"), debtor in the above-captioned chapter 11 proceeding (the "<u>Chapter 11 Case</u>") for cause pursuant to section 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>") and Rule 1017-1 of the Local Rules for the United States Bankruptcy Court for the District of Massachusetts (the "<u>Local Rules</u>"). It is two weeks since the commencement of this chapter 11 case commenced on the eve of foreclosure following a years-long history of mismanagement and deterioration of the properties which serve as DIV OA's collateral, yet the docket reflects that, with one notable exception, the sum total of the Debtor's filings in this case consist of a skeleton petition signed by an individual identified only as the Debtor's "principal."  There are no documents supporting the due authority of that "principal" to cause the limited partnership debtor to seek the protections of chapter 11.  No first day declaration is on file indicating how the Debtor got here, where it thinks this chapter 11 case is going and how it intends to fund both that journey and its implementation of its unspoken reorganization strategy. Most importantly, despite DIV OA holding an executed, enforceable and perfected assignment of leases and rents, no agreement or

order has been sought seeking authority to use cash collateral. The one notable exception is that,

earlier this week replacement proposed counsel to the Debtor entered an appearance and, if history

is any teacher, that new counsel will soon announce a Herculean and allegedly certain to succeed

restructuring strategy justifying overlooking what most charitably can be described as years of

abject neglect leading up to and continuing for the first two weeks since the Chapter 11 Case was

started.[1] Some situations are unsalvageable. Cause exists to dismiss the Chapter 11 Case under

section 1112(b) of the Bankruptcy Code. In support of the Motion, DIV OA respectfully states as

follows:

## JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and

1334. The Motion is a core matter within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue of the Motion in this Court is proper pursuant to 28 U.S.C. § 1409.

3.      The statutory predicates for the relief requested herein are sections 105(a) and

1112(b) of the Bankruptcy Code, Bankruptcy Rule 1007, and Local Rule 1017-1.

## RELEVANT BACKGROUND

**A.      The Loan and Loan Documents**

4.      On or about May 23, 2018, M&T Bank ("Original Lender") agreed to loan

$19,400,000 (the "Loan") to the Debtor, Carabetta Management Company ("Carabetta

Management"), and Carabetta Enterprises, Inc. ("Carabetta Enterprises" and collectively with the

Debtor and Carabetta Management, the "Borrowers"). The Borrowers' obligations were evidenced

by, *inter alia*, that certain Promissory Note dated May, 23, 2018 in the original principal sum of

---

[1] To his credit, substitute counsel did reach out to DIV OA's counsel almost immediately upon retention. Nothing
herein is intended, or should be interpreted, as criticism of proposed substitute counsel.

$19,400,000 (the "Original Note"). A true and correct copy of the Original Note is attached as Exhibit A to the *Declaration of Robert Kubica in Support of Motion of DIV OA Lender, LLC for Entry of an Order Dismissing the Debtor's Chapter 11 Case* (the "Kubica Declaration"), filed contemporaneously herewith. *See* Kubica Decl. at Exhibit A.

5.      Repayment of the Note is secured by, among other things, that certain (i) Mortgage (as amended and/or assigned, the "Mortgage") dated May 23, 2018, executed by the Debtor, as mortgagor, in favor of Original Lender, as mortgagee with respect to properties currently known and numbered as 364, 370, and 388 Ocean Avenue, Revere, Suffolk County, Massachusetts (individually and collectively, the "Premises"), which was recorded with Suffolk County, Massachusetts Registry of Deeds in Book 59625, Page 127, a true and correct copy of which is attached to the Kubica Declaration as Exhibit B; (ii) General Assignment of Rents (the "Rent Assignment"), dated as of May 23, 2018, executed by the Debtor in favor of Original Lender which was recorded with the Suffolk County, Massachusetts Registry of Deeds in Book 00502, Page 116, a true and correct copy of which is attached to the Kubica Declaration as Exhibit C; and (iii) Assignment of Management Agreement dated May 23, 2018 (the "Management Agreement Assignment") pursuant to which the Debtor assigned to the Original Lender all of the Debtor's rights and interests in the management agreement (the "Management Agreement") between the Debtor and Carabetta Management under which Carabetta Management agreed to manage the Premises, a true and correct copy of which is attached to the Kubica Declaration as Exhibit D.

6.      Through the Rent Assignment, as security for the satisfaction of its obligations under the Loan Documents, the Debtor absolutely, unconditionally, and irrevocably transferred to Original Lender the leases ("Leases") and rents ("Rents") associated with the Premises. *See* Kubica Decl. at Exhibit C, § 2.

3

7.      The Rent Assignment defines "Leases" to mean, in relevant part:

all of [Debtor]'s right, title and interest, now or in the future, under any leases or other agreements, written or oral, conferring any tenancy or right to occupy, possess or use any portion of the Premises (together with all extensions, renewals and modifications of any Lease), all guaranties of the tenants' performance of obligations under any Lease, [Debtor]'s interest in any further leases, subleases, lettings or agreements upon or covering use or occupancy of all or any part of the Premises, and all other agreements conferring any right to collect Rents.

*See* Kubica Decl. at Exhibit C § 1(b).

8.      The Rent Assignment further defines "Rent" to mean, in relevant part:

all rents, income, receipts, issues and profits and other benefits paid or payable for using, leasing, subleasing, licensing, possessing, operating from or in, residing in, selling, mining, extracting minerals from, or otherwise enjoying the Premises, whether presently existing or arising in the future, to which [Debtor] may now or hereafter become entitled or may demand or claim. . . .

