**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| WATER'S EDGE LIMITED PARTNERSHIP, | Case No. 24-12445 (CJP) |
| Debtor. | |

**DEBTOR'S MOTION FOR ENTRY OF ORDER (I) AUTHORIZING THE DEBTOR TO ENTER INTO LETTER OF INTENT WITH EASTERN ACQUISITIONS, LLC AND (II) <u>GRANTING RELATED RELIEF</u>**

Water's Edge Limited Partnership, the above-captioned debtor and debtor-in-possession (the "<u>Debtor</u>") respectfully moves (the "<u>Motion</u>"), pursuant to Sections 105 and 363(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") for the entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Proposed Order</u>"), authorizing the Debtor to enter into a Letter of Intent dated December 26, 2024 (the "<u>LOI</u>")[1] with Eastern Acquisitions, LLC (and together with one/or more of its affiliates, "<u>Eastern</u>"; Eastern together with the Debtor, the "<u>Parties</u>"), and granting related relief.  In support of the Motion, the Debtor relies upon and incorporates by reference the *Declaration of Evelyn Carabetta in Support of the Debtor's Chapter 11 Petition and First Day Motions*, filed with the Court concurrently herewith (the "<u>First Day Declaration</u>").  In support of this Motion, the Debtor respectfully states:

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the LOI.

## PRELIMINARY STATEMENT

1.      Prior to commencing this case on December 5, 2024 and continuing during the first month of the case, the Debtor and its advisors have explored various strategies to restructure.  The LOI is a significant step forward for the Debtor towards an exit from chapter 11 pursuant to a confirmed plan which provides for the restructuring the Debtor's business, with the goal of maximizing the value of the Debtor's estate for the benefit of the Debtor, creditors, and all stakeholders.

2.      The Debtor has negotiated and reached agreement with the Eastern on the LOI, a copy of which is attached to the Proposed Order as **Schedule 1**.  The LOI provides a framework for a chapter 11 process in which Eastern will lend millions of dollars in junior secured debtor-in-possession financing (the "DIP Financing") to the Debtor in furtherance of the confirmation of a chapter 11 plan that will provide for payment in full to all holders of allowed non-insider claims against the Debtor.

3.      To this end, the LOI sets forth the terms of a potential joint venture agreement (the "JV Agreement") between the Parties which will be substantially effectuated through implementation of the Debtor's plan. The LOI contemplates that, pursuant to the JV Agreement, Debtor will contribute the Property (as defined below) and related assets to a joint venture entity, and will receive in exchange: (a) a 35% interest in the joint venture entity, and (b) up to $23.5 million ("Eastern Capital Contribution Amount"), exclusive of the DIP Financing, to pay holders of allowed non-insider claims against the Debtor in full, unless otherwise agreed, with any amounts remaining from the Eastern Capital Contribution Amount used by the joint venture entity to fund operations.  Under the JV Agreement, Eastern will further commit to provide the

2

capital needed, on commercially reasonable terms, to the joint venture entity to facilitate the
repair and repositioning of the Property.

4.     As set forth in detail in the chart set forth in paragraph 18 below, the transactions
contemplated by the LOI are all subject to confirmation of the Debtor's plan of reorganization,
except for certain "Miscellaneous" provisions of the LOI, which are effective upon approval of
the LOI by the Bankruptcy Court. Those Miscellaneous terms provide that: (a) the Debtor shall
negotiate exclusively with Eastern and shall not solicit, initiate or otherwise engage in
negotiations regarding transactions similar to those contemplated by the LOI for a period of up to
120 days, (b) Eastern shall be entitled to a fee payable if the LOI is terminated under certain
circumstances, and (c) Eastern shall be entitled to out-of-pocket expenses incurred in connection
with the transactions contemplated by the LOI not to exceed $500,000.

5.     As noted, in furtherance of the transactions contemplated under the LOI, Eastern
has agreed to provide DIP Financing on a junior secured basis. Concurrently herewith, the
Debtor has filed the *Debtor's Emergency Motion for Entry of an Order (I) Authorizing the
Debtor to Obtain Junior Secured Postpetition Financing; (II) Granting Liens and Providing
Superpriority Administrative Expense Status; (III) Authorizing Use of Cash Collateral;
(IV) Granting Adequate Protection; and (V) Modifying the Automatic Stay; (VI) Scheduling a
Final Hearing; and (VII) Granting Related Relief* (the "<u>DIP Motion</u>") seeking entry of an order,
authorizing the Debtor, among other things, to obtain DIP Financing from Eastern and to use
cash collateral on an interim and final basis pursuant to the terms and conditions of the term
sheet attached to the LOI and to the DIP Motion (the "<u>DIP Term Sheet</u>").  The DIP Motion is
filed in connection with this Motion because Eastern's willingness to provide the DIP Financing

on a final basis is contingent up this Court's approval of this Motion and the Final DIP Financing

Order no later than 35 days from the filing of the DIP Motion.

