**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |
|---|---|
| **In re:**<br><br>**WATER'S EDGE LIMITED PARTNERSHIP,**<br><br>       **Debtor.** | **Chapter 11**<br><br>**Case No. 24-12445-CJP** |

**DECLARATION OF EVELYN CARABETTA IN SUPPORT OF THE DEBTOR'S**
**CHAPTER 11 PETITION AND FIRST DAY MOTIONS**

Pursuant to 28 U.S.C. § 1746, I, Evelyn Carabetta, hereby declare as follows:

1.      I am the sole member and manager of Water's Edge Realty LLC (the "LLC"), the General Partner of Water's Edge Limited Partnership ("WELP" or the "Debtor"). I am the sole limited partner of the Debtor.

2.      I hold an associate's degree in property management. I have over 20 years of experience in overseeing the operations of 364, 370 and 388 Ocean Avenue in Revere, Massachusetts, known as Water's Edge Apartments (the "Property") and on a daily basis, among other things, I perform administrative duties, and coordinate the collection of rents and the payment of expenses.

3.      I submit this declaration (the "First Day Declaration") to help the Court and interested parties understand why the Debtor filed this Chapter 11 case and in support of the relief requested in motions filed concurrently with this First Day Declaration (collectively, the "First Day Motions"). I am familiar with the contents of each of the First Day Motions and believe that the relief requested therein is necessary for the Debtor to smoothly transition into chapter 11 and to continue its ordinary course operations on a postpetition basis.

4.      Except as otherwise indicated, all statements in this affidavit are based upon (a) my personal knowledge and belief and my review of relevant documents; (b) information supplied to me by the Debtor's professionals; and/or (c) my discussions with various parties, including professionals, familiar with the Debtor and its operations.

5.      In my role as manager of the LLC, I authorized the Debtor's decision to file a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").  I have reviewed the Debtor's voluntary petition and the First Day Motions.[1]

## BACKGROUND

6.      The Property was built in the 1980's by an entity formed and majority-owned by my father, Joseph F. Carabetta.  WELP acquired the Property in 1985, and, I have been the sole beneficial owner of the Debtor for approximately 20 years.

7.      The Debtor is a Massachusetts limited partnership.  It owns and operates the Property, which consists of three (3) apartment buildings situated on a 4.95-acre site with a total of 316 units.  364 Ocean Avenue includes a 13-story apartment building with 91 apartment units. 370 Ocean Avenue includes a 16-story apartment building with 94 apartment units.  388 Ocean Avenue includes a 16-story apartment building that includes 118 apartment units.  The unit mix of the Property includes three (3) studio units and 303 one- or two-bedroom units. Additionally, each of the buildings includes three (3) commercial suites that are approximately 400 square feet. A parking garage is located on the lobby and lower levels of each building. Improvements at the Property include a fitness center, laundry facilities, pool and elevators. There is also a detached garage located near 364 Ocean Avenue.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the respective First Day Motions.

8.      The Property is located in a neighborhood which is in close proximity to Boston

and Cambridge with excellent access to public transportation, retail stores and grocery stores.

The Property is on Revere Beach and has spectacular ocean views and waterfront access.

9.      The Property is managed by Water's Edge Management Company \, a related

entity also owned by me ("WEM "). I do not draw a salary from the Debtor. WELP has no

employees; WEM employs individuals who maintain the Property. Certain of WEM's

independent contractors also provide bookkeeping and similar services to WELP. WELP

reimburses WEM for the services it provides to WELP.

10.     On or about May 23, 2018, the Debtor entered into an agreement for a  certain

real estate term loan (the "Prepetition Loan") with Manufacturer's and Traders Trust Company,

a/k/a M&T Bank ("M&T Bank") in the original principal amount of $18,292,206.14, which is

secured by the Property pursuant to a certain Mortgage in favor of M&T Bank dated May 23,

2018 (the "Prepetition Mortgage"). A portion of the payment and performance obligations under

the Prepetition Loan are guaranteed by CEI, by Carabetta Management Company, Inc.

(a subsidiary of CEI), and my father.

11.     On or around June of 2023, the Prepetition Loan matured. Notwithstanding the

Debtor's substantial discussions with multiple parties in connection with refinancing M&T

Bank's first mortgage and obtaining additional funding to repair and renovate the Property, the

Debtor was unable to obtain the necessary funding.

