**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**(Eastern Division)**

| | |
|---|---|
| In re:<br><br>**WATER'S EDGE LIMITED PARTERSHIP,**<br><br>       **Debtor.** | **Chapter 11**<br><br>**Case No: 24-12445-CJP** |

**DEBTOR'S MOTION FOR ENTRY OF ORDERS (I)(A) APPROVING PROCEDURES FOR THE SALE OF THE DEBTOR'S ASSETS TO A JOINT VENTURE, (B) AUTHORIZING THE DEBTOR TO DESIGNATE A STALKING HORSE AND TO SEEK APPROVAL OF STALKING HORSE OFFER PROTECTIONS, (C) SCHEDULING A SELECTION DAY AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (D) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, (E) SCHEDULING A SALE HEARING AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (F) GRANTING RELATED RELIEF; AND (II)(A) APPROVING THE SALE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (C) GRANTING RELATED RELIEF**
*(Expedited Determination of Sale Procedures Requested)*

Water's Edge Limited Partnership, the above-captioned debtor and debtor in possession (the "Debtor")[1] hereby seeks (the "Motion") entry of (a) an order, substantially in the form attached hereto as **Exhibit A** (the "Sale Procedures Order"), (i) approving sale procedures, substantially in the form attached to the Sale Procedures Order as **Exhibit 1** (the "Sale Procedures"), to be used in connection with the sale (the "Sale") of all, substantially all, or a portion of the Debtor's assets, which shall include the Property (defined below), together with some or all appurtenant interests and related personal property, fixtures, claims and other interests as may be identified by a prospective purchaser (collectively, the "Sale Assets") to be acquired pursuant to a joint venture agreement or similar agreement with the Debtor; (ii) authorizing the Debtor to designate a Stalking Horse (as defined herein) and offer such Stalking Horse certain protections (collectively, the "Stalking Horse Offer Protections")

---

[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms later in this Motion, the Sale Procedures and/or the Sale Procedures Order, as applicable.

in accordance with the Sale Procedures; (iii) scheduling a selection day for the sale the Sale Assets (the "<u>Selection Day</u>"), if any, and scheduling the hearing to approve a sale of the Sale Assets (the "<u>Sale Hearing</u>"), (iv) approving the form and manner of notice of the proposed Sale Procedures, the Selection Day, and the Sale Hearing, substantially in the form attached to the Sale Procedures Order as **<u>Exhibit 2</u>** (the "<u>Sale Notice</u>"), (v) authorizing procedures governing the assumption and assignment of certain executory contracts and unexpired leases (the "<u>Contracts</u>") in connection with any Sale (the "<u>Assumption and Assignment Procedures</u>"), (vi) approving the form and manner of notice to each relevant non-debtor counterparty to a Contract (each, a "<u>Counterparty</u>") of (A) the Debtor's calculation of the amount necessary to cure any defaults under an applicable Contract (the "<u>Cure Costs</u>") and (B) certain other information regarding the potential assumption and assignment of Contracts in connection with the Sale, substantially in the form attached to the Sale Procedures Order as **<u>Exhibit 3</u>** (the "<u>Assumption and Assignment Notice</u>"), and (vi) granting related relief; and (b) an order (the "<u>Sale Order</u>"),[2] (i) authorizing the Sale free and clear of all liens, claims, interests, and encumbrances, except certain assumed liabilities and permitted encumbrances as determined by the Debtor and the Successful Offeror (as defined herein), with liens to attach to the proceeds of the Sale, (ii) authorizing the assumption and assignment of certain Contracts in connection with the Sale, and (iii) granting related relief.

**<u>In order that the Debtor can comply with the schedule set forth in the Sale Procedures, the Debtor requests a hearing on its requested authorization of the Sale Procedures on an expedited basis as is convenient to the Court's calendar.</u>**

In further support of this Motion, the Debtor, by and through its undersigned counsel, respectfully represents as follows:

---

[2] A proposed Sale Order will be filed prior to the Bid Deadline.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief sought herein are sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rules 2002-1, 6004-1 and 9006-1.

## BACKGROUND

3.      On December 5, 2024 (the "Petition Date"), the Debtor commenced this Chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

4.      The Debtor continues to manage its business and properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No official committees have been appointed in this Chapter 11 Case, and no request has been made for the appointment of a trustee or examiner.

6.      The Debtor is a Massachusetts limited partnership.  It owns and operates approximately 303-unit residential community located at 364, 370 and 388 Ocean Avenue in Revere, Massachusetts known as Water's Edge Apartments (the "Property").  The Property consists of three (3) apartment buildings situated on a 4.95-acre site. 364 Ocean Avenue includes a 13-story apartment building with approximately 91 apartment units.  370 Ocean Avenue includes a 16-story apartment building with approximately 94 apartment units.  388 Ocean Avenue includes a 16-story apartment building that includes approximately 118 apartment units.  Additionally, each of the buildings includes three (3) commercial suites that are approximately 400 square feet.  A parking garage is

located on both the upper and lower level of each building.  Improvements at the Property include a

fitness center, laundry facilities, pool, and elevators.

7.      The factual background regarding the Debtor, including its business operations, its

capital and debt structures, and the events leading to the filing of this chapter 11 case, is set forth in

detail in the *Amended Declaration of Evelyn Carabetta in support of the Debtor's Chapter 11 Petition*

*and First Day Motions* [doc. no. 36] (the "<u>First Day Declaration</u>"), which is incorporated by reference

herein.

<u>**NEED FOR A SALE PROCESS**</u>

8.      Since the filing of the Chapter 11 Case, the Debtor has engaged in extensive

negotiations with multiple parties interested in acting as a plan sponsor and/or joint venture partner

to fund payment to creditors under a Plan and the necessary repairs and renovations to the Property.

While the Debtor recently identified a joint venture partner, certain issues arose and as a result, the

Debtor has elected not to move forward exclusively with this potential partner.

9.      The Debtor continues to engage with this potential partner and is in discussions with

several other interested parties.  The various proposals under consideration by the Debtor provide for

creditors to be paid the allowed amounts of their claims in full except as otherwise agreed and for the

capital needed to repair and renovate the Property.

10.     In order to bring this process to a conclusion in the most efficient and expedient

manner possible, the Debtor proposes to solicit best and final offers pursuant to an expedited sale

process, and to incorporate the selected agreement into the terms of a plan that the Debtor will seek

to confirm.

11.     The Debtor believes that the selection process and time periods set forth in the Sale

Procedures are reasonable and will provide interested parties with sufficient time and the information

necessary to formulate an offer for the purchase of all, substantially all, or a portion of the Sale Assets

by a joint venture entity to be formed between the Debtor and the proposed purchaser.

12.     Shortly after the Petition Date, in order to address its cash flow needs, the Debtor obtained postpetition financing from Eastern Acquisitions, LLC ("Eastern") on a junior secured superpriority basis, consisting of a multi-draw term loan credit facility and the loans issued thereunder in the aggregate amount of $3.4 million.  Thereafter, the Debtor obtained replacement financing on a junior secured superpriority basis on less restrictive and less expensive terms from DIV OA Lender, LLC, its prepetition mortgage holder, also consisting of a multi-draw term loan credit facility and the loans issued thereunder in the aggregate amount of $3.4 million.  Concurrently herewith, the Debtor has filed the *Debtor's Motion for Entry of Order: (I) Authorizing the Debtor to Obtain New Junior Secured Postpetition Financing (II) Granting Liens and Providing Superpriority Administrative Expense Status; (III) Authorizing Continued Use of Cash Collateral; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay and (VI) Granting Related Relief*, by which the Debtor seeks authority to (i) obtain a new DIP Loan on substantially similar financial terms to repay its existing DIP loan and additional borrowing in the aggregate amount of $6.5 million under a budget which extends approximately ninety (90) days beyond the maturity date of the Debtor's existing DIP financing and (ii) use cash collateral in order to continue operating in the ordinary course of business.

13.     The Debtor believes the proposed timelines set forth in this Motion are reasonable and that the Debtor can move forward with a sale process that encourages participation of interested parties within the proposed timelines. The most likely parties to make offers have already been identified, have engaged in significant due diligence, and are presently engaged in advanced negotiations with the Debtor.  As such, the Debtor believes that many, if not all, prospective offerors are already intimately familiar with the nature of the Debtor's business and, in the timeline proposed herein, will have sufficient time and familiarity with the Debtor's business and information necessary to complete the necessary due diligence to submit binding offers.

14.     For the foregoing reasons, the Debtor believes that the proposed sale process with the goal of achieving a value maximizing sale transaction is in the best interests of the Debtor and all its

stakeholders. Thus, the Debtor has determined that pursuing the Sale in the manner and within the time periods prescribed in the Sale Procedures is in the best interest of the Debtor's estate.

## STALKING HORSE DESIGNATION

15.　　As part of the Sale Procedures, the Debtor seeks authority, subject to the terms of the Sale Procedures Order, to enter into an agreement for the acquisition of any or all of the Sale Assets pursuant to a Joint Venture Agreement (the "Stalking Horse Agreement") with a potential offeror (the "Stalking Horse" or the "Stalking Horse Offeror"), pursuant to which the Debtor would provide the Stalking Horse with certain protections (the "Stalking Horse Offer Protections"), if the Debtor determines, in the exercise of its reasonable business judgment, that setting a floor for the Sale Assets is in the best interest of the Debtor and its creditors.　Specifically, the Debtor proposes to offer a potential Stalking Horse a break-up fee in an amount that shall not exceed $1,000,000 and an expense reimbursement subject to a cap of not more than $200,000 (collectively, the "Termination Payment"), to be agreed upon by the Debtor and the Stalking Horse subject to notice and an opportunity for parties in interest to object.　The Debtor may designate a Stalking Horse any time prior to June 25, 2025 at 11:59 p.m.　In the event that the Debtor determines to designate a Stalking Horse, the Debtor shall promptly upon execution of the Stalking Horse Agreement, file with the Bankruptcy Court, serve on the Sale Notice Parties, a notice that contains the information about the Stalking Horse, including the proposed Stalking Horse Offer Protections, and attaches the proposed Stalking Horse Agreement (the "Notice of Stalking Horse Offer.")

16.　　Parties in interest who wish to object to the provisions of Stalking Horse Offer Protections will be afforded an opportunity to file with the Court and serve on the applicable Objection Notice Parties (as identified and defined in the Sale Procedures), an objection (a "Stalking Horse Objection") within three (3) calendar days after service of the Sale Notice or Notice of Stalking Horse Offer, as applicable.　If a timely Stalking Horse Objection is filed, the proposed Stalking Horse Offer Protections will not be approved until either the Stalking Horse Objection is resolved, or it has

been approved by the Court.  Under the Sale Procedures, the Debtor's entry into the Stalking Horse

Agreement and provision of the Stalking Horse Offer Protections, including the Termination

Payment, will be made effective through entry of a Court order, which the Debtor may obtain upon

submission to the Court.

17.    Given the Debtor's need to maximize value for creditors through a timely and efficient

sale process, the ability to designate a Stalking Horse and offer the Stalking Horse Offer Protections

will set a floor for what the Debtor anticipates will be a competitive process and is therefore justified

and appropriate.

## OVERVIEW OF SALE PROCEDURES, NOTICE PROCEDURES AND ASSIGNMENT PROCEDURES

**A.    Sale Procedures.**

18.    The Sale Procedures are intended to facilitate a competitive selection process (the

"Selection Process"), including identifying the highest or best offer or offers for the Sale Assets.  The

Sale may be for all of the Sale Assets or for a portion thereof, to one or more purchasers as potential

purchasers may direct and based on the highest or best return for the Debtor's estate.

19.    As the Sale Procedures are attached to the Sale Procedures Order, they are not restated

in their entirety herein. Certain of the key terms of the Sale Procedures are highlighted in the chart

below.[3]

| MATERIAL TERMS OF THE SALE PROCEDURES AND SALE PROCEDURES ORDER | |
| --- | --- |
| **Provisions Governing Qualification of Offers and** | **Due Diligence, Qualified Offer and Qualified Offer Requirements are set forth in Sections III, V, and VI of the Sale Procedures.** |

---

[3] Any conflict between the summary of Sale Procedures set forth in this Motion and the Sale Procedures, the Sale Procedures as approved by the Court shall govern in all respects. Capitalized terms used but not defined in this section shall have the meanings ascribed in the Sale Procedures.

| Qualified Offers | **A. Due Diligence** |
|---|---|
| | _Debtor's Due Diligence_ |
| | 1.  Each person or entity that desires to participate in the Selection Process on the Selection Day must first deliver to counsel to Debtor (contact information in Sections I and III of the Sale Procedures) the following: |
| | • documentation identifying the Prospective Offeror, its principals, and the representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated Sale; |
| | • an executed confidentiality agreement, in form and substance satisfactory to the Debtor; |
| | • a statement and other factual support demonstrating to the Debtor and its advisors, in their sole judgment, that the Prospective Offeror has a bona fide interest in purchasing some or all of the Sale Assets; and |
| | • preliminary proof by the Prospective Offeror of its financial capacity to close a proposed sale transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Prospective Offeror (or, if the Prospective Offeror is an entity formed for the purpose of acquiring the Sale Assets to be sold, the party that will bear liability for a breach by the Prospective Offeror of a joint venture agreement or other agreement entered into in respect of the sale transaction), the adequacy of which the Debtor and its advisors will determine in their sole judgment. |
| | 2.  Without the need for any further action, any Stalking Horse will be a Prospective Offeror and a Qualified Offeror. |
| | _Prospective Offeror's Due Diligence_ |
| | 1.  Upon execution of a valid confidentiality agreement and subject to the other limitations and guidelines set forth in the Sale Procedures, the Debtor may grant a Prospective Offeror that it identifies as reasonably likely to become a Qualified Offeror with access to information allowing such Prospective Offeror to continue or conduct due diligence with respect to the potential acquisition of some or all of the Sale Assets. |
| | 2.  If the Debtor determines that a Prospective Offeror is unlikely to qualify as a Qualified Offeror or fails to become a Qualified Offeror, then such Prospective Offeror shall have no further right to access due diligence or any other non-public information.  The Prospective Offeror shall return or destroy any non-public information regarding the Debtor provided to the Prospective Offeror in accordance with the terms of the confidentiality agreement executed by the Debtor and the Prospective Offeror. |

3. All due diligence requests shall be directed to Debtor's Counsel.

4. A Prospective Offeror's right to terminate for unacceptable results of due diligence will be limited to matters of title and survey and only to the extent that due diligence conducted from this point forward reveals conditions that are materially adverse as compared to the results of due diligence taken or shared to date and cannot be cured by the Debtor within a reasonable time.

**B. Offer Deadline** – Submit Qualified Offer by **June 24, 2025, at 2:00 p.m. (prevailing Eastern Time).**

**C. Qualified Offer Requirements**

1. <u>Identification of Offeror</u>.   A Qualified Offer must fully disclose the legal identity of the offeror and any related parties participating in the Selection Day process.

2. <u>Purchased Price</u>.  A Qualified Offer must (a) identify all or the portion of the Sale Assets to be purchased under the terms of the Proposed JVA Offer (defined below), including any then-known Contracts that are proposed to be assumed and assigned to the Joint Venture and any liabilities to be assumed, (b) set forth the consideration to be provided in the Proposed JVA Offer, (c) the method of payment of the purchase price, and (d) any applicable conditions to closing.

3. <u>Form of Consideration</u>.  Each Offer must include a statement describing the consideration for the Proposed JVA Offer and any supporting documents to assist the Debtor in evaluating the Offer. The Fairbridge DIP Lender and DIV OA Lender, LLC may credit bid a portion of their Offer (such bid, a "<u>Credit Bid</u>") up to the amount of their debt pursuant to section 363(k) of the Bankruptcy Code.  Any Credit Bid shall be a Qualified Bid without the need to provide a Good Faith Deposit.

4. <u>Minimum Higher Offer for Assets</u>. If a Stalking Horse is not designated pursuant to the Sale Procedures, any subsequent Offer submitted by a Qualified Offeror must have a value, as reasonably determined by the Debtor, that is superior to or equal to the proceeding highest Offer submitted by a Qualified Offeror, plus $250,000 (collectively, the "<u>Minimum Higher Offer Amount</u>").   If a Stalking Horse has been designated, each Offer that is not a Stalking Horse Offer must have a value, as reasonably determined by the Debtor, that is greater than or equal to the sum of (a) the value offered under the Stalking Horse Agreement, (b) the amount of the Stalking Horse Offer Protections, and (c) the Minimum Higher Offer Amount.

If the value of an Offer relative to any Stalking Horse Offer includes additional non-cash components (such as fewer contingencies than are in such Stalking Horse Agreement), the offeror should include an analysis or

description of the value of any such additional non-cash components, including any supporting documentation, to assist the Debtor in better evaluating the competing Offer.

5. <u>Proposed JVA Offer</u>. A Qualified Offer must constitute an irrevocable offer and be in the form of the Joint Venture Agreement or similar agreement reflecting the material terms and conditions of the Offer (each, a "<u>Proposed JVA Offer</u>"). A Proposed JVA Offer shall be (a) duly authorized and executed; (b) based on, and marked against the Joint Venture Agreement (the "<u>Form JVA Offer</u>") be filed with the Court by the Debtor prior to the Offer Deadline, or if a Stalking Horse has been designated, the Stalking Horse Agreement, to reflect the proposed transaction and to show other proposed modifications to the Form JVA Offer or the Stalking Horse Agreement, as applicable; (c) specify the proposed financial terms of the Proposed JVA Offer for the Sale Assets in U.S. dollars; (d) include all exhibits and schedules contemplated thereby (other than exhibits and schedules that, by their nature, must be prepared by the Debtor); and (e) identify any Contracts that, as of the submission of such Offer, the Prospective Offeror proposes to be assumed and assigned by the Debtor in connection with the proposed sale transaction.

6. <u>Proposed Sale Order</u>. A Qualified Offer must include a proposed sale order (each, a "<u>Proposed Sale Order</u>") and be marked against the proposed Sale Order, which the Debtor will file with the Court prior to the Offer Deadline.

7. <u>Financial Information</u>. A Qualified Offer must include (a) a statement that the Prospective Offeror is financially capable of consummating the sale transaction contemplated by the Prospective Offeror's Proposed JVA Offer and Proposed Sale Order; (b) sufficient evidence, as determined by the Debtor in its reasonable discretion, to determine that the Prospective Offeror has, or will obtain, the financial wherewithal to consummate the sale transaction contemplated by the Prospective Offeror's Proposed JVA Offer and Proposed Sale Order; and (c) Adequate Assurance Information (as defined below) with respect to any Contracts included or that may be included in the Prospective Offeror's Offer, including the identity of any known proposed assignee of the applicable Contracts (if different from the Prospective Offeror), including contact information for such proposed assignee.

8. <u>Good Faith Deposit</u>. Each Qualified Offer must be accompanied by a good faith deposit (each, a "<u>Good Faith Deposit</u>") in the form of cash in an amount equal to Three Million Five Hundred Thousand ($3,500,000). The Good Faith Deposit shall be deposited with an escrow agent selected by the Debtor (the "<u>Escrow Agent</u>") pursuant to the escrow agreement to be provided by the Debtor to the Prospective Offerors.

9. <u>Adequate Assurance</u>. A Qualified Offer must include evidence of the Prospective Offeror's ability to comply with section 365 of the Bankruptcy

Code, including providing adequate assurance of such Prospective Offeror's (or any other relevant assignee's) ability to perform future obligations arising under any Contracts included in its Offer. The Debtor may require (a) information evidencing the Prospective Offeror's (or any other relevant assignee's) financial wherewithal and willingness to perform under any Contracts included in the Offer, which information may include (i) a corporate organizational chart or similar disclosure identifying corporate ownership and control, (ii) financial statements, (iii) tax returns and (iv) annual reports; and (b) the Prospective Offeror's (or any other relevant assignee's) proposed use of any leased premises included in the Offer (collectively, the "<u>Adequate Assurance Information</u>"). Adequate Assurance Information must be in a form that will permit its immediate dissemination to Contract counterparties ("<u>Counterparties</u>").

