**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**(Eastern Division)**

---

In re:

**WATER'S EDGE LIMITED**
**PARTNERSHIP,**

**Debtor**

Chapter 11

**Case No. 24-12445-CJP**

---

**ORDER (I) APPROVING SALE PROCEDURES**
**FOR THE SALE OF THE SALE ASSETS OF THE DEBTOR, (II)**
**AUTHORIZING THE DEBTOR TO DESIGNATE A STALKING**
**HORSE OFFEROR AND TO SEEK APPROVAL OF STALKING**
**HORSE OFFER PROTECTIONS, (III) SCHEDULING A**
**SELECTION DAY AND APPROVING THE FORM AND MANNER**
**OF NOTICE THEREOF, (IV) APPROVING ASSUMPTION AND**
**ASSIGNMENT PROCEDURES, (V) SCHEDULING A SALE**
**HEARING AND APPROVING THE FORM AND**
**MANNER OF NOTICE THEREOF, AND (VI) GRANTING RELATED RELIEF**

Upon consideration of the *Debtor's Motion for Entry of Orders (I)(A) Approving Sale Procedures for the Sale of the Assets of the Debtor; (B) Authorizing the Debtor to Designate a Stalking Horse Offeror and to Seek Approval of Stalking Horse Offer Protections; (C) Scheduling a Selection Day and Approving the Form and Manner of Notice Thereof, Approving Assumption and Assignment Procedures, (D) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (E) Granting Related Relief; and (II)(A) Approving the Sale Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 241] (the "Motion")[1] filed by Water's Edge Limited Partnership, the debtor and debtor-in-possession (the "Debtor") in the above-

---
[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or in the Sale Procedures, as applicable.

captioned chapter 11 case (the "Chapter 11 Case"); and the Court having reviewed the Motion and the responses to the Motion filed by the United States Trustee [Docket No. 260], the City of Revere [Docket No. 259], and Carabetta Enterprises, Inc. [Docket No. 261] and considered the record in this Bankruptcy Case; and the Court having considered the statements of counsel and the evidence adduced with respect to the Motion at hearings before the Court on May 15, 2025 and May 19, 2025 to consider certain of the relief requested in the Motion (the "Sale Procedures Hearing"); and after due deliberation, this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, and its creditors, and the Debtor having demonstrated good, sufficient, and sound business justifications for the relief granted herein;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28  U.S.C. § 157(b). The predicates for the relief granted herein are sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

B.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Notice of the Motion, the Sale Procedures Hearing, and the proposed entry of this Sale Procedures Order was sufficient under the circumstances of the Chapter 11 Case, and such notice complied with all applicable requirements of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules.  Accordingly, no other or further notice of the Motion, the Sale Procedures Hearing, or this Sale Procedures Order need be provided.

D.    The sale procedures as revised, substantially in the form attached hereto as

2

**Exhibit 1** (the "Sale Procedures") and incorporated herein by reference as if fully set forth in this Sale Procedures Order, are fair, reasonable, and appropriate and are designed to maximize the value of the proceeds of the sale of all, substantially all, or a portion of the Sale Assets.

E.    The procedures set forth herein regarding the Debtor's assumption and assignment of executory contracts and unexpired leases (collectively, the "Contracts") in connection with a sale of the Sale Assets (the "Assumption and Assignment Procedures") are fair, reasonable, and appropriate and comply with the provisions of section 365 of the Bankruptcy Code and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

F.    The Debtor has articulated good and sufficient business reasons for the Court to approve the relief requested in the Motion, including, without limitation, the (i) the Sale Procedures (including the procedures for the designation of the Stalking Horse Offeror); (ii) the form and manner of notice of the Sale Procedures, the selection process of the joint venture partner for the Sale Assets (the "Sale Process"), and the final hearing to consider approval of a sale of the Sale Assets (the "Sale Hearing"), substantially in the form attached hereto as **Exhibit 2** (the "Sale Notice"); (iii) the form and manner of notice to each relevant non-debtor counterparty to a Contract (each, a "Counterparty") of (a) the Debtor's calculation of the amount necessary to cure any defaults under an applicable Contract (the "Cure Costs") and (b) certain other information regarding the potential assumption and assignment of Contracts in connection with the sale of the Assets, substantially in the form attached hereto as **Exhibit 3** (the "Assumption and Assignment Notice"); and (iv) the Assumption and Assignment Procedures.  Such good and sufficient business reasons, which were set forth in the Motion, on the record of this Chapter 11 Case and on the record at the Sale Procedures Hearing, are

incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

G.      The Sale Procedures are reasonably designed to promote active Offers at and participation in the Selection Process on the Selection Day to ensure that the highest or otherwise best value is generated for the Sale Assets.

H.      The Debtor is authorized to select a Stalking Horse Offeror, in accordance with the Sale Procedures, to file a Stalking Horse Motion, and to seek entry of a Stalking Horse Order, approving among other things Stalking Horse Offer Protections, at the Stalking Horse Hearing.

I.      Good and sufficient notice of the relief sought in the Motion has been provided under the circumstances, and no other or further notice is required except as set forth in the Sale Procedures and the Assumption and Assignment Procedures. A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties-in-interest.

J.      The Sale Notice and the Assumption and Assignment Notice are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Selection Day, the Sale Hearing, the Sale Procedures, the Assumption and Assignment Procedures, the Debtor's proposed Cure Costs, any proposed assumption of a Contract in connection with a sale of the Sale Assets, and all relevant and important dates and deadlines with respect to the foregoing, and no other or further notice of the Section Date, the sale of the Sale Assets, or the assumption and assignment of Contracts in connection therewith shall be required.

K.      The findings of fact and conclusions of law herein constitute the Court's

findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made

applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are

conclusions of law, they are adopted as such. To the extent any conclusions of law are findings

of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

       1.     The Motion is GRANTED to the extent set forth herein.

       2.     All objections to the relief granted in this Order that have not been withdrawn,

waived, or settled, and all reservations of rights included therein, are hereby overruled, and

denied on the merits with prejudice.

**A.**      **The Timeline for the Sale**

       3.     The Debtor is authorized to proceed with the sale transaction in accordance

with the Sale Procedures and is authorized to take any and all actions reasonably necessary

or appropriate to implement the Sale Procedures in accordance with the following timeline:

| Deadline | Action |
| --- | --- |
| **Two business days after the entry of the Bidding Procedures Order** | Deadline for Debtor to file and serve Sale Notice |
| **June 19, 2025, at 4:00 p.m. (prevailing Eastern Time)** | Deadline for JVA Offers |
| **June 20, 2025 at 5:00 p.m. (prevailing Eastern Time)** | Deadline for Qualified Offer Designation |
| **June 23, 2025 at 4:00 p.m. (prevailing Eastern Time)** | Deadline for Sale Objections |
| **June 23, 2025 at 5:00 p.m. (prevailing Eastern Time)** | Deadline for Baseline Offer/Stalking Horse Designation |
| **June 25, 2025 at 1:00 p.m. (prevailing Eastern Time)** | Hearing on Stalking Horse Designation |
| **June 26, 2025, at 10:00 a.m. (prevailing Eastern Time)** | Selection Day |
| **One business day after the conclusion of Selection Day** | Deadline for Debtor to file and serve Notice of Selection |
| **July 2, 2025, at 4:00 p.m. (prevailing Eastern Time)** | Deadline for Supplemental Sale Objections |

| July 8, 2025 at noon (prevailing Eastern Time) | Sale Hearing |
|---|---|
| July 15, 2025 | Target Date to file Plan and Disclosure Statement and Cure Notices |
| August 11, 2025 at 4:00 p.m. (prevailing Eastern Time) | Deadline for Objections to Disclosure Statement, Confirmation, Cure/Adequate Assurance and for Casting Ballots |
| August 19, 2025, at 10:00 a.m. (prevailing Eastern Time) | Hearing on Disclosure Statement and Plan Confirmation |

### B. The Sale Procedures

4. The Sale Procedures attached hereto as **Exhibit 1** are hereby approved in their entirety and are incorporated by reference as if fully set forth herein. The Sale Procedures shall govern the selection of the Stalking Horse Offeror, Offers and proceedings related to the Selection Day and the sale of the Sale Assets. The failure to specifically include or reference a particular provision of the Sale Procedures in this Sale Procedures Order shall not diminish or impair the effectiveness of such provision.

5. Any exercise of discretion by the Debtor set forth in the Bidding Procedures in consultation with the Consultation Parties shall be subject to Court review following objection by an interested party and request for an emergency hearing.

6. Subject to this Order and the Sale Procedures, the Debtor, in the exercise of its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, shall have the right to: (i) select a Stalking Horse Offeror and provide such Stalking Horse Offeror with Stalking Horse Offer Protections; (ii) determine which Offerors qualify as "Qualified Offerors," and which Offers qualify as "Qualified Offers; (iii) make a final determination as to whether the Debtor will conduct a Selection Process on the Selection Day; (iv) select the Baseline Offer for the Assets; (v) determine the amount of each Minimum Higher Offer; (vi) determine the Leading Offer for the Assets; (vii) determine which

6

Qualified Offer is the highest or otherwise best Offer for the Assets (such Qualified Offer, a "Successful Offer") and which Qualified Offer is the next highest and next best Offer after the Successful Offer for the Assets (such Qualified Offer, a "Backup Offer"); (viii) reject any Offer that is (a) inadequate or insufficient; (b) not in conformity with the requirements of this Order or any other applicable order of the Court, the Sale Procedures, the Bankruptcy Code, or other applicable law; or (c) contrary to the best interests of the Debtor and its estate; (ix) adjourn or cancel the Selection Day in accordance with the Sale Procedures; and (x) adjourn the Sale Hearing in accordance with the Sale Procedures.

7.     In accordance with and subject to the Sale Procedures, the Debtor, in the exercise of its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, shall have the right to modify the Sale Procedures, including to (i) extend or waive deadlines or other terms and conditions set forth herein or therein; (ii) adopt new rules and procedures for conducting the Selection Process and the Selection Day so long as any such modifications are disclosed to all Prospective Offerors and Qualified Offerors; and (iii) otherwise modify the Sale Procedures to further promote competitive Offers for and maximizing the value of the Assets.

**C.     Stalking Horse Agreement and Stalking Horse Offer Protections**

8.     The Stalking Horse Designation Procedures are approved, and the Debtor is authorized to seek approval of a Stalking Horse Agreement with a Stalking Horse Offeror and provide Stalking Horse Offer Protections, in accordance with the Sale Procedures. The Debtor may designate a Stalking Horse Offeror **no later than June 23, 2025, at 5:00 p.m. (prevailing Eastern Time)**, which deadline may be extended by the Debtor.

9.     To the extent the Debtor files a Stalking Horse Motion on or before June 23,

2025, the Court shall hold a hearing to consider the Stalking Horse Motion **(the "<u>Stalking Horse Hearing</u>") on June 25, 2025, at 1:00 p.m. (prevailing Eastern Time). Objections to the Stalking Horse Designation may be raised at the Stalking Horse Hearing.**

**D.      Offer Deadline and Selection Day**

10.      Any Prospective Offeror that intends to participate in the Selection Process on the Selection Day must submit in writing to the Debtor's Counsel (contact information in Sections I and III of the Sale Procedures) a Qualified Offer on or before **June 19, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Offer Deadline</u>").

11.      If the Debtor receives more than one Qualified Offer for the Assets, the Debtor shall conduct a Selection Process for the Sale Assets.

12.      The Selection Day, if required, will be conducted on **June 26, 2025, at 10:00 a.m**. (prevailing Eastern Time), at either (i) at the offices of Brown Rudnick, LLP, One Financial Center, Boston, MA 02111, or (ii) virtually or at such other date, time or location as designated by the Debtor. Subject to the Selection Process procedures set forth in section VII.B of the Sale Procedures, professionals and principals for the Debtor, each Qualified Offeror (including, its representative(s), if any), that has provided notice in writing of its intent to observe the Selection Process on the Selection Day via electronic mail to counsel for the Debtor, Murphy & King, P.C., (Attn: Kathleen R. Cruickshank, KCruickshank@MurphyKing.com) at least one (1) day prior to the start of the Selection Process on the Selection Day shall be able to attend and observe the Selection Day, along with any other parties the Debtor deems appropriate; *provided* that the Debtor may, in its sole discretion, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of a Qualified Offeror or otherwise attend the Selection

Day. If the Debtor conducts the Selection Day virtually, the Debtor will provide instructions setting forth how to attend the Selection Day to the participants and other attendees via electronic mail. The Debtor will provide notice (via electronic mail or otherwise) of any change in the date, time or location of the Selection Day to Qualified Offerors and will cause publication of such change to occur on the docket as soon as reasonably practicable and in any event no later than 24 hours before the Selection Day. If held, the Selection Day proceedings will (i) be transcribed and/or video recorded and (ii) include an open Selection Process in the presence of all Qualified Offerors, subject to reasonable limitations imposed by a virtual platform to be evaluated and determined by the Debtor.

13.     If the Debtor determines not to hold a Selection Process on the Selection Day, the Debtor shall file with the Court and serve on the Sale Notice Parties (as defined in Section X.B of the Sale Procedures) a notice containing the following information (as applicable): (i) a statement that the Selection Day has been canceled; (ii) the identity of the Successful Offeror; (iii) a copy of the Successful Offer; and (iv) the date, time, and location of the Sale Hearing.

14.     Only a Qualified Offeror that has submitted a Qualified Offer shall be eligible to participate in the Selection Process on the Selection Day, subject to any other limitations as the Debtor may reasonably impose in accordance with the Sale Procedures. Qualified Offerors participating on the Selection Day must attend the Selection Day personally or through a duly authorized representative.