*See* Kubica Decl. at Exhibit C, § 1(e).

9.      On May 23, 2018, the Debtor and Original Lenders executed a side letter (the "Side Letter") to address the repairs and maintenance necessary to bring the Premises into compliance with the requirements of the Mortgage and applicable building, fire and health codes and ordinances. A true and correct copy of the Side Letter is attached to the Kubica Declaration as Exhibit E. Specifically, the Side Letter identified certain necessary repairs and code violations that would not be deemed an Event of Default (as that term is defined in the Mortgage), provided they were remedied by the Borrowers by the completion date specified in the Side Letter.

10.     The Original Note was amended and restated as of March 20, 2020 (the "A&R Note") in the principal amount of $18,292,206.14. A true and correct copy of the A&R Note is attached to the Kubica Declaration as Exhibit F. The Borrowers' obligations thereunder were guaranteed under the terms of the Continuing Guaranty (Personal) (the "Personal Guaranty" and collectively with the Loan Agreement, the A&R Note, the Mortgage, the Rent Assignment, the Management Agreement Assignment, the "Loan Documents") executed by Joseph F. Carabetta

(the "Guarantor") on behalf of Borrowers and in favor of Original Lender, dated as of March 20, 2020. A true and correct copy of the Personal Guaranty is attached to the Kubica Declaration as Exhibit G.

11.     On or about September 26, 2024, the Loan Documents and related documents were assigned from the Original Lender to DIV OA, pursuant to (i) that certain Assignment of Mortgage (the "Mortgage Assignment"), a true and correct copy of which is attached to the Kubica Declaration as Exhibit H; and (ii) Assignment of General Assignment of Rents (the "GAR Assignment"), recorded with the Suffolk County Massachusetts Registry of Deeds in Book 70661 at Page 235, a true and correct copy of which is attached to the Kubica Declaration as Exhibit I.

12.     The assignment to DIV OA was further evidenced by an Allonge to the A&R Note executed by Original Lender (the "Allonge"). A true and correct copy of the Allonge is attached to the Kubica Declaration as Exhibit J.

13.     As of the Petition Date, the Debtor was indebted to DIV OA in the amount of $16,685,484.38 under the Loan Documents. *See* Kubica Decl. at ¶ 18.

**B.     The Premises' Deteriorating Condition**

14.     Commonly referred to as "Water's Edge Apartments", the Premises is a 306 unit multi-family mid/high rise property located at 364, 370 & 388 Ocean Avenue in Revere, Massachusetts, consisting of three (3) apartment buildings situated on a 4.95-acre site. The building located at 364 Ocean Avenue ("364 Ocean Avenue") is a 13-story, 92 unit apartment building, constructed in 1986. The building located at 370 Ocean Avenue ("370 Ocean Avenue") is a 16-story, 95 unit apartment building, constructed in 1986. The building located at 388 Ocean Avenue ("380 Ocean Avenue") is a 16-story, 119 unit apartment building, constructed in 1988.

15.     The Premises have a history of long-standing Sanitary Code violations. In August

2017, the City of Revere issued an Order to Correct Re: 364 and 370 Ocean Avenue, Revere, MA

(the "2017 Order to Correct") with respect to 364 Ocean Avenue and 370 Ocean Avenue, directing

the Debtor to address violations impacting sprinkler systems, missing emergency placards, the fire

panel control room, emergency lighting, missing smoke detectors, missing fire extinguishers,

insufficient spray fireproofing, improperly secured doors, improperly illuminated exit signs, and

non-functional elevators. A true and correct copy of the 2017 Order to Correct is attached hereto

as **Exhibit 2**. The 2017 Order to Correct detailed over 175 violations of the State Sanitary Code,

and directed the Debtor to abate and correct such violations immediately upon receipt. According

to public filings in litigation filed by the City of Revere, the Debtor failed to make the necessary

remediations, and conditions on the Premises have continued to deteriorate.

      (i)      370 Ocean Avenue Damage and Condemnation

      16.      On June 21, 2022, a multi-alarm fire broke out on the 11th floor of 370 Ocean

Avenue, resulting in significant structural and water damage.

      17.      On July 5, 2022, the Revere Board of Health determined that 370 Ocean Avenue

was unfit for human habitation pursuant to M.G.L. c. 111, § 127B and 105 C.M.R. 410.831 (A)-

(E). A true and correct copy of the Revere Board of Health's Finding of Unfitness for 370 Ocean

Avenue is attached hereto as **Exhibit 3**.

      18.      On the same date, the City of Revere issued a written determination of emergency

pursuant to M.G.L. c. 111, § 127B and 105 C.M.R. 410.831 (A)-(E). A true and correct copy of

the Revere Board of Health's Written Determination of Emergency for 370 Ocean Avenue is

attached hereto as **Exhibit 4**.

      19.      As a result, on July 5, 2022, the City of Revere issued a condemnation order (the

"370 Ocean Avenue Condemnation Order") and order to vacate and secure 370 Ocean Avenue. A

true and correct copy of the 370 Ocean Avenue Condemnation Order is attached hereto as **Exhibit 5**.