## **BACKGROUND**

I.      General Background

6.      On December 5, 2024 (the "Petition Date"), the Debtor filed a petition for relief

under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District

of Massachusetts (this "Court").  The Debtor continues to operate its business as a debtor-in-

possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code.

7.      The Debtor is a Massachusetts limited partnership.  It owns and operates an

approximately 316-unit residential community in Revere, Massachusetts known as Water's Edge

Apartments (the "Property").  The Property consists of three (3) apartment buildings situated on

a 4.95-acre site with a total of 316 units.  364 Ocean Avenue includes a 13-story apartment

building with approximately 91 apartment units.  370 Ocean Avenue includes a 16-story

apartment building with approximately 94 apartment units.  388 Ocean Avenue includes a 16-

story apartment building that includes approximately 118 apartment units.  The unit mix of the

Property includes three (3) studio units and 303 one- or two-bedroom units.  Additionally, each

of the buildings includes three (3) commercial suites that are approximately 400 square feet.  A

parking garage is located on the lobby and lower level of each building.  Improvements at the

Property include a fitness center, laundry facilities, pool, and elevators. There is also a detached

garage located near 364 Ocean Avenue.

8.      The Property is located in a neighborhood which is in close proximity to Boston

and Cambridge with excellent access to public transportation, retail stores and grocery stores.

The Property has ocean views and waterfront access.

9.      On or about May 23, 2018, the Debtor entered into an agreement for a  certain

real estate term loan (the "Prepetition Loan") with Manufacturer's and Traders Trust Company,

a/k/a M&T Bank ("M&T Bank") in the original principal amount of $18,292,206.14, which is

secured by the Property pursuant to a certain Mortgage in favor of M&T Bank dated May 23,

2018 (the "Prepetition Mortgage").

10.     On or around June of 2023, the first mortgage held by M&T Bank on the Property

matured.  Notwithstanding the Debtor's substantial discussions with multiple parties in

connection with the refinancing of M&T Bank's first mortgage and obtaining additional funding

to repair and renovate the Property, the Debtor was unable to obtain the necessary funding.

11.     On June 21, 2022, a fire occurred on the eleventh floor of 370 Ocean Avenue.

That fire caused by the careless disposal of smoking material by an unknown party, and the

water necessary to put out that fire caused substantial damage to that tower. As a result, in July

of 2022 the Board of Health for the City of Revere voted to issue a condemnation order for the

building.  On November 17, 2022, a cold-water pipe in the wall of the seventh floor leaked and

water migrated to the first floor utility room, causing water damage to the alarm system outside.

Nearly two years later, on August 29, 2024, the Board of Health for the City of Revere voted to

issue a condemnation order with respect to 364 Ocean Avenue and the Land Court thereafter

required the Debtor to relocate the tenants to other vacant units or to a hotel (the "Condemnation

Order").  The towers at 364 and 370 Ocean Avenue are currently vacant and are in need of

certain repairs and renovations before they can be re-tenanted.

12.     On November 12, 2024 following an appeal by the Debtor, the Housing Court

Department of Suffolk Superior Court issued a *Memorandum of Decision and Order on*

*Plaintiff's Application for a Preliminary Injunction* (i) granting the Debtor's request for a

preliminary injunction, (ii) declaring that the Condemnation Order of August 29, 2024 was void

and un-enforceable, and (iii) enjoining the City from taking further action to enforce the

Condemnation Order.

13.     Commencing with the fire and condemnation of 370 Ocean Avenue in mid-2022,

the Debtor's income substantially decreased and its expenses, including the costs relating to the

clean-up and repair of the Property and the issues with the City of Revere, substantially

increased.  The subsequent condemnation of 364 Ocean Avenue, although reversed, led to orders

requiring the Debtor to relocate its tenants and therefore caused a further decline in the Debtor's

income.  388 Ocean Avenue currently has an occupancy rate of approximately 73%.  The

occupancy rate is due to the difficulty in attracting tenants following the negative publicity

surrounding fire at 370 Ocean Avenue and the Debtor's disputes with the City of Revere.