12.     On June 21, 2022, a fire occurred on the eleventh floor of 370 Ocean Avenue.

That fire caused by the careless disposal of smoking material by an unknown party, and the

water necessary to put out that fire caused substantial damage to that tower. As a result, in July

of 2022 the Board of Health for the City of Revere voted to issue a condemnation order for the

building.  On November 17, 2022, a cold-water pipe in the wall of the seventh floor of 364

Ocean Avenue leaked and water migrated to the first floor utility room, causing water damage to

the alarm system outside. Nearly two years later, on August 29, 2024, the Board of Health for the

City of Revere voted to issue a condemnation order with respect to 364 Ocean Avenue and the

Land Court thereafter required the Debtor to relocate the tenants to other vacant units or to a

hotel (the "Condemnation Order").  The towers at 364 and 370 Ocean Avenue are currently

vacant and are in need of certain repairs and renovations before they can be re-tenanted.

13.     The Debtor has substantial claims in connection with the damage from the fire

and the flood and the attendant loss of income at 364 and 370 Ocean Avenue, but the insurance

company has not addressed all of these claims.  The failure of the Debtor's insurer to address the

major part of the Debtor's losses on account of the 2022 fire and resulting flood from fire

suppression efforts, as well as the 2022 flood, together with the City of Revere's long-standing

and judicially-determined wrongful crusade to harm the Debtor (as summarized below), are the

major causes of the Debtor's financial distress.

14.     The tower at 388 Ocean Avenue currently has an occupancy rate of approximately

73%.  The occupancy rate is due to the difficulty in attracting tenants following the negative

publicity surrounding fire at 370 Ocean Avenue and the Debtor's disputes with the City of

Revere.

15.     The Debtor does not have a current appraisal of the Property.  The Debtor has

obtained a copy of an appraisal commissioned by M&T and performed by an internationally

recognized "commercial real estate services and investment firm."  That appraisal assigned the

Property an "as is" value of $47,700,000 as of June 14, 2023 and a "completed" value of

4

$64,700,000 as of June 14, 2024. I believe that the Debtor has significant equity value in the

Property.

16.     In or about September of 2024, the Prepetition Loan was acquired by DIV OA

Lender, LLC, an affiliate of the Davis Companies (the "Prepetition Lender").

17.     I believe that the Prepetition Lender acquired the Prepetition Loan from M&T

Bank for the purpose of obtaining ownership of the Property.

18.     On October 11, 2024, just weeks after acquiring the Loan, the Prepetition Lender

declared an Event of Default under the Prepetition Loan.

19.     The *Motion of DIV OA Lender, LLC for Entry of an Order Dismissing Debtor's*

*Chapter 11 Case, to Dismiss* (the "Motion to Dismiss") filed by the Prepetition Lender sets forth

its unflattering version of events with respect to the Debtor's long-standing dispute with the City

of Revere and its alleged mismanagement of the Property.  It recites multiple findings and/or

allegations by the City of Revere in support of its allegations.

20.     As with every dispute, there are two sides to the story.

21.      On November 12, 2024, following an appeal by the Debtor, the Eastern Division

of the Housing Court Department (the "Housing Court") issued a *Memorandum of Decision and*

*Order on Plaintiff's Application for a Preliminary Injunction* (the "PI Order") (i) granting the

Debtor's request for a preliminary injunction, (ii) declaring that the Condemnation Order of

August 29, 2024 was void and unenforceable, and (iii) enjoining the City from taking further

action to enforce the Condemnation Order.

22.     In the PI Order, the Housing Court found that:

[T]he City has both been over-eager and sloppy in its pertinacious pursuit
of Water's Edge.  The over-eagerness is demonstrated by the inexplicably
urgent timing of this condemnation proceeding, which occurred two years
after the never-updated Order to Correct, but coincidentally amid a hearing

5

on the appointment of a Receiver.  The sloppiness is demonstrated by, <u>inter alia</u>, irregularities in the <u>Order to Correct</u> including no language indicating that the conditions rendered the Property "unfit for human habitation," the lack of any re-inspections after the initial <u>Order to Correct</u> (thus giving the false impression that Water's Edge failed to do anything to attempt to correct the cited violations) and the failure of the Board of Health to notify Water's Edge of its "right to inspect and copy the board of health's file concerning the matter to be heard."  This Court also questions the timing of any required written Finding issued by the Board of Health deeming the Property unfit for human habitation, and the timing of the required Condemnation Order.