10. <u>Representations and Warranties (As-Is, Where-Is)</u>. Each Qualified Offer must include a written acknowledgement and representation that the Prospective Offeror (a) has had an opportunity to conduct any and all due diligence regarding the Sale Assets prior to making its Qualified Offer, (b) has relied solely upon its own or its advisors' independent review, investigation, and/or inspection of any documents and/or the Sale Assets in making its Qualified Offer, (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Sale Assets, or the completeness of any information provided in connection therewith, except as expressly stated in the Prospective Offeror's Proposed JVA Offer and (d) the Sale Assets will be conveyed to the Joint Venture "as is, where is, with all faults," with no representations and warranties, and no indemnification or guarantees by the Debtor.

11. <u>Authorization</u>. A Qualified Offer must include evidence of corporate authorization with respect to the submission, execution and delivery of a Offer, participation in the Selection Day and closing the proposed Sale.

12. <u>Other Requirements</u>. A Qualified Offer must also satisfy, among others (as set forth in Section VI.A.12 of the Sale Procedures), the following requirements:

- state that the Prospective Offeror agrees to serve as a backup Offeror (a "<u>Backup Offeror</u>") if such Offeror's Qualified Offer is selected at the Selection Day as the next highest or next best Offer after the Successful Offer (as defined below) for the applicable Sale Assets (each such Offer, a "<u>Backup Offer</u>");

- state that the Offer represents a binding, good-faith and *bona fide* offer to purchase the applicable Sale Assets and is irrevocable (a) until the selection of the Successful Offer; or, (b) if the Offer is selected as a Successful Offer or as a Backup Offer, until the Backup

|  | Offer Expiration Date (as defined below); |
|---|---|
|  | • for any Offeror other than the Stalking Horse, if any, state and acknowledge that the Prospective Offeror shall not be entitled to any offer protection or payment in connection with the submission of an Offer for the Sale Assets or otherwise participating in the Sale Process; |
|  | • state that the Prospective Offeror is committed to closing the Sale contemplated in its Offer as soon as practicable (and in no event later than August 20, 2025); |
|  | • expressly waive any claim or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code in connection with an Offer for any of the Sale Assets and/or otherwise participating in the Selection Day or the Sale Process; |
|  | • not contain any financing contingencies of any kind; |
|  | • certify that the Prospective Offeror did not collude with any other Offerors and is not otherwise a partnership, joint venture or other entity in which more than one Offeror (or any affiliates of an offeror) has a direct or indirect interest, unless consented to in writing by the Debtor; |
|  | • include a covenant to comply with the terms of the Sale Procedures and the Sale Procedures Order; |
|  | • contain such other information as may be reasonably requested by the Debtor; and |
|  | • contain a statement that the Prospective Offeror (i) consents to the core jurisdiction of the Court to enter any order related to the Sale Procedures, the Selection Day, or any other relief requested in the Motion or granted in the Proposed Sale Order; (ii) waives any right to a jury trial in connection with any disputes relating to the Sale Procedures, the Selection Day, or any other relief requested in the Motion or granted in the Proposed Sale Order; and (iii) consents to the entry of a final order or judgment in connection with any disputes relating to the Sale Procedures, the Selection Day, or any other relief requested in the Motion or granted in the Proposed Sale Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties. |
| **Relief from Bankruptcy Rule 6004(h)** | This Motion seeks, and the proposed Sale Procedures Order approves, relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h). *See* Sale Procedures Order ¶ 37. |

| | |
|---|---|
| **Provisions Providing Stalking Horse Offer Protections to Stalking Horse or Initial Offeror** | Subject to the provisions set forth in the Sale Procedures and the Sale Procedures Order, the Debtor may, but is not obligated to, designate a Stalking Horse (and such Offeror's Offer, the "Stalking Horse Offer") for all or a portion of the Sale Assets and offer such Stalking Horse certain protections (the "Stalking Horse Offer Protections"), including a break-up fee and capped expense reimbursement as set forth in the applicable joint venture agreement or similar agreement executed by the Debtor and the Stalking Horse (the "Stalking Horse Agreement"), provided that all Stalking Horse Offer Protections must be negotiated by the Debtor and no break-up fee shall, other than with a further Court order, shall exceed $1,000,000 in the Stalking Horse Offer and the total expenses reimbursement shall be subject to a cap not to exceed $200,000 (collectively, the "Termination Payment") to be agreed upon between the Debtor and the Stalking Horse.<br><br>The Debtor may designate a Stalking Horse any time prior to June 25, 2025 at 11:59 p.m.  In the event that the Debtor determines to designate a Stalking Horse, the Debtor shall promptly upon execution of the Stalking Horse Agreement, file with the Bankruptcy Court, serve on the Sale Notice Parties, a notice that contains the information about the Stalking Horse, including the proposed Stalking Horse Offer Protections, and attaches the proposed Stalking Horse Agreement (the "Notice of Stalking Horse Offer.")<br><br>Objections to and Approval of Designation of Stalking Horse.<br><br>     Any objections (each, a "Stalking Horse Objection") to the designation of a Stalking Horse, including any Stalking Horse Offer Protections to be provided pursuant to the terms and provisions of a Stalking Horse Agreement, must (a) be in writing; (b) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; (c) state, with specificity, the legal and factual bases thereof; and (d) be filed with the Court and served on the Objection Notice parties (as defined herein) within three (3) calendar days after service of the applicable Notice of Stalking Horse.<br><br>     If a timely Stalking Horse Objection is filed and served in accordance with the preceding paragraph, the proposed designations of a Stalking Horse and Stalking Horse Offer Protections will not be approved until either the Stalking Horse Objection is resolved by agreement of the objecting parties and the Debtor or by order of the Bankruptcy Court following a hearing on an expedited basis.<br><br>     In no timely Stalking Horse Objection is filed and served with respect to a Stalking Horse Agreement in accordance with these Sale Procedures, the Debtor shall file a Certificate of No Objection and submit a proposed order approving the Stalking Horse Offer Protections with the Court. |
| **Modification of Sale** | Section IX of the Sale Procedures sets forth the Debtor's reservation of rights to, in its reasonable business judgment, after consultation with its advisors, |

| | |
|---|---|
| Procedures | and in a manner consistent with its fiduciary duties and applicable law, (i) modify these Sale Procedures, including to, among other things, extend or waive deadlines or other terms and conditions set forth herein, adopt new rules and procedures for conducting the Selection Process and Selection Day process so long as any such modifications are disclosed to all Prospective Offerors and Qualified Offerors, as applicable, or (ii) otherwise modify these Sale Procedures to further promote competitive offers for and maximizing the of value of the Assets, in each case, to the extent not materially inconsistent with these Sale Procedures or the Sale Procedures Order. |
| **Designation of Successful and Back-up Offers** | Section VII.C.2 of the Sale Procedures sets forth the primary requirements with respect to Backup Offers.<br><br>**Notwithstanding any language to the contrary contained in a Qualified Offer or in any improvements to the Qualified Offer during the Selection Process, by participating in the Selection Process, each Qualified Offeror shall be deemed to have consented to having its last and final offer being designated as a Backup Offer.**<br><br>Immediately prior to the conclusion of the Selection Process on the Selection Day, the Debtor will (a) determine which Qualified Offer constitutes the highest or otherwise best Offer for the Assets (such Offer, the "Successful Offer" and such Offeror, the "Successful Offeror") and which (if any) is the Backup Offer for the applicable Sale Assets, and (b) notify all Qualified Offerors that participated in the Selection Process of the material terms of the Successful Offer and the Backup Offer.<br><br>Except as otherwise provided in any Stalking Horse Agreement, a Backup Offer will remain binding on the Backup Offeror until the later of (a) the first business day after the closing of a Sale with the Successful Offeror for the applicable Assets and (b) 30 days after the Sale Hearing (such date, the "Backup Offer Expiration Date"). If the Sale with the Successful Offeror is terminated prior to the Backup Offer Expiration Date, the Backup Offeror will be deemed the new Successful Offeror for the applicable Assets and shall be obligated to consummate the Backup Offer as if it were the Successful Offer at the Selection Day; *provided* that the Debtor may, in its reasonable business judgment (after providing notice to the Sale Notice Parties) and after consultation with the Consultation Parties, elect not to pursue the sale transaction contemplated by the Backup Offer. |
| **Provisions Governing the Selection Process and Selection Day** | Section VII.B of the Sale Procedures sets forth the procedures governing the Selection Process and the Selection Day.<br><br>If the Debtor receives more than one Qualified Offer for the Sale Assets, the Debtor will hold a Selection Process on the Selection Day for the Sale Assets. If any Offer, including any Stalking Horse Offer, is the only Qualified Offer received in respect of the Assets, the Debtor will not hold a Selection Day for the Sale Assets, and the Debtor will seek approval of such Proposed JVA Offer at the Sale Hearing. If the Debtor determines not to hold the Selection Day for |

some or all of the Sale Assets, the Debtor will file and serve a notice stating that the Selection Day for such Sale Assets has been canceled and provide all other relevant information to the Sale Notice Parties as required by the Sale Procedures.

The Selection Day, if required, will be conducted on **June 26, 2025, commencing at 10:00 a.m.** (prevailing Eastern Time), at either (i) at the offices of Brown Rudnick, LLP, One Financial Center, Boston, MA 02111, or (ii) virtually or at such other date, time or location as designated by the Debtor. Subject to the Selection Process Procedures set forth in section VII.B of the Sale Procedures, professionals and principals for the Debtor and each Qualified Offeror (including, its representative(s), if any) that has provided notice in writing of its intent to observe the Selection Day via electronic mail to counsel for the Debtor, Murphy & King, P.C. (Attn.: Kathleen R. Cruickshank, kcruickshank@murphyking.com) at least one (1) day prior to the start of the Selection Process shall be able to attend and observe the Selection Process on the Selection Day, along with any other parties the Debtor deem appropriate; *provided* that the Debtor may, in its sole discretion, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of a Qualified Offeror or otherwise attend the Selection Day. If the Debtor conducts the Selection Day virtually, the Debtor will provide instructions setting forth how to attend the Selection Day to the participants and other attendees via electronic mail. The Debtor will provide notice (via electronic mail or otherwise) of any change in the date, time or location of the Selection Day to Qualified Offerors and will cause publication of such change to occur on the docket as soon as reasonably practicable and in any event no later than 24 hours before the Selection Day.

A.    Participation. Each participant in the Selection Process must be (i) a Qualified Offeror, (ii) appear at the Selection Day, either personally or through a duly authorized representative and (iii) confirm on the record that (A) the participant has not engaged in any collusion with respect to any Offer or the Sale Process and (B) any and all Qualified Offers submitted by the participant constitute good faith, binding and *bona fide* offers to purchase the applicable Sale Assets.

B.    Proceedings. The Selection Day proceedings will (i) be transcribed and/or video recorded and (ii) include an open Selection Process in the presence of all Qualified Offerors, subject to reasonable limitations imposed by a virtual platform to be evaluated and determined by the Debtor and its advisors.

C.    Baseline Offers. Prior to the commencement of the Selection Day, the Debtor will determine, in its reasonable business judgment and in consultation with its advisors, the highest and/or best Qualified JV Offer submitted for the Sale Assets (such Qualified Offer, a "Baseline Offer"). Offers on the Selection Day shall commence at the financial and other material terms of the Baseline Offer. **No later than June 25, 2025, at 3:00 p.m. (prevailing Eastern Time)**, the Debtor will provide all Qualified Offerors with a notice identifying all the

Qualified Offerors. No later than June 25, 2025 at 11:59 p.m., the Debtor will provide Qualified Offerors with a notice identifying which Qualified Offer is the Baseline Offer; and a copy of the Baseline Offer.

D.    <u>Minimum Higher Offers</u>. Offers shall commence at the Baseline Offer. The first Higher Offer at the Selection Process on Selection Day shall contain terms superior to the terms of the Baseline Offer <u>plus</u> the Minimum Higher Offer as announced by the Debtor. At each round of Offers, Qualified Offerors may submit successive Offers superior to the Leading Offer (as defined below) from the prior round.

Except as specifically set forth in the Sale Procedures, for the purpose of evaluating the value of the consideration provided by any Offer subsequent to the Baseline Offer, the Debtor will, at each round of Offers, consider and/or give effect to (a) any Stalking Horse Offer Protections payable to any Stalking Horse under the Stalking Horse Agreement; (b) any additional liabilities to be assumed by a Qualified Offeror under the Offer, including whether such liabilities are secured or unsecured; and (c) any additional costs that may be imposed on the Debtor.

<u>Leading Offers</u>. After the first round of Offers and between each subsequent round of Offers, the Debtor will announce the Offer that it believes to be the highest or otherwise best offer for the Sale Assets (each such Offer, a "<u>Leading Offer</u>") and describe the material terms thereof.

**D.    Key Dates and Deadlines.**

20.    The Debtor proposes the following key dates and deadlines for the Sale Process, certain of which dates and deadlines may be subject to extension in accordance with the Sale Procedures:[4]

| Deadline | Action |
|---|---|
| **Two business days after the entry of the Sale Procedures Order** | Deadline for Debtor to file and serve Sale Notice |
| **Five Business Days after Sale Procedures Order** | Cure Notice Deadline |
| **June 2, 2025, at 4:00 p.m. (prevailing Eastern Time)** | Sale Objection Deadline and Cure Objection Deadline |
| **June 24, 2025, at 2:00 p.m. (prevailing Eastern Time)** | Offer Deadline for JVA Offers |
| **June 25, 2025 at 3:00 p.m. (prevailing Eastern Time)** | Qualified Offer Designation Deadline |

---

[4] The Debtor reserves the right to change the proposed sale-related deadlines at any time prior to the Sale Procedures Hearing; *provided*, *however*, that any modified dates shall not provide parties with any lesser notice or time than the dates set forth in the entered Sale Procedures Order.

| June 25, 2025 at 11:59 p.m. (prevailing Eastern Time) | Baseline Offer Designation Deadline |
|---|---|
| June 26, 2025, at 10:00 a.m. (prevailing Eastern Time) | Selection Day |
| Two business days after the conclusion of the Selection Day | Deadline for Debtor to file and serve Notice of Selection Day Results |
| July 2, 2025, at 4:00 p.m. (prevailing Eastern Time) | Supplemental Sale Objection Deadline and Adequate Assurance Objection Deadline |
| July 9, 2025 subject to the availability of the Court | Sale Hearing |

**E.**     **Sale Noticing and Objection Procedures**

21.     The Sale Procedures provide the following "Noticing Procedures":

a.      **Notice of Stalking Horse Offer**.  In the event that the Debtor determines to designate a Stalking Horse, the Debtor shall promptly upon execution of the Stalking Horse Agreement, file with the Bankruptcy Court, serve on the Sale Notice Parties, a notice that contains the information about the Stalking Horse Offeror and the Stalking Horse Offer, including the proposed Stalking Horse Offer Protections, and attaches the proposed Stalking Horse Agreement.

b.      **Stalking Horse Objections.** Any objections to the designation of a Stalking Horse, including any Stalking Horse Offer Protections must comply with the Sale Procedures and be filed with the Court and served on the Objection Notice parties within three (3) calendar days after service of the applicable Notice of Stalking Horse Offeror.  If a timely Stalking Horse Objection is filed and served in accordance with the Sale Procedures, the proposed designations of a Stalking Horse and Stalking Horse Offer Protections will not be approved until either the Stalking Horse Objection is resolved by agreement of the objecting parties and the Debtor or by order of the Bankruptcy Court following a hearing on an expedited basis.

c.      **Sale Notice.** Within two (2) business days after entry of the Sale Procedures Order, or as soon as reasonably practicable thereafter, the Debtor shall serve the Sale Notice on the Sale Notice Parties.

d.      **Sale Objection**. Except objections to the conduct of the Selection Process, the Successful Offeror or the Backup Offeror, objections to the sale of the Sale Assets, including (i) any objection to a sale of Sale Assets free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code and (ii) the entry of any Sale Order (each such objection, a "Sale Objection") must be (A) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (B) filed with the Court by **no later than June 2, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline"); and (C) served on the Objection Notice Parties (as defined in the Sale Procedures).

e.      **Notice of Determination of Qualified Offers and Baseline Offer**. The Debtor will make a determination regarding which Offers qualify as Qualified Offers and the Debtor will notify Potential Offerors whether they have been selected as Qualified Offerors by **no later than June 25, 2025, at 3:00 p.m. (prevailing Eastern Time)**.

    i.      **No later than June 25, 2025, at 11:59 p.m. (prevailing Eastern Time)**, the Debtor will provide all Qualified Offerors (including the Stalking Horse Offeror, if any) copies of the Qualified Offer that the Debtor, after consultation with its advisors, believes is the highest or otherwise best offer for the Assets (the "<u>Baseline Offer</u>").

    f.      **<u>Selection Day Results</u>.** Within two business days after the conclusion of the Selection Process, the Debtor will file with the Court and serve on the Sale Notice Parties a notice of the results of the Selection Process (the "<u>Notice of Selection Day Results</u>"), which will (A) identify the Successful Offeror and the Backup Offeror, as determined pursuant to the Material Terms above; (B) include a copy of each Successful Offer and the Backup Offer or a summary of the material terms of such Offers; and (C) set forth the Supplemental Sale Objection Deadline and the date, time and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Selection Process on the Selection Day.

    g.      **<u>Supplemental Sale Objections</u>.** Following service of the Notice of Selection Day Results, Sale Notice Parties will have an opportunity to object solely with respect to the conduct of the Selection Process, the Successful Offeror, the Backup Offeror, or the Sale to the Successful Offeror or the Backup Offeror (each such objection, a "<u>Supplemental Sale Objection</u>"). Any Supplemental Sale Objection must be (i) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (ii) filed with the Court by **no later than July 2, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Supplemental Sale Objection Deadline</u>"); and (iii) served on the Objection Notice Parties.

22.      The Debtor believes that the Noticing Procedures constitute adequate and reasonable notice of the key dates and deadlines for the Sale Process, including, the dates and deadlines identified in paragraph 15 above. Accordingly, the Debtor requests that the Court find that the Noticing Procedures are adequate and appropriate under the circumstances and comply with the requirements of Bankruptcy Rule 2002 and Local Rule 2002-1.

**F.      Assumption and Assignment Procedures**

23.      In connection with the Sale, the Debtor may seek to assume and assign to the Successful Offeror (or its designated assignee(s)) one or more Contracts. The Assumption and Assignment Procedures are designed to, among other things, govern the Debtor's provision of Adequate Assurance Information and notice of Cure Costs to applicable Counterparties.