15.     Each Qualified Offeror participating in the Selection Day shall confirm in writing on the record that (i) it has not engaged in any collusion with respect to the Selection or the submission of any Offer for any of the Sale Assets; and (ii) the Qualified Offer that

9

gained the Qualified Offeror admission to participate in the Selection Process on the Selection

Day and each Qualified Offer submitted by the Qualified Offeror for the Selection Process

on the Selection Day constitutes a binding, good-faith, and *bona fide* offer to purchase the

Sale Assets identified in such Offers.

16.     Within one business days after the conclusion of the Selection Process on the

Selection Day, the Debtor shall file with the Court and serve on the Sale Notice Parties a notice

setting forth the results of the Selection Process (the "Notice of Selection Day Results").  The

Notice of Selection Day Results will (i) identify each Successful Offeror and each Backup

Offeror; (ii) include a copy of each Successful Offer and each Backup Offer; and (iii) set forth

the date, time, and location of the Sale Hearing and any other relevant dates or other

information necessary to reasonably apprise the Sale Notice Parties of the outcome of the

Selection Process on the Selection Day.

**E.      Sale Noticing and Objection Procedures**

17.     Except objections to the conduct of the Selection Process on the Selection

Day, the Successful Offeror or the Backup Offeror, all objections to the sale of the Sale Assets

(each, a "Sale Objection"), including (i) any objection to the sale of any Assets free and clear

of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy

Code to a Successful Offeror and/or a Backup Offeror (as applicable) and (ii) any objection

to the entry of any Sale Order shall be (i) in writing and state, with specificity, the legal and

factual bases thereof and include any appropriate documentation in support thereof; (ii) filed

with the Court by **no later than June 23, 2025, at 4:00 p.m. (prevailing Eastern Time)**

(the "Sale Objection Deadline"); and (iii) served on the Objection Notice Parties (as defined

in Section X.D of the Sale Procedures).

18.     Following service of the Notice of Selection Day Results, parties may file an objection solely with respect to the conduct of the Selection Process on the Selection Day, the Successful Offeror, the Backup Offeror, or the Sale to the Successful Offeror or the Backup Offeror (each such objection, a "Supplemental Sale Objection"). Any Supplemental Sale Objection shall be (i) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (ii) filed with the Court by **no later than July 2, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Supplemental Sale Objection Deadline"); and (iii) served on the Objection Notice Parties.

19.     Any party who fails to file and serve a timely Sale Objection or Supplemental Sale Objection in accordance with the terms of this Order shall be forever barred from asserting, at the Sale Hearing or thereafter, any Sale Objection or Supplemental Sale Objection to the relief requested in the Motion, or to the consummation or performance of the sale of the Assets, including the transfer of Assets to the Successful Offeror free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" to such sale for purposes of section 363(f) of the Bankruptcy Code.

20.     Consummation of the sale of the Sale Assets shall be subject to Court approval at the Sale Hearing of the sale of all, substantially all, or a portion of the Sale Assets to the Successful Offeror(s) and shall be held before the Court on **July 8, 2025, at noon (prevailing Eastern Time)**; *provided, that*, the Debtor may seek an adjournment or rescheduling of the Sale Hearing without notice, consistent with the Sale Procedures and this Order. At the Sale Hearing, the Debtor will seek Bankruptcy Court approval of the Successful Offer(s) and the Backup Offer(s) (if any). Unless the Bankruptcy Court orders otherwise, the Sale Hearing

shall be an evidentiary hearing on matters relating to the sale transaction and there will be no

further offers considered at the Sale Hearing. If the Successful Offeror(s) cannot or refuses

to consummate the Sale(s) because of the breach or failure on the part of such Successful

Offeror, the Debtor may, in accordance with the Sale Procedures, designate the Backup Offer

to be the new Successful Offer and the Backup Offeror to be the new Successful Offeror, and

the Debtor shall be authorized, but not required, to consummate the applicable transaction

with the Backup Offeror without further order of the Bankruptcy Court.

21.    The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is

approved, and no other or further notice of the proposed sale of the Assets, the Selection Day,

the Sale Hearing, the Sale Objection Deadline, or the Supplemental Sale Objection Deadline

shall be required if the Debtor serves and publishes the Sale Notice in the manner provided in

the Sale Procedures and this Order.

22.    By no later than two business days after the entry of this Order, the Debtor

shall file the Sale Notice with the Court and serve the Sale Notice on the Sale Notice Parties.

**F.      Assumption and Assignment Procedures**

23.    The Assumption and Assignment Notice, substantially in the form attached

hereto as **Exhibit 3**, is approved, and no other or further notice of the Debtor's intention

to assume or assign the Contracts or of the Debtor's proposed Cure Costs is necessary or

required.

24.    **By no later than July 15, 2025**, the Debtor shall file with the Court, serve on

the applicable Counterparties (and counsel, if known), and cause to be published on the

Docket, the Assumption and Assignment Notice.

25.    Any objection to the Debtor's proposed Cure Costs (each such objection, a

"Cure Objection") shall be (a) in writing and state, with specificity, the legal and factual bases

thereof and include any appropriate documentation in support thereof; (b) filed with the Court

by **no later than August 11, 2025, at 4:00 p.m. (prevailing Eastern Time)**; and (c) served

on the Objection Notice Parties.

26.     The Debtor, any Stalking Horse Offeror or, as applicable, the Successful

Offeror, and the objecting Counterparty shall first confer in good faith to attempt to resolve

the Cure Objection without Court intervention. If the parties are unable to consensually

resolve the Cure Objection prior to the commencement of the Sale Hearing, the Court will make all

necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing

scheduled pursuant to this Order. If a Cure Objection is resolved in a manner that is not in the best

interests of the Debtor and its estate, whether or not such resolution occurs prior to or after the closing

of the sale of the Assets, the Debtor, any Stalking Horse Offeror or, as applicable, the Successful

Offeror, may determine that any Contract subject to such resolved Cure Objection no longer will be

assumed and assigned in connection with the sale of the Sale Assets (subject to the terms of the

applicable joint venture agreement or similar agreement); *provided* that in the case of an unexpired

lease of non-residential real property, such determination shall be prior to the expiration of the

applicable deadline to assume or reject unexpired leases under section 365(d)(4) of the Bankruptcy

Code. All other objections to the Debtor's proposed assumption and assignment of the Debtor's right,

title, and interest in, to, and under a Contract shall be heard at the Confirmation hearing on

**August 19, 2025 at 10:00 a.m., prevailing Eastern Time** (the "Confirmation Hearing")**.**

27.     If a timely Cure Objection cannot otherwise be resolved by the parties, the

Cure Objection may be heard at the Confirmation Hearing or, at the option of the Debtor and

the Successful Offeror, be adjourned to a subsequent hearing, with notice to the party having

filed the Cure Objection (each such Cure Objection, an "Adjourned Cure Objection"). An

Adjourned Cure Objection may be resolved after the closing date of the sale of the Assets. Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the Contract that was the subject of such Adjourned Cure Objection shall, at the election of the Successful Offeror, and subject to the Debtor's rights set forth in paragraph 28 of this Order, be deemed assumed and assigned to the Successful Offeror as of the closing date of the sale of the Assets.

28.     If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Cure Objection, the Counterparty forever shall be barred from asserting any objection with regard to the cost to cure any defaults under the applicable Contract. The Cure Costs set forth in the applicable Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Contract and satisfy the requirements of section 365(b) of the Bankruptcy Code, and the Counterparty to the Contract shall be bound by and deemed to have consented to the Cure Costs.

29.     In accordance with the Sale Procedures, Qualified Offers shall be accompanied by Adequate Assurance Information (as defined in the Sale Procedures). The Debtor shall promptly provide, upon a Counterparty's request to the Debtor's counsel, the Adequate Assurance Information to any Counterparty (and counsel, if known) to any Contract that may be assumed by the applicable Qualified Offeror.

30.     Any objection to the proposed assumption and assignment of a Contract, the subject of which objection is a Successful Offeror's (or any other relevant assignee's) proposed form of adequate assurance of future performance with respect to the Contract (each such objection, an "Adequate Assurance Objection"), shall be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in

support thereof; (b) filed with the Court by **no later than August 11, 2025 at 4:00 p.m. (prevailing Eastern Time)**; and (c) served on the Objection Notice Parties.

31.     The Debtor, the Successful Offeror, and a Counterparty that has filed an Adequate Assurance Objection shall first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention. If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Confirmation Hearing, the Adequate Assurance Objection and all issues of adequate assurance of future performance of the Successful Offeror (or any other relevant assignee) shall be determined by the Court at the Confirmation Hearing or, at the option of the Debtor and the Successful Offeror, be adjourned to a subsequent hearing, with notice to the party having filed the Adequate Assurance Objection.

32.     If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any objection to the assumption and/or assignment of a Contract with regard to adequate assurance of future performance. The Successful Offeror (or any other relevant assignee) shall be deemed to have provided adequate assurance of future performance with respect to a Contract in accordance with Bankruptcy Code sections 365(b)(1)(C), 365(f)(2)(B), and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Contract or any other document.

33.     As soon as reasonably practicable after the closing of the sale of the Assets, the Debtor shall file with the Court and serve on the applicable Counterparties a notice containing the list of Contracts that the Debtor assumed and assigned pursuant to any Joint Venture agreement with a Successful Offeror.

34.     The inclusion of a Contract or Cure Costs with respect to any Contract on any Assumption and Assignment Notice, shall not constitute or be deemed a determination or admission by the Debtor, any Stalking Horse Offeror, any Successful Offeror, or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code, and shall not be a guarantee that such Contract ultimately will be assumed or assigned.  The Debtor reserves all of its rights, claims, and causes of action with respect to each Contract listed on any Assumption and Assignment Notice.

35.     The Debtor and Carabetta Enterprises, Inc. ("CEI") have reported to the Court that they have reached the following agreement as to the treatment of CEI's claim (the "CEI Agreement"), which shall be binding on CEI, each of its directors, and, subject to the Court's approval of the Debtor's Plan of Reorganization, the Debtor:

(a)   CEI and each of its directors shall: (i) vote in favor of any Plan proposed by the Debtor that provides for payment of creditors in full other than the CEI Deferred Claim (as defined below), and (ii) support any motion to dismiss the Chapter 11 case or other dispositive motion filed by the Debtor that provides for payment of creditors in full other than the Deferred CEI Claim (defined below);

(b)  The claims of CEI and certain affiliates (the "CEI Parties") shall be allowed in the following amounts, each with interest through December 5, 2024 (the "Affiliate Claims"): (i) CEI, in the amount of $20,554,270.20, (ii) Service Maintenance Co., in the amount of $337,065, (iii) Carabetta Management Company, in the amount of $496,475, and (iv) Combustion Power Company, in the amount of $33,345;

(c)  On or about the Effective Date, the Debtor shall cause to be paid in full in cash (i) the Affiliate Claims, and (ii) a portion of the Allowed CEI Claim in the amount of $1,350,000. The remainder of the Allowed CEI Claim (in the approximate amount of $19,204,270.20)(the "CEI Deferred Claim") shall be treated in accordance with the provisions of this Order below;

(d)  Any Proposed JVA Offer (as defined in the Bidding Procedures) shall provide that the existing mortgage of DIV OA Lender, LLC shall be refinanced with a loan that is non-recourse to any existing guarantors or co-borrowers, including, without limitation, CEI, any of its officers, directors, principals, or their affiliates.

16

(e) The CEI Deferred Claim shall continue to accrue interest from the Petition Date forward as provided for under the promissory note payable to CEI and shall remain as a debt of the Debtor;

(f) The Debtor shall issue CEI a "profits interest" (or similar tax-efficient vehicle with the same economic effect as provided herein) with respect to its membership in the Joint Venture (as defined in the Sale Procedures) (the "JV") on account of which the CEI Deferred Claim shall be paid from any cash received by the Debtor in connection with or from the JV from a sale or refinancing of the Property or from cash distributed to the Debtor from its JV partner ("Cash Flow") as follows: (1) 50% to CEI (and 50% to the Debtor) until the outstanding balance of the CEI Deferred Claim is paid in full; and (2) otherwise, 100% to the Debtor.  All payments received by CEI in accordance with this waterfall shall be applied first to outstanding interest on the CEI Deferred Claim and shall then reduce the principal of CEI Deferred Claim dollar for dollar; and

(g) Evelyn Carabetta shall remain as the person who controls the Debtor (either as the general partner or otherwise, as she may elect) and shall make all decisions for the Debtor both before and after the Effective Date; provided however, that (1) all decisions and agreements as to the JV must be consistent with the Bidding Procedures and the Order, and (2) the JV Agreements shall provide that if the Debtor or Evelyn Carabetta fails to timely effect any right to "take out" or otherwise retire the rights and/or interests of the JV Partner, CEI shall have a reasonable time in which to directly exercise those rights and interests for itself.

36.     CEI and its counsel shall be Consultation Parties (as defined in the Sale Procedures) with the rights set forth therein and herein. In that regard, (i) the Debtor will share with CEI all Prospective Offers as received, and make itself available to discuss all aspects of the same; (ii) CEI and its representatives may participate (in the presence of Debtor representatives, unless in each instance otherwise permitted in advance in writing by the Debtor) in discussions with Prospective Offerors, and may ask questions but not conduct their own negotiations,  (iii) CEI may participate fully as a Consultation Party in all aspects of the Selection Process and in connection with the Debtor's selection of any Stalking Horse Offeror; and (iv) if  CEI disagrees with the Debtor's business judgment as to its selection of any Stalking Horse Offeror or the highest and best offer at the conclusion of the Selection

Process, CEI may, after good faith efforts with the Debtor to resolve that disagreement informally, present its position to the Court on an expedited basis with the full cooperation of the Debtor for the Court's resolution of that disagreement.