20.    Due to the ongoing state of disrepair at the Premises, the City of Revere filed an *Emergency Petition to Enforce the State Sanitary Code and for Appointment of a Receiver* (the "Emergency Receivership Petition") with the Massachusetts Housing Court (the "Housing Court") with respect to 370 Ocean Avenue on July 14, 2022, commencing the case captioned *City of Revere v. Water's Edge Limited Partnership et al.*, No. 22H84CV000364 (the "370 Ocean Ave. Proceeding"). As described below, the 370 Ocean Ave. Proceeding has been consolidated with a parallel action arising out of the uninhabitable condition of 364 Ocean Avenue and remains pending before the Housing Court. A true and correct copy of the Emergency Receivership Petition (without its voluminous exhibits) is attached hereto as **Exhibit 6**.

21.    Notably, in the Emergency Receivership Petition, the City of Revere asserted that the Debtor owed the City of Revere $900,000.000 in back taxes and another $1,000,000.00 with respect to 370 Ocean Avenue. *See* Ex. 6 at ¶¶ 2-3.

(ii)    364 Ocean Avenue Damage and Condemnation

22.    On November 18, 2022, after receiving reports of heavy water damage in the building the Revere Fire Department arrived to 364 Ocean Avenue and determined that the fire alarm panel was non-functional due to water damage. The Revere Fire Department issued an Order of Notice (the "2022 Violation Notice") calling for a fire watch to be placed at 364 Ocean Avenue at the Debtor's expense, and for a complete replacement of the fire panel, among other things. A true and correct copy of the 2022 Violation Notice is attached hereto as **Exhibit 7**.

23.    On December 21, 2022, the City of Revere issued an Order to Correct (the "2022 Order to Correct") with respect to 364 Ocean Avenue, citing various public health and safety

violations and the Debtor's failure to address the issues identified in the 2022 Violation Notice as well as violations that were identified in the 2017 Order to Correct that had not been remediated. A true and correct copy of the 2022 Order to Correct is attached hereto as **Exhibit 8**. The 2022 Order to Correct identified 28 violations, each of which subject the Debtor to a $500 per day fine for each day of continuing non-compliance.

24.    As of November 3, 2023, the violations at 364 Ocean Avenue had not been addressed, and the City of Revere filed a *Petition to Enforce the State Sanitary Code* with the Massachusetts Housing Court, commencing the case captioned *City of Revere v. Water's Edge Limited Partnership et al.*, No. 23H84CV000630 (the "364 Ocean Ave. Proceeding" and, together with the 370 Ocean Ave. Proceeding, the "Housing Court Proceedings"). The City of Revere subsequently filed a motion to consolidate the Housing Court Proceedings, which was granted on January 12, 2024.

25.    On August 29, 2024, the City of Revere issued a condemnation order (the "364 Ocean Avenue Condemnation Order") and order to vacate and secure 364 Ocean Avenue due to the severe ongoing violations of health and safety codes. A true and correct copy of the 364 Ocean Avenue Condemnation Order is attached hereto as **Exhibit 9**.

26.    Revere Mayor Patrick M. Keefe Jr. issued a press release regarding the condemnation stating:

> The [City of Revere] Board of Health took necessary action in condemning 364 Ocean Avenue, and I am grateful for the careful consideration they have given to this matter. After two years of attempts to work with [Water's Edge] to make the necessary improvements and ensure the safety of this building, it has become very clear that they have no intention to do so. Enough is enough. . . .
>
> The City of Revere will not allow negligent property owners to put the health and safety of Revere residents at risk. Waters Edge Limited Partnership has created an unimaginably difficult situation for their tenants, and displayed a total disregard for their wellbeing and dignity. In the absence of any cooperation from these property owners, the City will continue to work directly with residents to support them in finding safe housing. . . .

8

The City of Revere will continue to staff the building with 24-hour fire personnel, regardless of the owner's unwillingness to cooperate with and pay for this City resource, as obligated under the law.

*Statement from Mayor Patrick M. Keefe Jr. Regarding Board of Health Condemnation Ruling for*

*364 Ocean Avenue*, City of Revere, Sept. 3, 2024, *available at*:

https://www.revere.org/news/post/statement-from-mayor-patrick-m-keefe-jr-regarding-board-of-

health-condemnation-ruling-for-364-ocean-avenue (last accessed December 12, 2024).

27.     While Original Lender did not enter an appearance in the Housing Court Proceedings, after assignment of the Loan to DIV OA, on October 2, 2024, the City of Revere and DIV OA filed a joint motion requesting a stay of the receivership proceedings for three months in order to enable DIV OA to assess the condition of the Premises, which request was granted by the Housing Court on October 4, 2024.

(iii)    388 Ocean Avenue Tax Liens

28.     A search of public records indicates that on July 14, 2022, a Tax Lien Complaint was filed with respect to 388 Ocean Avenue in the Massachusetts Land Court, and recorded in the Suffolk County Massachusetts Registry of Deeds at Book 68003, Page 268, commencing the matter captioned *City of Revere v. Water's Edge Limited Partnership*, No. 22TL000803. A true and correct copy of the recorded tax lien against 388 Ocean Avenue is attached hereto as **Exhibit 10**.

**C.    Debtor's Defaults under the Loan Documents and Planned Foreclosure Sale**

29.     The Debtor defaulted on its obligations under the Loan Documents by, *inter alia*, failing to make a payment that came due on March 6, 2023, and by failing to make every subsequent payment that has come due thereafter.