14.     In or about September of 2024, the Loan was acquired by DIV OA Lender, LLC,

an affiliate of the Davis Companies (the "Lender").  The Lender is a well-known real estate

developer, which according to its website "a rich history of successfully investing in, managing,

and developing real estate for its own account and on behalf of private and institutional

investors."  Upon information and belief, the Lender acquired the Prepetition Loan with the

intention of foreclosing on and taking possession of the Property.

15.     On October 11, 2024, just weeks after acquiring the Loan, the Lender declared an

Event of Default under the Prepetition Loan.  The Lender subsequently scheduled a foreclosure

auction for December 5, 2024.

16.     The Debtor had substantive discussions with multiple individuals and entities

regarding potential financing and equity contributions but was unable to conclude negotiations

with potential strategic and financial partners prior to the scheduled foreclosure sale.  The Debtor

commenced this Chapter 11 proceeding to stay the foreclosure and preserve the substantial

equity in the Property for the benefit of its creditors and stakeholders.

II.     The LOI[2]

17.     The LOI sets out the Parties' understanding as to the principal terms of the

proposed JV Agreement and the transactions and documents in connection therewith. Subject to

the terms and conditions of the LOI, Eastern has agreed, among other things, to (i) complete and

sign the JV Agreement in connection with confirmation of the plan; (ii) upon Closing, provide

the Eastern Capital Contribution Amount to the Debtor to pay the Existing Loan and all other

non-insider claims in full, subject to alternative treatment as agreed by each applicable claim

holder or provided pursuant to the confirmed plan, (iii) provide new capital as needed, on

commercially reasonable terms, to the new joint venture, less the amount recovered from

insurance proceeds, (iv) act as Project lead post-closing, and (v) upon Project stabilization, but

no sooner than 12 months after the Closing, attempt to facilitate a refinancing of the asset subject

to the Debtor's consent.

18.     The transactions contemplated by the LOI are all subject to confirmation of the

Debtor's plan of reorganization, except for certain "Miscellaneous" provisions of the LOI, they

key provisions of which are summarized in the below chart:

| Key Term | Summary |
|---|---|
| Exclusivity | Debtor to deal exclusively with Eastern following execution of LOI until designated termination events (described below); Debtor's decision to maintain exclusive relationship with Eastern is subject to applicable law and fiduciary duties. |

---

[2]     A brief summary of these and other key terms of the LOI is provided in the table below.  In the event of any inconsistency between this summary and the LOI, the LOI shall govern.

| Key Term | Summary |
|---|---|
| Events that terminate exclusivity | 1. 120 days following execution of LOI; <br> 2. the signing of the JV Agreement; <br> 3. the failure of the Parties to reach agreement on the terms of DIP Financing acceptable to both Parties; <br> 4. failure of the Bankruptcy Court to approve the LOI within 30 days its execution; and/or <br> 5. mutual termination by the Parties. |
| Termination Fee and Expense Reimbursement | In the event that the Debtor shall seek to terminate the LOI, or shall seek approval of or consummate any other transaction relative to the sale or recapitalization of the Property (including any transaction with the Lender to transfer ownership of all or any portion of the Property or the equity interests therein) (in each case, an "Alternative Transaction"), Eastern shall be entitled to: <br><br> 1. a termination fee in the amount of 2.5% of the Eastern Capital Contribution Amount ($587,500) (the "Termination Fee"), and <br><br> 2. reimbursement of all reasonable, documented out of pocket costs and expenses incurred by Eastern in connection with the transactions contemplated by the LOI (up to a $500,000 cap) (the "Expense Reimbursement"). <br><br> The foregoing amounts shall be payable from the proceeds of any Alternative Transaction concurrently with the consummation of the same. The Transaction Fee and Expense Reimbursement, to the extent payable under the LOI, shall be allowed administrative expenses that are *pari passu* with the obligations under the DIP Financing and secured by the liens securing the obligations under the DIP Financing. |

19.    The Parties' goals with respect to the transactions contemplated by the LOI are evidenced by the milestones contemplated by the DIP Term Sheet. These milestones include requirements that the Debtor file a disclosure statement and Chapter 11 plan within 45 days of the filing of the DIP Motion and that a plan of reorganization be confirmed between 115 days of the filing of the DIP Motion

**BASIS FOR RELIEF**

20.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Additionally, section 105(a) of the Bankruptcy Code allows this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.