PI Order, p. 9 (citations omitted).

23.     As noted by the Housing Court, "[p]ursuant to 105 C.M.R. 410.660(A), a reinspection to determine compliance with any existing order must be conducted within 24 hours after the date for compliance with emergency violations specified in 105 CR 410.640(a) and within seven days after the date for compliance with non-emergency violations specified in 105 CMR 410.640(B)." PI Order, fn. 8.  In granting the Debtor's requested relief, the Court found that the City's "failure to conduct mandatory re-inspections of the Property – alone- is sufficient to void the Condemnation Order.  The City's failure to monitor and note all corrections and further violations over the course of two years indicates a stunning dereliction of legal duty" *Id.* at p. 14-15, further noting:

> Anecdotally, this Court has adjudicated hundreds of Sanitary Code enforcement cases over the course of the past six years.  Most cases are brought by the City of Boston Inspectional Services Department.  This Court has also overseen cases from virtually every municipality under this Court's jurisdiction.  Many cases have been brought by the municipalities themselves.  Others have been brought by the Massachusetts Attorney General's Distressed Properties Division.  **This is the first time that the Court has observed a municipality ignoring the Code's explicit requirement to conduct periodic reinspections.**

PI Order, fn. 11 (emphasis in original).

24.     There is also a whistleblower complaint pending in Federal District Court related to certain municipal liens asserted by the City of Revere under c. 40u, filed by a former Assistant

6

City Solicitor, Cheryl McCormick Leon.  The Debtor was required to petition the Housing Court

to have these fines rescinded.  In the complaint, Attorney McCormick alleges her signature was

forged onto a tax certification for fines against the Debtor which she believed were

improper.  These forged and illegal tax liens have been an obstacle in the Debtor's efforts to

obtain financing.

25.    On December 5, 2024 (the "Petition Date"), the Debtor commenced this case by

filing a voluntary petition pursuant to chapter 11 of the Bankruptcy Code to stay the Prepetition

Lender's foreclosure sale scheduled for December 5, 2024, pay its creditors, and to preserve the

equity in the Property.

26.    On the Petition Date and in addition to the Property, the Debtor held cash in its

bank accounts in the approximate amount of $40,000 and has substantial insurance claims in

connection with the damage from the fire and the flood and the attendant loss of income at 364

and 370 Ocean Avenue, which have not been fully addressed by the Debtor's insurer.

27.    The Prepetition Lender asserts to be owed approximately $16,700,000 as of the

Petition Date.

28.    Based upon a municipal lien certificate issues with respect to the Property, there

are municipal liens asserted against the Property in the total approximate amount of $3,860,000.

29.    Based upon a title rundown on the Property, certain individuals and entities have

filed notices of mechanics' liens against the Property in the total approximate amount of

$320,000.

30.    The Debtor estimates that, as of the Petition Date, non-insider unsecured creditors

were owed approximately $3,500,000.  Certain affiliates of the Debtor assert claims in the total

amount of approximately $20,000,000.

31.     The Debtor has not made any payments since the Petition Date and will not do so until it obtains permission from the Court.

32.     Contrary to the allegations of the Prepetition Lender in the Motion to Dismiss, the Debtor's insurance annual policy for worker's compensation and employee liability, and commercial crime, while initially due to expire on December 30, 2024, has been renewed for another year.  The Debtor's insurance broker will be providing the Debtor with an updated certificate of insurance for submission to the United States Trustee once the insurance carrier furnishes updated policy numbers.  The Debtor's insurance policies for property and general liability are set to expire on January 30, 2025.  The Debtor's insurance broker is working on the renewal or replacement of these policies and will provide the Debtor with an updated certificate of insurance once the policies are bound.

33.     Since the Petition Date, and subject to Bankruptcy Court approval, the Debtor has retained, among other professionals, general bankruptcy counsel, a financial advisor, accountants, and other special counsel as needed to assist it with its efforts to formulate and confirm a plan of reorganization that will provide for payment of all creditors unless otherwise agreed.