24.    Accordingly, the Debtor hereby seeks approval of the proposed Assumption and Assignment Procedures set forth below, which are designed to, among other things, (i) outline the process by which the Debtor will serve notice to all Counterparties regarding the proposed assumption and assignment, related Cure Costs, if any, and information regarding the Stalking Horse Offeror's or such other Successful Offeror's adequate assurance of future performance and (ii) establish objection and other relevant deadlines and the manner for resolving disputes relating to assumption and assignment of executory contacts and unexpired leases. Specifically, the Assumption and Assignment Procedures are as follows:

a.    **Potential Assumption and Assignment Notice**. By no later than **five business days following the entry of the Sale Procedures Order**, the Debtor will file with the Court and serve on each Counterparty to a Contract that may be assumed in connection with any Sale an Assumption and Assignment Notice, which will (i) identify the applicable Contracts; (ii) list the Debtor's good-faith calculation of Cure Costs with respect to each such Contract; (iii) expressly state that assumption or assignment of a Contract is not guaranteed and is subject to Court approval; and (iv) prominently display the deadlines to file Cure Objections and Adequate Assurance Objections (each as defined below). The Assumption and Assignment Notice shall also be served on each Counterparty listed therein via first class mail.

b.    **Assumption and Assignment Objections**.

i.    Cure Objection Deadline. Any Counterparty to a Contract that wishes to object to the Debtor's proposed Cure Costs (each such objection, a "Cure Objection") shall file with the Court and serve on the Objection Notice Parties its Cure Objection, which must state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof, by **no later than June 2, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Cure Objection Deadline").

ii.    Resolution of Cure Objections. The Debtor, any Stalking Horse Offeror or Successful Offeror, and the objecting Counterparty shall first confer in good faith to attempt to resolve the Cure Objection without Court intervention. If the parties are unable to consensually resolve the Cure Objection prior to the commencement of the Sale Hearing, the Court shall make all necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing scheduled pursuant to the following paragraph. If a Cure Objection

is resolved in a manner that is not in the best interests of the Debtor and its estate, whether or not such resolution occurs prior to or after the closing of the Sale, the Debtor, any Stalking Horse Offeror or, as applicable, the Successful Offeror may determine that any Contract subject to such resolved Cure Objection will no longer be assumed and assigned pursuant to the Sale (subject to the terms of the Sale). All other objections to the proposed assumption and assignment of the Debtor's right, title and interest in, to and under a Contract will be heard at the Sale Hearing.

iii.    <u>Adjournment</u>. If a timely filed Cure Objection cannot otherwise be resolved by the parties, the Cure Objection may be heard at the Sale Hearing, or, at the Debtor's option, be adjourned to a subsequent hearing, with notice to the party having filed the Cure Objection (each such Cure Objection, an "<u>Adjourned Cure Objection</u>"). An Adjourned Cure Objection may be resolved after the closing date of the Sale. Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the applicable Contract that was the subject of such Adjourned Cure Objection shall, as applicable, be deemed assumed and assigned to the Successful Offeror as of the closing date of the Sale.

iv.    <u>Failure to Timely Object</u>. If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Cure Objection, the Counterparty forever shall be barred from asserting any objection with regard to the cost to cure any defaults under the applicable Contract. The Cure Costs set forth in the applicable Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Contract and satisfy the requirements of section 365(b) of the Bankruptcy Code, and the Counterparty to the Contract shall be bound by and deemed to have consented to the Cure Costs.

v.    <u>Adequate Assurance Objection Deadline</u>. Any Counterparty to a Contract that wishes to object to the proposed assumption and assignment of the Contract, the subject of which objection is the proposed form of adequate assurance of future performance of the Successful Offeror (or any other relevant assignee)(each such objection, an <u>Adequate Assurance Objection</u>"), shall file with the Court and serve on the Objection Notice Parties any Adequate Assurance Objection by **no later than July 2, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Adequate Assurance Deadline</u>"). Any Adequate Assurance Objection must state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof.

vi.    <u>Resolution of Adequate Assurance Objections</u>. The Debtor and the objecting Counterparty shall first confer in good faith to attempt to

resolve the Adequate Assurance Objection without Court intervention. If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, the Adequate Assurance Objection and all issues of adequate assurance of future performance of the Successful Offeror (or any other relevant assignee) shall be determined by the Court at the Sale Hearing or, at the option of the Debtor and the Successful Offeror, be adjourned to a subsequent hearing, with notice to the party having filed the Adequate Assurance Objection.

vii. <u>Failure to Timely Object</u>. If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any objection to the assumption and/or assignment of the applicable Contract with regard to adequate assurance of future performance. The Successful Offeror (or any other relevant assignee) shall be deemed to have provided adequate assurance of future performance with respect to the Contract in accordance with Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Contract or any other document.

c. **<u>Notice of Assumed Contracts</u>**. As soon as reasonably practicable after the closing of the Sale, the Debtor will file with the Court and serve on the applicable Counterparties a notice containing the list of Contracts that the Debtor (and/or any Subsidiary, as applicable) assumed and assigned pursuant to the asset purchase agreement with the Successful Offeror.

d. **<u>Reservation of Rights</u>**. The inclusion of a Contract or specification of any Cure Costs with respect to any Contract on any Assumption and Assignment Notice or any Notice of Selection Day Results, shall not constitute or be deemed a determination or admission by the Debtor, the Successful Offeror or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code, and shall not be a guarantee that such Contract ultimately will be assumed or assigned. The Debtor reserves all of its rights, claims and causes of action with respect to each Contract listed on the aforementioned notices.

## <u>RELIEF REQUESTED</u>

25. By this Motion, pursuant to sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rule 6004-1, the Debtor requests entry of the following:

a. the Sale Procedures Order, substantially in the form attached hereto as **<u>Exhibit A,</u>** granting the following relief:

(i)     approving the Sale Procedures, substantially in the form attached to the Sale Procedures Order as **Exhibit 1**, to be used in connection with one or more Sale of all, substantially all, or portion of the Sale Assets;

(ii)     authorizing the Debtor to designate a Stalking Horse Offeror and provide Stalking Horse Offer Protections in accordance with the Sale Procedures;

(iii)     scheduling (A) the Selection Day of the Sale Assets **no later than June 26, 2025 at 10:00 a.m. (prevailing Eastern Time)** and (B) the Sale Hearing to consider approval of the proposed Sale **no later than June 2, 2025,** subject to the availability of the Court;

(iv)     approving the Sale Notice, substantially in the form attached to the Sale Procedures Order as **Exhibit 2**;

(v)     approving the Assumption and Assignment Procedures;

(vi)     approving the Assumption and Assignment Notice, substantially in the form attached to the Sale Procedures Order as **Exhibit 3**; and

(vii)     granting related relief; and

b.     a Sale Order, granting the following relief:

(i)     authorizing the sale of the Sale Assets as provided pursuant to the Joint Venture Agreement or similar agreement with Successful Offeror free and clear of all liens, claims, interests and encumbrances, except certain permitted encumbrances and assumed liabilities as determined by the Debtor and the Successful Offeror, with liens to attach to the proceeds of the Sale;

(ii)     authorizing the assumption and assignment of certain Contracts in connection with a Sale;

(iii)     providing that nothing in the Sale Procedures Order, or any exhibits thereto, shall (i) prevent the Debtor from, in the exercise of its fiduciary duties, pursuing or otherwise consummating an alternative transaction, or (ii) obligate the Debtor to pursue or consummate any transaction with any Qualified Offeror; and

(iv)     granting related relief.

**APPROVAL OF THE RELIEF REQUESTED IS WARRANTED AND IN THE BEST
INTERESTS OF THE DEBTOR AND ITS STAKEHOLDERS**

**A.    The Proposed Sale Procedures Are Fair, Appropriate and Should Be Approved.**

26.    The Sale Procedures are specifically designed to promote what courts have deemed to be the paramount goal of any proposed sale of property of a debtor's estate:  maximizing the value of sale proceeds received by the estate. *See In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (recognizing that a main goal of any proposed sale of property of a debtor's estate is to maximize value*); see also Diogo-Carreau v. Am. Home Mortg. Acceptance, Inc.*, 167 F. Supp. 3d 258, 263 (D. Mass. 2016) (recognizing the policy to induce "a higher sale price for the assets, thereby maximizing the value of the estate and maximizing potential recovery to creditors").   Courts uniformly recognize that procedures established for the purpose of enhancing a competitive process are consistent with the fundamental goal of maximizing the value of a debtor's estate.  *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 536-37 (3d Cir. 1999) (noting that procedures that promote competion provide a benefit to a debtor's estate); *Official Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (observing the benefit of sale procedures that "encourage bidding and maximize the value of the debtor's assets").

27.    The Sale Procedures provide for an orderly and appropriately competitive process through which interested parties may submit offers to purchase the Sale Assets. Given the Debtor's liquidity constraints, the Debtor, with the assistance of its advisors, has structured the Sale Procedures to promote active participation by interested parties and to confirm the highest or otherwise best offer reasonably available for the Sale Assets.  Additionally, the Sale Procedures will allow the Debtor to conduct the Selection Process on the Selection Day in a fair and transparent manner that will encourage participation by financially capable Offerors with demonstrated ability to consummate

a timely Sale. Accordingly, the Sale Procedures should be approved because, under the circumstances, they are reasonable, appropriate and in the best interests of the Debtor, its estate, and all parties- in-interest.

28. Courts in this District routinely approve procedures substantially similar to the proposed Sale Procedures, as well as procedures proposing timelines which are similarly compressed. *See In re Charles St. African Methodist Episcopal Church*, No. 12-12292-FJB, 2014 Bankr. LEXIS 2201, at *7 (Bankr. D. Mass. May 9, 2014)(approving the proposed sale timeline because there existed both interest in the assets and a prospect for competitive bidding and there was "no assurance that these conditions would be achieved again in the reasonably near future.")

### 1. The Proposed Stalking Horse Offer Protections Have Sound Business Purposes and Should Be Approved.

29. As described above, the Stalking Horse Offer Protections, if they prove necessary for the entry into any Stalking Horse Agreement, include break-up fees and reimbursement of reasonable, documented expenses. The Debtor believes that the Stalking Horse Offer Protections may be necessary to encourage prospective Offerors to become the Stalking Horse Offeror and enter into a binding Stalking Horse Agreement. The Debtor believes that the presence of a Stalking Horse Offeror will set a floor for the value of the Assets and attract other potential buyers to Offer for the Assets, thereby maximizing the realizable value of the Assets for the benefit of the Debtor's estate, its creditors, and all other parties-in-interest.

30. Approval of the Stalking Horse Offer Protections is governed by standards for determining the appropriateness of such protections in the bankruptcy context. Courts have identified at least two instances in which such protections may benefit the estate. *First*, a break-up fee may be necessary to preserve the value of a debtor's estate if assurance of the fee "promote[s] more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d at

537. *Second*, if the availability of a break-up fee was to induce a Offeror to research the value of the debtor and convert the value to a dollar figure on which other Offerors can rely, the Offeror may have provided a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth. *Id.*; *see also In re Reliant Energy Channelview LP*, 594 F.3d 200, 206-08 (3d Cir. 2010) (reasoning that a break-up fee should be approved if it is necessary to entice a party to make the first offer or if it would induce a stalking horse to remain committed to a purchase).

31.     In *O'Brien*, the Third Circuit reviewed the following nine factors set forth by the lower court as relevant in deciding whether to award a break-up fee:

   a.     the presence of self-dealing or manipulation in negotiating the break-up fee;

   b.     whether the fee hampers, rather than encourages, offers;

   c.     the reasonableness of the break-up fee relative to the purchase price;

   d.     whether the unsuccessful Offeror placed the estate property in a "sale configuration mode" to attract other Offerors;

   e.     the ability of the request for a break-up fee to serve to attract or retain a potentially successful Offer, establish a Offer standard or minimum for other Offerors or attract additional Offerors;

   f.     the correlation of the fee to a maximum value of the debtor's estate;

   g.     the support of the principal secured creditors and creditors' committees of the break-up fee;

   h.     the benefits of the safeguards to the debtor's estate; and

   i.     the substantial adverse impact of the break-up fee on unsecured creditors, where such creditors are in opposition to the break-up fee.

*See O'Brien*, 181 F.3d at 536.

32.     While none of the factors are dispositive, the application of the facts to several of such factors supports the approval of the Stalking Horse Offer Protections. In particular, the Stalking Horse Offer Protections are necessary to preserve the value of the Debtor's estate because they may enable the Debtor to secure an adequate floor for the Sale Assets and to therefore insist that competing Offers be materially higher or otherwise better than any Stalking Horse Agreement—a clear benefit to the Debtor's estate. Further, a Stalking Horse Offeror may not agree to act as a "stalking horse" without the Stalking Horse Offer Protections, given the substantial time and expense that would be incurred in connection with entering into definitive documentation and the risk that it will not be the Successful Offeror following the Selection Process on the Selection Day. Without the Stalking Horse Offer Protections, the Debtor might lose the opportunity to obtain the highest or otherwise best offer for the Sale Assets and would certainly lose any downside protection that would be afforded by the existence of a Stalking Horse Offeror.  The Offer of a Stalking Horse Offeror would send a message to all potential Offerors that the Assets are worth at least as much as any Stalking Horse Offer. Therefore, without the benefit of the Offer of a Stalking Horse Offeror (*i.e.*, an Offer providing the floor), the Offers received on the Selection Day for the Sale Assets could be substantially lower than any Offer offered by a Stalking Horse Offeror.

33.     "The usual rule is that if break-up fees encourage bidding, they are enforceable; if they stifle bidding, they are not enforceable." *In re Integrated Res., Inc.*, 147 B.R. at 659; *accord In re Pub. Serv. Co.,* 160 B.R. 404, 455 (Bankr. D.N.H. 1993).  The Debtor does not believe that the Stalking Horse Offer Protections will stifle offers. To the contrary, the Debtor believes that such will encourage offers by serving "any of three possible useful functions: (1) to attract or retain a potentially successful bid, (2) to establish a bid standard or minimum for other bidders to follow, or (3) to attract additional bidders." *In re Integrated Res., Inc.*, 147 B.R. at 662.

34.     Here, the Offer of a Stalking Horse would serve all three functions. *First*, a Stalking Horse might not enter into a Stalking Horse Agreement without the Stalking Horse Offer

Protections. *Second*, pursuant to the Sale Procedures, any Offeror that wishes to participate in the Selection Process on the Selection Day must submit an offer that is higher or otherwise better than the Offer of any Stalking Horse Offeror. *Third*, the Offer of the Stalking Horse Offeror could attract additional Offerors because, among other things, additional Offerors would be able to save considerable time and expense because they could use many of the documents that a Stalking Horse Offeror may negotiate, including, among other things, any Stalking Horse Agreement and the schedules thereto, in making their Offer. In sum, if all, substantially all, or portion of the Sale Assets are sold to a Successful Offeror other than a Stalking Horse Offeror, the Sale likely will be the result of the Stalking Horse Offeror's crucial role as an initial Offeror generating interest in the Assets and establishing a minimum acceptable price and offer against which other parties can Offer.

35.     In addition, "[a] break-up fee should constitute a fair and reasonable percentage of the proposed purchase price, and should be reasonably related to the risk, effort, and expenses of the prospective purchaser. 'When reasonable in relation to the bidder's efforts and to the magnitude of the transaction, break-up fees are generally permissible.'" *Id*. (citation omitted).

36.     Here, the Sale Procedures would authorize the Debtor to file a Stalking Horse Motion and allow a hearing on an expedited basis to approve Stalking Horse Offer Protections in an amount to be set forth in such Stalking Horse Motion.

**B.     Approval of a Sale of the Sale Assets Is Warranted Under Section 363 of the Bankruptcy Code.**

37.     Ample authority exists for approval of the Sale contemplated by this Motion. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of

property of a debtor's estate, courts have approved the authorization of a sale of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *See, e.g.*, *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 389-90 (6th Cir. 1986); *Committee of Equity Security Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983); *In re SW Boston Hotel Venture, LLC*, No. 10-14535-JNF, 2010 Bankr. LEXIS 2924, 2010 WL 3396863 (Bankr. D. Mass. Aug. 27, 2010); *In re Genesys Research Institute, Inc*., No. 15-12794-JNF, 2016 Bankr. LEXIS 2376, 2016 WL 3583229, at *62 (Bankr. D. Mass. June 24, 2016).

38.    Courts typically consider the following factors in determining whether a proposed sale satisfies this standard:  (i)  whether a sound business justification exists for the sale; whether adequate and reasonable notice of the sale was provided to interested parties; whether the sale will produce a fair and reasonable price for the property; and (iv) whether the parties have acted in good faith. *See In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)).  Once a debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *In re Charles St.,* 499 B.R. at 104 (quoting *In re Integrated Res., Inc.*, 147 B.R. at 656).

### 1.    The Debtor Has Demonstrated a Sound Business Justification for the Sale of the Sale Assets.

39.    A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to preserve the value of the estate for the benefit of creditors and interest holders.  *See, e.g.*, *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 148 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d at 1070-71; *In re Food Barn Stores, Inc.*, 107 F.3d at 564-65 (recognizing the paramount goal of any proposed sale of property of estate is to

maximize value); *Diogo-Carreau*, 167 F. Supp. 3d at 263 (recognizing the policy to maximize potential recovery to creditors).

40.     As set forth above, a strong business justification exists for the sale of all, substantially all, or portion of the Sale Assets as described herein. An orderly and expeditious sale of the Sale Assets is critical to maximizing the value of the Debtor's estate and recoveries for the Debtor's economic stakeholders.

## 2.       Noticing Procedures Are Reasonable and Appropriate.

41.     Bankruptcy Rules 2002 and 6004 require the Debtor to notify creditors of the proposed sale, provide a description of the Sale Assets, and disclose the time and place of the Selection Day, the terms and conditions of any proposed Sale, and the Objection Deadlines. *See* Fed. R. Bankr. P. 2002(a), 2002(c), 6004(a). The Noticing Procedures described herein are reasonably calculated to provide all of the Debtor's known creditors and all other parties-in-interest with adequate and timely notice of, among other things, the proposed Sale, the Sale Procedures, the Selection Day, and the Sale Hearing. Accordingly, the Debtor requests that the Court approve the Noticing Procedures described herein and in the Sale Procedures Order.

## 3.       The Proposed Sale Will Yield a Fair and Reasonable Purchase Price for the Sale Assets.

42.     As set forth above, the Debtor believes that any Sale governed by the Sale Procedures will yield a fair and reasonable price for the Sale Assets. The Sale Procedures were designed to facilitate a competitive process.

43.     The Debtor also constructed the Sale Procedures to promote transparency, good faith and fairness throughout the entire Sale Process. The Sale Procedures provide an appropriate framework for the Debtor to review, analyze and compare Offers for the Assets and to engage with Offerors on an arm's-length basis to work to improve the quality of their Offers for the benefit of all parties-in-interest.

44.     A Sale governed by the Sale Procedures will serve the important objectives of obtaining not only a fair and reasonable purchase price for the Sale Assets, but also the highest or best value for the Sale Assets. This is a critical feature of the Sale Procedures, which will inure to the benefit of all parties-in-interest in this Chapter 11 Case.

**4.      The Sale Procedures Ensure that the Sale Process Is Conducted in Good Faith and that the Ultimate Purchaser of the Applicable Sale Assets Is Entitled to the Protections Afforded by Section 363(m) of the Bankruptcy Code.**

45.     Section 363(m) of the Bankruptcy Code is designed to protect the sale of a debtor's assets to a good-faith purchaser. Specifically, section 363(m) provides the following:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under  such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) of the Bankruptcy Code fosters the "policy of not only affording finality to the judgment of the [B]ankruptcy [C]ourt, but particularly to give finality to those orders and judgments upon which third parties rely." *In re Abbotts Dairies*, 788 F.2d at 147; *see also In re Tri-Cran, Inc.*, 98 B.R. 609, 617 (Bankr. D. Mass. 1989); *Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal.").

46.     Courts have defined a "good faith purchaser" as "one who buys property in good faith and for value, without knowledge of adverse claims." *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993).   "Good faith" is a lack of "fraud, collusion…or an attempt to take grossly unfair advantage of other Offerors." *Id.*  (*citing In re Andy Frain Servs., Inc.*, 798 F.2d 1113, 1125 (7th Cir. 1986).  Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale

proceedings." *In re Tri-Cran, Inc.*, 98 B.R. 609, 618 (Bankr. D. Mass. 1989) (*quoting Rock Indus. Machinery Corp.*, 572 F.2d at 1198 (7th Cir. 1978))

47.     The Debtor submits that any Successful Offeror will be a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code. As set forth above, the Sale Procedures are designed to produce a fair and transparent competitive selection process. Each Qualified Offeror participating in the Selection Process on the Selection Day must confirm that it has not engaged in any collusion with respect to the offers or the sale of the Sale Assets. Any Joint Venture with a Successful Offeror executed by the Debtor will be negotiated at arm's-length and in good faith by sophisticated parties represented by competent counsel. Accordingly, the Debtor seeks a finding that any Successful Offeror is a good faith purchaser and is entitled to the full protections afforded by section 363(m) of the Bankruptcy Code.