**G.     Other Related Relief**

37.     All persons and entities that participate in the Selection Process on the Selection Day or Offer for the Sale Assets during the Sale Process shall be deemed to have knowingly and voluntarily (i) consented to the core jurisdiction of the Court to enter any order related to the Sale Procedures, the Selection Process on the Selection Day, or any other relief requested in the Motion or granted in this Order; (ii) waived any right to a jury trial in connection with any disputes relating to the Sale Procedures, the Selection Process on the Selection Day, or any other relief requested in the Motion or granted in this Order; and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to the Sale Procedures, the Selection Process, or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

38.     Nothing in this Order, or any of the Exhibits hereto, shall (i) prevent the Debtor from, in the exercise of its fiduciary duties, pursuing or otherwise consummating an alternative transaction or (ii) obligate the Debtor to pursue or consummate any transaction with any Qualified Offeror.

39.     Notwithstanding the applicability of any of the Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or any other provisions of the Bankruptcy Rules or the Local Rules stating to the contrary, the terms and provisions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability

18

of this Order is hereby waived.

40.     The Debtor is authorized to take all steps necessary or appropriate to implement the relief granted in this Order.

41.     This Sale Procedures Order shall be binding on and inure to the benefit of the Debtor, including any Chapter 7 or Chapter 11 trustee or other fiduciary appointed for the estate of the Debtor.

42.     This Sale Procedures Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

43.     To the extent any of the deadlines set forth in this Sale Procedures Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Sale Procedures Order shall govern.

44.     This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Dated:  May 21, 2025

_____
Christopher J. Panos
United States Bankruptcy Judge

## EXHIBIT 1

### (Sale Procedures)

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**(Eastern Division)**

|  |  |
|---|---|
| In re:<br><br>**WATER'S EDGE LIMITED PARTNERSHIP,**<br><br>Debtor | **Chapter 11**<br><br>**Case No. 24-12445-CJP** |

## SALE PROCEDURES

Water's Edge Limited Partnership, the above-captioned debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case") will use the procedures set forth herein (the "Sale Procedures") in connection with a sale or disposition of all, substantially all, or a portion of the Debtor's assets (the "Sale Assets").

On May 7, 2025, the Debtor filed with the United States Bankruptcy Court for the District of Massachusetts (the "Court") the *Debtor's Motion for Entry of Orders (I)(A) Approving Procedures for the Sale of the Assets of the Debtor, (B) Authorizing the Debtor to Designate a Stalking Horse and to Seek Approval of Stalking Horse Offer Protections, (C) Scheduling an Selection Day and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief; and (II)(A) Approving the Sale Free and Clear of Liens, Claims, Interests, and Encumbrances, Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and Granting Related Relief* [Docket No. 241] (the "Motion"). By the Motion, the Debtor sought, among other things, entry of an order approving Sale Procedures for soliciting Offers in advance of a Selection Day (the "Selection Day") for, and consummating a sale of, the Sale Assets, as further described herein.

On May [__], 2025, the Court entered an *Order (I) Approving Procedures for the Sale Assets, (II) Authorizing the Debtor to Designate a Stalking Horse and to Seek Approval of Stalking Horse Offer Protections, (III) Scheduling an Selection Day and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (VI) Granting Related Relief* [Docket No. [_]] (the "Sale Procedures Order").[1]

### I.   SALE ASSETS

The Debtor intends to sell all, substantially all, or a portion of the Sale Assets, which shall include 364, 370 and 388 Ocean Avenue in Revere, Massachusetts known as Water's Edge

---

[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms later in these Sale Procedures or in the Motion and/or the Sale Procedures Order, as applicable.

Apartments (the "Property"), together with some or all appurtenant interests and related personal property, fixtures, claims and other interests as may be identified by the Prospective Offeror (collectively, the "Sale Assets").

A Prospective Offeror (as defined in Section III below) may submit an Offer for the Sale Assets, to be acquired by a Joint Venture (as defined in Section VI below) pursuant to a joint venture or similar agreement with the Debtor, subject to the conditions set forth herein.

The Debtor's ability to undertake and consummate a sale of the Sale Assets to a Joint Venture entity pursuant to a joint venture or similar agreement shall be subject to competitive selection process (the "Selection Process"), as set forth herein, and approval by the Court. In addition to any Stalking Horse Offer (as defined in the Motion), and as set forth herein, the Debtor will consider offers for the Sale Assets from other parties.

Any party interested in submitting an offer for any of the Sale Assets should contact the Debtor's counsel, as set forth below:

Kathleen R. Cruickshank, Esq.
Murphy & King, P.C.
28 State Street, Suite 3101
Boston, MA 02019
(617) 423-0400
kcruickshank@murphyking.com

William Baldiga, Esq.
Brown Rudnick LLP
One Financial Center
Boston, MA 02111
(617) 856-8586
wbaldiga@brownrudnick.com

## II.    KEY DATES AND DEADLINES

| Deadline | Action |
|---|---|
| Two business days after the entry of the Bidding Procedures Order | Deadline for Debtor to file and serve Sale Notice |
| June 19, 2025, at 4:00 p.m. (prevailing Eastern Time) | Deadline for JVA Offers |
| June 20, 2025 at 5:00 p.m. (prevailing Eastern Time) | Deadline for Qualified Offer Designation |
| June 23, 2025 at 4:00 p.m. (prevailing Eastern Time) | Deadline for Sale Objections |
| June 23, 2025 at 5:00 p.m. (prevailing Eastern Time) | Deadline for Baseline Offer/Stalking Horse Designation |
| June 25, 2025 at 1:00 p.m. (prevailing Eastern Time) | Hearing on Stalking Horse Designation |

| | |
|---|---|
| **June 26, 2025, at 10:00 a.m. (prevailing Eastern Time)** | Selection Day |
| **One business day after the conclusion of Selection Day** | Deadline for Debtor to file and serve Notice of Selection |
| **July 2, 2025, at 4:00 p.m. (prevailing Eastern Time)** | Deadline for Supplemental Sale Objections |
| **July 8, 2025 at noon (prevailing Eastern Time)** | Sale Hearing |
| **July 15, 2025** | Target Date to file Plan and Disclosure Statement and Cure Notices |
| **August 11, 2025 at 4:00 p.m. (prevailing Eastern Time)** | Deadline for Objections to Disclosure Statement, Confirmation, Cure/Adequate Assurance and for Casting Ballots |
| **August 19, 2025, at 10:00 a.m. (prevailing Eastern Time)** | Hearing on Disclosure Statement and Plan Confirmation |

## III.   DUE DILIGENCE

### A.   <u>Debtor Due Diligence</u>.

Each person or entity that desires to participate in the Selection Process and the Selection Day (each, a "<u>Prospective Offeror</u>") must first deliver to the Debtor's Counsel (contact information in Section I above and in this Section III) the following:

•      documentation identifying the Prospective Offeror, its principals, and the representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated Sale;

•      an executed confidentiality agreement, in form and substance satisfactory to the Debtor;

•      a statement and other factual support demonstrating to the Debtor in its sole judgment, that the Prospective Offeror has a *bona fide* interest in purchasing some or all of the Sale Assets; and

•      preliminary proof by the Prospective Offeror of its financial capacity to close a proposed sale transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Prospective Offeror (or, if the Prospective Offeror is an entity formed for the purpose of acquiring the Sale Assets to be sold, the party that will bear liability for a breach by the Prospective Offeror of a joint venture agreement or other agreement entered into in respect of the sale transaction), the adequacy of which the Debtor will determine in its sole judgment.

Without the need for any further action, any Stalking Horse, if selected and approved in accordance with these Sale Procedures will be considered a Prospective Offeror and a Qualified Offeror (as defined in Section VI.C below).

### B. Prospective Offeror Due Diligence.

Upon execution of a valid confidentiality agreement and subject to the other limitations and guidelines set forth herein, the Debtor may grant a Prospective Offeror that they identify as reasonably likely to become a Qualified Offeror with access to information allowing such Prospective Offeror to conduct due diligence with respect to the potential acquisition of some or all of the Assets.

If the Debtor determines, after consulting with the Consultation Parties, that a Prospective Offeror is unlikely to qualify as a Qualified Offeror or fails to become a Qualified Offeror, then such Prospective Offeror shall have no further right to access due diligence or any other non-public information. The Prospective Offeror shall return or destroy any non-public information the Debtor or their advisors provided to the Prospective Offeror in accordance with the terms of the confidentiality agreement executed by the Debtor and the Prospective Offeror.

A Prospective Offeror's right to terminate for unacceptable results of due diligence will be limited to matters of title and survey, and only to the extent that due diligence conducted from this point forward reveals conditions that are materially adverse as compared to the results of due diligence taken or shared to date and cannot be cured by the Debtor within a reasonable time.

The Debtor will try to accommodate all reasonable requests from Prospective Offerors for additional information and due diligence access. All due diligence requests shall be directed to Debtor's Counsel as follows:

Kathleen R. Cruickshank, Esq.
Murphy & King, P.C.
28 State Street, Suite 3101
Boston, MA 02019
(617) 423-0400
kcruickshank@murphyking.com

William Baldiga, Esq.
Brown Rudnick LLP
One Financial Center
Boston, MA 02111
(617) 856-8586
wbaldiga@brownrudnick.com

### IV. STALKING HORSE AGREEMENT

Designation of Stalking Horses and Hearing

Subject to the provisions set forth herein and the Sale Procedures Order, and in consultation with the Consultation Parties, the Debtor may, but is not obligated to, designate a Stalking Horse (and such Offeror's Offer, the "Stalking Horse Offer") for all or a portion of the

Sale Assets and offer such Stalking Horse certain protections (the "Stalking Horse Offer Protections"), including a break-up fee and capped expense reimbursement as set forth in the applicable joint venture agreement or similar agreement executed by the Debtor and the Stalking Horse (the "Stalking Horse Agreement"), provided that all Stalking Horse Offer Protections must be negotiated by the Debtor and no break-up fee, other than with a further Court order, shall exceed $1,000,000.00 and the total expenses reimbursement shall be subject to a cap not to exceed $200,000.00 (collectively, the "Termination Payment") to be agreed upon between the Debtor and the Stalking Horse.

The Debtor may designate a Stalking Horse **by no later than June 23, 2025, at 5:00 p.m.** In the event that the Debtor determines to designate a Stalking Horse, the Debtor shall promptly upon execution of the Stalking Horse Agreement, file with the Bankruptcy Court, serve on the Sale Notice Parties, a notice that contains the information about the Stalking Horse, including the proposed Stalking Horse Offer Protections, and attaches the proposed Stalking Horse Agreement (the "Notice of Stalking Horse Offer.")

To the extent the Debtor files a Stalking Horse Motion on or before June 23, 2025, the Court shall hold a hearing to consider the Stalking Horse Motion **(the "Stalking Horse Hearing") on June 25, 2025, at 1:00 p.m. (prevailing Eastern Time).  Objections to the Stalking Horse Designation may be raised at the Stalking Horse Hearing.**

For all purposes under these Sale Procedures, a Stalking Horse approved as such in accordance with the Sale Procedures shall be a Qualified Offeror and its Stalking Horse Offer shall be considered a Qualified Offer.  Subject to the other provisions of these Sale Procedures, in the event that a Stalking Horse Offer received by the Debtor is the only offer for the Sale Assets by the Offer Deadline, the Stalking Horse may be declared the Successful Offeror.

Other than as provided by order of the Court, no party submitting an Offer shall be entitled to a break-up fee or expense reimbursement except for the Stalking Horse Offer Protections for any Stalking Horse. Any substantial contribution claims by any Offeror are deemed waived.

## V.   OFFER DEADLINE

Any Prospective Offeror that intends to participate in the Selection Process and the Selection Day must submit electronic copies to the Offer Notice Parties of a Qualified Offer (as defined in Section VI.C below) on or before **June 19, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Offer Deadline"). The Debtor may extend the Offer Deadline for any reason whatsoever, in its reasonable business judgment, for all or certain Potential Offerors, without further order of the Bankruptcy Court, subject to providing notice to the Stalking Horse (if applicable) and all Prospective Offerors.

## VI.  OFFER REQUIREMENTS

### A.  Qualified Offer Requirements

To qualify as a "Qualified Offer," an offer must be in writing and satisfy the following requirements:

1.  Identification of Offeror. A Qualified Offer must fully disclose the following:

    a.    the legal identity of each person or entity submitting an offer for the Sale Assets and/or otherwise sponsoring, financing (including through the issuance of debt in connection with such Offer), or participating in (including through license or similar arrangement with respect to the Sale Assets to be acquired by the Joint Venture in connection with such Offer) the Process and the Selection Day in connection with such Offer and the complete terms of any such participation; and (b) any past or present connections or agreements with the Debtor, any Stalking Horse, any other known Prospective Offeror or Qualified Offeror, the DIP Lenders, or any officer or director of any of the foregoing (including any current or former officer or director of the Debtor).

2.  Purchased Assets. A Qualified Offer must identify the following:

    a.    the Sale Assets to be acquired by the Joint Venture entity, including any executory contracts and unexpired leases (collectively, the "Contracts") that, as of the submission of such Offer, the Prospective Offeror proposes to be assumed and assigned by the Debtor in connection with the proposed sale; and

    b.    the liabilities, if any, to be assumed, including any debt to be assumed.