30.     On February 7, 2024, Original Lender notified Borrowers by letter (the "<u>Maturity and Default Notice and Reservation of Rights Letter</u>") that (i) the Maturity Date under the A&R

Note occurred on September 1, 2023 in accordance with it terms, and that all indebtedness,
liabilities, and other obligations of Borrowers (the "Loan Obligations") under the Loan Documents
were due and payable in full; and (ii) one or more Events of Default had occurred under the Loan
Documents, including, without limitation, Borrowers' failure to pay and satisfy, as and when due,
all real estate taxes and other municipal charges due and payable to the City of Revere,
Massachusetts, with respect to the Premises (the "Specified Municipal Payment Defaults"). A true
and correct copy of the Notice and Reservation of Rights Letter is attached to the Kubica
Declaration as Exhibit K.

31.     On May 14, 2024, Original Lender notified by Borrowers by letter (the "Borrower
Demand Letter") that (A) Borrowers failed, neglected and/or refused to pay (i) the outstanding
unpaid Loan Obligation upon the maturity of the Loan and (ii) all real estate taxes and other
municipal charges which are presently due and payable by Borrower to the City of Revere,
Massachusetts with respect to the Premises (the "Past Due Real Estate Taxes and Impositions");
(B) Original Lender made Demand upon the Borrower for the immediate payment in full of (i) all
Loan Obligations, including, without limitation, all outstanding principal, interest (accrued and
hereafter accruing), charges, fees, and expenses (including, without limitation, all attorneys' fees
and expenses) incurred by Original Lender in connection with the Loan Documents and Original
Lender's enforcement of its rights and remedies thereunder and (ii) all Past Due Real Estate Taxes
and Impositions required to be paid by Borrower in accordance with the terms and provisions of
the Loan Documents, and (C) Original Lender advised the Borrower that, as a result of the
occurrence of such Events of Default (including, without limitation, the Specified Municipal
Payment Defaults), interest accrues on the outstanding principal balance of the A&R Note at the
applicable *"Default Rate"* of interest set forth in the Note as and when provided in accordance

with the terms and provisions thereof. A true and correct copy of the Borrower Demand Letter is attached to the Kubica Declaration as Exhibit L.

32.     Due to Borrowers' failure to satisfy the Loan Obligations as set forth in the Borrower Demand Letter, and their continued failure to pay the Past Due Real Estate Taxes and Imposition, on May 30, 2024, Original Lender sent a demand letter to the Guarantor (the "Guarantor Demand Letter") to enforce the Personal Guaranty and demand immediate payment and performance by Guarantor of all obligations under the Personal Guaranty (the "Guaranteed Obligations"), including without limitation, the immediate payment in full of the "Guaranteed Amount" (as defined and otherwise described in the Personal Guaranty) in the amount of the sum of (A) twenty-five percent (25.00%) of the principal amount of the Obligations as of the Maturity Date with respect to the Loan Obligations, plus (B) one hundred percent (100.00%) of all accrued and unpaid interest (including at the applicable Default Rate per annum under the A&R Note), premiums and "Expenses" (as defined and otherwise described in the Personal Guaranty) incurred with respect to the Obligations, and (C) all of the Expenses incurred with respect to the Personal Guaranty. A true and correct copy of the Guarantor Demand Letter is attached to the Kubica Declaration as Exhibit M.

33.     On November 12, 2024, after determining that foreclosure was necessary, DIV OA sent a *Notice of Intention to Foreclose and of Deficiency After Foreclosure of Mortgage* (the "Notice of Intent to Foreclose") to the Debtor, providing notice the DIV OA intended to foreclose on the Premises by sale (the "Foreclosure Sale") on or after December 5, 2024. A true and correct copy of the Notice of Intent to Foreclose is attached to the Kubica Declaration as Exhibit N.

34.     On November 20, 2024, DIV OA sent the Debtor a *Notice of Mortgagee Foreclosure Sale* regarding the Premises (the "Foreclosure Notice"), notifying Borrowers that DIV

OA would be exercising the Power of Sale under the Mortgage and conducting a foreclosure sale of the Premises on December 5, 2024 at 11:00 a.m. A true and correct copy of the Foreclosure Notice is attached to the Kubica Declaration as Exhibit O.

35.    On December 3, 2024, the Debtor filed a motion requesting the Housing Court to issue an order staying the foreclosure sale of the Premises from December 5, 2024 to January 30, 2025. On December 4, 2024, the Housing Court issued an order denying the request to stay the Foreclosure Sale, explaining that Housing Court lacked jurisdiction to issue such emergency injunctive relief.

36.    The following day (the same day the Foreclosure Sale was scheduled to take place), the Debtor filed a skeleton chapter 11 filing to commence the Chapter 11 Case and stay the Foreclosure Sale.