21.    The standard for approving the Debtor's agreement to pay the fees and expenses such as those proposed in this Motion is the business judgment standard.  "In determining whether to approve the business decision of a debtor-in-possession … the bankruptcy court sits as an overseer of the wisdom with which the bankruptcy estate's property is being managed by the … debtor-in-possession, and not, as it does in other circumstances, as the arbiter of disputes between creditors and the estate.'"  In re Aerovox, Inc., 269 B.R. 74, 80 (Bankr. D. Mass. 2001) (quoting In re Orion Pictures Corp., 4 F.3d 1095, 1099 (2d. Cir. 1993)).  The Debtor's business judgment should be approved unless it is shown to be so manifestly unreasonable that it could not be based on sound business judgment.  Id.

22.    Once a debtor demonstrates that the proposed action is predicated on sound and rational business grounds, courts will defer to the debtor's decision-making.  See, e.g., CRTF Corp. v. Federated Dep't Stores, Inc., 683 F.Supp. 422, 436 (S.D.N.Y. 1988); In re Summit Land Co., 13 B.R. 310, 315 (Bankr. D. Utah 1981).  Indeed, courts have held that "[t]he business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company."  In re Integrated Res., Inc., 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).  In reorganization-oriented

bankruptcy proceedings, the business judgment rule applies to protect a debtor's management

from judicial second-guessing.  In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr.

S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a

presumption of reasonableness attaches to a debtor's management decisions.").  Moreover, under

section 105(a) of the Bankruptcy Code, this Court has broad equitable powers to enter any order

or decree in order to preserve or enhance the value of the Debtors' assets.  See, e.g., In re

Chinichian, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the

bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy

Code.").

23.     The Debtor's decision to enter into the LOI is a sound exercise of its business

judgment.  The LOI sets forth the framework of the JV Agreement that will create a partnership

to recapitalize, reposition, lease, manage, stabilize and optimize the value of the Property.  These

efforts are critical in deleveraging the Debtor's balance sheet and maximizing the value of the

Debtor's estate. Notably, the Eastern Capital Contribution Amount enables the Debtor to pay all

non-insider claims in full pursuant to the intended plan.  In addition, the Debtor's existing

interest holders can retain their equity in the Debtor, which will own 35% of the joint venture,

following confirmation with the continued ownership in the joint venture.  Pursuing the

transactions contemplated in the LOI will stave off a potentially wasteful foreclosure process

whereby the Debtor would lose the benefit of this equity value.

24.     The LOI ensures the support of Eastern, a key partner moving forward whose

support will be integral in funding the Chapter 11 case and achieving confirmation of a

chapter 11 plan on commercially reasonable terms.  The Debtor's motivation for pursuing the

LOI and the transactions it contemplates stems, in part, from the fact that Eastern is managed by

an established, commercial real estate investment company that has made over $5 billion of investments in over 100 projects over its 20 years in existence as a business.

25.     Authorizing the Debtor to enter into the LOI with Eastern will therefore create a viable path for the Debtor to restructure its financial affairs efficiently and pursuant to the timetable contemplated in the milestones provided for in the DIP Term Sheet.  The Debtor sees this as the best available strategy for moving the Chapter 11 case forward and to obtain the post-reorganization financing necessary to rehabilitate the Property.

26.     Ultimately, the Debtor entered into the LOI following lengthy, detailed negotiations with third parties before and after the Petition Date.  The Debtor believes that the LOI and the contemplated JV Agreement are in the best interests of its estate and creditors and will facilitate a successful reorganization.

27.     With respect to the Termination Fee and Expense Reimbursement required by the LOI, if this Court were to apply the higher standard adopted by the Third Circuit for approval of termination fees in Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527 (3d Cir. 1999), the fees and expense reimbursement obligations described herein should still be approved.  Under that standard, the approval of a break-up or termination fee depends on the requesting party's ability to show that the fees are actually necessary to preserve the value of the estate.  Id. at 535.

28.     In this case, the agreement to pay the Termination Fee and the Expense Reimbursement in the event that the Debtor seeks to terminate the LOI or consummates another transaction relative to the sale or recapitalization of the Property clearly benefits the estate, in consideration of the substantial financial commitment offered by the Eastern and its considerable

dedication of time and resources to this transaction.  If the transactions with Eastern are

consummated, the Termination Fee and the Expense Reimbursement will be not be due.