**THE FIRST DAY MOTIONS**

34.     After lengthy and detailed negotiations and consideration of the best interests of the Debtor and its creditors, the Debtor has determined to enter into the transactions provided for in the First Day Motions.

**I.      The LOI Motion**

35.     Contemporaneously with the filing of this First Day Declaration, the Debtor has filed the *Debtor's Emergency Motion for Entry of Order (I) Authorizing the Debtor to Enter Into*

*Letter of Intent with Eastern Acquisitions, LLC and (II) Granting Related Relief* (the "LOI

Motion").  As further described therein, the Debtor seeks authority to enter into a Letter of Intent

("LOI") with the DIP Lender.  The LOI describes the proposed terms of a joint venture

agreement by the Debtor and the DIP Lender (the "JV Agreement"), which will be substantially

effectuated through the Debtor's plan of reorganization (the "Plan").

36.      I believe that the LOI and the contemplated JV Agreement are in the best interests

of creditors and will facilitate a successful reorganization.

**II.    The DIP Motion.**

37.      Contemporaneously with the filing of this First Day Declaration, the Debtor has

filed the *Debtor's Emergency Motion for Entry of Orders (I) Authorizing the Debtor to Obtain*

*Junior Secured Postpetition Financing; (II) Granting Liens and Providing Superpriority*

*Administrative Expense Status; (III) Authorizing Use of Cash Collateral; (IV) Granting*

*Adequate Protection; and (V) Modifying the Automatic Stay; (VI) Scheduling a Final Hearing;*

*and (VII) Granting Related Relief*  (the "DIP Motion").  As further described therein, the Debtor

seeks authority to obtain junior secured postpetition financing (the "DIP Loan") and of Cash

Collateral, consisting of rents from 388 Ocean Avenue, to preserve the value of the Debtor's

assets, fund its operating expenses and pay necessary administrative expenses, including

professional fees, during its chapter 11 case.  The Debtor requires the DIP Loan because it

cannot fund the expenses essential to the operation of its business or the administrative costs

associated with its Chapter 11 case from Cash Collateral.

37.      I believe that the DIP Motion and the DIP Loan are in the best interests of

creditors and will facilitate a successful reorganization.

### ADDITIONAL MOTIONS AND RELIEF REQUESTED

38.      In addition to the First Day Motions, the Debtor contemplates filing several additional pleadings in the coming days.  A brief description of these pleadings and the relief that will be requested are set forth below.

### III.      Application to Employ Professionals

39.      The Debtor anticipates filing the following retention applications:

(i)      Application to retain Murphy & King, P.C. as general bankruptcy counsel;

(ii)      Application to retain Verdolino & Lowey, P.C., as financial advisors,

(iii)      Application to retain Gray, Gray and Gray, LLP as accountants;

(iv)      Application to retain Brown Rudnick as special counsel to the Debtor;

(v)      Application to retain Pullman & Comley as tax abatement counsel to the Debtor; and

(vi)      Cohen, Rios & Wholly as insurance counsel to the Debtor.

The Debtor may seek to employ additional professionals as such needs arise.

### IV.      Motion to Establish Fee Payment Procedures

40.      In chapter 11 cases of this size and type, it is customary to establish procedures for the payment of interim compensation to professional persons.  Appendix 6 to the Massachusetts Local Bankruptcy Rules provides for proposed Case Management Procedures, including provisions governing payments to professionals.  The Debtor expects to file a motion, consistent with Appendix 6, to establish such procedures in this case in order to provide greater predictability to the budgeting process and to ensure timely payment of fees to retained professionals.

### V.    Miscellaneous Motions

41.    The Debtor expects to shortly file, among other things, a motion to set a bar date for the filing of claims and a motion for the entry of an order prohibiting utility companies from altering or amending service on account of prepetition invoices.

### EMERGENCY RELIEF IS WARRANTED

42.    Emergency relief is appropriate for the First Day Motions. As more fully discussed therein, the Debtor requires, among other things, immediate use of Cash Collateral and the funding from the DIP Loan to pay its ordinary and necessary operating expenses and the administrative expenses of the administration of its bankruptcy case. Under the terms of the DIP Loan, the Debtor must obtain approval of the LOI Motion within three business days of the filing of the DIP Motion.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: December 26, 2024                                    Evelyn Carabetta

838759