48.     Based on the foregoing, the Debtor submits that it has demonstrated that the proposed Sale is a sound exercise of the Debtor's business judgment and should be approved as a good faith transaction.

## C.    A Sale of the Assets Free and Clear of Liens, Claims, Interests and Encumbrances Is Appropriate under Section 363(f) of the Bankruptcy Code.

49.     A free and clear sale is a pre-requisite to ensuring that the Debtor is able to attract the best and highest offers and achieve a value-maximizing transaction in this Chapter 11 Case for the benefit of the Debtor and its stakeholders. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of all liens, claims, interests and encumbrances of an entity other than the estate if any one of the following conditions is met:

> a.    applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> b.    such entity consents;
>
> c.    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

d.       such interest is in *bona fide* dispute; or

e.       such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.

50.      11 U.S.C. § 363(f)(1)-(5); *see also BAC Home Loans Servicing LP v. Grassi (In re Grassi)*, No. EP 11-010, 2011 Bankr. LEXIS 4362, at *12 (B.A.P. 1st Cir. Nov. 21, 2011) ("Because the language of § 363(f) is in the disjunctive, courts can approve a sale if any one of the five conditions is satisfied."); *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

51.      The Debtor anticipates that any Sale they elect to pursue will satisfy one or more of the requirements under section 363(f) of the Bankruptcy Code to permit a "free and clear" sale of the applicable Sale Assets.   Among other things, the Debtor anticipates that each potential Offeror will provide funding for a plan that provides for payment to holders of Allowed Claims in full unless otherwise agreed.

52.      Accordingly, the Debtor requests that the Court authorize the sale of the Sale Assets free and clear of any liens, claims, interests and encumbrances, to the fullest extent permitted by section 363(f) of the Bankruptcy Code.

**D.    The Debtor's Assumption and Assignment of Executory Contracts and Unexpired Leases Are Appropriate under Section 365 of the Bankruptcy Code.**

53.      Section 365(a) of the Bankruptcy Code provides that a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a). Courts employ the business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract or an unexpired lease. *Eagle Ins. Co. v. BankVest Capital Corp. (In re BankVest Capital Corp.)*, 290 B.R. 443, 447 (B.A.P. 1st Cir.

2003) ("the only issue properly before a court is whether the assumption or rejection of the subject contract is based upon a debtor's business judgment"); *see also In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding debtor's decision to assume or reject executory contract is governed by business judgment standard and can only be overturned if decision was product of bad faith, whim or caprice). In this context, the business judgment test only requires that a debtor demonstrate that assumption or rejection of an executory contract or unexpired lease benefits the estate. *See In re Charles St.,* 499 B.R. at104 (Bankr. D. Mass. 2013); *see also In re MF Global Holdings, Ltd.*, 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012).

54.     Any proposed Sale will provide a Successful Offeror with the opportunity to designate certain Contracts for assumption and assignment. Assumption of any Contracts is an exercise of the Debtor's sound business judgment because the transfer of Contracts in connection with a Sale is an essential element in the Debtor's ability to maximize the value of the Sale Assets— and particularly so when a Contract is integral to the ownership or operation of the Sale Assets to be acquired.

55.     The consummation of any Sale involving the assignment of a Contract will be contingent upon the Debtor's compliance with the applicable requirements of section 365 of the Bankruptcy Code. Section 365(b)(1) requires that the Debtor either cure, or provide adequate assurance that its will promptly cure, any outstanding defaults under the Contracts to be assumed. *See* 11 U.S.C. § 365(b)(1). The Debtor's assumption and assignment of any Contracts will be dependent upon payment of Cure Costs and effective only upon the closing of a Sale.  As described with specificity herein, subject to the Court's approval, the Debtor will file with the Court and serve on each Counterparty an Assumption and Assignment Notice setting forth the Debtor's good faith calculation of the Cure Costs for each Contract that could be assumed in connection with a Sale. Counterparties will have an opportunity to raise any Cure Objections in advance of the Sale Hearing.

56.     Section 365(f) of the Bankruptcy Code requires, in part, that the assignee of any executory contract provide "adequate assurance of future performance . . . whether or not there has been a default in such contract." 11 U.S.C. § 365(f)(2). While the Bankruptcy Code does not define "adequate assurance," courts have held that what constitutes "adequate assurance" should be determined by pragmatic approach based upon the facts and circumstances of each case. *In re GlycoGenesys, Inc.*, 352 B.R. 568, 578 (Bankr. D. Mass. 2006) (citing *In re Carlisle Homes, Inc.*, 103 B.R. 524 (Bankr. D. N. J. 1988)); *see also In re Alipat, Inc.*, 36 B.R. 274, 276-77 (Bankr. E.D. Mo. 1984) (recognizing that the term adequate assurance "borrowed its critical language . . . from Section 2- 609 of the Uniform Commercial Code" which "suggest[s] that adequate assurance is to be defined by commercial rather than legal standards . . . [and] factual considerations"). While no single standard governs every case, adequate assurance "will fall considerably short of an absolute guarantee of performance." *In re Carlisle Homes, Inc.*, 103 B.R. at 538 (citations omitted); *In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent).

57.     Adequate assurance may be provided by demonstrating, among other things, the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g.*, *In re Casual Male Corp.*, 120 B.R. 256, 264-65 (Bankr. D. Mass. 1990)(finding the assignee qualified as adequate assurance after evaluating the financial condition and operating performance of the assignee); *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding that industrial expertise, past success in running a similar business and financial wherewithal satisfied the adequate assurance requirement of section 365 of the Bankruptcy Code).

58.     The Sale Procedures expressly specify that for a Offer to qualify as a "Qualified Offer," a Prospective Offeror must include with its Offer Adequate Assurance Information regarding the Prospective Offeror's (or any other relevant assignee's) ability to perform the applicable obligations under any Contracts that may be included in the Offer. The Debtor will

furnish all available Adequate Assurance Information to the relevant Counterparties as soon as reasonably possible following its receipt of such information, upon such Counterparty's request. Finally, any Counterparty that is dissatisfied with the content or quality of any relevant Adequate Assurance Information will have an opportunity to request additional information from the Debtor and, if necessary, lodge an Adequate Assurance Objection in advance of the Sale Hearing. In light of the foregoing, the Debtor's assumption and assignment of any Contracts in accordance with the Assumption and Assignment Procedures would satisfy the requirements of section 365 of the Bankruptcy Code and should be approved.

59.     Finally, to facilitate the assumption and assignment of Contracts in furtherance of maximizing the value of the Sale Assets, the Debtor also requests that the Court find that any anti-assignment provision included in any Contract, whether such provision expressly prohibits, or has the effect of restricting or limiting assignment of a Contract, is unenforceable and prohibited pursuant to section 365(f) of the Bankruptcy Code.[5]

**E.  Requests for Immediate Relief & Waiver of Stay.**

60.     Pursuant to Bankruptcy Rules 6004(h) and 6006(d), the Debtor seeks a waiver of any stay of the effectiveness of the Sale Procedures Order, any Sale Order, any order authorizing the assumption or assumption and assignment of a Contract in connection with a Sale, and any other order entered by this Court in connection with the Sale. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the

---

[5] Section 365(f)(1) provides in pertinent part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease." 11 U.S.C. § 365(f)(1). Further, section 365(f)(3) provides that "[n]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee." 11 U.S.C. § 365(f)(3).

expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after entry of the order unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).

61.     The relief requested herein is necessary and appropriate to maximize the value of the Sale Assets for the benefit of the Debtor's economic stakeholders. Given the Debtor's financial condition and limited cash runway, the relief requested herein should be granted and effective as soon as practicable. Any delay in the Sale Process could jeopardize the Debtor's chapter 11 strategy and the ability of the Debtor to consummate a value-maximizing transaction.  Accordingly, the Debtor submits that ample cause exists to justify waiving the fourteen-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d), in each case, to the extent that such stay applies to the relief requested herein.

## **NOTICE**

62.     Notice of this Motion has been or will be provided to: (i) the Office of the United States Trustee for the District of Massachusetts; (ii) counsel to the pre-petition lender; (iii) each of the Debtor's twenty (20) largest non-priority unsecured creditors; (iv) counsel to the debtor-in-possession lender; (v) any party that has asserted a lien against any of the Debtor's assets as of the date hereof; and (vi) all known taxing authorities which may assert claims against the Debtor; (vii) all persons and entities known by the Debtor to have expressed an interest in purchasing the Sale Assets; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002. Such notice constitutes sufficient and adequate notice of the Motion and the relief granted in this order pursuant to the applicable Bankruptcy Rules and the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Massachusetts. The Debtor respectfully submits that no further notice of this Motion need be provided.

**NO PRIOR REQUEST**

63.    The Debtor has not previously sought the relief requested herein from the Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court (i) enter the Sale Procedures Order, substantially in the form attached hereto as **Exhibit A**; (ii) and, after the Sale Hearing, the Sale Order, respectively, granting the relief requested in the Motion; and (iii) grant such other and further relief to the Debtor as the Court may deem proper.

Dated:  May 7, 2025                          Respectfully submitted,

                                             WATER'S EDGE LIMITED PARTNERSHIP,
                                             By its counsel,

                                             */s/ Kathleen R. Cruickshank*
                                             Harold B. Murphy (BBO #362610)
                                             Kathleen R. Cruickshank (BBO #550675)
                                             Murphy & King, Professional Corporation
                                             28 State Street, Suite 3101
                                             Boston, Massachusetts  02109
                                             Telephone No.:  (617) 423-0400
                                             HMurphy@murphyking.com
                                             KCruickshank@murphyking.com

**In Re: Water's Edge Limited Partnership**

**Bankruptcy No. 24-12445-CJP**

**EXHIBIT A TO**

**DEBTOR'S MOTION FOR ENTRY OF ORDERS (I)(A) APPROVING PROCEDURES
FOR THE SALE OF THE DEBTOR'S ASSETS TO A JOINT VENTURE, (B)
AUTHORIZING THE DEBTOR TO DESIGNATE A STALKING HORSE AND TO
SEEK APPROVAL OF STALKING HORSE OFFER PROTECTIONS, (C)
SCHEDULING A SELECTION DAY AND APPROVING THE FORM AND MANNER
OF NOTICE THEREOF, (D) APPROVING ASSUMPTION AND ASSIGNMENT
PROCEDURES, (E) SCHEDULING A SALE HEARING AND APPROVING THE
FORM AND MANNER OF NOTICE THEREOF, AND (F) GRANTING RELATED
RELIEF; AND (II)(A) APPROVING THE SALE FREE AND CLEAR OF LIENS,
CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) APPROVING THE
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES AND (C) GRANTING RELATED RELIEF**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
Eastern Division

|  |  |
|---|---|
| In re:<br><br>**Water's Edge Limited Partnership**<br><br>Debtor. | Chapter 11<br><br>Case No. 24-12445-CJP |

**ORDER (I) APPROVING SALE PROCEDURES
FOR THE SALE OF THE SALE ASSETS OF THE DEBTOR, (II)
AUTHORIZING THE DEBTOR TO DESIGNATE A STALKING HORSE
OFFEROR AND TO SEEK APPROVAL OF STALKING HORSE OFFER
PROTECTIONS, (III) SCHEDULING A SELECTION DAY AND
APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV)
APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, (V)
SCHEDULING A SALE HEARING AND APPROVING THE FORM AND
MANNER OF NOTICE THEREOF, AND (V) GRANTING RELATED RELIEF**

Upon consideration of the *Debtor's Motion for Entry of Orders (I)(A) Approving Sale Procedures for the Sale of the Assets of the Debtor; (B) Authorizing the Debtor to Designate a Stalking Horse Offeror and to Seek Approval of Stalking Horse Offer Protections; (C) Scheduling a Selection Day and Approving the Form and Manner of Notice Thereof, Approving Assumption and Assignment Procedures, (D) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (E) Granting Related Relief; and (II)(A) Approving the Sale Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No.\_ ] (the "Motion")[1] filed by Water's Edge Limited Partnership, the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"); and the Court having reviewed the Motion and considered the record in this Bankruptcy Case; and the Court

---

[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or in the Sale Procedures, as applicable.

having considered the statements of counsel and the evidence adduced with respect to the Motion at

a hearing before the Court on May __, 2025 to consider certain of the relief requested in the Motion

(the "Sale Procedures Hearing"); and after due deliberation, this Court having determined that the

legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and

it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, and

its creditors, and the Debtor having demonstrated good, sufficient, and sound business justifications

for the relief granted herein;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The predicates for the relief granted

herein are sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004,

and 6006.

B.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Notice of the Motion, the Sale Procedures Hearing, and the proposed entry of this

Sale Procedures Order was sufficient under the circumstances of the Chapter 11 Case, and such notice

complied with all applicable requirements of the Bankruptcy Code, Bankruptcy Rules, and the Local

Rules. Accordingly, no other or further notice of the Motion, the Sale Procedures Hearing, or this Sale

Procedures Order need be provided.

D.      The sale procedures, substantially in the form attached hereto as **Exhibit 1** (the "Sale

Procedures") and incorporated herein by reference as if fully set forth in this Sale Procedures Order,

are fair, reasonable, and appropriate and are designed to maximize the value of the proceeds of the

sale of all, substantially all, or a portion of the Sale Assets.

E.      The procedures set forth herein regarding the Debtor's assumption and assignment

of executory contracts and unexpired leases (collectively, the "Contracts") in connection with a sale

of the Sale Assets (the "<u>Assumption and Assignment Procedures</u>") are fair, reasonable, and appropriate and comply with the provisions of section 365 of the Bankruptcy Code and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

F.        The Debtor has articulated good and sufficient business reasons for the Court to approve the relief requested in the Motion, including, without limitation, the (i) the Sale Procedures (including the procedures for the designation of the Stalking Horse Offeror); (ii) the form and manner of notice of the Sale Procedures, the selection process of the joint venture partner for the Sale Assets (the "<u>Sale Process</u>"), and the final  hearing to consider approval of a sale of the Sale Assets (the "<u>Sale Hearing</u>"), substantially in the form attached hereto as **<u>Exhibit 2</u>** (the "<u>Sale Notice</u>"); (iii) the form and manner of notice to each relevant non-debtor counterparty to a Contract (each, a "<u>Counterparty</u>") of (a) the Debtor's calculation of the  amount necessary to cure any defaults under an applicable Contract (the "<u>Cure Costs</u>") and (b) certain other information regarding the potential assumption and assignment of Contracts in connection with the sale of the Assets, substantially in the form attached hereto as **<u>Exhibit 3</u>**  (the "<u>Assumption and Assignment Notice</u>"); and (iv) the Assumption and Assignment Procedures.  Such good and sufficient business reasons, which were set forth in the Motion, on the record of this Chapter 11 Case and on the record at the Sale Procedures Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

G.        The Sale Procedures are reasonably designed to promote active Offers at and participation in the Selection Process on the Selection Day to ensure that the highest or otherwise best value is generated for the Sale Assets.

H.        The Debtor is authorized to select a Stalking Horse Offeror, to file a Stalking Horse Motion, and to seek entry of a Stalking Horse Order, approving among other things Stalking Horse Offer Protections, at the Stalking Horse Hearing.

I.        Good and sufficient notice of the relief sought in the Motion has been provided

under the circumstances, and no other or further notice is required except as set forth in the Sale Procedures and the Assumption and Assignment Procedures. A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties-in-interest.

       J.        The Sale Notice and the Assumption and Assignment Notice are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Selection Day, the Sale Hearing, the Sale Procedures, the Assumption and Assignment Procedures, the Debtor's proposed Cure Costs, any proposed assumption of a Contract in connection with a sale of the Sale Assets, and all relevant and important dates and deadlines with respect to the foregoing, and no other or further notice of the Section Date, the sale of the Sale Assets, or the assumption and assignment of Contracts in connection therewith shall be required.

       K.        The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

       1.        The Motion is GRANTED to the extent set forth herein.

       2.        All objections to the relief granted in this Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled, and denied on the merits with prejudice.

**A.      The Timeline for the Sale**

       3.        The Debtor is authorized to proceed with the sale transaction in accordance with the Sale Procedures and is authorized to take any and all actions reasonably necessary or appropriate to implement the Sale Procedures in accordance with the following timeline:

| **Deadline** | **Action** |
|---|---|
| **Two business days after the entry of the Sale Procedures Order** | Deadline for Debtor to file and serve Sale Notice |
| **Five Business Days after Sale Procedures Order** | Cure Notice Deadline |
| **June 2, 2025, at 4:00 p.m. (prevailing Eastern Time)** | Sale Objection Deadline and Cure Objection Deadline |
| **June 24, 2025, at 2:00 p.m. (prevailing Eastern Time)** | Offer Deadline for JVA Offers |
| **June 25, 2025 at 3:00 p.m. (prevailing Eastern Time)** | Qualified Offer Designation Deadline |
| **June 25, 2025 at 11:59 p.m. (prevailing Eastern Time)** | Baseline Offer Designation Deadline |
| **June 26, 2025, at 10:00 a.m. (prevailing Eastern Time)** | Selection Day |
| **Two business days after the conclusion of the Selection Day** | Deadline for Debtor to file and serve Notice of Selection Day Results |
| **July 2, 2025, at 4:00 p.m. (prevailing Eastern Time)** | Supplemental Sale Objection Deadline and Adequate Assurance Objection Deadline |
| **July 9, 2025 subject to the availability of the Court** | Sale Hearing |

**B.     The Sale Procedures**

4.      The Sale Procedures attached hereto as **Exhibit 1** are hereby approved in their entirety and are incorporated by reference as if fully set forth herein.  The Sale Procedures shall govern the selection of the Stalking Horse Offeror, Offers and proceedings related to the Selection Day and the sale of the Sale Assets. The failure to specifically include or reference a particular provision of the Sale Procedures in this Sale Procedures Order shall not diminish or impair the effectiveness of such provision.

5.      Subject to this Order and the Sale Procedures, the Debtor, in the exercise of its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, shall have the right to: (i) select a Stalking Horse Offeror and provide such Stalking Horse Offeror with Stalking Horse Offer Protections; (ii) determine which Offerors qualify as "Qualified Offerors," and which Offers qualify as "Qualified Offers; (iii) make a final determination as to whether the Debtor will conduct a Selection Process on the Selection Day; (iv) select the Baseline Offer for the Assets; (v) determine the amount of each Minimum Higher Offer; (vi) determine the

Leading Offer for the Assets; (vii) determine which Qualified Offer is the highest or otherwise

best Offer for the Assets (such Qualified Offer, a "Successful Offer") and which Qualified Offer

is the next highest and next best Offer after the Successful Offer for the Assets (such Qualified

Offer, a "Backup Offer"); (viii) reject any Offer that is (a) inadequate or insufficient; (b) not in

conformity with the requirements of this Order or any other applicable order of the Court, the Sale

Procedures, the Bankruptcy Code, or other applicable law; or (c) contrary to the best interests of

the Debtor and its estate; (ix) adjourn or cancel the Selection Day in accordance with the Sale

Procedures; and (x) adjourn the Sale Hearing in accordance with the Sale Procedures.

6.      In accordance with and subject to the Sale Procedures, the Debtor, in the exercise

of its reasonable business judgment and in a manner consistent with its fiduciary duties and

applicable law, shall have the right to modify the Sale Procedures, including to (i) extend or waive

deadlines or other terms and conditions set forth herein or therein; (ii) adopt new rules and

procedures for conducting the Selection Process and the Selection Day so long as any such

modifications are disclosed to all Prospective Offerors and Qualified Offerors; and (iii) otherwise

modify the Sale Procedures to further promote competitive Offers for and maximizing the value

of the Assets.