3.  Form of Consideration.

    a.    Each Offer must include a statement confirming that the Offer is based on an all-cash offer, or if an Offer includes forms of consideration other than cash, the Offeror shall include an analysis or description of the value of such non-cash components, including any supporting documentation, to assist the Debtor in evaluating the Offer. Each Offer must include cash to be contributed at closing (or, a combination of qualified Credit Bid (as defined below) and cash, in the amount of at least $37,000,000.

b.    Credit Bidding.  The Fairbridge DIP Lender and DIV OA Lender, LLC may credit bid a portion of their Offer (such bid, a "Credit Bid") up to the amount of their debt pursuant to section 363(k) of the Bankruptcy Code, provided, however, the Proposed JVA Offer provides that the existing mortgage of DIV OA Lender, LLC must be refinanced with a loan that is non-recourse to any existing guarantors, including, without limitation, CEI, any of its directors, principals, or their affiliates.  Any Credit Bid shall be a Qualified Bid without the need to provide a Good Faith Deposit.

4.  Minimum Higher Offer for Assets. If a Stalking Horse is not designated pursuant to these Sale Procedures, any subsequent Offer submitted by a Qualified Offeror must be superior in its terms as reasonably determined by the Debtor, that is greater than or equal to the sum of the preceding highest Offer submitted by a Qualified Offeror, plus $250,000 (collectively, the "Minimum Higher Offer Amount"). If a Stalking Horse has been designated, each Offer that is not a Stalking Horse Offer must have a value, as reasonably determined by the Debtor, that is greater than or equal to the sum of (a) the value offered under the Stalking Horse Agreement, (b) the amount of the Stalking Horse Offer Protections, and (c) the Minimum Higher Offer Amount.

If the value of an Offer relative to any Stalking Horse Offer includes additional non-cash components (such as fewer contingencies than are in such Stalking Horse Agreement), the Offeror should include an analysis or description of the value of any such additional non-cash components, including any supporting documentation, to assist the Debtor in better evaluating the competing Offer.

5.  Proposed JVA Offer. A Qualified Offer must constitute an irrevocable offer and be in the form of a Joint Venture Agreement reflecting the terms and conditions of the Offer (each, a "Proposed JVA Offer"), which shall include the formation of a joint venture between the Debtor and the Qualified Offeror, or a similar transaction (the "Joint Venture").  A Proposed JVA Offer, attached to these Sale Procedures as Exhibit A, shall be (a) duly authorized and executed; (b) based on, and marked against, the form Joint Venture Agreement to be filed with the Court prior to the Offer Deadline (the "Form JVA") or, if a Stalking Horse has been designated, the Stalking Horse Agreement, to reflect the proposed transaction and to show any other proposed modifications to the Form JVA or Stalking Horse Agreement, as applicable; (c) specify the proposed consideration for the Sale Assets in U.S. dollars; (d) include all exhibits and schedules contemplated thereby (other than exhibits and schedules that, by their nature, must be prepared by the Debtor); and (e) identify any Contracts that, as of

the submission of such Offer, the Prospective Offeror proposes to be assumed and assigned by the Debtor in connection with the proposed sale transaction.

6. <u>Proposed Sale Order</u>. A Qualified Offer must include a proposed sale order (each, a "<u>Proposed Sale Order</u>") and be marked against the Proposed Sale Order, which the Debtor will file with the Court prior to the Offer Deadline.

7. <u>Financial Information</u>. A Qualified Offer must include the following:

a.    a statement that the Prospective Offeror is financially capable of consummating the sale transaction contemplated by the Prospective Offeror's Proposed JVA Offer and Proposed Sale Order;

b.    sufficient evidence, as determined by the Debtor in its sole discretion, to determine that the Prospective Offeror has, or will obtain, the financial wherewithal to consummate the sale transaction contemplated by the Prospective Offeror's Proposed JVA Offer and Proposed Sale Order; and

c.    Adequate Assurance Information (as defined in Section VI.A.9 below) with respect to any Contracts included or that may be included in the Prospective Offer, including the identity of any known proposed assignee of the applicable Contracts (if different from the Prospective Offeror), including contact information for such proposed assignee;

8. <u>Good Faith Deposit</u>.  Each Qualified Offer must be accompanied by a good faith cash deposit (each, a "<u>Good Faith Deposit</u>") in the form of cash in an amount equal to Three Million Five Hundred Thousand Dollars ($3,500,000) to be deposited with an escrow agent selected by the Debtor (the "<u>Escrow Agent</u>") pursuant to the escrow agreement to be provided by the Debtor to the Prospective Offerors and held in escrow until 10 business days after the conclusion of the Selection Day, , and thereafter returned to the respective Qualified Offerors in accordance with Section VII.D of these Sale Procedures, except that the Good Faith Deposit of any Offeror who is selected on the Selection Day as a Successful Offeror or as a Backup Offeror shall be held in escrow until the closing of the transaction.

9. <u>Adequate Assurance</u>. A Qualified Offer must include evidence of the Prospective Offeror's (or any other relevant assignee's) ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Prospective Offeror's (or any other relevant assignee's) ability to perform future obligations arising under any Contracts included in its Offer. The Debtor may require the following information in

connection with demonstrating adequate assurance of future performance: (a) information evidencing the Prospective Offeror's (or any other relevant assignee's) financial wherewithal and willingness to perform under any Contracts included in the Offer, which information may include (i) a corporate organizational chart or similar disclosure identifying corporate ownership and control, (ii) financial statements, (iii) tax returns, and (iv) annual reports; and (b) the Prospective Offeror's (or any other relevant assignee's) proposed use of any leased premises or other property included in the Offer (the information described in clauses (a) and (b) of this Section VI.A.9, the "Adequate Assurance Information").

All Adequate Assurance Information must be in a form that will permit its immediate dissemination to Contract counterparties ("Counterparties").

10. Representations and Warranties (As-Is, Where-Is). Each Qualified Offer must include a written acknowledgement and representation that (a) the Prospective Offeror has had an opportunity to conduct any and all due diligence regarding the Sale Assets prior to making its Qualified Offer, except as specifically set forth in the Form JVA Offer, (b) the Prospective Offeror has relied solely upon its own or its advisors' independent review, investigation, and/or inspection of any documents and/or the Assets in making its Qualified Offer, (c) the Prospective Offeror did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Sale Assets, or the completeness of any information provided in connection therewith or in connection with the Selection Process and the Selection Day, except as expressly stated in the Prospective Offeror's Proposed JVA Offer; (d) the Sale Assets will be conveyed "as is, where is, with all faults," with limited representations and warranties, and no indemnification or guarantees by the Debtor; and (e the Prospective Offeror has made itself familiar with the anti-collusion provisions of applicable law, including section 363(n) the United States Bankruptcy Code, and will abide by all such laws.

11. Authorization. A Qualified Offer must (a) include evidence of authorization and approval from the Prospective Offeror's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of any Offer for the Assets, participation in the Selection Process and the Selection Day, and closing of the sale transaction contemplated by the Prospective Offeror's Proposed JVA Offer and Proposed Sale Order; or, (b) if the Prospective Offeror is an entity formed for the purpose of effecting the proposed sale transaction, a Qualified Offer must provide written

evidence acceptable to the Debtor of authorization and the approval by the equity holder(s) of such Prospective Offeror.

12. <u>Other Requirements</u>. A Qualified Offer must:

a.   state that the Prospective Offeror agrees to serve as a backup Offeror (a "<u>Backup Offeror</u>") if such Offeror's Qualified Offer is selected on the Selection Day as the next highest or next best Offer after the Successful Offer (as defined in Section VII.C.1 below) for the Sale Assets (each such Offer, a "<u>Backup Offer</u>");

b.   state that the Offer represents a binding, good-faith, and *bona fide* offer to purchase the Sale Assets and is not subject to or conditioned on any further due diligence, except as set forth in the JVA Offer, and is irrevocable (i) until the selection of the Successful Offer in accordance with these Sale Procedures; or (ii) if the Offer is selected as a Successful Offer or as a Backup Offer, until the Backup Offer Expiration Date (as defined in Section VII.C.2 below);

c.   for any Offeror other than the Stalking Horse, state and acknowledge that the Prospective Offeror shall not be entitled to any offer protection or payment in connection with the submission of an Offer for the Sale Assets or otherwise participating in the Selection Process and the Selection Day;

d.   state that the Prospective Offeror is committed to closing the sale transaction contemplated in its Offer as soon as practicable (and in no event later than August 20, 2025);

e.   expressly waive any claim or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code in connection with making an offer for any of the Assets and/or otherwise participating in the Selection Day or the Sale Process;

f.   not contain any financing contingencies of any kind;

g.   certify that the Prospective Offeror did not collude with any other Offerors and is not otherwise a partnership, joint venture, or other entity in which more than one Offeror (or any affiliates of a Offeror) has a direct or indirect interest, unless consented to in writing by the Debtor;

h.   include a covenant to comply with the terms of these Sale Procedures and the Sale Procedures Order;

i.        contain such other information as may be reasonably requested by the Debtor; and

j.        contain a statement that the Prospective Offeror (i) consents to the core jurisdiction of the Court to enter any order related to the Sale Procedures, the Selection Day, or any other relief requested in the Motion or granted in this Order; (ii) waives any right to a jury trial in connection with any disputes relating to the Sale Procedures, the Selection Day, or any other relief requested in the Motion or granted in this Order; and (iii) consents to the entry of a final order or judgment in connection with any disputes relating to the Sale Procedures, the Selection Day, or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

**B.      Offer Review Process**

The Debtor, in consultation with the Consultation Parties, will evaluate Offers and, based upon their evaluation of the content of each Offer, the Debtor may, as it deems appropriate in its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, engage in negotiations with any Prospective Offeror for the purposes of (i) curing any deficiencies in a Offer that prevents them from constituting a Qualified Offer, (ii) improving the terms of the Prospective Offeror's Offer, or (iii) otherwise promoting a more competitive Selection Process and Selection Day process with the ultimate goal of maximizing the value of the Sale Assets.

In evaluating a Offer, the Debtor may take into consideration any and all factors that the Debtor deems reasonably pertinent, including (i) the amount of the proposed consideration and proposed form of consideration; (ii) any Sale Assets included in, or excluded from, the Offer, including any Contracts to be assumed and assigned; (iii) the value to be provided to the Debtor under the Offer, including the net economic effect on the Debtor's estate (taking into account any Stalking Horse's rights with respect to any Stalking Horse Offer Protections); (iv) any benefits to the Debtor's estate from any assumption or waiver of liabilities contemplated by the Offer; (v) the structure of the proposed sale transaction and any attendant execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and general financial wherewithal to meet all commitments; and any required governmental approvals; and (vi) the impact of the proposed sale transaction on the Debtor's trade creditors and any other parties-in-interest.

The Debtor will evaluate timely Offers and will (i) after consultation with the Consultation Parties, determine which Offers qualify as Qualified Offers and (ii) notify Offerors whether they are Qualified Offerors **no later than June 20, 2025, at 5:00 p.m. (prevailing Eastern Time).** The Debtor will notify Offerors which Qualified Offer has been selected as the Baseline Offer and circulate one Baseline Offer no later than June 23, 2025 at 5:00 p.m. A Qualified Offeror shall not (without the consent of the Debtor), modify, amend, or withdraw its Qualified Offer, unless for the

purposes of increasing the purchase price or otherwise improving the terms of the Qualified Offer, as determined by the Debtor in its reasonable business judgment.

### C.    Qualified Offerors

An Offer received for the Assets that the Debtor determines satisfies the requirements set forth in Sections V and VI.A above will qualify as a "Qualified Offer," and any Offeror that submits a Qualified Offer will qualify as a "Qualified Offeror."

The Debtor may, in its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, and in consultation with the Consultation Parties, amend or waive the conditions precedent to qualifying as a Qualified Offeror.

### D.    Stalking Horse Offer Protections

Other than any Stalking Horse Offer Protections, if any, no Offeror or any other party shall be entitled to any termination or "break-up" fee, expense reimbursement, or any other Selection Process protection in connection with the submission of a Offer for the Sale Assets or otherwise participating in the Selection Day or the Sale Process.

### VII.    THE SELECTION DAY

If the Debtor receives more than one Qualified Offer for the Assets, the Debtor will conduct a Selection Day for the Sale Assets. If any Offer, including any Stalking Horse Offer, is the only Qualified Offer received in respect of the Assets, the Debtor will not conduct a Selection Day for the Sale Assets, and the Debtor will seek approval of such Offer at the Sale Hearing.

The Selection Day, if required, will be conducted on **June 26, 2025, at 10:00 a.m**. (prevailing Eastern Time), at either (i) at the offices of Brown Rudnick, LLP, One Financial Center, Boston, MA 02111, or (ii) virtually or in person  at such other date, time or location as designated by the Debtor after consulting with the Consultation Parties. If the Debtor conducts the Selection Day virtually, the Debtor will provide instructions setting forth how to attend the Selection Day to the participants and other attendees via electronic mail. The Debtor will provide notice (via electronic mail or otherwise) of any change in the date, time or location of the Selection Day to Qualified Offerors and the Consultation Parties and will cause publication of such change to occur on the docket (the "Docket"), as soon as reasonably practicable and in any event no later than 24 hours before the Selection Day.

If held, the Selection Day proceedings will (i) be transcribed and/or video recorded and include an open Selection Process in the presence of all Qualified Offerors, subject to reasonable limitations imposed by a virtual Selection Day platform to be evaluated and determined by the Debtor in consultation with the Consultation Parties.

If the Debtor determines not to hold a Selection Day for some or all of the Sale Assets, the Debtor shall file with the Court and serve on the Sale Notice Parties a notice containing the following information (as applicable): (a) a statement thon the Selection Day for the relevant Sale

Assets has been canceled; (b) the identity of the Successful Offeror; (c) a copy of the Successful Offer or a summary of the material terms of such Offer, including any assumption and assignment of Contracts contemplated thereby; and (d) the date, time, and location of the Sale Hearing.