**D.    The Debtor's Bankruptcy Proceeding**

37.    On December 5, 2024 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. *See* ECF No. 1. While the Debtor is a limited partnership, the petition was signed by Evelyn Carabetta as "Principal." *Id.* Other than checking the box to indicate assets and liabilities each in the range of $10,000,000-$50,000,000, no other information was provided about the Debtor's financial condition. *Id.*

38.    On the same date, the Court entered an Order to Update (the "**Order to Update**"), directing Debtor's counsel to file the following documents by the listed deadline, and advising that non-compliance may result in dismissal of the Chapter 11 Case:

(i)    Creditor Matrix by December 6, 2024 (noting "The Court may dismiss the case for failure to file the Matrix with the Petition.");

(ii)    Matrix.txt File by December 6, 2024;

(iii)    Verification of Matrix by December 6, 2024;

(iv)    Corporate Vote by December 12, 2024;

(v)     Schedules by December 19, 2024;

(vi)    Summary of Assets and Liabilities for Non-Individuals (Official Form 206) by December 19, 2024;

(vii)   Declaration Under Penalty of Perjury for Non-Individuals Filing for Bankruptcy (Official Form 202) by December 19, 2024;

(viii)  Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy (Official Form 207) by December 19, 2024;

(ix)    Disclosure of Compensation of Attorney for Debtor (Director Form 2030) by December 19, 2024;

(x)     List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (Official Form 204) by December 19, 2024;

(xi)    List of Equity Security Holders of Debtor by December 19, 2024; and

(xii)   Disclosure of Ownership Statement by December 19, 2024.

*See* ECF No. 2.

39.     On December 6, 2024, the Debtor filed its Matrix and Verification of Creditor Matrix. *See* ECF Nos. 4, 5. To date, the Debtor has filed no other documents.

40.     While the Premises are encumbered by the Mortgage, and DIV OA has a lien on all Rents and Leases, the Debtor has not sought authority to use DIV OA's cash collateral, and is presumably doing so without approval of the Court or DIV OA's consent.

41.     The Section 341 Meeting of Creditors is scheduled to take place telephonically on January 6, 2025 at 10:30 a.m. *See* ECF No. 12.

42.     On December 9, 2024, the United States Trustee filed an Emergency *Motion to Dismiss Debtor's Chapter 11 Case for Failure to Provide Proof of Adequate Insurance Coverage* (the "UST Motion to Dismiss"), arguing that dismissal was warranted based on the Debtor's failure to carry and provide proof of adequate property and liability insurance coverage for the Premises, and noting that "Debtor's counsel has been non-responsive to inquiries from the United States Trustee about the [Chapter 11 Case] since the filing." *See* ECF No. 6.

43.     The UST Motion to Dismiss was subsequently withdrawn after the Debtor provided

proof of insurance coverage, although the United States Trustee noted "the United States Trustee continues to have concerns about this case – including the condition of the properties, the December 30 expiration date on the general liability policy, and the Debtor's apparent inability to use cash collateral." *See* ECF No. 10.

44.    As of the date hereof, the Debtor has not filed any other documents of substance. Shortly before the filing of this Motion, the Debtor filed an emergency *Motion for Entry of Order Extending Time for Filing of Schedules and Related Documents* (the "Extension Motion") seeking an extension of the deadline to file its an extension of time from December 19, 2024, to January 15, 2025 to file its schedules, summary of assets and liabilities, declaration for non-individual debtors, statement of financial affairs, disclosure of attorney compensation, list of 20 largest creditors, list of equity security holders, and disclosure of ownership statement. *See* ECF No. 23.

## **ARGUMENT**

45.    The Chapter 11 Case should be dismissed for "cause" pursuant to section 1112(b) of the Bankruptcy Code.

46.    Section 1112(b) of the Bankruptcy Code, provides, in relevant part, that:

> On request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested . . . dismissal is not in the best interests of creditors and the estate, the court **shall** . . . dismiss a case under this chapter . . . if the movant establishes cause.

11 U.S.C. § 1112(b)(1) (emphasis added).

47.    While "cause" is not defined in the Bankruptcy Code, section 1112(b)(4) enumerates various examples of "cause" for dismissal, including, in relevant part:

(A)    substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(B)    gross mismanagement of the estate; . . .

(D)    unauthorized use of cash collateral substantially harmful to 1 or more

creditors; [and]

(E)    failure to comply with an order of the court. . . .

11 U.S.C. § 1121(b)(4).

48.    As described below, there are multiple grounds for the Chapter 11 Case to be

dismissed for cause under 1112(b).

**A.    The Chapter 11 Case Should be Dismissed Under Section 1112(b)(4)(A) Because of the Substantial and Continuing Loss and Diminution of Estate and Absence of Any Reasonable Likelihood of Rehabilitation.**

49.    The Chapter 11 Case should be dismissed because of the "substantial [and]

continuing loss to or diminution of the estate and the absence of a reasonable likelihood of

rehabilitation." *See* 11 U.S.C. § 1112(b)(4)(A). Analysis of dismissal under this subsection

requires a two part inquiry into:

(1)    whether after the commencement of the case, the debtor has suffered or continued to experience a negative cash flow, or, alternatively, declining asset value; and

(2)    whether there is any reasonable likelihood that the debtor, or some other party, will be able to stem the debtor's losses and place the debtor's business enterprise back on a solid financial footing within a reasonable amount of time.

*Andover Covered Bridge, LLC v. Harrington (In re Andover Covered Bridge, LLC)*, 553 B.R. 162,

174 (B.A.P. 1st Cir. 2016).

50.    The first prong of the inquiry is satisfied if there is some diminution in value to the

estate, such as a negative cash flow or inability to pay current expenses. *Id.* (citing *In re Peña*, No.

14–09799, 2016 WL 1043736, at *5 (Bankr.D.P.R. Mar. 15, 2016)).