29.    The Debtor has demonstrated ample justification for approval of the Expense

Reimbursement, Termination Fee and exclusive dealing provision of the LOI.  The LOI, and the

DIP Financing being provided in furtherance of the LOI, provide the Debtor with the ability to

fund administrative costs in the chapter 11 case, to pay holders of allowed non-insider claims

against the Debtor in full, unless otherwise agreed, and to obtain the capital needed to facilitate

the repair and repositioning of the Property.  Should a party come forward with more desirable

business terms than those offered by Eastern regarding a potential strategic transaction, the

Debtor may pursue such transaction, subject to the payment of the Termination Fee, the Expense

Reimbursement, and the other payments required under the LOI and the proposed DIP

Financing.  The Debtor believes these potential costs will be reasonable for the estate to incur so

long as an alternative business partner to Eastern offers more favorable terms than the JV

Agreement for a potential transaction.

30.    The LOI is a product of intense negotiations conducted in good faith and on an

arms-length basis.  As such, it contains competitive terms and conditions, including the proposed

Expense Reimbursement, Termination Fee, and exclusive dealing provisions.  In light of the

foregoing, the Debtor believes that the Court should approve the Expense Reimbursement,

Termination Fee and exclusive dealing provision and authorize the Debtor to perform its

obligations under the LOI as provided therein.

## NECESSITY OF IMMEDIATE RELIEF AND WAIVER OF STAY

31.    To successfully implement the foregoing, the Debtor requests that the Court find

that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances,

and that the Court waive the stay imposed by Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy

Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral

is stayed until the expiration of 14 days after entry of the order, unless the court orders

otherwise." Fed. R. Bankr. P. 6004(h).

32.     As noted above, the LOI is necessary to successfully obtaining DIP Financing,

which is the first step the Debtor needs to take to pursue an exit that contemplates payment in in

full to all its non-insider creditors. Thus, ample cause exists to justify finding that the notice

requirements under Bankruptcy Rule 6004(a) have been satisfied and granting a waiver of the

stay imposed by Bankruptcy Rule 6004(h), to the extent such notice is required and such a stay

applies.

## NOTICE

33.     Notice of this Motion was served on: (a) the United States Trustee; (b) counsel to

the Lender; (c) each of the Debtor's twenty (20) largest non-priority unsecured creditors;

(d) counsel to the Eastern; (e) any party that has asserted a lien against any of the Debtor's assets

as of the date hereof; and (f) all known taxing authorities which may assert claims against the

Debtor.  Such notice constitutes sufficient and adequate notice of the Motion and the relief

granted in this order pursuant to the applicable Bankruptcy Rules and the Local Bankruptcy

Rules of the United States Bankruptcy Court for the District of Massachusetts (the "Local

Rules").

[Concluded on Following Page]

**WHEREFORE,** based upon the foregoing and for the reasons set forth herein and in the

First Day Declaration, the Debtor requests entry of the Proposed Order granting the relief

requested herein and such other relief the Court deems just and proper.

Respectfully submitted,

WATER'S EDGE LIMITED PARTNERSHIP,
By its proposed counsel,

*/s/ Kathleen R. Cruickshank*
Harold B. Murphy (BBO # 362610)
Kathleen R. Cruickshank (BBO #550675)
Murphy & King, Professional Corporation
28 State Street, Suite 3101
Boston, Massachusetts 02109
Telephone:  (617) 423-0400
hmurphy@murphyking.com
kcruickshank@murphyking.com

Dated:  December 26, 2024

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | |
| WATER'S EDGE LIMITED | |
| PARTNERSHIP | Chapter 11 |
| Debtor. | Case No. 24-12445 (CJP) |

**ORDER (I) AUTHORIZING AND APPROVING ENTRY**
**INTO THE LETTER OF INTENT WITH EASTERN ACQUISITIONS, LLC**
**AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of the above-captioned debtor and debtor-in-possession

(the "Debtor") for entry of an order (this "Order"), pursuant to Sections 105(a) and 363(b) of the

Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9014, authorizing and approving entry

into the Letter of Intent between the Debtor and Eastern Acquisitions, LLC (and together with

one/or more of its affiliates, "Eastern") dated December 26, 2024 (the "LOI"),  attached hereto

as **Exhibit 1**; and (ii) granting related relief, as more fully set forth in the Motion; and upon

consideration of the First Day Declaration; and the Court having jurisdiction over this matter

pursuant to 28 U.S.C. § 1334; and this matter being a core proceeding within the meaning of 28

U.S.C. § 157(b)(2); and venue of this proceeding and the Motion in this district being proper pursuant

to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given in

accordance with the Bankruptcy Rules and Local Rules, and it appearing that no other or further

notice need be provided[; and a hearing having been held to consider the relief requested in this

Motion (the "Hearing")]; and the record of the Hearing, if any, and all other proceedings before

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

this Court; and this Court having found and determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, its stakeholders, and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:[2]

1.       The Motion is **GRANTED** to the extent provided herein.

2.       All objections to the Motion or the relief requested therein, if any, that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled with prejudice.