**C.      Stalking Horse Agreement and Stalking Horse Offer Protections**

7.      The Stalking Horse Designation Procedures are approved, and the Debtor is

authorized to seek approval of a Stalking Horse Agreement with a Stalking Horse Offeror and

provide Stalking Horse Offer Protections, in accordance with the Sale Procedures. The Debtor may

designate a Stalking Horse Offeror **no later than June 25, 2025, at 11:59 p.m. (prevailing**

**Eastern Time)**, which deadline may be extended by the Debtor.

8.      To the extent the Debtor files a Stalking Horse Motion on or before

_____, 2025, the Court shall hold a hearing to consider the Stalking Horse Motion

(the "Stalking Horse Hearing") on _____, 2025, at___:__.m.  (prevailing

Eastern Time).

**D.      Offer Deadline and Selection Day**

9.      Any Prospective Offeror that intends to participate in the Selection Process on the Selection Day must submit in writing to the Debtor's Counsel (contact information in Sections I and III of the Sale Procedures) a Qualified Offer on or before **June 24, 2025, at 2:00 p.m. (prevailing Eastern Time)** (the "<u>Offer Deadline</u>").

10.      If the Debtor receives more than one Qualified Offer for the Assets, the Debtor shall conduct a Selection Process for the Sale Assets.

11.      The Selection Day, if required, will be conducted on **June 26, 2025, at 10:00 a.m**. (prevailing Eastern Time), at either (i) at the offices of Brown Rudnick, LLP, One Financial Center, Boston, MA 02111, or (ii) virtually or at such other date, time or location as designated by the Debtor. Subject to the Selection Process procedures set forth in section VII.B of the Sale Procedures, professionals and principals for the Debtor, each Qualified Offeror (including, its representative(s), if any), that has provided notice in writing of its intent to observe the Selection Process on the Selection Day via electronic mail to counsel for the Debtor, Murphy & King, P.C., (Attn:  Kathleen R. Cruickshank, <u>KCruickshank@MurphyKing.com</u>) at least one (1) day prior to the start of the Selection Process on the Selection Day shall be able to attend and observe the Selection Day, along with any other parties the Debtor deems appropriate; *provided* that the Debtor may, in its sole discretion, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of a Qualified Offeror or otherwise attend the Selection Day. If the Debtor conducts the Selection Day virtually, the Debtor will provide instructions setting forth how to attend the Selection Day to the participants and other attendees via electronic mail. The Debtor will provide notice (via electronic mail or otherwise) of any change in the date, time or location of the Selection Day to Qualified Offerors and will cause publication of such change to

occur on the docket as soon as reasonably practicable and in any event no later than 24 hours

before the Selection Day. If held, the Selection Day proceedings will (i) be transcribed and/or

video recorded and (ii) include an open Selection Process in the presence of all Qualified Offerors,

subject to reasonable limitations imposed by a virtual platform to be evaluated and determined by

the Debtor.

12.     If the Debtor determines not to hold a Selection Process on the Selection Day, the

Debtor shall file with the Court and serve on the Sale Notice Parties (as defined in Section X.B of

the Sale Procedures) a notice containing the following information (as applicable): (i) a statement

that the Selection Day has been canceled; (ii) the identity of the Successful Offeror; (iii) a copy of

the Successful Offer or a summary of the material terms of such Offer; and (iv) the date, time, and

location of the Sale Hearing.

13.     Only a Qualified Offeror that has submitted a Qualified Offer shall be eligible to

participate in the Selection Process on the Selection Day, subject to any other limitations as the

Debtor may reasonably impose in accordance with the Sale Procedures. Qualified Offerors

participating on the Selection Day must attend the Selection Day personally or through a duly

authorized representative.

14.     Each Qualified Offeror participating in the Selection Day shall confirm in writing

on the record that (i) it has not engaged in any collusion with respect to the Selection or the

submission of any Offer for any of the Sale Assets; and (ii) the Qualified Offer that gained the

Qualified Offeror admission to participate in the Selection Process on the Selection Day and each

Qualified Offer submitted by the Qualified Offeror for the Selection Process on the Selection Day

constitutes a binding, good-faith, and *bona fide* offer to purchase the Sale Assets identified in such

Offers.

15.     Within two business days after the conclusion of the Selection Process on the

Selection Day, the Debtor shall file with the Court and serve on the Sale Notice Parties a notice

setting forth the results of the Selection Process (the "Notice of Selection Day Results"). The Notice

of Selection Day Results will (i) identify each Successful Offeror and each Backup Offeror; (ii)

include a copy of each Successful Offer and each Backup Offer or a summary of the material terms

of such Offer; and (iii) set forth the date, time, and location of the Sale Hearing and any other

relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the

outcome of the Selection Process on the Selection Day.

**E.     Sale Noticing and Objection Procedures**

16.     Except objections to the conduct of the Selection Process on the Selection Day, the

Successful Offeror or the Backup Offeror, all objections to the sale of the Sale Assets (each, a "Sale

Objection"), including (i) any objection to the sale of any Assets free and clear of liens, claims,

interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code to a Successful

Offeror and/or a Backup Offeror (as applicable) and (ii) any objection to the entry of any Sale Order

shall be (i) in writing and state, with specificity, the legal and factual bases thereof and include any

appropriate documentation in support thereof; (ii) filed with the Court by **no later than June 2,**

**2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline"); and (iii) served

on the Objection Notice Parties (as defined in Section X.D of the Sale Procedures).

17.     Following service of the Notice of Selection Day Results, parties may file an

objection solely with respect to the conduct of the Selection Process on the Selection Day, the

Successful Offeror, the Backup Offeror, or the Sale to the Successful Offeror or the Backup Offeror

(each such objection, a "Supplemental Sale Objection"). Any Supplemental Sale Objection shall

be (i) in writing and state, with specificity, the legal and factual bases thereof and include any

appropriate documentation in support thereof; (ii) filed with the Court by **no later than July 2,**

**2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Supplemental Sale Objection Deadline");

and (iii) served on the Objection Notice Parties.

18.     Any party who fails to file and serve a timely Sale Objection or Supplemental Sale

Objection in accordance with the terms of this Order shall be forever barred from asserting, at the

Sale Hearing or thereafter, any Sale Objection or Supplemental Sale Objection to the relief

requested in the Motion, or to the consummation or performance of the sale of the Assets, including

the transfer of Assets to the Successful Offeror free and clear of liens, claims, interests, and

encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to

"consent" to such sale for purposes of section 363(f) of the Bankruptcy Code.

19.    The Debtor shall file any reply to any Sale Objection or Supplemental Sale

Objection, if any, by **no later than _____, 2025, at 12:00 p.m. (prevailing Eastern Time)**.

20.    Consummation of the sale of the Sale Assets pursuant to a Successful Offer shall

be subject to Court approval. The Sale Hearing to (a) approval a sale of all, substantially all, or a

portion of the Sale Assets to the Successful Offeror(s) and (b) authorize the assumption and

assignment of certain executory contracts and unexpired leases shall be held before the Court on

**_____, 2025, at [_____] [_].m. (prevailing Eastern Time)**; *provided,*

*that*, the Debtor may seek an adjournment or rescheduling of the Sale Hearing without notice,

consistent with the Sale Procedures and this Order. At the Sale Hearing, the Debtor will seek

Bankruptcy Court approval of the Successful Offer(s) and the Backup Offer(s) (if any). Unless the

Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters

relating to the sale transaction and there will be no further offers considered at the Sale Hearing.

If the Successful Offeror(s) cannot or refuses to consummate the Sale(s) because of the breach or

failure on the part of such Successful Offeror, the Debtor may, in accordance with the Sale

Procedures, designate the Backup Offer to be the new Successful Offer and the Backup Offeror to

be the new Successful Offeror, and the Debtor shall be authorized, but not required, to consummate

the applicable transaction with the Backup Offeror without further order of the Bankruptcy Court.

21.    The Sale Notice, substantially in the form attached hereto as **__Exhibit 2__**, is approved,

and no other or further notice of the proposed sale of the Assets, the Selection Day, the Sale

Hearing, the Sale Objection Deadline, or the Supplemental Sale Objection Deadline shall be required if the Debtor serves and publishes the Sale Notice in the manner provided in the Sale Procedures and this Order.

22.     By no later than two business days after the entry of this Order, the Debtor shall file the Sale Notice with the Court and serve the Sale Notice on the Sale Notice Parties.

## F.     Assumption and Assignment Procedures

23.     The Assumption and Assignment Notice, substantially in the form attached hereto as **Exhibit 3**, is approved, and no other or further notice of the Debtor's intention to assume or assign the Contracts or of the Debtor's proposed Cure Costs is necessary or required.

24.     By no later than two business days after the entry of this Order, the Debtor shall file with the Court, serve on the applicable Counterparties (and counsel, if known), and cause to be published on the Docket, the Assumption and Assignment Notice.

25.     Any objection to the Debtor's proposed Cure Costs (each such objection, a "Cure Objection") shall be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) filed with the Court by **no later than June 2, 2025, at 4:00 p.m. (prevailing Eastern Time)**; and (c) served on the Objection Notice Parties.

26.     The Debtor, any Stalking Horse Offeror or, as applicable, the Successful Offeror, and the objecting Counterparty shall first confer in good faith to attempt to resolve the Cure Objection without Court intervention. If the parties are unable to consensually resolve the Cure Objection prior to the commencement of the Sale Hearing, the Court will make all necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing scheduled pursuant to this Order. If a Cure Objection is resolved in a manner that is not in the best interests of the Debtor and its estate, whether or not such resolution occurs prior to or after the closing of the sale of the Assets, the Debtor, any Stalking

Horse Offeror or, as applicable, the Successful Offeror, may determine that any Contract subject to such resolved Cure Objection no longer will be assumed and assigned in connection with the sale of the Sale Assets (subject to the terms of the applicable joint venture agreement or similar agreement); *provided* that in the case of an unexpired lease of non-residential real property, such determination shall be prior to the expiration of the applicable deadline to assume or reject unexpired leases under section 365(d)(4) of the Bankruptcy Code. All other objections to the Debtor's proposed assumption and assignment of the Debtor's right, title, and interest in, to, and under a Contract shall be heard at the Sale Hearing.

27.     If a timely Cure Objection cannot otherwise be resolved by the parties, the Cure Objection may be heard at the Sale Hearing or, at the option of the Debtor and the Successful Offeror, be adjourned to a subsequent hearing, with notice to the party having filed the Cure Objection (each such Cure Objection, an "Adjourned Cure Objection"). An Adjourned Cure Objection may be resolved after the closing date of the sale of the Assets. Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the Contract that was the subject of such Adjourned Cure Objection shall, at the election of the Successful Offeror, and subject to the Debtor's rights set forth in paragraph 28 of this Order, be deemed assumed and assigned to the Successful Offeror as of the closing date of the sale of the Assets.

28.     If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Cure Objection, the Counterparty forever shall be barred from asserting any objection with regard to the cost to cure any defaults under the applicable Contract. The Cure Costs set forth in the applicable Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Contract and satisfy the requirements of section 365(b) of the Bankruptcy Code, and the Counterparty to the Contract shall be bound by and deemed to have consented to the Cure Costs.

29.     In accordance with the Sale Procedures, Qualified Offers shall be accompanied by Adequate Assurance Information (as defined in the Sale Procedures). The Debtor shall promptly

provide, upon a Counterparty's request to the Debtor's counsel, the Adequate Assurance Information to any Counterparty (and counsel, if known) to any Contract that may be assumed by the applicable Qualified Offeror.

30.     Any objection to the proposed assumption and assignment of a Contract, the subject of which objection is a Successful Offeror's (or any other relevant assignee's) proposed form of adequate assurance of future performance with respect to the Contract (each such objection, an "Adequate Assurance Objection"), shall be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) filed with the Court by **no later than July 2, 2025 at 4:00 p.m. (prevailing Eastern Time)**; and (c) served on the Objection Notice Parties.

31.     The Debtor, the Successful Offeror, and a Counterparty that has filed an Adequate Assurance Objection shall first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention. If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, the Adequate Assurance Objection and all issues of adequate assurance of future performance of the Successful Offeror (or any other relevant assignee) shall be determined by the Court at the Sale Hearing or, at the option of the Debtor and the Successful Offeror, be adjourned to a subsequent hearing, with notice to the party having filed the Adequate Assurance Objection.

32.     If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any objection to the assumption and/or assignment of a Contract with regard to adequate assurance of future performance. The Successful Offeror (or any other relevant assignee) shall be deemed to have provided adequate assurance of future performance with respect to a Contract in accordance with Bankruptcy Code sections 365(b)(1)(C), 365(f)(2)(B), and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Contract or

any other document.

33.     As soon as reasonably practicable after the closing of the sale of the Assets, the Debtor shall file with the Court and serve on the applicable Counterparties a notice containing the list of Contracts that the Debtor assumed and assigned pursuant to any asset purchase agreement with a Successful Offeror.

34.     The inclusion of a Contract or Cure Costs with respect to any Contract on any Assumption and Assignment Notice, shall not constitute or be deemed a determination  or admission by the Debtor, any Stalking Horse Offeror, any Successful Offeror, or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code, and shall not be a guarantee that such Contract ultimately will be assumed or assigned.  The Debtor reserves all of its rights, claims, and causes of action with respect to each Contract listed on any Assumption and Assignment Notice.

**G.     Other Related Relief**

35.     All persons and entities that participate in the Selection Process on the Selection Day or Offer for the Sale Assets during the Sale Process shall be deemed to have knowingly and voluntarily (i) consented to the core jurisdiction of the Court to enter any order related to the Sale Procedures, the Selection Process on the Selection Day, or any other relief requested in the Motion or granted in this Order; (ii) waived any right to a jury trial in connection with any disputes relating to the Sale Procedures, the Selection Process on the Selection Day, or any other relief requested in the Motion or granted in this Order; and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to the Sale Procedures, the Selection Process, or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

36.     Nothing in this Order, or any of the Exhibits hereto, shall (i) prevent the Debtor

from, in the exercise of its fiduciary duties, pursuing or otherwise consummating an alternative transaction or (ii) obligate the Debtor to pursue or consummate any transaction with any Qualified Offeror.

37.    Notwithstanding the applicability of any of the Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or any other provisions of the Bankruptcy Rules or the Local Rules stating to the contrary, the terms and provisions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

38.    The Debtor is authorized to take all steps necessary or appropriate to implement the relief granted in this Order.

39.    This Sale Procedures Order shall be binding on and inure to the benefit of the Debtor, including any Chapter 7 or Chapter 11 trustee or other fiduciary appointed for the estate of the Debtor.

40.    This Sale Procedures Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

41.    To the extent any of the deadlines set forth in this Sale Procedures Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Sale Procedures Order shall govern.

42.    This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

_____
Honorable Christopher J. Panos
United States Bankruptcy Judge

**In Re: Water's Edge Limited Partnership**

**Bankruptcy No. 24-12445-CJP**

**EXHIBIT 1 TO**

**ORDER (I) APPROVING SALE PROCEDURES
FOR THE SALE OF THE SALE ASSETS OF THE DEBTOR, (II)
AUTHORIZING THE DEBTOR TO DESIGNATE A STALKING HORSE
OFFEROR AND TO SEEK APPROVAL OF STALKING HORSE OFFER
PROTECTIONS, (III) SCHEDULING A SELECTION DAY AND
APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV)
APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, (V)
SCHEDULING A SALE HEARING AND APPROVING THE FORM AND
MANNER OF NOTICE THEREOF, AND (V) GRANTING RELATED
RELIEF**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | |
| **WATER'S EDGE LIMITED PARTNERSHIP,** | **Chapter 11** **Case No: 24-12445-CJP** |
| **Debtor** | |

## SALE PROCEDURES

Water's Edge Limited Partnership, the above-captioned debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case") will use the procedures set forth herein (the "Sale Procedures") in connection with a sale or disposition of all, substantially all, or a portion of the Debtor's assets (the "Sale Assets").

On May 7, 2025, the Debtor filed with the United States Bankruptcy Court for the District of Massachusetts (the "Court") the *Debtor's Motion for Entry of Orders (I)(A) Approving Procedures for the Sale of the Assets of the Debtor, (B) Authorizing the Debtor to Designate a Stalking Horse and to Seek Approval of Stalking Horse Offer Protections, (C) Scheduling an Selection Day and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief; and (II)(A) Approving the Sale Free and Clear of Liens, Claims, Interests, and Encumbrances, Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and Granting Related Relief* [Docket No. ___] (the "Motion"). By the Motion, the Debtor sought, among other things, entry of an order approving Sale Procedures for soliciting Offers in advance of a Selection Day (the "Selection Day") for, and consummating a sale of, the Sale Assets, as further described herein.

On [__], 2025, the Court entered an *Order (I) Approving Procedures for the Sale Assets, (II) Authorizing the Debtor to Designate a Stalking Horse and to Seek Approval of Stalking Horse Offer Protections, (III) Scheduling an Selection Day and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (VI) Granting Related Relief* [Docket No. [_]] (the "Sale Procedures Order").[7]

## I.    SALE ASSETS

The Debtor intends to sell all, substantially all, or a portion of the Sale Assets, which shall include 364, 370 and 388 Ocean Avenue in Revere, Massachusetts known as Water's Edge Apartments (the "Property"), together with some or all appurtenant interests and related personal property, fixtures, claims and other interests as may be identified by the Prospective Offeror (collectively, the "Sale Assets").

---

[7] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms later in these Sale Procedures or in the Motion and/or the Sale Procedures Order, as applicable.

A Prospective Offeror (as defined in Section III below) may submit an Offer for the Sale Assets, to be acquired by a Joint Venture (as defined in Section VI below) pursuant to a joint venture or similar agreement with the Debtor, subject to the conditions set forth herein.

The Debtor's ability to undertake and consummate a sale of the Sale Assets to a Joint Venture entity pursuant to a joint venture or similar agreement shall be subject to competitive selection process (the "Selection Process"), as set forth herein, and approval by the Court. In addition to any Stalking Horse Offer (as defined in the Motion), and as set forth herein, the Debtor will consider offers for the Sale Assets from other parties.

Any party interested in submitting an offer for any of the Sale Assets should contact the Debtor's counsel, as set forth below:

Kathleen R. Cruickshank, Esq.
Murphy & King, P.C.
28 State Street, Suite 3101
Boston, MA 02019
(617) 423-0400
kcruickshank@murphyking.com

William Baldiga, Esq.
Brown Rudnick LLP
One Financial Center
Boston, MA 02111
(617) 856-8586
wbaldiga@brownrudnick.com

## II.    KEY DATES AND DEADLINES

| **Deadline** | **Action** |
| --- | --- |
| **Two business days after the entry of the Sale Procedures Order** | Deadline for Debtor to file and serve Sale Notice |
| **Five Business Days after Sale Procedures Order** | Cure Notice Deadline |
| **June 2, 2025, at 4:00 p.m. (prevailing Eastern Time)** | Sale Objection Deadline and Cure Objection Deadline |
| **June 24, 2025, at 2:00 p.m. (prevailing Eastern Time)** | Offer Deadline for JVA Offers |
| **June 25, 2025 at 3:00 p.m. (prevailing Eastern Time)** | Qualified Offer Designation Deadline |
| **June 25, 2025 at 11:59 p.m. (prevailing Eastern Time)** | Baseline Offer Designation Deadline |
| **June 26, 2025, at 10:00 a.m. (prevailing Eastern Time)** | Selection Day |
| **Two business days after the conclusion of the Selection Day** | Deadline for Debtor to file and serve Notice of Selection Day Results |
| **July 2, 2025, at 4:00 p.m. (prevailing Eastern Time)** | Supplemental Sale Objection Deadline and Adequate Assurance Objection Deadline |

| July 9, 2025 subject to the availability of the Court | Sale Hearing |
|---|---|

### III.   DUE DILIGENCE

#### A.   <u>Debtor Due Diligence</u>.

Each person or entity that desires to participate in the Selection Process and the Selection Day (each, a "<u>Prospective Offeror</u>") must first deliver to the Debtor's Counsel (contact information in Section I above and in this Section III) the following:

•    documentation identifying the Prospective Offeror, its principals, and the representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated Sale;

•    an executed confidentiality agreement, in form and substance satisfactory to the Debtor;

•    a statement and other factual support demonstrating to the Debtor in its sole judgment, that the Prospective Offeror has a *bona fide* interest in purchasing some or all of the Sale Assets; and

•    preliminary proof by the Prospective Offeror of its financial capacity to close a proposed sale transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Prospective Offeror (or, if the Prospective Offeror is an entity formed for the purpose of acquiring the Sale Assets to be sold, the party that will bear liability for a breach by the Prospective Offeror of a joint venture agreement or other agreement entered into in respect of the sale transaction), the adequacy of which the Debtor will determine in its sole judgment.