### A.     Participants and Attendees

Only Qualified Offerors are eligible to participate in the Selection Day, subject to other limitations as may be reasonably imposed by the Debtor in accordance with these Sale Procedures. Qualified Offerors participating in the Selection Day must attend the Selection Day personally or through a duly authorized representative.  Subject to the Selection Day procedures set forth in section VII.B hereof, professionals and principals for the Debtor, the Consultation Parties and each Qualified Offeror (including, its representative(s), if any) that has provided notice in writing of its intent to attend the Selection Day via electronic mail to counsel for the Debtor, Murphy & King, P.C. (Attn: Kathleen R. Cruickshank, KCruickshank@MurphyKing.com  at least one (1) day prior to the start of the Selection Day shall be able to attend and observe the Selection Day, along with any other parties the Debtor deem appropriate; *provided* that the Debtor may, in its sole discretion, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of a Qualified Offeror or otherwise attend the Selection Day.

Each Qualified Offeror participating in the Selection Day will be required to confirm in writing and on the record on the Selection Day that (i) it has not engaged in any collusion with respect to the Selection Day or the submission of any Offer for any of the Sale Assets and (ii) its Qualified Offer that gained the Qualified Offeror admission to participate in the Selection Day and each Qualified Offer submitted by the Qualified Offeror on the Selection Day is a binding, good-faith, and *bona fide* offer to purchase the Sale Assets identified in such Offers.

All Prospective Offerors and Qualified Offerors (including any Stalking Horse, Successful Offeror, and Backup Offeror) shall be deemed to have (i) agreed that all proceedings in the Court related to these Sale Procedures, the Selection Process, the Selection Day, any other relief requested in the Motion or granted pursuant to the Sale Procedures Order, or the construction or enforcement of any agreement or any other document directly relating to the sale transaction are core proceedings as described in 28 U.S.C. § 157; (ii) waived any right to a jury trial in connection with any disputes relating to these Sale Procedures, the Selection Process, the Selection Day, or the construction or enforcement of any agreement or any other document directly relating to the sale transaction; and (iii) consented to the entry of a final order or judgment by the Court in connection with any disputes relating to these Sale Procedures, the Selection Process, the Selection Day, or the construction or enforcement of any agreement or any other document relating directly to the sale transaction, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

### B.     Selection Day Procedures

The Selection Day shall be governed by the following procedures, subject to the Debtor's right to modify such procedures in its reasonable business judgment (in a manner consistent with its fiduciary duties) and in consultation with the Consultation Parties:

1.      Baseline Offers. Prior to the commencement of the Selection Day, the
        Debtor will determine, in its reasonable business judgment the highest
        and/or best Qualified Offer submitted for the Sale Assets (and in
        consultation with the Consultation Parties) (such Qualified Offer, a
        "Baseline Offer"). Offers on the Selection Day shall commence at the
        amount of the Baseline Offer. **No later than June 23, 2025, at 5:00
        p.m. (prevailing Eastern Time)**, the Debtor will provide all Qualified
        Offerors with (a) a notice identifying all the Qualified Offerors and
        which Qualified Offer is the Baseline Offer; and (b) a copy of the
        Baseline Offer.

2.      Minimum Higher Offers. Offers shall commence at the Baseline Offer.
        The first Higher Offer on the Selection Day shall be in an amount not
        less than the amount of the Baseline Offer plus the Minimum Higher
        Offer. At each round of Offers, Qualified Offerors may submit
        successive Offers higher than the Leading Offer (as defined below)
        from the prior round. During the Selection Day, the Debtor may, in its
        reasonable discretion, announce reductions to Minimum Higher
        Offers at any time.

        Except as specifically set forth in the Sale Procedures, for the purpose
        of evaluating the value of the consideration provided by any Offer
        subsequent to the Baseline Offer, the Debtor will, at each round of
        Offers, consider and/or give effect to (a) any Stalking Horse Offer
        Protections payable to any Stalking Horse under the Stalking Horse
        Agreement; (b) any additional liabilities to be assumed by a Qualified
        Offeror under the Offer, including whether such liabilities are secured
        or unsecured; and (c) any additional costs that may be imposed on the
        Debtor.

3.      Leading Offer. After the first round of Offers and between each
        subsequent round of Offers, the Debtor will announce the Offer that it
        believes to be the highest or otherwise best offer for the Sale Assets
        (each such Offer, a "Leading Offer") and describe the material terms
        thereof.

        The Selection Day will include open Offers in the presence of all other
        Qualified Offerors. Each Qualified Offeror shall have the right to be
        present for all rounds of Offers and to submit additional Offers and
        make modifications to its Proposed JVA on the Selection Day to
        improve its Offer. The Debtor may, in its reasonable business
        judgment, negotiate with any and all Qualified Offerors participating
        in the Selection Day.

        The Debtor shall have the right to determine, in its reasonable business

judgment, after consultation with the Consultation Parties, which Offer is the highest or otherwise best Offer with respect to the Sale Assets and after consultation with the Consultation Parties, reject, at any time, without liability, any Offer that the Debtor deems to be inadequate, insufficient, or not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, these Sale Procedures, any order of the Court, or the best interests of the Debtor and its estate.

**C.      Selection Day Results**

1.      <u>Successful Offers</u>. Immediately prior to the conclusion of the Selection Day, the Debtor will (a) determine which Qualified Offer constitutes the highest or otherwise best Offer for the Assets (such Offer, the "<u>Successful Offer</u>" and such Offeror, the "<u>Successful Offeror</u>") and which (if any) is the Backup Offer for the applicable Sale Assets, and (b) notify all Qualified Offerors participating on the Selection Day of the material terms of the Successful Offer and the Backup Offer.

2.      <u>Backup Offers</u>. Notwithstanding any language to the contrary contained in a Qualified Offer or in any improvements to the Qualified Offer during the Selection Day, by participating in the Selection Day, each Qualified Offeror shall be deemed to have consented to having its last and final offer being designated as a Backup Offer.

Immediately prior to the conclusion of the Selection Day, the Debtor will (a) determine, in a manner consistent with these Sale Procedures, and in consultation with the Consultation Parties, which Qualified Offer is the Backup Offer; and (b) notify all Qualified Offerors on the Selection Day of the identity of the Backup Offeror and the amount of the purchase price and other material terms of the Backup Offer.

Except as otherwise provided in any Stalking Horse Agreement, a Backup Offer will remain binding on the Backup Offeror until the later of (a) the first business day after the closing of a Sale with the Successful Offeror for the applicable Sale Assets and (b) 30 days after the Sale Hearing (such date, the "<u>Backup Offer Expiration Date</u>"). If the Sale with the Successful Offeror is terminated prior to the Backup Offer Expiration Date, the Backup Offeror will be deemed the new Successful Offeror for the applicable Sale Assets and shall be obligated to consummate the Backup Offer as if it were the Successful Offer on the Selection Day; *provided* that the Debtor may, in its reasonable business judgment (after providing notice to the Sale Notice Parties) and after consultation with the Consultation Parties, elect not to pursue

the sale transaction contemplated by the Backup Offer.

3.  <u>Notice of Selection Day Results</u>. Within one business day after the conclusion of the Selection Day, the Debtor will file with the Court and serve on the Sale Notice Parties a notice setting forth the results of the Selection Day (the "<u>Notice of Selection Day Results</u>"), which will (a) identify each Successful Offeror and the Backup Offeror; (b) include a copy of each Successful Offer and the Backup Offer; and (c) set forth the Supplemental Sale Objection Deadline (as defined in Section X.D below), the date, time, and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Selection Day.

**D.    Disposition of Good Faith Deposit**

1.  <u>Prospective Offerors</u>. Within five business days after the Debtor makes final determinations as to which Prospective Offerors qualify as Qualified Offerors, the Escrow Agent shall return to each Prospective Offeror that did not qualify as a Qualified Offeror, as confirmed by the Debtor, such Prospective Offeror's Good Faith Deposit. Upon the authorized return of a Prospective Offeror's Good Faith Deposit in accordance with this Section VII.D, the Offer of such Prospective Offeror shall be deemed terminated and no longer binding against the Prospective Offeror.

2.  <u>Qualified Offerors</u>.

    a.  <u>Forfeiture of Good Faith Deposit</u>. The Good Faith Deposit of a Qualified Offeror shall be forfeited if the Qualified Offeror attempts to withdraw its Qualified Offer, except as may be permitted by these Sale Procedures, during the time the Qualified Offer remains binding and irrevocable under these Sale Procedures. The Debtor and its estate shall be entitled to retain the Qualified Offeror's Good Faith Deposit as partial compensation for the damages caused to the Debtor and its estate as a result of the Qualified Offeror's failure to adhere to the terms of these Sale Procedures and/or the relevant Qualified Offer. If a Qualified Offeror's Good Faith Deposit is deemed forfeited, the Escrow Agent shall release such Good Faith Deposit by wire transfer of immediately available funds to an account designated by the Debtor within two business days after the Escrow Agent receives written notice by an authorized officer of the Debtor stating that the applicable Qualified Offeror has breached or otherwise failed to satisfy its obligations in accordance with these Sale Procedures and the applicable Qualified Offer.

    b.  <u>Return of Good Faith Deposit</u>. With the exception of the Good

Faith Deposits of the Successful Offeror and the Backup Offeror, the Escrow Agent shall return to any other Qualified Offeror the Qualified Offeror's Good Faith Deposit, within 5 business days after the conclusion of the Selection Day.

c.      Backup Offeror. Unless the Backup Offeror becomes the Successful Offeror, the Escrow Agent shall return the Backup Offeror's Good Faith deposit, within 5 business days after the occurrence of the applicable Backup Offer Expiration Date; *provided*, *however*, if the Backup Offeror becomes the Successful Offeror, its Good Faith Deposit shall be forfeited if it fails to consummate the sale transaction because of a breach that entitles the Debtor to terminate the applicable joint venture agreement with such Backup Offeror, and the Debtor and its estate shall be entitled to retain the Backup Offeror's Good Faith Deposit as partial compensation for the damages caused to the Debtor and its estate as a result of such breach. If a Backup Offeror's Good Faith Deposit is deemed forfeited, the Escrow Agent shall release such Good Faith Deposit by wire transfer of immediately available funds to an account designated by the Debtor within two business days after the Escrow Agent receives written notice by an authorized officer of the Debtor stating that the applicable Backup Offeror has breached or otherwise failed to satisfy its obligations in accordance with these Sale Procedures and the applicable Backup Offeror.

d.      Successful Offeror. At the closing of the sale transaction, the Successful Offeror shall be entitled to a credit against the purchase price in the amount of the Successful Offeror's Good Faith Deposit. The Good Faith Deposit of a Successful Offeror shall be forfeited if the Successful Offeror fails to consummate the sale transaction because of a breach that entitles the Debtor to terminate the applicable joint venture agreement with such Successful Offeror, and the Debtor and its estate shall be entitled to retain the Successful Offeror's Good Faith Deposit as partial compensation for the damages caused to the Debtor and its estate as a result of such breach. If a Successful Offeror's Good Faith Deposit is deemed forfeited, the Escrow Agent shall release such Good Faith Deposit by wire transfer of immediately available funds to an account designated by the Debtor within two business days after the Escrow Agent receives written notice by an authorized officer of the Debtor stating that the Successful Offeror has breached or otherwise failed to satisfy its obligations in accordance with these Sale Procedures and the Successful Offer.

## VIII.   SALE HEARING

The Successful Offer (including any Backup Offer that is subsequently deemed a Successful Offer) will be subject to Court approval. The hearing to approve the sale transaction consummated in accordance with these Sale Procedures (except in the case of the sale transaction contemplated by a Backup Offer that subsequently is deemed a Successful Offer) shall take place on **July 8, 2025, at noon (prevailing Eastern Time)** (the "Sale Hearing") before the Honorable Christopher J. Panos, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Massachusetts, located at J.W. McCormack Post Office & Court House, 5 Post Office Square, 12th Floor, Boston, MA 02109

At the Sale Hearing, the Debtor will seek entry of an order (a "Sale Order") approving, among other things, the sale of the Sale Assets to the Successful Offeror.

The Debtor in its reasonable business judgment may (after consulting with the Consultation Parties and the Successful Offeror), adjourn or reschedule the Sale Hearing with sufficient notice to the Sale Notice Parties, including by announcing such adjournment or rescheduling on the Selection Day or in Court on the date of the originally scheduled Sale Hearing.

The Debtor's presentation to the Court for approval of a selected Qualified Offer as a Successful Offer does not constitute the Debtor's acceptance of such Offer. The Debtor will have accepted a Successful Offer only when such Successful Offer has been approved by the Court at the Sale Hearing.

### IX.    RESERVATION OF RIGHTS TO MODIFY SALE PROCEDURES

The Debtor reserves the right to, in its reasonable business judgment after consultation with the Consultation Parties and in a manner consistent with its fiduciary duties and applicable law, (i) modify these Sale Procedures, including to, among other things, extend or waive deadlines or other terms and conditions set forth herein; adopt new rules and procedures for conducting the Offers, the Selection Process and the Selection Day so long as any such modifications are disclosed to all Prospective Offerors and Qualified Offerors, as applicable; or (ii) otherwise modify these Sale Procedures to further promote competitive Offers for and maximizing the of value of the Assets, in each case, to the extent not materially inconsistent with these Sale Procedures or the Sale Procedures Order. As provided in the Sale Procedures Order, the entry of the Sale Procedures Order or any of the Exhibits hereto, shall not (i) prevent the Debtor from, in the exercise of its fiduciary duties, pursuing or otherwise consummating an alternative transaction or (ii) obligate the Debtor to pursue or consummate any transaction with any Qualified Offeror.