51.    Here, two out of three potential sources of revenue on the Premises (364 Ocean

Avenue and 370 Ocean Avenue) have been condemned and are vacant. Not only are they not

producing revenue for the estate, but for each day that passes with the Premises in their current

state of disrepair and non-compliance with the State Sanitary Code, the estate is incurring per diem

fines and costs for fire watch supplied by the City of Revere at the Debtor's expense. The continued

incurrence of costs without sufficient revenue stream is draining the estate with each passing day.

*See Andover Covered Bridge*, 553 B.R. at 174 (affirming bankruptcy court's finding of diminution

of the estate's value when the debtor was unable to service its mortgage, while costs and taxes

continued to accrue).

52.     The second prong of the inquiry focuses on whether the debtor has a feasible chance

of rehabilitation, i.e. "successful maintenance and reestablishment of the debtor['s] business

operations and to put back in good condition; re-establish on a firm, sound basis." *Id.* (internal

quotation marks omitted).

53.     Mere speculation that rehabilitation could theoretically be achieved will not suffice.

As one court has explained:

> To determine whether the debtor's business prospects are sufficient to justify a finding of
> a reasonable likelihood of rehabilitation, courts analyze if the causes for debtor's
> continuing losses can be corrected, and if the debtor or some other party in interest is
> capable or willing to perform the necessary remediation . . . Courts usually require the
> debtor do more than manifest unsubstantiated hopes for a successful reorganization.

*In re Peña*, 2016 WL 1043736, at *5.

54.     Here, it is difficult to conceive a set of circumstances under which the Debtor can

successfully be rehabilitated.[2] The Debtor has been embroiled in bitter disputes with the City of

Revere for years, and has been on notice of its myriad serious violations at the Premises for <u>over</u>

<u>7 years</u> but has made no meaningful remediation on the Premises.

55.     Accordingly, due to the continued depreciation of the estate and lack of any viable

hope for rehabilitation, dismissal is warranted under section 1112(b)(4)(A) of the Bankruptcy

Code.

---

[2] Notably, "rehabilitation" in this context does not include liquidation. *See Andover Covered Bridge*, 553 B.R. at 175
(quoting *In re Santiago*, No. 15–06132, 2015 WL 5919926, at *6 (Bankr. D.P.R. Oct. 9, 2015)).

**B.      The Chapter 11 Case Should be Dismissed Under Section 1112(b)(4)(B) Due to the Debtor's Gross Mismanagement.**

56.      Section 1112(b)(4)(B) provides that a debtor's gross mismanagement is grounds for dismissal, because of the debtor's position as a fiduciary to the estate and its creditors. *In re Gateway Access Solutions, Inc.*, 374 B .R. 556, 565 (Bankr. M.D. Pa. 2007) ("A debtor in possession is vested with significant powers under the provision of the Bankruptcy Code. As is often the case, those powers come with certain responsibilities. Significantly, a debtor in possession owes a fiduciary duty to its creditors."); *see also In re JJ Arch LLC.*, 663 B.R. 258, 278 (Bankr. S.D.N.Y. 2024) ("[I]implicit in Section 1112(b)(4)(B) is the understanding that a debtor-in-possession is a fiduciary as to the estate . . . .").

57.      A debtor's failure to maintain real estate in a habitable condition for tenants, resulting in claims against the estate is grounds to warrant dismissal under this section. *See In re Builders Grp. & Dev. Corp.*, No. 13-04867 (ESL), 2014 WL 1873412, at *8 (Bankr. D.P.R. May 8, 2014).

58.      In *Builders Grp.& Dev. Corp.*, the court found cause existed under 1112(b)(4)(B) where the debtor had failed to maintain its property such that it "endangered the security and well-being of its residents" and had not made any meaningful remediation efforts in response to tenant complaints. *Id.*[3] (finding gross mismanagement under section 1112(b)(4)(B) where the Debtor's condominium complex was in disrepair giving rise to complaints from tenants and violations with public safety departments, explaining "Debtor's inability to manage and/or resolve the health and safety issues which exist in Debtor's [property] shows gross mismanagement by the Debtor."). Courts in other jurisdictions have reached the same conclusions. *See In re 210 W. Liberty Holdings,*

---

[3] While the *Builders Group & Development Corp.* case involved a motion to convert a chapter 11 case to a chapter 7 case, the analysis of "cause" for conversion or dismissal under 1112(b)(4) is the same, so its reasoning is applicable here.

*LLC*, No. 08-677, 2009 WL 1522047, at *6 (Bankr. N.D. W.Va. May 29, 2009) (finding gross

mismanagement where the debtor's premises was in violation of the local fire code, and had been

for a year, posing a threat to its occupancy permit).

59.    Here, for years, the Debtor has allowed the Premises to slip further into

dilapidation, beyond the point of posing a threat to the safety of its residents, to the extreme extent

that the buildings were condemned and their residents forced to vacate their homes. While this

case is in its early stages, there is no indication that the Debtor is willing or able to suddenly spring

into action to take the substantial measures needed to bring the Premises into a state of good repair

and habitability in the near term.

60.    DIV OA submits that the Debtor has a clear pattern of gross mismanagement which

should not be permitted to continue under the protection of the Bankruptcy Code, and dismissal is

therefore appropriate under section 1112(b)(4)(B).