3.       The Debtor is hereby authorized to execute, enter into, and perform of its obligations under the LOI in the form attached hereto as **<u>Exhibit 1</u>**, and to take any and all actions necessary to implement the LOI.

4.       Upon entry of this Order, the terms and provisions set forth in the "Miscellaneous" section of the LOI shall be binding on the Debtor and its estate.

5.       In the event of the occurrence of an Alternative Transaction (as defined in the LOI), Eastern shall have an allowed, superpriority administrative expense for the Termination Fee and Expense Reimbursement pursuant to Sections 503(b) and 364(c)(1) of the Bankruptcy Code that shall be (i) *pari passu* with the obligations under the DIP Financing and be paid when such amounts are due and owing under the LOI and (ii) secured by the security interests and liens securing the obligations under the DIP Financing.

6.       To the extent applicable, the automatic stay provisions of section 362 of the

---

[2]   Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Rule 7052 of the Bankruptcy Rules.

Bankruptcy Code are hereby vacated and modified solely to the extent necessary to effectuate all terms and provisions of the LOI and this Order, including to permit the delivery of any notices contemplated by the LOI or to exercise any rights set forth under such document with respect to termination, in each case, without further order of the Court.

7.      The failure to describe specifically or include any particular provision of the LOI in the Motion or this Order shall not diminish or impair the effectiveness of such provision.

8.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

9.      Notice of the Motion is adequate under Bankruptcy Rule 6004(a).

10.     Notwithstanding the potential application of Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

11.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: [●]

_____

HONORABLE CHRISTOPHER J. PANOS
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Letter of Intent**



December 26, 2024


Waters Edge Limited Partnership
394 Ocean Avenue
Revere, Massachusetts 02151
Attn: Evelyn M. Carabetta


**RE:  Waters Edge Partnership - 364, 370 & 388 Ocean Avenue, Revere, Massachusetts**


Dear Kiki,

Continuing our conversations to date, we are pleased to present this letter of intent ("LOI") which summarizes the proposed terms of a joint venture between Water's Edge Limited Partnership ("WELP" or the "Debtor") and Eastern Acquisitions LLC and/or one or more of its affiliates ("Eastern") with respect to 364, 370 & 388 Ocean Avenue, an approximately 305-unit residential community in Revere, Massachusetts (the "Property") to be effectuated pursuant to a confirmed chapter 11 plan of reorganization in the Debtor's chapter 11 case No. 24-12445 (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Eastern District of Massachusetts (the "Bankruptcy Court").  WELP and Eastern are referred to herein collectively as the "Parties" or singularly as a "Party".

The proposed terms are as follows:

| | |
|---|---|
| **Purpose:** | The objective of the partnership is to recapitalize, reposition, lease, manage, stabilize and optimize the value of the Property.  The Parties shall work together to achieve tax efficient treatment for WELP, WELP's partners and Eastern. |
| **Transaction Structure; Closing; Documentation:** | The transactions contemplated hereby shall be effectuated through the confirmation of a chapter 11 plan of reorganization of WELP in the Bankruptcy Case (the "Plan"), to be prepared jointly by Eastern and WELP, pursuant to which it is intended that all ch. 11 claims against the Debtor (inclusive of secured claims, administrative claims and unsecured claims but excluding the intercompany loan owing to the CEI Parties and accrued management fees owing to affiliates) (collectively, "Claims") shall be paid in full, unless otherwise subject to alternative treatment as agreed by each applicable claim holder or provided pursuant to the confirmed Plan. The closing of the transactions contemplated hereby will occur contemporaneous with the effective date of the Plan. |
| **DIP Financing:** | Attached hereto as **Exhibit A** is a term sheet (the "DIP Term Sheet") setting forth terms upon which Eastern will provide debtor-in-possession financing for WELP in an |

amount necessary to cover the costs of operating the Property and administration of the Bankruptcy Case during the pendency of WELP's Bankruptcy Case, which financing shall, as set forth in the DIP Term Sheet, be subject to an agreed upon budget (such financing, the "DIP Financing").  Upon confirmation of the Plan, the JV shall assume all outstanding obligations under the DIP Financing on terms mutually agreed by the Parties ("Exit Financing").