Without the need for any further action, any Stalking Horse, if selected and approved in accordance with these Sale Procedures will be considered a Prospective Offeror and a Qualified Offeror (as defined in Section VI.C below).

#### B.   <u>Prospective Offeror Due Diligence</u>.

Upon execution of a valid confidentiality agreement and subject to the other limitations and guidelines set forth herein, the Debtor may grant a Prospective Offeror that they identify as reasonably likely to become a Qualified Offeror with access to information allowing such Prospective Offeror to conduct due diligence with respect to the potential acquisition of some or all of the Assets.

If the Debtor determines that a Prospective Offeror is unlikely to qualify as a Qualified Offeror or fails to become a Qualified Offeror, then such Prospective Offeror shall have no further right to access due diligence or any other non-public information.  The Prospective Offeror shall return or destroy any non-public information the Debtor or their advisors provided to the Prospective Offeror in accordance with the terms of the confidentiality agreement executed by the Debtor and the Prospective Offeror.

A Prospective Offeror's right to terminate for unacceptable results of due diligence will be limited to matters of title and survey, and only to the extent that due diligence conducted from this point forward reveals conditions that are materially adverse as compared to the results of due

diligence taken or shared to date and cannot be cured by the Debtor within a reasonable time.

The Debtor will try to accommodate all reasonable requests from Prospective Offerors for additional information and due diligence access. All due diligence requests shall be directed to Debtor's Counsel as follows:

Kathleen R. Cruickshank, Esq.
Murphy & King, P.C.
28 State Street, Suite 3101
Boston, MA 02019
(617) 423-0400
kcruickshank@murphyking.com

William Baldiga, Esq.
Brown Rudnick LLP
One Financial Center
Boston, MA 02111
(617) 856-8586
wbaldiga@brownrudnick.com

## IV.   STALKING HORSE AGREEMENT

Designation of Stalking Horses

Subject to the provisions set forth herein and the Sale Procedures Order, the Debtor may, but is not obligated to, designate a Stalking Horse (and such Offeror's Offer, the "Stalking Horse Offer") for all or a portion of the Sale Assets and offer such Stalking Horse certain protections (the "Stalking Horse Offer Protections"), including a break-up fee and capped expense reimbursement as set forth in the applicable joint venture agreement or similar agreement executed by the Debtor and the Stalking Horse (the "Stalking Horse Agreement"), provided that all Stalking Horse Offer Protections must be negotiated by the Debtor and no break-up fee, other than with a further Court order, shall exceed $1,000,000.00 and the total expenses reimbursement shall be subject to a cap not to exceed $200,000.00 (collectively, the "Termination Payment") to be agreed upon between the Debtor and the Stalking Horse.

The Debtor may designate a Stalking Horse by no later than June 25, 2025, at 11:59 p.m. In the event that the Debtor determines to designate a Stalking Horse, the Debtor shall promptly upon execution of the Stalking Horse Agreement, file with the Bankruptcy Court, serve on the Sale Notice Parties, a notice that contains the information about the Stalking Horse, including the proposed Stalking Horse Offer Protections, and attaches the proposed Stalking Horse Agreement (the "Notice of Stalking Horse Offer.")

Objections to and Approval of Designation of Stalking Horse.

Any objections (each, a "Stalking Horse Objection") to the designation of a Stalking Horse, including any Stalking Horse Offer Protections to be provided pursuant to the terms and provisions of a Stalking Horse Agreement, must (a) be in writing; (b) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; (c) state, with specificity, the legal and factual bases thereof; and (d) be filed with the Court and served on the Objection Notice parties (as defined herein) within

three (3) calendar days after service of the applicable Notice of Stalking Horse Offer.

If a timely Stalking Horse Objection is filed and served in accordance with the preceding paragraph, the proposed designations of a Stalking Horse and Stalking Horse Offer Protections will not be approved until either the Stalking Horse Objection is resolved by agreement of the objecting parties and the Debtor or by order of the Bankruptcy Court following a hearing on an expedited basis.

In no timely Stalking Horse Objection is filed and served with respect to a Stalking Horse Agreement in accordance with these Sale Procedures, the Debtor shall file a Certificate of No Objection and submit a proposed order approving the Stalking Horse Offer Protections with the Court.

For all purposes under these Sale Procedures, a Stalking Horse approved as such in accordance with the Sale Procedures shall be a Qualified Offeror and its Stalking Horse Offer shall be considered a Qualified Offer.  Subject to the other provisions of these Sale Procedures, in the event that a Stalking Horse Offer received by the Debtor is the only offer for the Sale Assets by the Offer Deadline, the Stalking Horse may be declared the Successful Offeror.

Other than as provided by order of the Court, no party submitting an Offer shall be entitled to a break-up fee or expense reimbursement except for the Stalking Horse Offer Protections for any Stalking Horse. Any substantial contribution claims by any Offeror are deemed waived.

## V.    OFFER DEADLINE

Any Prospective Offeror that intends to participate in the Selection Process and the Selection Day must submit electronic copies to the Offer Notice Parties of a Qualified Offer (as defined in Section VI.C below) on or before **June 24, 2025, at 2:00 p.m. (prevailing Eastern Time)** (the "Offer Deadline"). The Debtor may extend the Offer Deadline for any reason whatsoever, in its reasonable business judgment, for all or certain Potential Offerors, without further order of the Bankruptcy Court, subject to providing notice to the Stalking Horse (if applicable) and all Prospective Offerors.

## VI.    OFFER REQUIREMENTS

### A.    Qualified Offer Requirements

To qualify as a "Qualified Offer," an offer must be in writing and satisfy the following requirements:

1.    Identification of Offeror. A Qualified Offer must fully disclose the following:

a.    the legal identity of each person or entity submitting an offer for the Sale Assets and/or otherwise sponsoring, financing (including through the issuance of debt in connection with such Offer), or participating in (including through license or similar arrangement with respect to the Sale Assets to be acquired by the Joint Venture in connection with such Offer)

the Process and the Selection Day in connection with such Offer and the complete terms of any such participation; and (b) any past or present connections or agreements with the Debtor, any Stalking Horse, any other known Prospective Offeror or Qualified Offeror, the DIP Lenders, or any officer or director of any of the foregoing (including any current or former officer or director of the Debtor).

2. <u>Purchased Assets</u>. A Qualified Offer must identify the following:

    a.   the Sale Assets to be acquired by the Joint Venture entity, including any executory contracts and unexpired leases (collectively, the "<u>Contracts</u>") that, as of the submission of such Offer, the Prospective Offeror proposes to be assumed and assigned by the Debtor in connection with the proposed sale; and

    b.   the liabilities, if any, to be assumed, including any debt to be assumed.

3. <u>Form of Consideration</u>.

    a.   Each Offer must include a statement confirming that the Offer is based on an all-cash offer, or if an Offer includes forms of consideration other than cash, the Offeror shall include an analysis or description of the value of such non-cash components, including any supporting documentation, to assist the Debtor in evaluating the Offer; and

    b.   <u>Credit Bidding</u>.  The Fairbridge DIP Lender and DIV OA Lender, LLC may credit bid a portion of their Offer (such bid, a "<u>Credit Bid</u>") up to the amount of their debt pursuant to section 363(k) of the Bankruptcy Code.  Any Credit Bid shall be a Qualified Bid without the need to provide a Good Faith Deposit.

4. <u>Minimum Higher Offer for Assets</u>. If a Stalking Horse is not designated pursuant to these Sale Procedures, any subsequent Offer submitted by a Qualified Offeror must be superior in its terms as reasonably determined by the Debtor, that is greater than or equal to the sum of the preceding highest Offer submitted by a Qualified Offeror, plus $250,000 (collectively, the "<u>Minimum Higher Offer Amount</u>"). If a Stalking Horse has been designated, each Offer that is not a Stalking Horse Offer must have a value, as reasonably determined by the Debtor, that is greater than or equal to the sum of (a) the value offered under the Stalking Horse Agreement, (b) the amount of the Stalking Horse Offer Protections, and (c) the Minimum Higher Offer Amount.

If the value of an Offer relative to any Stalking Horse Offer includes additional non-cash components (such as fewer contingencies than are in such Stalking Horse Agreement), the Offeror should include an analysis or description of the value of any such additional non-cash components, including any supporting documentation, to assist the Debtor in better evaluating the competing Offer.

5. <u>Proposed JVA Offer</u>. A Qualified Offer must constitute an irrevocable offer and be in the form of a Joint Venture Agreement reflecting the terms and conditions of the Offer (each, shall include the formation of a joint venture between the Debtor and the Qualified Offeror, or a similar transaction (the "<u>Joint Venture</u>"). A Proposed JVA Offer shall be (a) duly authorized and executed; (b) based on, and marked against, the form Joint Venture Agreement to be filed with the Court prior to the Offer Deadline (the "<u>Form JVA</u>") or, if a Stalking Horse has been designated, the Stalking Horse Agreement, to reflect the proposed transaction and to show any other proposed modifications to the Form JVA or Stalking Horse Agreement, as applicable; (c) specify the proposed consideration for the Sale Assets in U.S. dollars; (d) include all exhibits and schedules contemplated thereby (other than exhibits and schedules that, by their nature, must be prepared by the Debtor); and (e) identify any Contracts that, as of the submission of such Offer, the Prospective Offeror proposes to be assumed and assigned by the Debtor in connection with the proposed sale transaction.

6. <u>Proposed Sale Order</u>. A Qualified Offer must include a proposed sale order (each, a "<u>Proposed Sale Order</u>") and be marked against the Proposed Sale Order, which the Debtor will file with the Court prior to the Offer Deadline.

7. <u>Financial Information</u>. A Qualified Offer must include the following:

a. a statement that the Prospective Offeror is financially capable of consummating the sale transaction contemplated by the Prospective Offeror's Proposed JVA Offer and Proposed Sale Order;

b. sufficient evidence, as determined by the Debtor in its sole discretion, to determine that the Prospective Offeror has, or will obtain, the financial wherewithal to consummate the sale transaction contemplated by the Prospective Offeror's Proposed JVA Offer and Proposed Sale Order; and

c. Adequate Assurance Information (as defined in Section VI.A.9 below) with respect to any Contracts included or that may be included in the Prospective Offer, including the identity of any known proposed assignee of the applicable Contracts (if different from the Prospective Offeror), including contact information for such proposed assignee;

8. <u>Good Faith Deposit</u>. Each Qualified Offer must be accompanied by a good faith cash deposit (each, a "<u>Good Faith Deposit</u>") in the form of cash in an amount equal to Three Million Five Hundred Thousand Dollars ($3,500,000) to be deposited with an escrow agent selected by the Debtor (the "<u>Escrow Agent</u>") pursuant to the escrow agreement to be provided by the Debtor to the Prospective Offerors and held in escrow until 10 business days after the conclusion of the Selection Day, except for the Good Faith Deposit of any Offeror who is selected on the Selection Day as a Successful Offeror or as a Backup Offeror, and thereafter returned to the respective

Qualified Offerors in accordance with Section VII.D of these Sale Procedures.

9. <u>Adequate Assurance</u>. A Qualified Offer must include evidence of the Prospective Offeror's (or any other relevant assignee's) ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Prospective Offeror's (or any other relevant assignee's) ability to perform future obligations arising under any Contracts included in its Offer. The Debtor may require the following information in connection with demonstrating adequate assurance of future performance: (a) information evidencing the Prospective Offeror's (or any other relevant assignee's) financial wherewithal and willingness to perform under any Contracts included in the Offer, which information may include (i) a corporate organizational chart or similar disclosure identifying corporate ownership and control, (ii) financial statements, (iii) tax returns, and (iv) annual reports; and (b) the Prospective Offeror's (or any other relevant assignee's) proposed use of any leased premises or other property included in the Offer (the information described in clauses (a) and (b) of this Section VI.A.9, the "<u>Adequate Assurance</u> Information").

All Adequate Assurance Information must be in a form that will permit its immediate dissemination to Contract counterparties ("<u>Counterparties</u>").

10. <u>Representations and Warranties (As-Is, Where-Is)</u>. Each Qualified Offer must include a written acknowledgement and representation that (a) the Prospective Offeror has had an opportunity to conduct any and all due diligence regarding the Sale Assets prior to making its Qualified Offer, except as specifically set forth in the Form JVA Offer, (b) the Prospective Offeror has relied solely upon its own or its advisors' independent review, investigation, and/or inspection of any documents and/or the Assets in making its Qualified Offer, (c) the Prospective Offeror did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Sale Assets, or the completeness of any information provided in connection therewith or in connection with the Selection Process and the Selection Day, except as expressly stated in the Prospective Offeror's Proposed JVA Offer; and (d) the Sale Assets will be conveyed "as is, where is, with all faults," with limited representations and warranties, and no indemnification or guarantees by the Debtor.

11. <u>Authorization</u>. A Qualified Offer must (a) include evidence of authorization and approval from the Prospective Offeror's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of any Offer for the Assets, participation in the Selection Process and the Selection Day, and closing of the sale transaction contemplated by the Prospective Offeror's Proposed JVA Offer and Proposed Sale Order; or, (b) if the Prospective Offeror is an entity formed for the purpose of effecting the proposed sale transaction, a Qualified Offer must provide written

evidence acceptable to the Debtor of authorization and the approval by the equity holder(s) of such Prospective Offeror.

12.  <u>Other Requirements</u>. A Qualified Offer must:

a.     state that the Prospective Offeror agrees to serve as a backup Offeror (a "<u>Backup Offeror</u>") if such Offeror's Qualified Offer is selected on the Selection Day as the next highest or next best Offer after the Successful Offer (as defined in Section VII.C.1 below) for the Sale Assets (each such Offer, a "<u>Backup Offer</u>");

b.     state that the Offer represents a binding, good-faith, and *bona fide* offer to purchase the Sale Assets and is not subject to or conditioned on any further due diligence, except as set forth in the JVA Offer, and is irrevocable (i) until the selection of the Successful Offer in accordance with these Sale Procedures; or (ii) if the Offer is selected as a Successful Offer or as a Backup Offer, until the Backup Offer Expiration Date (as defined in Section VII.C.2 below);

c.     for any Offeror other than the Stalking Horse, state and acknowledge that the Prospective Offeror shall not be entitled to any offer protection or payment in connection with the submission of an Offer for the Sale Assets or otherwise participating in the Selection Process and the Selection Day;

d.     state that the Prospective Offeror is committed to closing the sale transaction contemplated in its Offer as soon as practicable (and in no event later than August 20, 2025);

e.     expressly waive any claim or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code in connection with making an offer for any of the Assets and/or otherwise participating in the Selection Day or the Sale Process;

f.     not contain any financing contingencies of any kind;

g.     certify that the Prospective Offeror did not collude with any other Offerors and is not otherwise a partnership, joint venture, or other entity in which more than one Offeror (or any affiliates of a Offeror) has a direct or indirect interest, unless consented to in writing by the Debtor;

h.     include a covenant to comply with the terms of these Sale Procedures and the Sale Procedures Order;

i.     contain such other information as may be reasonably requested by the Debtor; and

j.     contain a statement that the Prospective Offeror (i) consents to the core jurisdiction of the Court to enter any order related to the Sale

Procedures, the Selection Day, or any other relief requested in the Motion or granted in this Order; (ii) waives any right to a jury trial in connection with any disputes relating to the Sale Procedures, the Selection Day, or any other relief requested in the Motion or granted in this Order; and (iii) consents to the entry of a final order or judgment in connection with any disputes relating to the Sale Procedures, the Selection Day, or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

## B.      Offer Review Process

The Debtor will evaluate Offers and, based upon their evaluation of the content of each Offer, the Debtor may, as it deems appropriate in its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, engage in negotiations with any Prospective Offeror for the purposes of (i) curing any deficiencies in a Offer that prevents them from constituting a Qualified Offer, (ii) improving the terms of the Prospective Offeror's Offer, or (iii) otherwise promoting a more competitive Selection Process and Selection Day process with the ultimate goal of maximizing the value of the Sale Assets.

In evaluating a Offer, the Debtor may take into consideration any and all factors that the Debtor deems reasonably pertinent, including (i) the amount of the proposed consideration and proposed form of consideration; (ii) any Sale Assets included in, or excluded from, the Offer, including any Contracts to be assumed and assigned; (iii) the value to be provided to the Debtor under the Offer, including the net economic effect on the Debtor's estate (taking into account any Stalking Horse's rights with respect to any Stalking Horse Offer Protections); (iv) any benefits to the Debtor's estate from any assumption or waiver of liabilities contemplated by the Offer; (v) the structure of the proposed sale transaction and any attendant execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and general financial wherewithal to meet all commitments; and any required governmental approvals; and (vi) the impact of the proposed sale transaction on the Debtor's trade creditors and any other parties-in-interest.

The Debtor will evaluate timely Offers and will (i) determine which Offers qualify as Qualified Offers and (ii) notify Offerors whether they are Qualified Offerors **no later than June 25, 2025, at 3:00 p.m. (prevailing Eastern Time)** The Debtor will notify Offerors which Qualified Offer has been selected as the Baseline Offer and circulate one Baseline Offer no later than June 25, 2025 at 11:59 p.m. A Qualified Offeror shall not (without the consent of the Debtor), modify, amend, or withdraw its Qualified Offer, unless for the purposes of increasing the purchase price or otherwise improving the terms of the Qualified Offer, as determined by the Debtor in its reasonable business judgment.

## C.      Qualified Offerors

A Offer received for the Assets that the Debtor determines satisfies the requirements set forth in Sections V and VI.A above will qualify as a "Qualified Offer," and any Offeror that submits a Qualified Offer will qualify as a "Qualified Offeror."

The Debtor may, in its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, amend or waive the conditions precedent to qualifying as a

Qualified Offeror.

### D.        Stalking Horse Offer Protections

Other than any Stalking Horse Offer Protections, if any, no Offeror or any other party shall be entitled to any termination or "break-up" fee, expense reimbursement, or any other Selection Process protection in connection with the submission of a Offer for the Sale Assets or otherwise participating in the Selection Day or the Sale Process.

## VII.    THE SELECTION DAY

If the Debtor receives more than one Qualified Offer for the Assets, the Debtor will conduct an Selection Day for the Sale Assets. If any Offer, including any Stalking Horse Offer, is the only Qualified Offer received in respect of the Assets, the Debtor will not conduct an Selection Day for the Sale Assets, and the Debtor will seek approval of such Offer at the Sale Hearing.

The Selection Day, if required, will be conducted on **June 26, 2025, at 10:00 a.m**. (prevailing Eastern Time), at either (i) at the offices of Brown Rudnick, LLP, One Financial Center, Boston, MA 02111, or (ii) virtually or at such other date, time or location as designated by the Debtor. If the Debtor conducts the Selection Day virtually, the Debtor will provide instructions setting forth how to attend the Selection Day to the participants and other attendees via electronic mail. The Debtor will provide notice (via electronic mail or otherwise) of any change in the date, time or location of the Selection Day to Qualified Offerors and will cause publication of such change to occur on the docket (the "Docket"), as soon as reasonably practicable and in any event no later than 24 hours before the Selection Day.

If held, the Selection Day proceedings will (i) be transcribed and/or video recorded and include an open Selection Process in the presence of all Qualified Offerors, subject to reasonable limitations imposed by a virtual Selection Day platform to be evaluated and determined by the Debtor.