### X.    NOTICING

#### A.    Offer Notice Parties

Qualified Offers must be submitted in writing to the following parties (collectively, the "Offer Notice Parties"):

- Counsel for the Debtor: Murphy & King, P.C., 28 State Street, Suite 3101, Boston, Massachusetts 02109 (Attn: Kathleen R. Cruickshank (KCruickshank@MurphyKing.com); and Brown Rudnick LLP, On Financial Center, Boston, MA 02111, Attn: William R. Baldiga, Esq. (wbaldiga@brownrudnick.com); and

**B.      Sale Notice Parties**

The "Sale Notice Parties" shall include the following persons and entities:

- the Consultation Parties;

- counsel to any Stalking Horse, if any;

- all parties who have expressed an interest in the acquiring the Sale Assets through a Joint Venture Agreement or an alternative transaction;

- all persons and entities known by the Debtor to have asserted any lien, claim, interest, or encumbrance in the Sale Assets (for whom identifying information and addresses are available to the Debtor);

- all relevant non-debtor parties (each, a "Counterparty") to any Contract that may be assumed or rejected in connection with the sale transaction;

- all of the Debtor's known creditors (for whom identifying information and addresses are available to the Debtor);

- any governmental authority known to have a claim against the Debtor in this Chapter 11 Case;

- the office of the U.S. Trustee;

- all applicable federal, state, and local taxing authorities, including the Internal Revenue Service;

- all of the parties entitled to notice pursuant to Bankruptcy Rule 2002; and

- all other parties as directed by the Court.

**C.      Sale Notice**

Within two business days after the entry of the Sale Procedures Order, the Debtor will file with the Court and serve on the Sale Notice Parties a notice (the "Sale Notice") setting forth (A) a description of the Sale Assets available for sale in accordance with these Sale

Procedures; (B) the date, time, and location of the Selection Day and Sale Hearing; (C) the Sale Objection Deadline and Supplemental Sale Objection Deadline (each as defined in Section X.D below) and the procedures for filing such objections; and, (D) if applicable, a summary of the material terms of any Stalking Horse Agreement, including the terms and conditions of any Stalking Horse Offer Protections to be provided thereunder, as of the date of the Sale Notice.

**D.      Sale Objections and Supplemental Sale Objections**

Except objections to the conduct of the Selection Day, the Successful Offeror or the Backup Offeror, all objections to a sale of the Sale Assets, including (i) any objection to a sale of the Sale Assets free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and (ii) entry of any Sale Order (each such objection, a "Sale Objection") shall, by no later than **June 23, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline"), be filed with Court and served on the following parties (collectively, the "Objection Notice Parties"):

o   Counsel for the Debtor: Murphy & King, P.C., 28 State Street, Suite 3101, Boston,  MA  02109  (Attn:  Kathleen  R.  Cruickshank (KCruickshank@MurphyKing.com); and Brown Rudnick LLP, One Financial Center,  Boston,  MA  01111,  Attn:  William  R.  Baldiga,  Esq. (wbaldiga@brownrudnick.com);

o   if applicable, counsel for any Stalking Horse or relevant Successful Offeror; and

o   if applicable, counsel for any relevant Backup Offeror(s).

Following service of the Notice of Selection Day Results, Sale Notice Parties may object solely with respect to the conduct of the Selection Day and/or the Successful Offeror or Backup Offeror (each such objection, a "Supplemental Sale Objection") by **July 2, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Supplemental Sale Objection Deadline").

**E.      Notices Regarding Assumption and Assignment of Contracts**

The Debtor will provide all notices regarding the proposed assumption and assignment of Contracts in accordance with the Assumption and Assignment Procedures set forth in the Sale Procedures Order.

**XI.     CONSULTATION BY THE DEBTOR**

Throughout the Sale Process, the Debtor and its advisors will consult with Carabetta Enterprises, Inc. ("CEI") and its counsel (collectively, the "Consultation Parties") as provided in these Sale Procedures, or as otherwise necessary and appropriate, as determined in the Debtor's business judgement.

The Debtor shall consult with the Consultation Parties in good faith regarding the Sale Procedures and any diligence and other information requested by the Consultation Parties, and the Debtor will provide to the Consultation Parties copies of each of the Prospective Offers and more generally as to substantive communications with Prospective Offerors. CEI will likewise promptly share with the Debtor any of its own substantive communications with Prospective Offerors.  The Consultation Parties will be provided with advance notice of and may elect in their discretion to participate in the Debtor's substantive discussions with the Prospective Offerors and the Qualified Offerors, but may not engage in their own negotiations with the Prospective Offerors or the Qualified Offerors. The Debtor shall consult with the Consultation Parties on the selection of the Baseline Bid, how the Selection Day is conducted, any additional Selection Day procedures, adjourning the Selection Day, and selecting the Stalking Horse, the Successful Offeror and the Backup Offeror.

Notwithstanding the foregoing, the Debtor will not consult with or provide copies of any bids or other confidential information to any Consultation Party or any insider or affiliate of the Debtor if such party is a Prospective Offeror for the Sale Assets at the applicable time or may join with or support any particular Prospective Offeror, and will cease being a Consultation Party at that time, and in order to permit compliance with this provision each Consultation Party shall immediately provide written notice to the Debtor if it is considering any effort to join with or support any particular Prospective Offeror

Any consultation rights afforded to the Consultation Parties by these Sale Procedures or the Sale Procedures Order shall not in any way limit the Debtor's discretion and shall not include the right to veto any decisions made by the Debtor in the exercise of its reasonable business judgment.  To the extent a disagreement arises between the Debtor and any Consultation Parties regarding the Stalking Horse or the Stalking Horse Offer Protections, or the selection of the Successful Offer or Back-Up Bid or any other aspect of these procedures or the Selection process, each Consultation Party or the Debtor  shall have the right to file appropriate papers with the Bankruptcy Court for resolution of such dispute on an emergency or expedited basis..

*__Exhibit A to Sale Procedures__*

**FORM JOINT VENTURE AGREEMENT OFFER**

Water's Edge Limited Partnership
394 Ocean Avenue
Revere, Massachusetts 02151
Attn.:  Ms. Evelyn M. Carabetta

**RE:  Water's Edge Partnership - 364, 370 & 388 Ocean Avenue, Revere, Massachusetts**

Dear Ms. Carabetta,

_____ (the "<u>JVA Offeror</u>") hereby provides this offer (the "<u>Proposed JVA Offer</u>") which summarizes the proposed terms of a joint venture (the "<u>Joint Venture</u>") to be entered into by the JVA Offeror and Water's Edge Limited Partnership ("<u>WELP</u>" or the "<u>Debtor</u>") with respect to 364, 370 & 388 Ocean Avenue, an approximately 305-unit residential community in Revere, Massachusetts (the "<u>Property</u>") and the Related Assets (defined below), and collectively with the Property, the "<u>Sale Assets</u>").  This Proposed JVA Offer supersedes in its entirety any prior offers or letters of intent submitted by the JVA Offeror.

The transactions contemplated herein shall be effectuated pursuant to an order authorizing and approving (i) a sale of the Sale Assets (the "<u>Sale</u>") to the Joint Venture to be formed with the JVA Offeror, if selected as the successful offeror (the "<u>Successful Offeror</u>"), (ii) the Joint Venture Agreement (the "<u>JVA</u>") and related transaction documents effectuating the Joint Venture (collectively with the JVA, the "<u>Sale Transaction</u>") and (iii) the confirmation of a chapter 11 plan in the Debtor's chapter 11 case No. 24-12445 (the "<u>Bankruptcy Case</u>") pending in the United States Bankruptcy Court for the Eastern District of Massachusetts (the "<u>Bankruptcy Court</u>").  WELP and the JVA Offeror are referred to herein collectively as the "<u>Parties</u>" or singularly as a "<u>Party</u>".

This JVA Offer constitutes an irrevocable offer for the entry of a JVA on the material terms and conditions set forth herein.

| | |
|---|---|
| **Purpose:** | The objective of the Joint Venture is to recapitalize, reposition, lease, manage, stabilize and optimize the value of the Property with tax efficient treatment for WELP, WELP's affiliates and the JVA Offeror. |
| **Transaction Structure:** | The Sale of the Sale Assets to the Joint Venture, to be effectuated pursuant to the Sale Transaction and the Debtor's confirmed plan of reorganization and consummated upon the effective date (the "<u>Effective Date</u>") of the plan, pursuant to which the conveyance of the Sale Assets by the Debtor shall occur through a customary real estate escrow closing conducted by a mutually acceptable, nationally recognized title insurance company ("<u>Escrow</u>"), and the |

JVA Offeror will contribute cash or other capital (together, the "Capital Contribution") to the Joint Venture in the amount necessary to pay the Bankruptcy Claims (as defined below) and to fund the business plan for the Joint Venture agreed to by the Parties (the "Business Plan"). At the closing (to occur following the effective date of the Sale Transaction as described below), the Property together with some or all appurtenant interests and related personal property, fixtures, claims and other interests as described herein (collectively the "Related Assets") will be contributed to a new single purpose entity owned by the Owner Co (defined below), free and clear of all liens, claims and encumbrances other than the liens securing the Bridge Loan (defined below) and/or any other liens agreed by the Parties to be assumed through the Sale Transaction.

**Governance:**               The Parties will form a Delaware limited liability company of which the Parties shall be Members (referred to herein as the "Venture" or "Owner Co.") and the JVA Offeror shall be the Managing Member of the Venture.  The Venture will be governed by the terms of a limited liability company operating agreement the proposed terms of which are summarized on Exhibit A attached hereto.

[The terms of the Joint Venture proposed by the JVA Offeror in Exhibit A shall include the following: (i) joint venture structure, (ii) targeted leverage of the Property; (iii) capital commitments of the JVA Offeror, (iv) equity ownership of the members; (v) timing, manner and conditions to distributions to the members, (vi) Joint Venture's Business Plan, include timing and scope of work and related budgets; (vii) management of the Joint Venture, (viii) fees to be charged, (ix) Property management, (x) responsibility for accounting, tax, financial and record keeping matters, (xi) purchase options for WELP and CEI and other liquidity provisions; (xi) restrictions on transfers of the equity interests; and (xii) approval or other  rights of WELP with respect to material changes to the Joint Venture's Business Plan and related construction and operating budgets ("Project Budget") and other major decisions affecting the Property or the Joint Venture.]

**Initial Capital Contributions and JV Equity Interests:**   As described in Exhibit A, the JVA Offeror will provide (as a component of the Capital Contribution) the cash needed to pay all allowed Claims and administrative expenses filed, scheduled or incurred in the Bankruptcy Case (the "Bankruptcy Claims"), including the Debtor's  Debtor-In-Possession Financing in the projected approximate principal amount of $6,500,000 (the "DIP Financing"), but which Bankruptcy Claims shall exclude a portion of the

2

claim of Carabetta Enterprises, Inc. in the approximate amount of $19 million (the "Deferred CEI Claim"). The Bankruptcy Claims are projected to total approximately $37,000,000 in the aggregate. To the extent that any of the Bankruptcy Claims are disputed, cash in the asserted amount of the claim shall be reserved pending the resolution of those claims. In order to preserve favorable tax treatment for WELP, the JVA Offeror shall secure (also as a component of the Capital Contribution) a senior loan (the "Bridge Loan") to discharge the existing senior loan on the Property (the "Existing First Mortgage Financing") (or refinance  the Existing First Mortgage Financing) with a loan that is non-recourse as to any existing guarantors or co-borrowers, including, without limitation, CEI, any of its officers, directors, principals, or their affiliates in the approximate amount of $17,500,000 which shall be secured by a first mortgage on the Property. In exchange for the JVA Offeror's Capital Contribution and the conveyance of the Sale Assets to the Venture by WELP, the JVA Offeror shall own collectively [___]% of the equity interests of the Joint Venture with WELP owning the remaining [___]%. [Equity ownership to be proposed by JVA Offerors].

**Follow on Capital;**
**Repositioning:**   The JVA Offeror's Capital Contribution will include the capital needed, on commercially reasonable terms and consistent with the Business Plan and Project Budget, to the Joint Venture to facilitate the repair and repositioning of the Real Property (the "Repositioning") described below (the "Repositioning Capital"). Any insurance proceeds recovered (net of costs of collection) shall be used to fund in part the Project Budget. In the event that insurance proceeds are received prior to the Closing, upon mutual agreement of the Parties, such proceeds may be used to reduce the amount of the DIP Financing and/or used to fund a portion of the Bankruptcy Claims.

The JVA Offeror's proposed Business Plan and Budget are attached  hereto as Exhibit B [to be provided by JVA Offerors].  The Parties will work together to hire a new third-party property manager as well as an architect and construction team to design, budget and execute the Repositioning.

**Brokerage:**   Each Party acknowledges that it has not dealt with any broker regarding this transaction.

**Due Diligence:**   The JVA Offeror acknowledges that it has been afforded and has performed significant due diligence. JVA Offeror's right to terminate for unacceptable results of due diligence will be limited to matters of title and survey, and only to the extent that due diligence on title and survey conducted from this point forward reveals conditions that are materially adverse as compared to the

3

results of due diligence taken or shared to date and cannot be cured by WELP within a reasonable time.

**Approval Process and Contingencies;**

The process for obtaining bankruptcy court approval and for closing the Sale Transaction will be as follows**:**

- Upon written acceptance of this JVA Offer by WELP (the "<u>Acceptance Date</u>"), the JVA Offeror and Debtor will promptly begin negotiation of the JVA and operating agreement for Owner Co (collectively the "<u>JVA Documents</u>") which shall be agreed upon and signed by the Parties no later than ten (10) business days after delivery of the JVA Documents.

- Within two business days following the Acceptance Date, the Debtor shall file a notice with the Court in accordance with the Sale Procedures Order.