**C.    The Chapter 11 Case Should be Dismissed Under Section 1112(b)(4)(D) Due to the
Debtor's Presumed Unauthorized Use of DIV OA's Cash Collateral.**

61.    A debtor's unauthorized use of cash collateral to the detriment of at least one

creditor is cause for dismissal under section 1112(b)(4)(D). *See In re Ohannes Karamoussayan*,

656 B.R. 652, 663–65 (B.A.P. 1st Cir. 2024) (noting that section 1112(b)(4)'s inclusion of

unauthorized use of cash collateral as cause requiring dismissal is "consistent with the special

protections afforded cash collateral" and granting motion to dismiss on this basis).

62.    Here, all of the Debtor's Rents and Leases have been unconditionally assigned to

DIV OA pursuant to the GAR Assignment. The debtor has not sought court authority or consent

from DIV OA to use its cash collateral. It also has not proffered any information suggesting an

ability to adequately protect DIV OA against the continuing collateral diminution resulting from

the continuing neglect of the Premises, the Debtor's continuing incurrence of fines each day and

the costs of city-imposed around the clock fire safety monitoring.

63.     Even if the Debtor had sought approval to use DIV OA's cash collateral, because DIV OA has a lien on all Rents derived from the Premises under the GAR Assignment, the Debtor cannot offer any adequate protection to DIV OA. Each dollar that the Debtor spends further diminishes DIV OA's security.

64.     Accordingly, the Debtor's unauthorized use of DIV OA's cash collateral is grounds for dismissal of the Chapter 11 Case.

**D.     The Chapter 11 Case Should be Dismissed Because the Debtor has Failed to Comply with the Court's Order to Update.**

65.     As referenced above, the Debtor's failure to comply with the Order to Update (entered due to the numerous deficiencies in the petition and lack of the required ancillary documents), cause exists to dismiss the Chapter 11 Case under section 1112(b)(4)(F).

66.     Section 1112(b)4)(F) "gives effect to the notion that compliance with court orders is a fundamental obligation of any party . . . and that the protections . . . a debtor gains under the [Bankruptcy Code] travel in tandem with the many obligations [it imposes on the debtor.]" *In re McKenna*, 580 B.R. 1, 15 (Bankr. D.R.I. 2017); *see also* In re Ford Steel, LLC, 629 B.R. 871, 888 (Bankr. S.D. Tex. 2021). Dismissal under this provision does not require that the debtor's failure to comply be willful, fraudulent, or the product of bad faith. *In re Luar Cleaners Inc*., No. 14-04974, 2016 WL 3637857, at *3 (Bankr. D.P.R. June 29, 2016). Notably, this provision is written in the singular, and dismissal does not require a pattern of non-compliance – failure to comply with a single order of the court is sufficient to establish cause. *In re Ford Steel, LLC*, 629 B.R. at 888.

67.     Courts in this district have dismissed cases for a debtor's non-compliance with orders directing the filing of the required documents for case initiation, as is the case here. For

example, in *In re McKenna*, the court granted a motion to dismiss under section 1112(b)(4)(F) based on the debtor's failure to comply with a court order setting a deadline for the debtor to file outstanding required forms, including the Chapter 11 Statement of Current Income (Form 1122B) and the List of 20 Largest Unsecured Creditors (Form 104). *In re McKenna*, 580 B.R. 1, 15 (Bankr. D.R.I. 2017); *see also In re Efron*, 529 B.R. 396, 412 (B.A.P. 1st Cir. 2015) (affirming bankruptcy court order dismissing case under section 1112(b)(4)(E) due to debtor's failure to comply with court order); *In re Spenlinhauer*, 592 B.R. 1, 7 (D. Mass. 2018) (same); *In re Brown*, 55 F.4th 945, 950-51 (1st Cir. 2022), *cert. denied sub nom. Brown v. Harrington*, 143 S. Ct. 2435, 216 L. Ed. 2d 417 (2023).

68.     Here, the Order to Update required the Debtor to file its Corporate Vote by December 6, 2024, which the Debtor failed to do. The Debtor filed its corporate vote on December 19, 2024, shortly before the filing of this Motion. *See* ECF No. 22.

69.     The Order to Update further designated December 19, 2024 as the deadline for the Debtor to file its:

(i)     Schedules;

(ii)    Summary of Assets and Liabilities for Non-Individuals (Official Form 206);

(iii)   Declaration Under Penalty of Perjury for Non-Individuals Filing for Bankruptcy (Official Form 202);

(iv)    Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy (Official Form 207);

(v)     Disclosure of Compensation of Attorney for Debtor (Director Form 2030);

(vi)    List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (Official Form 204);

(vii)   List of Equity Security Holders of Debtor; and

(viii)  Disclosure of Ownership Statement.

70.     As referenced above, shortly before the filing of this Motion, the Debtor filed its emergency Extension Motion. Although the day is not yet over, as of the filing of this Motion, the

Debtor had failed to comply with the Order to Update, and thus dismissal is warranted for cause under section 1112(b)(4)(E).[4]

**E.     To the Extent that the Chapter 11 Case Was Commenced Without Proper Authorization, the Chapter 11 Case Must be Dismissed.**

71.     A bankruptcy petition filed without the requisite authority mandates dismissal. *Polish-Am. Citizen's Club Inc.*, No. BAP MS 22-033, 2023 WL 4259266, at *8 (B.A.P. 1st Cir. June 27, 2023). While the bankruptcy court generally has discretion to ascertain cause for dismissal, "if the [bankruptcy court] finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition." *Id.* (quoting Price v. Gurney, 324 U.S. 100, 106 (1945)).