**Closing; Eastern Capital Contribution; JV Equity Interests; Exit Financing:**

This venture is contingent upon WELP obtaining confirmation of the Plan implementing the proposed transaction in form and substance acceptable to Eastern. At the Closing (to occur concurrently with the effective date of the Plan and the project's emergence from the Bankruptcy Case), the JVA (as hereinafter defined) will be signed and the Property will be contributed to a new single purpose entity owned by the Venture (the "Reorganized Debtor"), free and clear of all liens, claims and encumbrances (other than the liens securing the Exit Financing and any other liens agreed by the Parties to be assumed through the Plan).  In addition to the DIP Financing and Exit Financing described above, Eastern will provide capital to the Reorganized Debtor in an amount equal to the aggregate amount of all allowed Claims (the "Eastern Capital Contribution Amount").  The transactions contemplated hereby contemplate and assume that in exchange for a capital contribution in the amount of $23,500,000, Eastern shall own 65% of the equity interests of the Reorganized Debtor, with WELP owning the remaining 35%.  In the event that the aggregate amount of the Claims and the Eastern Capital Contribution Amount exceed $23,500,000, the respective equity interests of the Parties shall be adjusted to reflect such increased Eastern Capital Contribution Amount, based upon the implied valuation of the Property determined in accordance with the preceding sentence.

The Eastern Capital Contribution Amount shall be used to pay off the existing senior loan on the Property (the "Existing First Mortgage Financing") as well as all other Claims (excluding the intercompany loan owing to the CEI Parties and pre-petition accrued management fees owing to WELP affiliates) and other obligations necessary for confirmation of the Plan, unless any such Claims are subject to alternative treatment pursuant to the Plan.  Any portion of the Eastern Capital Contribution Amount not applied to repay Claims on the effective date of the Plan shall be used in accordance with the Project Budget referred to below.  In addition to the Eastern Capital Contribution Amount, the reorganized Debtor shall assume (or Eastern shall refinance the same through an Exit Financing) all outstanding obligations under the DIP Financing as of the Closing Date.  The transactions contemplated hereby assume that, and without the prior written consent of Eastern, the outstanding balance of the DIP Financing included in the Exit Financing shall not exceed $3,400,000.

**Follow on Capital;
Repositioning:**

Eastern will commit to provide the capital needed, on commercially reasonable terms, to the new joint venture entity to facilitate the repair and repositioning of the Property, less the amount recovered from insurance proceeds.  All insurance proceeds recovered (net of costs of collection) shall be used in connection with a mutually agreed budget (the "Project Budget".  In the event that insurance proceeds are received prior to the Closing, upon mutual agreement of the Parties, such proceeds may be used to reduce the amount of the DIP Financing and/or used to fund the Plan.

During the pendency of the Chapter 11 Case, the Parties shall negotiate in good faith to develop and finalize an initial business plan and the Project Budget. The Parties will work together to hire a new third-party property manager as well as an architect and construction team to design, budget and execute the redevelopment of the Property -- at a high level, Building 5 will be leased up to stabilization (i.e. 90% leased) predominantly in its current condition as soon as commercially practicable after the Closing.  It is expected that Buildings 1 and 2 will have 6 months of downtime as the Parties make the physical (life safety and cosmetic) upgrades to the building in order to lease them to the market (the "Repositioning").

Post- Closing, Eastern will be the Project Lead, solely responsible for implementing the Repositioning, and WELP will have major decision rights, which will be defined in the JVA.  In addition to major decisions, prior to each year of the venture, the parties shall agree upon an annual business plan which Eastern will implement, and WELP will have approval rights for material deviations.

**Recapitalization:**

Upon Project stabilization, but no sooner than 12 months after the Closing, Eastern will attempt to facilitate a refinancing of the asset subject to WELP's consent. In connection with the refinancing, WELP will have the right, but not the obligation to purchase Eastern's interest in the Venture at Fair Market Value ("FMV").  FMV shall be determined by a MAI appraisal process.

**Distributions:**

To the extent there is distributable cash available, it shall be distributed in accordance with the parties' ownership percentages.