If the Debtor determines not to hold an Selection Day for some or all of the Sale Assets, the Debtor shall file with the Court and serve on the Sale Notice Parties a notice containing the following information (as applicable): (a) a statement thon the Selection Day for the relevant Sale Assets has been canceled; (b) the identity of the Successful Offeror; (c) a copy of the Successful Offer or a summary of the material terms of such Offer, including any assumption and assignment of Contracts contemplated thereby; and (d) the date, time, and location of the Sale Hearing.

### A.        Participants and Attendees

Only Qualified Offerors are eligible to participate in the Selection Day, subject to other limitations as may be reasonably imposed by the Debtor in accordance with these Sale Procedures. Qualified Offerors participating in the Selection Day must attend the Selection Day personally or through a duly authorized representative.  Subject to the Selection Day procedures set forth in section VII.B hereof, professionals and principals for the Debtor and each Qualified Offeror (including, its representative(s), if any) that has provided notice in writing of its intent to attend the Selection Day via electronic mail to counsel for the Debtor, Murphy & King, P.C. (Attn: Kathleen R. Cruickshank, KCruickshank@MurphyKing.com  at least one (1) day prior to the start of the Selection Day shall be able to attend and observe the Selection Day, along with any other parties the Debtor deem appropriate; *provided* that the Debtor may, in its sole discretion, establish a reasonable limit on the number of

representatives and/or professional advisors that may appear on behalf of a Qualified Offeror or otherwise attend the Selection Day.

Each Qualified Offeror participating in the Selection Day will be required to confirm in writing and on the record on the Selection Day that (i) it has not engaged in any collusion with respect to the Selection Day or the submission of any Offer for any of the Sale Assets and (ii) its Qualified Offer that gained the Qualified Offeror admission to participate in the Selection Day and each Qualified Offer submitted by the Qualified Offeror on the Selection Day is a binding, good-faith, and *bona fide* offer to purchase the Sale Assets identified in such Offers.

All Prospective Offerors and Qualified Offerors (including any Stalking Horse, Successful Offeror, and Backup Offeror) shall be deemed to have (i) agreed that all proceedings in the Court related to these Sale Procedures, the Selection Process, the Selection Day, any other relief requested in the Motion or granted pursuant to the Sale Procedures Order, or the construction or enforcement of any agreement or any other document directly relating to the sale transaction are core proceedings as described in 28 U.S.C. § 157; (ii) waived any right to a jury trial in connection with any disputes relating to these Sale Procedures, the Selection Process, the Selection Day, or the construction or enforcement of any agreement or any other document directly relating to the sale transaction; and (iii) consented to the entry of a final order or judgment by the Court in connection with any disputes relating to these Sale Procedures, the Selection Process, the Selection Day, or the construction or enforcement of any agreement or any other document relating directly to the sale transaction, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

## B.      Selection Day Procedures

The Selection Day shall be governed by the following procedures, subject to the Debtor's right to modify such procedures in its reasonable business judgment (in a manner consistent with its fiduciary duties):

1.    Baseline Offers. Prior to the commencement of the Selection Day, the Debtor will determine, in its reasonable business judgment the highest and/or best Qualified Offer submitted for the Sale Assets (such Qualified Offer, a "Baseline Offer"). Offers on the Selection Day shall commence at the amount of the Baseline Offer. **No later than June 25, 2025, at 11:59 p.m. (prevailing Eastern Time)**, the Debtor will provide all Qualified Offerors with (a) a notice identifying all the Qualified Offerors and which Qualified Offer is the Baseline Offer; and (b) a copy of the Baseline Offer.

2.    Minimum Higher Offers. Offers shall commence at the Baseline Offer. The first Higher Offer on the Selection Day shall be in an amount not less than the amount of the Baseline Offer plus the Minimum Higher Offer. At each round of Offers, Qualified Offerors may submit successive Offers higher than the Leading Offer (as defined below) from the prior round. During the Selection Day, the Debtor may, in its reasonable discretion, announce reductions to Minimum Higher Offers at any time.

Except as specifically set forth in the Sale Procedures, for the purpose of

evaluating the value of the consideration provided by any Offer subsequent to the Baseline Offer, the Debtor will, at each round of Offers, consider and/or give effect to (a) any Stalking Horse Offer Protections payable to any Stalking Horse under the Stalking Horse Agreement; (b) any additional liabilities to be assumed by a Qualified Offeror under the Offer, including whether such liabilities are secured or unsecured; and (c) any additional costs that may be imposed on the Debtor.

3.   Leading Offer. After the first round of Offers and between each subsequent round of Offers, the Debtor will announce the Offer that it believes to be the highest or otherwise best offer for the Sale Assets (each such Offer, a "Leading Offer") and describe the material terms thereof.

The Selection Day will include open Offers in the presence of all other Qualified Offerors. Each Qualified Offeror shall have the right to be present for all rounds of Offers and to submit additional Offers and make modifications to its Proposed JVA on the Selection Day to improve its Offer. The Debtor may, in its reasonable business judgment, negotiate with any and all Qualified Offerors participating in the Selection Day.

The Debtor shall have the right to determine, in its reasonable business judgment, which Offer is the highest or otherwise best Offer with respect to the Sale Assets and reject, at any time, without liability, any Offer that the Debtor deems to be inadequate, insufficient, or not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, these Sale Procedures, any order of the Court, or the best interests of the Debtor and its estate.

## C.   Selection Day Results

1.   Successful Offers. Immediately prior to the conclusion of the Selection Day, the Debtor will (a) determine which Qualified Offer constitutes the highest or otherwise best Offer for the Assets (such Offer, the "Successful Offer" and such Offeror, the "Successful Offeror") and which (if any) is the Backup Offer for the applicable Sale Assets, and (b) notify all Qualified Offerors participating on the Selection Day of the material terms of the Successful Offer and the Backup Offer.

2.   Backup Offers. Notwithstanding any language to the contrary contained in a Qualified Offer or in any improvements to the Qualified Offer during the Selection Day, by participating in the Selection Day, each Qualified Offeror shall be deemed to have consented to having its last and final offer being designated as a Backup Offer.

Immediately prior to the conclusion of the Selection Day, the Debtor will (a) determine, in a manner consistent with these Sale Procedures, which Qualified Offer is the Backup Offer; and (b) notify all Qualified Offerors on the Selection Day of the identity of the Backup Offeror and the amount

of the purchase price and other material terms of the Backup Offer.

Except as otherwise provided in any Stalking Horse Agreement, a Backup Offer will remain binding on the Backup Offeror until the later of (a) the first business day after the closing of a Sale with the Successful Offeror for the applicable Sale Assets and (b) 30 days after the Sale Hearing (such date, the "Backup Offer Expiration Date"). If the Sale with the Successful Offeror is terminated prior to the Backup Offer Expiration Date, the Backup Offeror will be deemed the new Successful Offeror for the applicable Sale Assets and shall be obligated to consummate the Backup Offer as if it were the Successful Offer on the Selection Day; *provided* that the Debtor may, in its reasonable business judgment (after providing notice to the Sale Notice Parties) elect not to pursue the sale transaction contemplated by the Backup Offer.

3.    Notice of Selection Day Results. Within two business days after the conclusion of the Selection Day, the Debtor will file with the Court and serve on the Sale Notice Parties a notice setting forth the results of the Selection Day (the "Notice of Selection Day Results"), which will (a) identify each Successful Offeror and the Backup Offeror; (b) include a copy of each Successful Offer and the Backup Offer or a summary of the material terms of such Offers; and (c) set forth the Supplemental Sale Objection Deadline (as defined in Section X.D below), the date, time, and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Selection Day.

**D.    Disposition of Good Faith Deposit**

1.    Prospective Offerors. Within five business days after the Debtor makes final determinations as to which Prospective Offerors qualify as Qualified Offerors, the Escrow Agent shall return to each Prospective Offeror that did not qualify as a Qualified Offeror, as confirmed by the Debtor, such Prospective Offeror's Good Faith Deposit. Upon the authorized return of a Prospective Offeror's Good Faith Deposit in accordance with this Section VII.D, the Offer of such Prospective Offeror shall be deemed terminated and no longer binding against the Prospective Offeror.

2.    Qualified Offerors.

a.    Forfeiture of Good Faith Deposit. The Good Faith Deposit of a Qualified Offeror shall be forfeited if the Qualified Offeror attempts to withdraw its Qualified Offer, except as may be permitted by these Sale Procedures, during the time the Qualified Offer remains binding and irrevocable under these Sale Procedures. The Debtor and its estate shall be entitled to retain the Qualified Offeror's Good Faith Deposit as partial compensation for the damages caused to the Debtor and its estate as a result of the Qualified Offeror's failure to adhere to the terms of these Sale Procedures and/or the relevant Qualified Offer. If a Qualified Offeror's

Good Faith Deposit is deemed forfeited, the Escrow Agent shall release such Good Faith Deposit by wire transfer of immediately available funds to an account designated by the Debtor within two business days after the Escrow Agent receives written notice by an authorized officer of the Debtor stating that the applicable Qualified Offeror has breached or otherwise failed to satisfy its obligations in accordance with these Sale Procedures and the applicable Qualified Offer.

b.      Return of Good Faith Deposit. With the exception of the Good Faith Deposits of the Successful Offeror and the Backup Offeror, the Escrow Agent shall return to any other Qualified Offeror the Qualified Offeror's Good Faith Deposit, within 5 business days after the conclusion of the Selection Day.

c.      Backup Offeror. Unless the Backup Offeror becomes the Successful Offeror, the Escrow Agent shall return the Backup Offeror's Good Faith deposit, within 5 business days after the occurrence of the applicable Backup Offer Expiration Date; *provided*, *however*, if the Backup Offeror becomes the Successful Offeror, its Good Faith Deposit shall be forfeited if it fails to consummate the sale transaction because of a breach that entitles the Debtor to terminate the applicable joint venture agreement with such Backup Offeror, and the Debtor and its estate shall be entitled to retain the Backup Offeror's Good Faith Deposit as partial compensation for the damages caused to the Debtor and its estate as a result of such breach. If a Backup Offeror's Good Faith Deposit is deemed forfeited, the Escrow Agent shall release such Good Faith Deposit by wire transfer of immediately available funds to an account designated by the Debtor within two business days after the Escrow Agent receives written notice by an authorized officer of the Debtor stating that the applicable Backup Offeror has breached or otherwise failed to satisfy its obligations in accordance with these Sale Procedures and the applicable Backup Offeror.

d.      Successful Offeror. At the closing of the sale transaction, the Successful Offeror shall be entitled to a credit against the purchase price in the amount of the Successful Offeror's Good Faith Deposit. The Good Faith Deposit of a Successful Offeror shall be forfeited if the Successful Offeror fails to consummate the sale transaction because of a breach that entitles the Debtor to terminate the applicable joint venture agreement with such Successful Offeror, and the Debtor and its estate shall be entitled to retain the Successful Offeror's Good Faith Deposit as partial compensation for the damages caused to the Debtor and its estate as a result of such breach. If a Successful Offeror's Good Faith Deposit is deemed forfeited, the Escrow Agent shall release such Good Faith Deposit by wire transfer of immediately available funds to an account designated by the Debtor within two business days after the Escrow Agent receives written notice by an authorized officer of the Debtor stating that the Successful Offeror has breached or otherwise failed to satisfy its obligations in accordance with these Sale Procedures and the Successful Offer.

## VIII.   SALE HEARING

The Successful Offer (including any Backup Offer that is subsequently deemed a Successful Offer) will be subject to Court approval. The hearing to approve the sale transaction consummated in accordance with these Sale Procedures (except in the case of the sale transaction contemplated by a Backup Offer that subsequently is deemed a Successful Offer) shall take place on _____, 2025, at [__] [_].m. (prevailing Eastern Time) (the "Sale Hearing") before the Honorable Christopher J. Panos, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Massachusetts, located at J.W. McCormack Post Office & Court House, 5 Post Office Square, 12th Floor, Boston, MA 02109

At the Sale Hearing, the Debtor will seek entry of an order (a "Sale Order") approving, among other things, the sale of the Sale Assets to the Successful Offeror.

The Debtor in its reasonable business judgment may (after consulting with the Successful Offeror), adjourn or reschedule the Sale Hearing with sufficient notice to the Sale Notice Parties, including by announcing such adjournment or rescheduling on the Selection Day or in Court on the date of the originally scheduled Sale Hearing.

The Debtor's presentation to the Court for approval of a selected Qualified Offer as a Successful Offer does not constitute the Debtor's acceptance of such Offer. The Debtor will have accepted a Successful Offer only when such Successful Offer has been approved by the Court at the Sale Hearing.

## IX.   RESERVATION OF RIGHTS TO MODIFY SALE PROCEDURES

The Debtor reserves the right to, in its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, (i) modify these Sale Procedures, including to, among other things, extend or waive deadlines or other terms and conditions set forth herein; adopt new rules and procedures for conducting the Offers, the Selection Process and the Selection Day so long as any such modifications are disclosed to all Prospective Offerors and Qualified Offerors, as applicable; or (ii) otherwise modify these Sale Procedures to further promote competitive Offers for and maximizing the of value of the Assets, in each case, to the extent not materially inconsistent with these Sale Procedures or the Sale Procedures Order. As provided in the Sale Procedures Order, the entry of the Sale Procedures Order or any of the Exhibits hereto, shall not (i) prevent the Debtor from, in the exercise of its fiduciary duties, pursuing or otherwise consummating an alternative transaction or (ii) obligate the Debtor to pursue or consummate any transaction with any Qualified Offeror.

## X.   NOTICING

### A.   Offer Notice Parties

Qualified Offers must be submitted in writing to the following parties (collectively, the "Offer Notice Parties"):

- Counsel for the Debtor: Murphy & King, P.C., 28 State Street, Suite 3101, Boston, Massachusetts 02109 (Attn: Kathleen R. Cruickshank (KCruickshank@MurphyKing.com); and Brown Rudnick LLP, On Financial Center, Boston, MA 02111, Attn: William R. Baldiga, Esq. (wbaldiga@brownrudnick.com); and

**B.      Sale Notice Parties**

The "Sale Notice Parties" shall include the following persons and entities:

- counsel to any Stalking Horse, if any;

- all parties who have expressed an interest in the acquiring the Sale Assets through a Joint Venture Agreement or an alternative transaction;

- all persons and entities known by the Debtor to have asserted any lien, claim, interest, or encumbrance in the Sale Assets (for whom identifying information and addresses are available to the Debtor);

- all relevant non-debtor parties (each, a "Counterparty") to any Contract that may be assumed or rejected in connection with the sale transaction;

- all of the Debtor's known creditors (for whom identifying information and addresses are available to the Debtor);

- any governmental authority known to have a claim against the Debtor in this Chapter 11 Case;

- the office of the U.S. Trustee;

- all applicable federal, state, and local taxing authorities, including the Internal Revenue Service;

- all of the parties entitled to notice pursuant to Bankruptcy Rule 2002; and

- all other parties as directed by the Court.

**C.      Sale Notice**

Within two business days after the entry of the Sale Procedures Order, the Debtor will file with the Court and serve on the Sale Notice Parties a notice (the "Sale Notice") setting forth (A) a description of the Sale Assets available for sale in accordance with these Sale Procedures; (B) the date, time, and location of the Selection Day and Sale Hearing; (C) the Sale Objection Deadline and Supplemental Sale Objection Deadline (each as defined in Section X.D below) and the procedures for filing such objections; and, (D) if applicable, a summary of the material terms of any Stalking Horse Agreement, including the terms and conditions of any Stalking Horse Offer Protections to be provided thereunder, as of the date of the Sale Notice.

**D.**        **Sale Objections and Supplemental Sale Objections**

Except objections to the conduct of the Selection Day, the Successful Offeror or the Backup Offeror, all objections to a sale of the Sale Assets, including (i) any objection to a sale of the Sale Assets free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and (ii) entry of any Sale Order (each such objection, a "<u>Sale Objection</u>") shall, by no later than **June 2, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Sale Objection Deadline</u>"), be filed with Court and served on the following parties (collectively, the "<u>Objection Notice Parties</u>"):

- o    Counsel for the Debtor: Murphy & King, P.C., 28 State Street, Suite 3101, Boston, MA 02109 (Attn: Kathleen R. Cruickshank (<u>KCruickshank@MurphyKing.com</u>); and Brown Rudnick LLP, One Financial Center, Boston, MA 01111, Attn: William R. Baldiga, Esq. (wbaldiga@brownrudnick.com);

- o    if applicable, counsel for any Stalking Horse or relevant Successful Offeror; and

- o    if applicable, counsel for any relevant Backup Offeror(s).

Following service of the Notice of Selection Day Results, Sale Notice Parties may object solely with respect to the conduct of the Selection Day and/or the Successful Offeror or Backup Offeror (each such objection, a "<u>Supplemental Sale Objection</u>") by **July 2, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Supplemental Sale Objection Deadline</u>").

**E.**        **Notices Regarding Assumption and Assignment of Contracts**

The Debtor will provide all notices regarding the proposed assumption and assignment of Contracts in accordance with the Assumption and Assignment Procedures set forth in the Sale Procedures Order.

**In Re: Water's Edge Limited Partnership**

**Bankruptcy No. 24-12445-CJP**


**EXHIBIT 2 TO**


**ORDER (I) APPROVING SALE PROCEDURES
FOR THE SALE OF THE SALE ASSETS OF THE DEBTOR, (II)
AUTHORIZING THE DEBTOR TO DESIGNATE A STALKING HORSE
OFFEROR AND TO SEEK APPROVAL OF STALKING HORSE OFFER
PROTECTIONS, (III) SCHEDULING A SELECTION DAY AND
APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV)
APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, (V)
SCHEDULING A SALE HEARING AND APPROVING THE FORM AND
MANNER OF NOTICE THEREOF, AND (V) GRANTING RELATED
RELIEF**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>**WATER'S EDGE LIMITED PARTNERSHIP,**<br><br><br>**Debtor** | **Chapter 11**<br><br>**Case No. 24-12445-CJP** |

**NOTICE OF SALE, SALE PROCEDURES, SELECTION DAY, SALE HEARING AND OTHER DEADLINES RELATED THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On May 7, 2025, Water's Edge Limited Partnership, the above-captioned debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case") filed with the United States Bankruptcy Court for the District of Massachusetts (the "Court") a motion [Docket No. ] (the "Motion") seeking entry of (a) an order (the "Sale Procedures Order") (i) approving sale procedures (the "Sale Procedures")[8] to be used in connection with the sale (each, a "Sale") of all, substantially all, or a portion of (A) the Debtor's assets (the "Sale Assets"); (ii) authorizing the Debtor to designate a Stalking Horse Offeror and provide Stalking Horse Offer Protections in accordance with the Sale Procedures; (iii) scheduling (A) a Selection Day for the Sale Assets (the "Selection Day") on and (B) a final hearing to consider approval of the proposed Sale (the "Sale Hearing"); (iv) approving the form and manner of notice of the Sale Procedures, the Selection Day and the Sale Hearing; (v) approving procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "Contracts") in connection with the Sale; (vi) approving the form and manner of notice to each relevant non-debtor counterparty to a Contract of the Debtor's calculation of the amount necessary to cure any defaults under an applicable Contract and certain other information regarding the potential assumption and assignment of Contracts in connection with a Sale; and (vii) granting related relief; and (b) an order (the "Sale Order") (i) authorizing the sale of the Sale Assets free and clear of all liens, claims, interests and encumbrances, except certain permitted encumbrances as determined by the Debtor and any Successful Offeror (as defined in Section VII.C.1 of the Sale Procedures), with liens to attach to the proceeds of the Sale; authorizing the assumption and assignment of certain Contracts in connection with approved Sale; and (iii) granting related relief.

On May _____, 2025, the Court entered the Sale Procedures Order [Docket No. [_]].

---

[8] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or the Sale Procedures, as applicable. Any summary of the Sale Procedures or the Sale Procedures Order (or any provision thereof) contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any inconsistency between any summary in this Sale Notice and the terms and conditions of either of the Sale Procedures or the Sale Procedures Order, the actual terms and conditions in those documents shall control.