- As soon as practicable following the Acceptance Date, the Debtor shall file a plan and disclosure statement incorporating the terms of the JVA Offer and shall seek a hearing on confirmation in time to allow the Debtor and the JVA Offeror to close prior to the expiration of any DIP financing.

- Debtor and the JVA Offeror will use commercially reasonable efforts to close on or before the scheduled DIP financing expiration date of September 1, 2025, and the Parties shall close within a prompt time after entry of a customary order (which will include customary good faith findings under Code section 363(m) notwithstanding the possibility of an appeal or the pendency of appeal unless the sale approval order has been reversed or stayed.

**Closing**:

At Closing, the JVA Documents shall be executed and delivered to the Parties and shall be fully binding on such Parties; WELP will deliver through Escrow one or more duly executed quitclaim deeds for some or all of the Property, assignments of all leases, claims, contracts and intangibles, bills of sales for personal property related to the Related Assets and other customary conveyancing documents all in forms reasonably acceptable to the Parties; the Parties will agree on customary prorations of income and expense items and allocation of Closing Costs; and the JVA Offeror will arrange for the necessary initial capital funding to satisfy all allowed Claims.

**Representations**

4

**and Warranties:**      The JVA Offeror represents and warrants that it (a) has had an opportunity to conduct any and all due diligence regarding the Sale Assets prior to making its Qualified Offer, (b) has relied solely upon its own or its advisors' independent review, investigation, and/or inspection of any documents and/or the Sale Assets in making its Qualified Offer, (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Sale Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated herein and (d) the Sale Assets will be conveyed to the Joint Venture "as is, where is, with all faults," with limited representations and warranties, and no indemnification or guarantees by the Debtor.

The JVA Offeror agrees to serve as a backup bidder (a "<u>Backup Bidder</u>") if the JVA Offer is selected at the Auction as the next highest or next best bid after the Successful Bid for the applicable Sale Assets (the "<u>Backup Bid</u>").

This JVA Offer represents a binding, good-faith and *bona fide* offer to purchase the applicable Sale Assets and in its current form and as may be improved during the Sale Process, is irrevocable (a) until the selection of the Successful Bid; or, (b) if the bid is selected as a Successful Bid or as a Backup Bid, until the Backup Bid Expiration Date (as defined in the Sale Order)

The JVA Offeror acknowledges that, unless it is selected as the Stalking Horse Offeror, then it shall not be entitled to any bidding protection or payment in connection with the submission of a bid for the Sale Assets or otherwise participating in the Sale Process;

The JVA Offeror is prepared to close the Sale Transaction contemplated in this JVA Offer as soon as practicable (and in no event later than[   ], 2025)[to be provided by JVA Offeror];

The JVA Offeror expressly waives any claim or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code in connection with bidding for any of the Sale Assets and/or otherwise participating in the Auction or the Sale Process.

The JVA Offeror certifies that it did not and will not collude or otherwise cooperate with any other bidders and is not otherwise a partnership, joint venture or other entity in which more than one bidder (or any affiliates of a bidder) has a direct or indirect interest, unless consented to in writing by the Debtor.

5

The JVA Offeror shall comply with the terms of the Bidding Procedures and the Bidding Procedures Order.

The JVA Offeror (i) consents to the core jurisdiction of the Court to enter any order related to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in the Proposed Sale Order; (ii) waives any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in the Proposed Sale Order; and (iii) consents to the entry of a final order or judgment in connection with any disputes relating to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in the Proposed Sale Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

**Financing Contingencies:**    None.

**Miscellaneous:**    In addition to the terms listed above, the JVA Offeror and WELP agree to the following:

- **Attorney's Fees:** To the extent the transactions contemplated hereunder are consummated, all reasonable attorney fees incurred by the JVA Offeror and WELP shall be capitalized upon the execution of the JVA and the effectiveness of the Sale Transaction implementing the JVA and shall not exceed [$_____].    Attorney fees related to this joint venture transaction commence on [_____][to be provided by the JVA Offeror].

- **Governing Law:**   This Letter shall be governed by the laws of the Commonwealth of Massachusetts.

- **Counterparts:** This Letter may be executed in counterparts and, when so executed, such counterparts shall be taken together as a single agreement.

This JVA Offer is subject only to (i) the due diligence set forth herein, (ii) approval by the Debtor and the Bankruptcy Court of the transactions contemplated hereby.  Upon acceptance of the terms of this JVA Offer, the Parties will be bound to proceed in accordance with the terms outlined in the section entitled "Approval Process and Contingencies"; however, it is agreed that except for such provisions, this JV Bid is non-binding on the Parties until WELP achieves Court approval of the Sale and the Sale Transaction.

*[Signatures on Next Page]*

By:_____


By:_____


**ACCEPTED AND AGREED:**

WATER'S EDGE LIMITED PARTNERSHIP

By:_____
Evelyn M. Carabetta

**JOINDER**:

The undersigned CEI joins in this LOI for purposes of agreeing to be bound by the provisions of the above Section entitled "Approval Process and Contingencies" if the LOI is accepted by the Debtor.


Carabetta Enterprises Incorporated


By: _____
Name:
Title:

**EXHIBIT A**

A joint venture between the JVA Offeror and Water's Edge Limited Partnership ("WELP").  Below please find a binding term sheet that reflects the structure under which we would move forward on this transaction.

## Schedule 1

Major Decisions.  Notwithstanding anything to the contrary in the Joint Venture Agreement, the Managing Member shall not take or permit the JV or any subsidiary of the JV to take or commit to take any of the following actions ("**Major Decisions**") without the prior written approval of the Non-Managing Member which shall not be unreasonably withheld conditioned or delayed:

      A.    [to be provided by JVA Offeror].

## EXHIBIT B

INTIAL BUSINESS PLAN and PROJECT BUDGET

[to be provided by JVA Offeror]

## **EXHIBIT 2**

### **(Sale Notice)**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**(Eastern Division)**

|  |  |
|---|---|
| In re:<br><br>**WATER'S EDGE LIMITED PARTERSHIP,**<br><br>     **Debtor** | **Chapter 11**<br><br>**Case No. 24-12445-CJP** |

**NOTICE OF SALE, SALE PROCEDURES, SELECTION DAY, SALE HEARING AND
OTHER DEADLINES RELATED THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On May 7, 2025, Water's Edge Limited Partnership, the above-captioned debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case") filed with the United States Bankruptcy Court for the District of Massachusetts (the "Court") a motion [Docket No._] (the "Motion") seeking entry of (a) an order (the "Sale Procedures Order") (i) approving sale procedures (the "Sale Procedures")[1] to be used in connection with the sale (each, a "Sale") of all, substantially all, or a portion of (A) the Debtor's assets (the "Sale Assets"); (ii) authorizing the Debtor to designate a Stalking Horse Offeror and provide Stalking Horse Offer Protections in accordance with the Sale Procedures; (iii) scheduling (A) a Selection Day for the Sale Assets (the "Selection Day") on and (B) a final hearing to consider approval of the proposed Sale (the "Sale Hearing"); (iv) approving the form and manner of notice of the Sale Procedures, the Selection Day and the Sale Hearing; (v) approving procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "Contracts") in connection with the Sale; (vi) approving the form and manner of notice to each relevant non-debtor counterparty to a Contract of the Debtor's calculation of the amount necessary to cure any defaults under an applicable Contract and certain other information regarding the potential assumption and assignment of Contracts in connection with a Sale; and (vii) granting related relief; and (b) an order (the "Sale Order") (i) authorizing the sale of the Sale Assets free and clear of all liens, claims, interests and encumbrances, except certain permitted encumbrances as determined by the Debtor and any Successful Offeror (as defined in Section VII.C.1 of the Sale Procedures), with liens to attach to the proceeds of the Sale; authorizing the assumption and assignment of certain Contracts in connection with approved Sale; and (iii) granting related relief.

On May _____, 2025, the Court entered the Sale Procedures Order [Docket No. [_]].

---

[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or the Sale Procedures, as applicable. Any summary of the Sale Procedures or the Sale Procedures Order (or any provision thereof) contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any inconsistency between any summary in this Sale Notice and the terms and conditions of either of the Sale Procedures or the Sale Procedures Order, the actual terms and conditions in those documents shall control.

## ASSETS FOR SALE

The Debtor intends to sell all, substantially all, or a portion of the Debtor's assets, which shall include the apartment complex known as Water's Edge Apartments located at 364, 370 and 388 Ocean Avenue, Revere, Massachusetts, together with some or all appurtenant interests and related personal property, fixtures, claims and other interests as may be identified by a prospective purchaser (collectively, the "Sale Assets")

A Prospective Offeror (as defined in Section III of the Sale Procedures) may Offer on the Sale Assets, subject to the conditions set forth therein.

The ability to undertake and consummate a sale of the Sale Assets shall be subject to competitive selection process, as set forth herein, and approval by the Court. In addition to any Stalking Horse Offer (as defined in the Motion), and as set forth herein, the Debtor will consider Offers for the Sale Assets from other parties.

Any party interested in submitting a Offer for any of the Sale Assets should contact the Debtor's counsel:

Kathleen R. Cruickshank, Esq.
Murphy & King, P.C.
28 State Street, Suite 3101
Boston, MA 02019
(617) 423-0400
kcruickshank@murphyking.com

William Baldiga, Esq.
Brown Rudnick LLP
One Financial Center
Boston, MA 02111
(617) 856-8586
wbaldiga@brownrudnick.com

## KEY DATES AND DEADLINES

### A.   Offer Deadline

Any Prospective Offeror that intends to attend the Selection Day must submit in writing to the Offer Notice Parties a Qualified Offer (as defined in Section VI.A of the Sale Procedures) **on or before June 19, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Offer Deadline").

The Qualified Offer requirements are set forth in Sections VI.A of the Sale Procedures.

### B.   Selection Process and Selection Day

If the Debtor receives more than one Qualified Offer for the Sale Assets, the Debtor will conduct a Selection Process for the Sale Assets on the Selection Day. If any Offer, including any Stalking Horse Offer, is the only Qualified Offer received in respect of the Assets, the Debtor will not conduct anfor the Sale Assets, and the Debtor will seek approval of such Offer at the Sale Hearing.

The Selection Day, if required, will occur on **June 26, 2025, at 10:00 a.m**. (prevailing Eastern Time), at either (i) at the offices of Brown Rudnick, LLP, One Financial Center, Boston, MA 02111, or (ii) virtually or at such other date, time or location as designated by the Debtor. Subject to the Selection Process procedures set forth in section VII.B of the Sale Procedures, professionals and principals for the Debtor, each Qualified Offeror (including, its representative(s), if any) that has provided notice in writing of its intent to observe the Selection Process via electronic mail to counsel for the Debtor, Murphy & King, P.C., 28 State Street, Suite 3101, Boston, MA 02109 (Attn: Kathleen R. Cruickhank, kcruickshank@murphyking.com) at least one (1) day prior to the start of the Selection Process shall be able to attend and observe the Selection Process, along with any other parties the Debtor deems appropriate; *provided* that the Debtor may, in its sole discretion, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of a Qualified Offeror or otherwise attend the Selection Day. If the Debtor conducts the Selection Day virtually, the Debtor will provide instructions setting forth how to attend the Selection Day to the participants and other attendees via electronic mail. The Debtor will provide notice (via electronic mail or otherwise) of any change in the date, time or location of the Selection Day to Qualified Offerors and will cause publication of such change to occur on the docket (the "Docket"), which is accessible for a nominal fee at https://ecf.deb.uscourts.gov/, as soon as reasonably practicable and in any event no later than 24 hours before the Selection Day. If held, the Selection Day proceedings will (i) be transcribed and/or video recorded and (ii) include open Sale Process in the presence of all Qualified Offerors, subject to reasonable limitations imposed by a virtual platform to be evaluated and determined by the Debtor.

No later than one business days after the conclusion of the Selection Day, the Debtor will file with the Court and serve on the Sale Notice Parties (as defined in Section X.B of the Sale Procedures) a notice of the results of the Section Process, which will, among other things, (A) identify the Successful Offeror and Backup Offeror(s); (B) include a copy of the Successful Offer and the Backup Offer or a summary of the material terms of such Offers, including any assumption and assignment of Contracts contemplated thereby; and (C) set forth the date, time, and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Selection Process.

If the Debtor determines not to hold an Selection Day for some or all of the Sale Assets, the Debtor shall file with the Court and serve on the Sale Notice Parties a notice containing the following information (as applicable): (a) a statement that the Selection Day for the relevant Assets has been canceled; (b) the identity of the Successful Offeror; (c) a copy of the Successful Offer or a summary of the material terms of such Offer, including any assumption and assignment of Contracts contemplated thereby; and (d) the date, time, and location of the Sale Hearing.

### C.   Objection Deadlines

1.   Sale Objection Deadline. Except objections to the conduct of the Selection Process, the Successful Offeror or the Backup Offeror, all objections to a sale of the Sale Assets under the terms of the Joint Venture Agreement, including (a) any objection to a sale of the Sale Assets free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code and (b) entry of any Sale Order must be (i) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (ii) filed with the Court by **no later than June 23, 2025, at 4:00 p.m. (prevailing Eastern Time)** and served on the Objection Notice

Parties (as defined in Section X.D of the Sale Procedures).

2. <u>Supplemental Sale Objection Deadline</u>. Following service of the Notice of Selection Day Results, parties may object solely with respect to the particular terms of a proposed Sale or the Successful Offer. Any Supplemental Sale Objection must be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (b) filed with the Court by no later **July 2, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Supplemental Sale Objection Deadline</u>") and served on the Objection Notice Parties.

### D.   Sale Hearing

The Sale Hearing shall take place on **July 8, 2025, at noon (prevailing Eastern Time)** before the Honorable Christopher J. Panos, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Massachusetts, located at the John McCormack Post Office and Court House, 5 Post Office Square, Boston, MA 02109.