72.     Authority to file a bankruptcy petition is determined by state law. *Id.* at *9; *Thompson v. Daluise (In re Wet-Jet Int'l, Inc.)*, 235 B.R. 142, 148 (Bankr. D. Mass. 1999) ("The source of a corporation's authority to file a bankruptcy petition is found in state law, not in the Bankruptcy Code.").

73.     The Debtor is a limited partnership organized under Massachusetts law. Under Massachusetts law, except as provided in the limited partnership agreement or otherwise applicable Massachusetts law, a limited partnership's general partner "has the rights and powers and is subject to the restrictions of a partner in a partnership without limited partners." M.G.L. ch. 109 § 24. Massachusetts law regarding general partnerships provides that partners have the right to manage and conduct the business of the partnership; absent a contrary provision in the

---

[4] There may also be a basis for dismissal of this case as having been filed in bad faith. Cause for dismissal under section 1112(b) includes that the debtor filed the case in bad faith. *La Trinidad Elderly LP SE*, 627 B.R. at 800; *In re Harvey Rd. Assocs. VIII*, 140 B.R. 302, 305 (Bankr. D. Mass. 1992). The analysis of bad faith is fact intensive and turns upon consideration of the totality of the circumstances. *La Trinidad Elderly LP SE*, 627 B.R. at 800. That analysis generally applied eight factors, several of which are present. It also, however, considers factors that generally can only be derived from filings that the Debtor is obligated to make, but as a result of its noncompliance with this Court's orders, that information is currently unavailable. DIV OA reserves the right to supplement this Motion to add bad faith as a ground for dismissal.

partnership agreement, this authority includes the authority to file a bankruptcy petition. *See generally*, M.G.L. ch. 108A § 18; *see also* M.G.L. ch. 108A § 23 (noting that a general partner ceases to be a general partner in a limited partnership upon the filing of a voluntary bankruptcy petition).

74.     As referenced above, the Debtor is a limited partnership. The petition was not accompanied by a corporate vote (nor has one been filed in accordance with the Order to Update), and was signed by Evelyn Carabetta as "Principal." The loan documents indicated that the general partner of the Debtor is not Ms. Carabetta, but is Water's Edge Realty, LLC. They further indicate that, at the time the loan documents were executed, Ms. Carabetta was the general partner's sole member and manager. At minimum, the continued accuracy of that information should have been affirmed and the appropriate authority provided.

75.     DIV OA does not consent to the appointment of a chapter 11 trustee in lieu of the requested relief of dismissal of the Chapter 11 Case.

## NOTICE

76.     Notice of this Motion has been given to the Debtor, the United States Trustee, the City of Revere, and all other parties who have filed appearances and requested service of all notices and pleadings.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, DIV OA respectfully requests that the Court enter an order (i) substantially in the form of the proposed order attached hereto as **Exhibit 1** dismissing the Chapter 11 Case; and (ii) granting DIV OA such other and further relief as may be just and proper.

Dated:  Boston, Massachusetts
       December 19, 2024

Respectfully submitted,


By:
/s/  *John J. Monaghan*
John J. Monaghan (Mass. Bar. #546454)
Lynne B. Xerras (Mass. Bar #632441)
Kathleen M. St. John (Mass. Bar. #681565)
10 St. James Avenue, 11th Floor
Boston, Massachusetts 02116
Tel.: (617) 523-2700
Facsimile: (617) 523-6850
Bos-Bankruptcy@hklaw.com
Lynne.Xerras@hklaw.com
Kathleen.StJohn@hklaw.com

*Counsel to DIV OA Lender, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 1017-1</u>

I, John J. Monaghan, attorney for DIV OA Lender, LLC ("<u>DIV OA</u>"), do hereby certify under penalty of perjury that I initiated and participated in a call with counsel to the Debtor on December 19, 2024 to discuss DIV OA's asserted grounds for dismissal, and that this Motion sets forth the issues left unresolved.

<u>/s/  *John J. Monaghan*      </u>
John J. Monaghan

## CERTIFICATE OF SERVICE

I, John J. Monaghan, counsel to DIV OA Lender, LLC in connection with the above-captioned bankruptcy proceeding, hereby certify that on this 19th day of December, 2024, I served copies of the foregoing *Motion of DIV OA Lender, LLC For Entry of an Order Dismissing Debtor's Chapter 11 Case* upon the following parties via ECF or U.S. mail, postage prepaid, as follows:

Richard T. King, Esq.
Office of the United States Trustee
Attn: Just A. Kesselman
Department of Justice
John W. McCormack Post Office &
Courthouse
5 Post Office Square, Suite 1000
Boston, Massachusetts 02109

Albert J. Moscone, Jr., Esq.
D'Ambrosio LLP
185 Devonshire Street, 10th Floor
Boston, Massachusetts 02110

Harold B. Murphy
Murphy & King, P.C.
28 State Street, Suite 3101
Boston, Massachusetts 02109

Kathleen R. Cruickshank
Murphy & King, P.C.
28 State Street, Suite 3101
Boston, Massachusetts 02109

/s/  *John J. Monaghan*
John J. Monaghan

#514745911_v3