**Fees:**

From and after Closing and throughout the repositioning and operations of the Project, Eastern shall be entitled to receive the following fees:

- Property Management Oversight: 0.25% of the Effective Gross Revenue for the Property, which shall be a deduct against the property manager's fee.
- Development Fee: 4.00% of the total construction costs of the project, billed as the work is put in place
- Financing Fee: 0.50% of the follow on Capital (debt or equity) for the repositioning of the Project (one-time fee once put in place).

**Brokerage:**        Each Party acknowledges that it has not dealt with any broker regarding this transaction.

**Miscellaneous:**    In addition to the terms listed above, the Eastern and WELP agree to the following:

- **Exclusive Negotiation:** Commencing upon the mutual execution of this LOI and continuing through the earlier of (i) 120 days, (ii) the signing of the JVA, (iii) the failure of the Parties to reach agreement on the terms of DIP Financing acceptable to both Parties, (iv) failure of the Bankruptcy Court to approve this agreement within 30 days of the date hereof, or (v) the mutual termination of the transaction contemplated hereby by the Parties, WELP (and its partners) shall deal exclusively with Eastern with respect to the recapitalization of the Project or the transfer of any direct or indirect interest therein, and they shall not solicit, initiate, encourage, conduct or engage in negotiations or substantive discussions with any other parties regarding a similar, competing or preemptive transaction, and shall act in accordance with this LOI subject to applicable law, Bankruptcy Court approval, and applicable fiduciary duties.

- **Bankruptcy Court Approval:** WELP shall promptly seek approval of this LOI by the Bankruptcy Court, together with the DIP Financing in the manner contemplated by **Exhibit A** attached hereto.

- **Plan; Joint Venture Agreement.** No later than 21 days following the DIP Filing Date, Eastern shall provide WELP with a draft Plan and form of joint venture agreement to be executed by the Parties ("JVA").

- **Termination Fee and Expense Reimbursement:** Subject to the approval of this LOI by the Bankruptcy Court, in the event that WELP shall seek to terminate this LOI, or shall seek approval of or consummate any other transaction relative to the sale or recapitalization of the Property (including any transaction with the holder of the Existing First Mortgage Financing to transfer ownership of all or any portion of the Property or the equity interests therein) (in each case, an "Alternative Transaction"), Eastern shall be entitled to (i) a termination fee in the amount of 2.5% of the Eastern Capital Contribution Amount (which for these purposes shall be a minimum of $23,500,000), and (ii) reimbursement of all reasonable, documented out of pocket costs and expenses incurred by Eastern in connection with the transactions contemplated hereby, including, without limitation, all due diligence expenses, costs of surveys, environmental studies, engineering reports, title reports and further including reasonable fees and expenses of counsel and other third party consultants engaged for purposes of the transactions contemplated hereby, in an amount not to exceed $500,000, which amounts shall be payable from the proceeds of any Alternative Transaction concurrently with the consummation of the same.

- **Attorney's Fees:**  To the extent the transactions contemplated hereunder are consummated, all reasonable attorney fees incurred by Eastern and WELP shall be capitalized upon the execution of the JVA and effectiveness of the Plan of Reorganization implementing the JVA.  In the event of any dispute between the parties regarding this Letter, the prevailing Party shall be entitled to recover its reasonable attorney's fees, costs, and expenses.

- **Governing Law:**  This Letter shall be governed by the laws of the Commonwealth of Massachusetts.

- **Counterparts:**  This Letter may be executed in counterparts and, when so executed, such counterparts shall be taken together as a single agreement.

This letter of intent is subject to the negotiation and execution of the contemplated operating agreements and financing documents by the Parties, Bankruptcy Court approval of the transactions contemplated hereby, and a confirmed chapter 11 plan by WELP in form and substance mutually acceptable to the Parties.  Nothing herein shall constitute or be deemed constitute a commitment to provide any financing or the solicitation of votes on a chapter 11 plan.  The Parties shall be bound by the subparagraphs under the foregoing section entitled "Miscellaneous"; however, it is agreed that except for such provisions, this letter is non-binding on the Parties and neither Party shall be contractually obligated to the other unless and until a mutually satisfactory JVA is executed between them and WELP achieves confirmation of a chapter 11 plan acceptable to the parties.

Eastern looks forward to working with WELP on this opportunity.

*[Signatures on Next Page]*



Eastern Acquisitions LLC


By: _____ 12/26/24
       Toby Banta
       Executive Managing Director



**ACCEPTED AND AGREED:**

WATER'S EDGE LIMITED PARTNERSHIP

By:    Evelyn M. Carabetta    12/26/24


_____


_____