## ASSETS FOR SALE

The Debtor intends to sell all, substantially all, or a portion of the Debtor's assets, which shall include the apartment complex known as Water's Edge Apartments located at 364, 370 and 388 Ocean Avenue, Revere, Massachusetts, together with some or all appurtenant interests and related personal property, fixtures, claims and other interests as may be identified by a prospective purchaser (collectively, the "Sale Assets")

A Prospective Offeror (as defined in Section III of the Sale Procedures) may Offer on the Sale Assets, subject to the conditions set forth therein.

The ability to undertake and consummate a sale of the Sale Assets shall be subject to competitive selection process, as set forth herein, and approval by the Court. In addition to any Stalking Horse Offer (as defined in the Motion), and as set forth herein, the Debtor will consider Offers for the Sale Assets from other parties.

Any party interested in submitting a Offer for any of the Sale Assets should contact the Debtor's counsel:

Kathleen R. Cruickshank, Esq.
Murphy & King, P.C.
28 State Street, Suite 3101
Boston, MA 02019
(617) 423-0400
kcruickshank@murphyking.com

William Baldiga, Esq.
Brown Rudnick LLP
One Financial Center
Boston, MA 02111
(617) 856-8586
wbaldiga@brownrudnick.com

## KEY DATES AND DEADLINES

### A.    Offer Deadline

Any Prospective Offeror that intends to attend the Selection Day must submit in writing to the Offer Notice Parties a Qualified Offer (as defined in Section VI.A of the Sale Procedures) **on or before June 24, 2025, at 2:00 p.m. (prevailing Eastern Time)** (the "Offer Deadline").

The Qualified Offer requirements are set forth in Sections VI.A of the Sale Procedures.

### B.    Selection Process and Selection Day

If the Debtor receives more than one Qualified Offer for the Sale Assets, the Debtor will conduct a Selection Process for the Sale Assets on the Selection Day. If any Offer, including any Stalking Horse Offer, is the only Qualified Offer received in respect of the Assets, the Debtor will not conduct anfor the Sale Assets, and the Debtor will seek approval of such Offer at the Sale Hearing.

The Selection Day, if required, will occur on **June 26, 2025, at 10:00 a.m**. (prevailing Eastern Time), at either (i) at the offices of Brown Rudnick, LLP, One Financial Center, Boston, MA 02111, or (ii) virtually or at such other date, time or location as designated by the Debtor. Subject to the Selection Process procedures set forth in section VII.B of the Sale Procedures, professionals and principals for the Debtor, each Qualified Offeror (including, its representative(s), if any) that has provided notice in writing of its intent to observe the Selection Process via electronic mail to counsel for the Debtor, Murphy & King, P.C., 28 State Street, Suite 3101, Boston, MA 02109 (Attn: Kathleen R. Cruickhank, kcruickshank@murphyking.com) at least one (1) day prior to the start of the Selection Process shall be able to attend and observe the Selection Process, along with any other parties the Debtor deems appropriate; *provided* that the Debtor may, in its sole discretion, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of a Qualified Offeror or otherwise attend the Selection Day. If the Debtor conducts the Selection Day virtually, the Debtor will provide instructions setting forth how to attend the Selection Day to the participants and other attendees via electronic mail. The Debtor will provide notice (via electronic mail or otherwise) of any change in the date, time or location of the Selection Day to Qualified Offerors and will cause publication of such change to occur on the docket (the "Docket"), which is accessible for a nominal fee at https://ecf.deb.uscourts.gov/, as soon as reasonably practicable and in any event no later than 24 hours before the Selection Day. If held, the Selection Day proceedings will (i) be transcribed and/or video recorded and (ii) include open Sale Process in the presence of all Qualified Offerors, subject to reasonable limitations imposed by a virtual platform to be evaluated and determined by the Debtor.

No later than two business days after the conclusion of the Selection Day, the Debtor will file with the Court and serve on the Sale Notice Parties (as defined in Section X.B of the Sale Procedures) a notice of the results of the Section Process, which will, among other things, (A) identify the Successful Offeror and Backup Offeror(s); (B) include a copy of the Successful Offer and the Backup Offer or a summary of the material terms of such Offers, including any assumption and assignment of Contracts contemplated thereby; and (C) set forth the date, time, and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Selection Process.

If the Debtor determines not to hold an Selection Day for some or all of the Sale Assets, the Debtor shall file with the Court and serve on the Sale Notice Parties a notice containing the following information (as applicable): (a) a statement that the Selection Day for the relevant Assets has been canceled; (b) the identity of the Successful Offeror; (c) a copy of the Successful Offer or a summary of the material terms of such Offer, including any assumption and assignment of Contracts contemplated thereby; and (d) the date, time, and location of the Sale Hearing.

### C.    Objection Deadlines

1.   Sale Objection Deadline. Except objections to the conduct of the Selection Process, the Successful Offeror or the Backup Offeror, all objections to a sale of the Sale Assets under the terms of the Joint Venture Agreement, including (a) any objection to a sale of the Sale Assets free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code and (b) entry of any Sale Order must be (i) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (ii) filed with the Court by **no later than June 2, 2025, at 4:00 p.m. (prevailing Eastern Time)** and served on the Objection Notice

Parties (as defined in Section X.D of the Sale Procedures).

2. <u>Supplemental Sale Objection Deadline</u>. Following service of the Notice of Selection Day Results, parties may object solely with respect to the particular terms of a proposed Sale or the Successful Offer. Any Supplemental Sale Objection must be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (b) filed with the Court by no later **July 2, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Supplemental Sale Objection Deadline</u>") and served on the Objection Notice Parties.

### D. Sale Hearing

The Sale Hearing shall take place on **____, 2025, at [_] [_].m. (prevailing Eastern Time)** before the Honorable Christopher J. Panos, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Massachusetts, located at 5 Post Office Square, Floor _____.

## <u>RESERVATION OF RIGHTS TO MODIFY SALE PROCEDURES</u>

The Debtor reserves the right to, in its reasonable business judgment, and in a manner consistent with their fiduciary duties and applicable law, (i) modify these Sale Procedures, including to, among other things, extend or waive deadlines or other terms and conditions set forth herein; adopt new rules and procedures for conducting the Selection Process and Selection Day so long as any such modifications are disclosed to all Prospective Offerors and Qualified Offerors, as applicable; or (ii) otherwise modify these Sale Procedures to further promote competitive Offers for and maximizing the of value of the Sale Assets, in each case, to the extent not materially inconsistent with the Sale Procedures or the Sale Procedures Order.

## <u>ADDITIONAL INFORMATION</u>

**FAILURE TO ADHERE TO THE SALE PROCEDURES, THE SALE PROCEDURES ORDER OR ANY OTHER APPLICABLE ORDER OF THE COURT ENTERED IN THE CHAPTER 11 CASE MAY RESULT IN THE REJECTION OF YOUR OFFER AND YOUR DISQUALIFICATION FROM PARTICIPATING IN THE SELECTION PROCESS FOR ANY THE SALE ASSETS.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE SALE PROCEDURES ORDER, INCLUDING THE FAILURE TO FILE ANY SUCH OBJECTION BY THE APPLICABLE OBJECTION DEADLINE, SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING, AT THE SALE HEARING OR THEREAFTER, ANY SUCH OBJECTION TO THE RELIEF REQUESTED IN THE MOTION, THE CONSUMMATION OF ANY APPLICABLE SALE, INCLUDING THE SALE OF ANY ASSETS TO A SUCCESSFUL OFFEROR FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO SECTION 363(f) OF THE BANKRUPTCY CODE OR THE TERMS OF ANY STALKING HORSE AGREEMENT OR OTHER ASSET PURCHASE AGREEMENT EXECUTED BY THE DEBTOR.**

Dated: May __, 2025                    Respectfully submitted,

                                       WATER'S EDGE LIMITED PARTNERSHIP,
                                       By its counsel,

                                       */s/ Kathleen R. Cruickshank*
                                       Kathleen R. Cruickshank (BBO #550675)
                                       Murphy & King, Professional Corporation
                                       28 State Street, Suite 3101
                                       Boston, Massachusetts  02109
                                       Telephone No.:  (617) 423-0400
                                       E-mail: Kcruickshank@murphyking.com

5

**In Re: Water's Edge Limited Partnership**

**Bankruptcy No. 24-12445-CJP**


**EXHIBIT 3 TO**


**ORDER (I) APPROVING SALE PROCEDURES
FOR THE SALE OF THE SALE ASSETS OF THE DEBTOR, (II)
AUTHORIZING THE DEBTOR TO DESIGNATE A STALKING HORSE
OFFEROR AND TO SEEK APPROVAL OF STALKING HORSE OFFER
PROTECTIONS, (III) SCHEDULING A SELECTION DAY AND
APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV)
APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, (V)
SCHEDULING A SALE HEARING AND APPROVING THE FORM AND
MANNER OF NOTICE THEREOF, AND (V) GRANTING RELATED
RELIEF**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**Eastern Division**

|  |  |
|---|---|
| In re:<br><br>**Water's Edge Limited Partnership**<br>**Debtor**<br>. | **Chapter 11**<br><br>**Case No. 24-12445-CJP** |

**NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION**
**AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN**
**CONNECTION WITH SALE OF SUBSTANTIALLY ALL ASSETS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On May 7, 2025, Water's Edge Limited Partnership, the above-captioned debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case") filed with the United States Bankruptcy Court for the District of Massachusetts (the "Court") a motion [Docket No._] (the "Motion") seeking entry of (a) an order (the "Sale Procedures Order") (i) approving Sale Procedures (the "Sale Procedures")[9] to be used in connection with the sale (each, a "Sale") of all, substantially all, or a portion of (A) the Debtor's assets (the "Sale Assets"); (ii) authorizing the Debtor to designate a Stalking Horse Offeror and provide Stalking Horse Offer Protections in accordance with the Sale Procedures; (iii) scheduling (A) an Selection Day of the Sale Assets (the "Selection Day") on and  (B) a final hearing  to consider  approval of the proposed  Sale  (the  "Sale Hearing"); (iv) approving the form and manner of notice of the Sale Procedures, the Selection Day and the Sale Hearing; (v) approving procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "Contracts") in connection with the Sale; (vi) approving the form and manner of notice to each relevant non-debtor counterparty to a Contract of the Debtor's calculation of the amount necessary to cure any defaults under an applicable Contract and certain other information regarding the potential assumption and assignment of Contracts in connection  with a Sale; and (vii) granting related relief; and (b) an order (the "Sale Order") (i) authorizing the sale of the Sale Assets free and clear of all liens, claims, interests and encumbrances, except certain permitted encumbrances as determined by the Debtor and any Successful Offeror (as defined in Section VII.C.1 of the  Sale Procedures), with liens  to attach  to the proceeds  of the  Sale; (ii) authorizing the assumption and assignment of certain Contracts in connection with approved Sale; and (iii) granting related relief.

On May [_____], 2025, the Court entered the Sale Procedures Order [Docket No. _].

---

[9] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or the Sale Procedures, as applicable. Any summary of the Sale Procedures or the Sale Procedures Order (or any provision thereof) contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any inconsistency between any summary in this Sale Notice and the terms and conditions of either of the Sale Procedures or the Sale Procedures Order, the actual terms and conditions in those documents shall control.

**You are receiving this Notice because you may be a Counterparty to a Contract of the Debtor that may be assumed and assigned to the Successful Offeror for the Sale Assets.**

## CURE COSTS

In accordance with the Assumption and Assignment Procedures and the Sale Procedures Order, the Debtor may, in connection with the Sale with the Successful Offeror at the Selection Day, seek to assume and assign to the Successful Offeror certain of their Contracts. Each of the Contracts that potentially could be assumed and assigned in connection with the Sale, together with the Debtor's calculation of Cure Costs with respect to such Contracts, is set forth on Schedule 1 hereto. The inclusion of any Contract on Schedule 1 does not constitute an admission by the Debtor, any Stalking Horse Offeror, any Successful Offeror, or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code or require or guarantee that such Contract ultimately will be assumed or assigned. Moreover, if you are party to a Contract with one of the Subsidiaries and the Subsidiaries do not subsequently file bankruptcy proceedings, the rights provided by section 365 of the Bankruptcy Code, including the right to cure payment will not apply. All rights of the Debtor with respect thereto are reserved.

In addition, to the extent that any of the Cure Costs set forth on Schedule 1 do not reflect postpetition payments that have been made by the Debtor of applicable Cure Costs or (ii) any payments that are made by the Debtor in respect of such Cure Costs after the filing of this Notice, the respective amounts required to be paid to cure any existing defaults under the applicable Contracts shall be reduced by any such corresponding postpetition payments, and the Debtor reserves its right to update the Cure Costs set forth on Schedule 1 accordingly, either by filing a supplemental notice with the Court or by written notice to the applicable Counterparty.

## CURE OBJECTIONS

### A.    Cure Objection Deadline

Any Counterparty that wishes to object to the Debtor's proposed Cure Costs (each such objection, a "Cure Objection") must file with the Court by **no later than June 2, 2025, at 4:00 p.m. (prevailing Eastern Time)** and serve on the Objection Notice Parties (as defined in Section X.D of the Sale Procedures) its Cure Objection, which must be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof.

### B.    Resolution of Cure Objections

Pursuant to the Sale Procedures Order, the Debtor, any Stalking Horse Offeror or Successful Offeror (if applicable) and the objecting Counterparty must first confer in good faith to attempt to resolve the Cure Objection without Court intervention. If the parties are unable to consensually resolve the Cure Objection prior to the commencement of the Sale Hearing, the Court shall make all necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing scheduled pursuant to the following paragraph. If a Cure Objection is resolved in a manner that is not in the best interests of the Debtor and its estate, whether or not such resolution occurs prior to or after the closing of the Sale, the Debtor and the Successful Offeror may determine that any Contract subject to such resolved Cure Objection no longer will be assumed and assigned; *provided, that,* in the case of an unexpired lease of non-residential real property, such

determination shall be prior to the expiration of the applicable deadline to assume or reject unexpired leases under section 365(d)(4) of the Bankruptcy Code. All other objections to the Debtor's proposed assumption and assignment of the Debtor's right, title, and interest in, to, and under a Contract shall be heard at the Sale Hearing.

### C.      Adjourned Cure Objections

If a timely filed Cure Objection cannot otherwise be resolved by the parties, the Cure Objection may be heard at the Sale Hearing, or, at the option of the Debtor and the Successful Offeror, be adjourned to a subsequent hearing (each such Cure Objection, an "Adjourned Cure Objection"). Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the applicable Contract that was the subject of such Adjourned Cure Objection shall, at the election of the Successful Offeror, and subject to the Debtor's rights set forth in paragraph 28 of the Sale Procedures Order, be deemed assumed and assigned to the Successful Offeror as of the closing date of the Sale.

IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY CURE OBJECTION, THE COUNTERPARTY FOREVER SHALL BE BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO THE COST TO CURE ANY DEFAULTS UNDER THE APPLICABLE CONTRACT, AND THE CURE COSTS SET FORTH ON SCHEDULE 1 HERETO SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE CONTRACT AND SATISFY THE REQUIREMENTS OF SECTION 365(b) OF THE BANKRUPTCY CODE, AND THE COUNTERPARTY TO THE CONTRACT SHALL BE DEEMED BOUND BY AND TO HAVE CONSENTED TO THE CURE COSTS.

## NOTICE OF SELECTION PROCESS RESULTS

The Selection Day, if required, will be conducted on **June 26, 2025, at 10:00 a.m**. (prevailing Eastern Time), at either (i) at the offices of Brown Rudnick, LP, One Financial Center, Boston, MA 02111, or (ii) virtually or at such other date, time or location as designated by the Debtor.  Subject to the Selection Process procedures set forth in section VII.B of the Sale Procedures, professionals and principals for the Debtor, each Qualified Offeror (including, its representative(s), if any),\and any creditor of the Debtor that has provided notice in writing of its intent to observe the Selection Day via electronic mail to counsel for the Debtor, Murphy & King, P.C. 28 State Street, Suite 3101, Boston, MA (Attn: Kathleen R. Cruickshank, kcruickshank@murphyking.com) at least one (1) day prior to the start of the Selection Process shall be able to attend and observe the Selection Process, along with any other parties the Debtor deem appropriate; *provided* that the Debtor may, in its sole discretion, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of a Qualified Offeror or otherwise attend the Process. If the Debtor conducts the Selection Day virtually, the Debtor will provide instructions setting forth how to attend the Selection Day to the participants and other attendees via electronic mail. The Debtor will provide notice (via electronic mail or otherwise) of any change in the date, time or location of the Selection Day to Qualified Offerors and will cause publication of such change to occur on the docket (the "Docket"), which is accessible for a nominal fee at https://ecf.deb.uscourts.gov/, as soon as reasonably practicable and in any event no later than 24 hours before the Selection Day. If held, the Selection Day proceedings will (i) be transcribed and/or video recorded and (ii) include open Selection Process in the presence of

all Qualified Offerors, subject to reasonable limitations imposed by a virtual platform to be evaluated and determined by the Debtor.

Two business days after the conclusion of the Selection Day, the Debtor will file with the Court and serve on the Sale Notice Parties (as defined in Section X.B of the Sale Procedures) a notice of the results of the Selection Day, which will, among other things, (A) identify the Successful Offeror(s) and Backup Offeror(s); (B) include a copy of each Successful Offer and each Backup Offer or a summary of the material terms of such Offers; and (C) set forth the date, time, and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Selection Day.

## ADEQUATE ASSURANCE OBJECTIONS

### A.    Adequate Assurance Objection Deadline

Any Counterparty to a Contract that wishes to object to the proposed assumption and assignment of the Contract, the subject of which objection is the proposed form of adequate assurance of future performance of the Successful Offeror (or any other relevant assignee), (each such objection, an "Adequate Assurance Objection"), shall file with the Court and serve on the Objection Notice Parties: any Adequate Assurance Objection by **no later than July 2, 2025 at 4:00 p.m.** Any Adequate Assurance Objection must state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof.

### B.    Resolution of Adequate Assurance Objections

Pursuant to the Sale Procedures Order, the Debtor, the Successful Offeror and the objecting Counterparty must first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention. If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, the Adequate Assurance Objection and all issues of adequate assurance of future performance of the Successful Offeror (or any other relevant assignee) shall be determined by the Court at the Sale Hearing or, at the option of the Debtor and the Successful Offeror, be adjourned to a subsequent hearing, with notice to the party having filed the Adequate Assurance Objection.

IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY FOREVER SHALL BE BARRED FROM ASSERTING ANY OBJECTION TO THE ASSUMPTION AND/OR ASSIGNMENT OF THE APPLICABLE CONTRACT WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE. THE APPLICABLE SUCCESSFUL OFFEROR SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE CONTRACT IN ACCORDANCE WITH BANKRUPTCY CODE SECTIONS 365(b)(1)(C), 365(f)(2)(B) AND, IF APPLICABLE, 365(b)(3), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR ANY OTHER DOCUMENT.

## SALE HEARING

The Sale Hearing shall take place on _____, 2025, at [_] [_].m. (prevailing Eastern Time) before the Honorable Christopher J. Panos, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Massachusetts, located at 5 Post Office Square, 12th Floor,

Courtroom _] Boston, Massachusetts 02109.

Dated: May _____, 2025                    Respectfully submitted,

                                          WATER'S EDGE LIMITED PARTNERSHIP,
                                          By its counsel,

                                          _/s/ Kathleen R. Cruickshank_
                                          Kathleen R. Cruickshank (BBO #550675)
                                          Murphy & King, Professional Corporation
                                          28 State Street, Suite 3101
                                          Boston, Massachusetts  02109
                                          Telephone No.:  (617) 423-0400
                                          E-mail: Kcruickshank@murphyking.com

## **Schedule 1**

**[To Be Inserted by Debtor]**