## <u>RESERVATION OF RIGHTS TO MODIFY SALE PROCEDURES</u>

The Debtor reserves the right to, in its reasonable business judgment, and in a manner consistent with their fiduciary duties and applicable law, (i) modify these Sale Procedures, including to, among other things, extend or waive deadlines or other terms and conditions set forth herein; adopt new rules and procedures for conducting the Selection Process and Selection Day so long as any such modifications are disclosed to all Prospective Offerors and Qualified Offerors, as applicable; or (ii) otherwise modify these Sale Procedures to further promote competitive Offers for and maximizing the of value of the Sale Assets, in each case, to the extent not materially inconsistent with the Sale Procedures or the Sale Procedures Order.

## <u>ADDITIONAL INFORMATION</u>

**FAILURE TO ADHERE TO THE SALE PROCEDURES, THE SALE PROCEDURES ORDER OR ANY OTHER APPLICABLE ORDER OF THE COURT ENTERED IN THE CHAPTER 11 CASE MAY RESULT IN THE REJECTION OF YOUR OFFER AND YOUR DISQUALIFICATION FROM PARTICIPATING IN THE SELECTION PROCESS FOR ANY THE SALE ASSETS.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE SALE PROCEDURES ORDER, INCLUDING THE FAILURE TO FILE ANY SUCH OBJECTION BY THE APPLICABLE OBJECTION DEADLINE, SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING, AT THE SALE HEARING OR THEREAFTER, ANY SUCH OBJECTION TO THE RELIEF REQUESTED IN THE MOTION, THE CONSUMMATION OF ANY APPLICABLE SALE, INCLUDING THE SALE OF ANY ASSETS TO A SUCCESSFUL OFFEROR FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO SECTION 363(f) OF THE BANKRUPTCY CODE OR THE TERMS OF ANY STALKING HORSE AGREEMENT OR OTHER ASSET PURCHASE AGREEMENT EXECUTED BY THE DEBTOR.**

Dated: May __, 2025

Respectfully submitted,

WATER'S EDGE LIMITED PARTNERSHIP,
By its counsel,

*/s/ Kathleen R. Cruickshank*
Kathleen R. Cruickshank (BBO #550675)
Murphy & King, Professional Corporation
28 State Street, Suite 3101
Boston, Massachusetts  02109
Telephone No.:  (617) 423-0400
E-mail: Kcruickshank@murphyking.com

## **EXHIBIT 3**

## **(Assumption and Assignment Notice)**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**(Eastern Division)**

|  |  |
|---|---|
| In re:<br><br>**WATER'S EDGE LIMITED PARTNERSHIP,**<br><br>             **Debtor** | **Chapter 11**<br><br>**Case No. 24-12445-CJP** |

**NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION
AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN
CONNECTION WITH SALE OF SALE ASSETS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On May 7, 2025, Water's Edge Limited Partnership, the above-captioned debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case") filed with the United States Bankruptcy Court for the District of Massachusetts (the "Court") a motion [Docket No. ] (the "Motion") seeking entry of (a) an order (the "Sale Procedures Order") (i) approving Sale Procedures (the "Sale Procedures")[1] to be used in connection with the sale (each, a "Sale") of all, substantially all, or a portion of (A) the Debtor's assets (the "Sale Assets"); (ii) authorizing the Debtor to designate a Stalking Horse Offeror and provide Stalking Horse Offer Protections in accordance with the Sale Procedures; (iii) scheduling (A) an Selection Day of the Sale Assets (the "Selection Day") on and (B) a final hearing to consider approval of the proposed Sale (the "Sale Hearing"); (iv) approving the form and manner of notice of the Sale Procedures, the Selection Day and the Sale Hearing; (v) approving procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "Contracts") in connection with the Sale; (vi) approving the form and manner of notice to each relevant non-debtor counterparty to a Contract of the Debtor's calculation of the amount necessary to cure any defaults under an applicable Contract and certain other information regarding the potential assumption and assignment of Contracts in connection with a Sale; and (vii) granting related relief; and (b) an order (the "Sale Order") (i) authorizing the sale of the Sale Assets free and clear of all liens, claims, interests and encumbrances, except certain permitted encumbrances as determined by the Debtor and any Successful Offeror (as defined in Section VII.C.1 of the Sale Procedures), with liens to attach to the proceeds of the Sale; (ii) authorizing the assumption and assignment of certain Contracts in connection with approved Sale; and (iii) granting related relief.

On May [_____], 2025, the Court entered the Sale Procedures Order [Docket No. _].

---

[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or the Sale Procedures, as applicable. Any summary of the Sale Procedures or the Sale Procedures Order (or any provision thereof) contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any inconsistency between any summary in this Sale Notice and the terms and conditions of either of the Sale Procedures or the Sale Procedures Order, the actual terms and conditions in those documents shall control.

**You are receiving this Notice because you may be a Counterparty to a Contract of the Debtor that may be assumed and assigned to the Successful Offeror for the Sale Assets.**

## CURE COSTS

In accordance with the Assumption and Assignment Procedures and the Sale Procedures Order, the Debtor may, in connection with the Sale with the Successful Offeror at the Selection Day, seek to assume and assign to the Successful Offeror certain of their Contracts. Each of the Contracts that potentially could be assumed and assigned in connection with the Sale, together with the Debtor's calculation of Cure Costs with respect to such Contracts, is set forth on Schedule 1 hereto. The inclusion of any Contract on Schedule 1 does not constitute an admission by the Debtor, any Stalking Horse Offeror, any Successful Offeror, or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code or require or guarantee that such Contract ultimately will be assumed or assigned. Moreover, if you are party to a Contract with one of the Subsidiaries and the Subsidiaries do not subsequently file bankruptcy proceedings, the rights provided by section 365 of the Bankruptcy Code, including the right to cure payment will not apply. All rights of the Debtor with respect thereto are reserved.

In addition, to the extent that any of the Cure Costs set forth on Schedule 1 do not reflect postpetition payments that have been made by the Debtor of applicable Cure Costs or (ii) any payments that are made by the Debtor in respect of such Cure Costs after the filing of this Notice, the respective amounts required to be paid to cure any existing defaults under the applicable Contracts shall be reduced by any such corresponding postpetition payments, and the Debtor reserves its right to update the Cure Costs set forth on Schedule 1 accordingly, either by filing a supplemental notice with the Court or by written notice to the applicable Counterparty.

## CURE OBJECTIONS

### A.    Cure Objection Deadline

Any Counterparty that wishes to object to the Debtor's proposed Cure Costs (each such objection, a "Cure Objection") must file with the Court by **no later than August 11, 2025, at 4:00 p.m. (prevailing Eastern Time)** and serve on the Objection Notice Parties (as defined in Section X.D of the Sale Procedures) its Cure Objection, which must be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof.

### B.    Resolution of Cure Objections

Pursuant to the Sale Procedures Order, the Debtor, any Stalking Horse Offeror or Successful Offeror (if applicable) and the objecting Counterparty must first confer in good faith to attempt to resolve the Cure Objection without Court intervention. If the parties are unable to consensually resolve the Cure Objection prior to or before the commencement of the Confirmation Hearing (defined below), the Court shall make all necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing scheduled pursuant to the following paragraph. If a Cure Objection is resolved in a manner that is not in the best interests of the Debtor and its estate, whether or not such resolution occurs prior to or after the closing of the Sale, the Debtor and the Successful Offeror may determine that any Contract subject to such resolved Cure Objection no longer will be assumed and assigned; *provided*, *that*, in the case of an unexpired lease of non-

residential real property, such determination shall be prior to the expiration of the applicable deadline to assume or reject unexpired leases under section 365(d)(4) of the Bankruptcy Code. All other objections to the Debtor's proposed assumption and assignment of the Debtor's right, title, and interest in, to, and under a Contract shall be heard at the Confirmation Hearing.

### C.     Adjourned Cure Objections

If a timely filed Cure Objection cannot otherwise be resolved by the parties, the Cure Objection may be heard at the Confirmation Hearing, or, at the option of the Debtor and the Successful Offeror, be adjourned to a subsequent hearing (each such Cure Objection, an "Adjourned Cure Objection"). Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the applicable Contract that was the subject of such Adjourned Cure Objection shall, at the election of the Successful Offeror, and subject to the Debtor's rights set forth in paragraph 28 of the Sale Procedures Order, be deemed assumed and assigned to the Successful Offeror as of the closing date of the Sale.

IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY CURE OBJECTION, THE COUNTERPARTY FOREVER SHALL BE BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO THE COST TO CURE ANY DEFAULTS UNDER THE APPLICABLE CONTRACT, AND THE CURE COSTS SET FORTH ON SCHEDULE 1 HERETO SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE CONTRACT AND SATISFY THE REQUIREMENTS OF SECTION 365(b) OF THE BANKRUPTCY CODE, AND THE COUNTERPARTY TO THE CONTRACT SHALL BE DEEMED BOUND BY AND TO HAVE CONSENTED TO THE CURE COSTS.

### NOTICE OF SELECTION PROCESS RESULTS

The Selection Day, if required, will be conducted on **June 26, 2025, at 10:00 a.m**. (prevailing Eastern Time), at either (i) at the offices of Brown Rudnick, LP, One Financial Center, Boston, MA 02111, or (ii) virtually or at such other date, time or location as designated by the Debtor.  Subject to the Selection Process procedures set forth in section VII.B of the Sale Procedures, professionals and principals for the Debtor, each Qualified Offeror (including, its representative(s), if any), and any creditor of the Debtor that has provided notice in writing of its intent to observe the Selection Day via electronic mail to counsel for the Debtor, Murphy & King, P.C. 28 State Street, Suite 3101, Boston, MA (Attn: Kathleen R. Cruickshank, kcruickshank@murphyking.com) at least one (1) day prior to the start of the Selection Process shall be able to attend and observe the Selection Process, along with any other parties the Debtor deem appropriate; *provided* that the Debtor may, in its sole discretion, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of a Qualified Offeror or otherwise attend the Process. If the Debtor conducts the Selection Day virtually, the Debtor will provide instructions setting forth how to attend the Selection Day to the participants and other attendees via electronic mail. The Debtor will provide notice (via electronic mail or otherwise) of any change in the date, time or location of the Selection Day to Qualified Offerors and will cause publication of such change to occur on the docket (the "Docket"), which is accessible for a nominal fee at https://ecf.deb.uscourts.gov/, as soon as reasonably practicable and in any event no later than 24 hours before the Selection Day. If held, the Selection Day proceedings will (i) be transcribed and/or video recorded and (ii) include open Selection Process in the presence of

all Qualified Offerors, subject to reasonable limitations imposed by a virtual platform to be evaluated and determined by the Debtor.

One business days after the conclusion of the Selection Day, the Debtor will file with the Court and serve on the Sale Notice Parties (as defined in Section X.B of the Sale Procedures) a notice of the results of the Selection Day, which will, among other things, (A) identify the Successful Offeror(s) and Backup Offeror(s); (B) include a copy of each Successful Offer and each Backup Offer; (C) Adequate Assurance Information of the Successful Offeror and the Backup Offeror and (D) set forth the date, time, and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Selection Day.

## ADEQUATE ASSURANCE OBJECTIONS

### A.    Adequate Assurance Objection Deadline

Any Counterparty to a Contract that wishes to object to the proposed assumption and assignment of the Contract, the subject of which objection is the proposed form of adequate assurance of future performance of the Successful Offeror (or any other relevant assignee), (each such objection, an "Adequate Assurance Objection"), shall file with the Court and serve on the Objection Notice Parties: any Adequate Assurance Objection by **no later than August 11, 2025 at 4:00 p.m.** Any Adequate Assurance Objection must state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof.

### B.    Resolution of Adequate Assurance Objections

Pursuant to the Sale Procedures Order, the Debtor, the Successful Offeror and the objecting Counterparty must first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention. If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Confirmation Hearing, the Adequate Assurance Objection and all issues of adequate assurance of future performance of the Successful Offeror (or any other relevant assignee) shall be determined by the Court at the Confirmation Hearing or, at the option of the Debtor and the Successful Offeror, be adjourned to a subsequent hearing, with notice to the party having filed the Adequate Assurance Objection.

IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY FOREVER SHALL BE BARRED FROM ASSERTING ANY OBJECTION TO THE ASSUMPTION AND/OR ASSIGNMENT OF THE APPLICABLE CONTRACT WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE. THE APPLICABLE SUCCESSFUL OFFEROR SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE CONTRACT IN ACCORDANCE WITH BANKRUPTCY CODE SECTIONS 365(b)(1)(C), 365(f)(2)(B) AND, IF APPLICABLE, 365(b)(3), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR ANY OTHER DOCUMENT.

## CONFIRMATION HEARING

The Confirmation Hearing, which will include consideration of any Cure Objection or Adequate Assurance Objection shall take place on **August 19, 2025, at 10:00 a.m. (prevailing Eastern Time)**

before the Honorable Christopher J. Panos, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Massachusetts, located at 5 Post Office Square, 12th Floor, Courtroom 3, Boston, Massachusetts 02109.

Dated: _____, 2025           Respectfully submitted,

                                       WATER'S EDGE LIMITED PARTNERSHIP,
                                       By its counsel,

                                       */s/ Kathleen R. Cruickshank*
                                       Kathleen R. Cruickshank (BBO #550675)
                                       Murphy & King, Professional Corporation
                                       28 State Street, Suite 3101
                                       Boston, Massachusetts  02109
                                       Telephone No.:  (617) 423-0400
                                       E-mail: Kcruickshank@murphyking.com

## <u>Schedule 1</u>

**[To Be Inserted by Debtor]**