**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**Eastern Division**

| | |
|---|---|
| In re: | Chapter 11 |
| Water's Edge Limited Partnership | Case No. 24-12445-CJP |
| Debtor. | |

**AMENDED AND RESTATED ORDER APPROVING SALE PROCEDURES,**
**AUTHORIZING THE DEBTOR TO DESIGNATE A STALKING HORSE**
**OFFEROR, AND GRANTING RELATED RELIEF**

Upon consideration of the *Debtor's Motion to Modify Order Approving Sale Procedures, Authorizing the Debtor to Designate a Stalking Horse Offeror, and Granting Related Relief* [Docket No. 335] (the "~~Modification Motion~~"), seeking modification of the *Order (I) Approving Sale Procedures for the Sale of the Sale Assets of the Debtor, (II) Authorizing the Debtor to Designate a Stalking Horse Offeror and to Seek Approval of Stalking Horse Offer Protections, (III) Scheduling a Selection Day and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (VI) Granting Related Relief [Docket No. 287]* entered on May 21, 2025 (the "~~Initial Sale Order~~") granting the *Debtor's Motion for Entry of Orders (I)(A) Approving Sale Procedures for the Sale of the Assets of the Debtor; (B) Authorizing the Debtor to Designate a Stalking Horse Offeror and to Seek Approval of Stalking Horse Offer Protections; (C) Scheduling a Selection Day and Approving the Form and Manner of Notice Thereof, Approving Assumption and Assignment Procedures, (D) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (E) Granting Related Relief; and (II)(A) Approving the Sale*

*Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 241] (the "Initial Sale Motion"),[1] each filed by Water's Edge Limited Partnership, the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"); and the Court having reviewed the Modification Motion and the responses thereto; and the Court having considered the record in this Bankruptcy Case; and the Court having considered the statements of counsel with respect to the Modification Motion, including the proffer of counsel to the Debtor regarding the evidence that would be adduced regarding the Modification Motion, at a hearing before the Court on August 5, 2025 to consider the relief requested in the Modification Motion (the "Hearing"); the Court having directed the filing of a proposed form of order in the form described at the Hearing and having provided a response period with respect to the form of order; Carbetta Enterprises, Inc. having filed a statement to the form of order [Docket No. 357] (the "Statement") and the Court having held a hearing with respect to the Statement and the proposed form of order on the Modification Motion on August 19, 2025; the City of Revere having filed an objection to the form of order [Docket No. 360] and the Debtor having filed a response thereto [ECF No. 370];  a further revised form of order having been submitted by the Debtor, and after due deliberation, this Court having determined that the legal and factual bases set forth in the Modification Motion, as amended and restated by this order (the "Amended and Restated Sale Procedures Order"), establish just cause for the relief granted herein; and it appearing that the relief requested in the Modification Motion, as amended and restated by this Amended and Restated Sale Procedures Order, is in the best interests of the Debtor, its estate, and its creditors;

---

[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Modification Motion, the Initial Sale Order or the Revised Sale Procedures, as applicable.

and the Debtor having demonstrated good, sufficient, and sound business justifications for the relief granted herein;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The predicates for the relief granted herein are sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

B.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Notice of the Modification Motion, the Hearing, and the proposed entry of this Amended and Restated Sale Procedures Order was sufficient under the circumstances of the Chapter 11 Case, and such notice complied with all applicable requirements of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules. Accordingly, no other or further notice of the Modification Motion, the Hearing, or this Amended and Restated Sale Procedures Order need be provided.

D.      The Debtor has articulated good and sufficient business reasons for the Court to approve the relief requested in the Modification Motion as modified by this Amended and Restated Sale Procedures Order.  Such good and sufficient business reasons, which were set forth in the Modification Motion, on the record of this Chapter 11 Case and on the record at the Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

E.      The Sale Procedures as revised by the Modification Motion and as further modified by this Amended and Restated Sale Procedures Order, in the form attached hereto as **Exhibit 1** (the "Revised Sale Procedures") and incorporated herein by reference as if fully set

3

forth in this Amended and Restated Sale Procedures Order, are fair, reasonable, and appropriate and are designed to maximize the value of the Property.

F.      The Debtor has articulated good and sufficient business reasons for the Court to approve the relief requested in the Modification Motion, including, without limitation, the (i) the Revised Sale Procedures (including the procedures for the designation of the Stalking Horse Offeror); and (ii) the form and manner of notice of the Revised Sale Procedures, the Selection Process with respect to the Successful Offer for a Transaction or Transactions for the Property, as modified by this Amended and Restated Sale Procedures Order (the "Revised Sale Process").  Such good and sufficient business reasons, which were set forth in the Modification Motion, on the record of this Chapter 11 Case and on the record at the Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

G.      The Revised Sale Procedures are reasonably designed to promote Offers and participation in the Selection Process to ensure that the highest or otherwise best value is generated for the Property.

H.      The Debtor is authorized to select (subject to further Court approval as to the particular protections offered by the Debtor, if a Stalking Horse Offeror is selected) a Stalking Horse Offeror, in accordance with the Revised Sale Procedures, to file a Stalking Horse Motion, and to seek entry of a Stalking Horse Order, approving among other things Stalking Horse Offer Protections, at the Stalking Horse Hearing.

I.      Good and sufficient notice of the relief sought in the Modification Motion has been provided under the circumstances, as reflected in the certificates of service filed with the Court, and no other or further notice is required except as set forth in the Revised Sale

Procedures. A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties-in-interest.

J.      The Revised Sale Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Sale Process, the Revised Sale Procedures, and all relevant and important dates and deadlines with respect to the foregoing, and no other or further notice of the Revised Sale Process in connection therewith shall be required.

K.      The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Modification Motion is GRANTED as set forth herein.

2.      All objections to the relief granted in this Amended and Restated Sale Procedures Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled, and denied on the merits with prejudice.

**A.      The Revised Timeline**

3.      The Debtor is authorized to solicit a Transaction or Transactions in accordance with the Revised Sale Procedures and is authorized to take any and all actions reasonably, necessary and/or appropriate to implement the Revised Sale Procedures in accordance with the following timeline (the "Revised Timeline"):

| Phase/Key Milestones | Date/Duration |
|---|---|
| **Two business days after the entry of the Amended and Restated Sale Procedures Order** | Deadline for Debtor to file and serve Revised Sale Procedures |
| **Preparation and Launch:**<br>• **Data Room Preparation**<br>• **Finalizing Offering Memorandum and Valuation Materials**<br>• **Newmark's familiarization with assets and establishment of tour protocol** | Weeks 0-2<br><br>(through approximately 8/5/25, as may be modified in the Debtor's exercise of its business judgment after consultation with Newmark) |
| **Marketing Window:**<br>• **Issue teaser and NDA, confirm buyer access to virtual data room**<br>• **Controlled outreach to qualified investor universe**<br>• **Tours and investor buyer Q&A**<br>• **Facilitation of City of Revere discussions and answers on regulatory/ISD matters** | Weeks 1-6<br><br>(through approximately 8/26/25, as may be modified in the Debtor's exercise of its business judgment after consultation with Newmark) |
| **Call for Offers/Bid Deadline**<br>• **Initial offers due**<br>• **Analyze and abstract each individual offer, circulate buyer questionnaires to buyers to ascertain details on business plan, capital readiness, etc.**<br>• **Invite shortlist to "Best & Final" round of bidding** | Week 7<br><br>(through approximately 9/12/25, as may be modified in the Debtor's exercise of its business judgment after consultation with Newmark) |
| **Status Report on Initial Offers** | To be filed with the Court by September 18, 2025, along with a request for further hearing on an expedited basis if the Debtor at such time does not continue to have high confidence that Transaction Proceeds are highly likely to be sufficient to pay all claims against the Debtor in full unless otherwise agreed |
| **Best & Final/ Selection**<br>• **Interview Finalists**<br>• **Choose Transaction(s) or advance 2+ to third competitive round** | Weeks 8-9<br><br>(through approximately 9/19/25, as may be modified in the Debtor's exercise of its business judgment after consultation with Newmark) |
| **Final Due Diligence & Closing**<br>• **Once Transaction(s) Selected, commence final due diligence period.**<br>• **Work on parallel track through Purchase and Sale Negotiation** | Weeks 10+<br><br>Closing anticipated mid-November 2025, as may be modified in the Debtor's exercise of its business judgment after consultation with Newmark |

**B.      The Revised Sale Procedures**

4.      The Revised Sale Procedures attached hereto as **Exhibit 1** are hereby approved in their entirety and are incorporated by reference as if fully set forth herein. The Revised Sale Procedures shall govern the selection of the Stalking Horse Offeror, Offers, the Selection Process, and the entry into a Transaction or Transactions with respect to the Property. The failure to specifically include or reference a particular provision of the Revised Sale Procedures in this Amended and Restated Sale Procedures Order shall not diminish or impair the effectiveness of such provision.

5.      Any exercise of discretion by the Debtor set forth in the Revised Bidding Procedures in consultation with any Consultation Parties shall be subject to Court review following objection by an interested party and request for an emergency hearing.

6.      Subject to this Amended and Restated Sale Procedures Order and the Revised Sale Procedures, the Debtor, in the exercise of its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, and in consultation with any Consultation Party, shall have the right to: (i) select a Stalking Horse Offeror and provide such Stalking Horse Offeror with Stalking Horse Offer Protections; (ii) determine which Offerors shall be deemed Qualified Offerors to advance to further rounds of bidding; (iii) make a determination about which Offerors will advance to final rounds of bidding; (iv) determine which Offer or Offers are the highest or otherwise best Offer(s) for a Transaction or Transactions with respect to the Property (such offer, a "Successful Offer") and which Offer is the next highest and next best Offer after the Successful Offer for the Property (such Offer, a "Backup Offer"); and (v) reject any Offer that is (a) inadequate or insufficient; (b)

not in conformity with the requirements of this Amended and Restated Sale Procedures Order or any other applicable order of the Court, the Revised Sale Procedures, the Bankruptcy Code, or other applicable law; or (c) contrary to the best interests of the Debtor and its estate.

7.      In accordance with and subject to the Revised Sale Procedures, the Debtor, in the exercise of its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, and in consultation with any Consultation Party, shall have the right to modify the Revised Sale Procedures, including to (i) extend or waive deadlines or other terms and conditions set forth herein or therein; (ii) adopt new rules and procedures for conducting the Revised Sale Process so long as any such modifications are disclosed to all offerors; and (iii) otherwise modify the Revised Sale Procedures to further promote competitive Offers for and maximizing the value of the Property; provided however, any extension for the submission of Initial Offers shall not be extended more than 14 days beyond September 12, 2025 without the authority of the Court.

**C.      Stalking Horse Agreement and Stalking Horse Offer Protections**

8.      The Stalking Horse Designation Procedures are approved, and the Debtor is authorized to seek approval of a Stalking Horse Agreement with a Stalking Horse Offeror and provide Stalking Horse Offer Protections, in accordance with the Revised Sale Procedures.

**D.      Status Report on Initial Offers**

9.      Within three business days following receipt of the Initial Offers, the Debtor shall file with the Court and serve on the Sale Notice Parties a Status Report with respect to the Initial Offers, including a request for further hearing on an expedited basis to consider amending this Order if the Debtor at such time does not continue to have high confidence

based on Initial Offers that Transaction Proceeds are highly likely to be sufficient to pay all claims against the Debtor in full unless otherwise agreed.

## E.     Related Relief

10.     The Transaction or Transactions chosen by the Debtor as the Successful Offer(s) and Backup Offer(s) shall be subject to Court approval upon appropriate motion by the Debtor.

11.     CEI and its counsel shall be a Consultation Party (as defined in the Revised Sale Procedures) with the rights set forth therein and herein; provided, however, that during any such time that CEI (or its principals) may be considering that it may itself submit (directly or in concert with another party) a Proposed Offer and/or a Qualified Offer, CEI shall promptly inform the Debtor in writing to that effect and its status as a Consultation Party shall be suspended.  In that regard, to the extent its status as a Consultation Party is not suspended, (i) the Debtor will share with CEI as a Consultation Party all Prospective Offers as received, and make itself available to discuss all aspects of the same; (ii) CEI and its representatives may participate (in the presence of Debtor representatives, unless in each instance otherwise permitted in advance in writing by the Debtor) in discussions with Prospective Offerors, and may ask questions but not conduct their own negotiations, (iii) CEI may participate fully as a Consultation Party in all aspects of the Selection Process and in connection with the Debtor's selection of any Stalking Horse Offeror; and (iv) if  CEI disagrees with the Debtor's business judgment as to its selection of any Stalking Horse Offeror or the highest and best offer at the conclusion of the Selection Process, CEI may, after good faith efforts with the Debtor to resolve that disagreement informally, present its position to the Court on an expedited basis with the full cooperation of the Debtor for the

Court's resolution of that disagreement.

**E.      Other Related Relief**

12.      All persons and entities that participate in the Revised Sale Process by submitting an Initial Bid for the Property shall be deemed to have knowingly and voluntarily (i) consented to the core jurisdiction of the Court to enter any order related to the Revised Sale Procedures and the Sale Process, or any other relief requested in the Modification Motion or granted in this Amended and Restated Sale Procedures Order; (ii) waived any right to a jury trial in connection with any disputes relating to the Revised Sale Procedures, the Sale Process, or any other relief requested in the Modification Motion or granted in this Amended and Restated Sale Procedures Order; and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to the Revised Sale Procedures, the Selection Process, or any other relief requested in the Modification Motion or granted in this Amended and Restated Sale Procedures Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

13.      Nothing in this Amended and Restated Sale Procedures Order, or any of the Exhibits hereto, shall (i) prevent the Debtor from, in the exercise of its fiduciary duties, pursuing or otherwise consummating an alternative transaction or (ii) obligate the Debtor to pursue or consummate any transaction with any Offeror.

14.      Notwithstanding the applicability of any of the Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or any other provisions of the Bankruptcy Rules or the Local Rules stating to the contrary, the terms and provisions of this Amended and Restated Sale Procedures Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Amended and Restated Sale

Procedures Order is hereby waived.

15.     The Debtor is authorized to take all steps necessary or appropriate to implement the relief granted in this Amended and Restated Sale Procedures Order.

16.     This Amended and Restated Sale Procedures Order shall be binding on and inure to the benefit of the Debtor, including any Chapter 7 or Chapter 11 trustee or other fiduciary appointed for the estate of the Debtor.

17.     This Amended and Restated Sale Procedures Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

18.     To the extent any of the deadlines set forth in this Amended and Restated Sale Procedures Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Amended and Restated Sale Procedures Order shall govern.

19.     This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Revised Sale Procedures Order.

Dated:  August 29, 2025

_____
Christopher J. Panos
United States Bankruptcy Judge

## Exhibit 1
## Revised Sale Procedures

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>**WATER'S EDGE LIMITED**<br>**PARTNERSHIP,**<br><br>**Debtor** | **Chapter 11**<br>**Case No: 24-12445-CJP** |

## REVISED SALE PROCEDURES

Water's Edge Limited Partnership, the above-captioned debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case") will use the procedures set forth herein (the "Revised Sale Procedures") in connection with a sale or disposition of all, substantially all, or a portion of the Debtor's assets as described herein.

On July 30, 2025, the Debtor filed with the United States Bankruptcy Court for the District of Massachusetts (the "Court") the *Debtor's Motion to Modify Order Approving Sale Procedures, Authorizing the Debtor to Designate a Stalking Horse Offeror, and Granting Related Relief* [Docket No. 335] (the "Modification Motion"), seeking modification of the *Order (I) Approving Sale Procedures for the Sale of the Sale Assets of the Debtor, (II) Authorizing the Debtor to Designate a Stalking Horse Offeror and to Seek Approval of Stalking Horse Offer Protections, (III) Scheduling a Selection Day and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (VI) Granting Related Relief [Docket No. 287]* entered on May 21, 2025 (the "Initial Sale Order") granting the *Debtor's Motion for Entry of Orders (I)(A) Approving Sale Procedures for the Sale of the Assets of the Debtor; (B) Authorizing the Debtor to Designate a Stalking Horse Offeror and to Seek Approval of Stalking Horse Offer Protections; (C) Scheduling a Selection Day and Approving the Form and Manner of Notice Thereof, Approving Assumption and Assignment Procedures, (D) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (E) Granting Related Relief; and (II)(A) Approving the Sale Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 241] (the "Initial Sale Motion"). By the Modification Motion, the Debtor sought, among other things, entry of an order approving these Revised Sale Procedures, as further described herein.

On August __, 2025, the Court entered the *Amended and Restated Order Approving Sale Procedures, Authorizing the Debtor to Designate a Stalking Horse Offeror, and Granting Related Relief* [Docket No. [_] (the "Amended and Restated Sale Procedures Order").[1]

---

[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Modification Motion, later in these Revised Sale Procedures and/or the Amended and Restated Sale Procedures

## I.    THE PROPERTY

The Debtor intends to sell all, substantially all, or a portion of its assets, which shall include 364, 370 and 388 Ocean Avenue in Revere, Massachusetts known as Water's Edge Apartments, together with some or all appurtenant interests and related personal property, fixtures, claims and other interests as may be identified by an Qualified Offeror (collectively, the "Property").

The Debtor has obtained Court authority to retain Newmark Real Estate of Massachusetts, LLC ("Newmark") to assist it with offering the Property in its entirety and in various combinations and solicit offers for (each, a "Transaction"): (i) an outright sale to a third party as necessary to pay all claims except as otherwise agreed and/or an acquisition by a third party entity in connection with a joint venture with the Debtor or similar agreement (the "Joint Venture"); and/or (ii) financing to allow the Debtor to pay all claims except as otherwise agreed and to and fund necessary repairs and renovations of the Property.

The Debtor's ability to undertake and consummate a Transaction or Transactions with respect to the Property shall be subject to competitive selection process (the "Selection Process"), as set forth herein, and approval by the Court.

## II.    REVISED TIMELINE

The timeline for the Selection Process, as revised (the "Revised Timeline") by the Amended and Restated Sale Procedures Order sets forth target dates for achieving various milestones in the Selection Process; however, the Debtor may adjust the Revised Timeline in its business judgment in consultation with Newmark.

| Phase/Key Milestones | Date/Duration |
|---|---|
| **Two business days after the entry of the Amended and Restated Sale Procedures Order** | Deadline for Debtor to file and serve Revised Sale Procedures |
| **Preparation and Launch:**<br>• **Data Room Preparation**<br>• **Finalizing Offering Memorandum and Valuation Materials**<br>• **Newmark's familiarization with assets and establishment of tour protocol** | Weeks 0-2<br><br>(through approximately 8/5/25, as may be modified in the Debtor's exercise of its business judgment after consultation with Newmark) |
| **Marketing Window:**<br>• **Issue teaser and NDA, confirm buyer access to virtual data room**<br>• **Controlled outreach to qualified investor universe**<br>• **Tours and investor buyer Q&A**<br>• **Facilitation of City of Revere** | Weeks 1-6<br><br>(through approximately 8/26/25, as may be modified in the Debtor's exercise of its business judgment after consultation with Newmark) |

---

Order, as applicable.

| | |
|---|---|
| **discussions and answers on regulatory/ISD matters** | |
| **Call for Offers/Bid Deadline**<br>• **Initial offers due**<br>• **Analyze and abstract each individual offer, circulate buyer questionnaires to buyers to ascertain details on business plan, capital readiness, etc.**<br>• **Invite shortlist to "Best & Final" round of bidding** | Week 7<br><br>(through approximately 9/12/25, as may be modified in the Debtor's exercise of its business judgment after consultation with Newmark) |
| **Status Report on Initial Offers** | To be filed with the Court by September 18, 2025, along with a request for further hearing on an expedited basis if the Debtor at such time does not continue to have high confidence that Transaction Proceeds are highly likely to be sufficient to pay all claims against the Debtor in full unless otherwise agreed |
| **Best & Final/ Selection**<br>• **Interview Finalists**<br>• **Choose Transaction(s) or advance 2+ to third competitive round** | Weeks 8-9<br><br>(through approximately 9/19/25, as may be modified in the Debtor's exercise of its business judgment after consultation with Newmark) |
| **Final Due Diligence & Closing**<br>• **Once Transaction(s) Selected, commence final due diligence period.**<br>• **Work on parallel track through Purchase and Sale Negotiation** | Weeks 10+<br><br>Closing anticipated mid-November 2025, as may be modified in the Debtor's exercise of its business judgment after consultation with Newmark) |

### III.  STALKING HORSE AGREEMENT

<u>Designation of Stalking Horses</u>

Subject to the provisions set forth herein and the Amended and Restated Sale Procedures Order, and in consultation with the Consultation Parties, the Debtor may, but is not obligated to, designate a Stalking Horse (and such Offeror's Offer, the "<u>Stalking Horse Offer</u>") for all or a portion of the Property and offer such Stalking Horse certain protections (the "<u>Stalking Horse Offer Protections</u>"), including a break-up fee and capped expense reimbursement as set forth in the applicable agreement executed by the Debtor and the Stalking Horse (the "<u>Stalking Horse Agreement</u>"), provided that all Stalking Horse Offer Protections must be negotiated by the Debtor and no break-up fee, other than with a further Court order, shall exceed $1,000,000.00 and the total expenses reimbursement shall be subject to a cap not to exceed $200,000.00 (collectively, the "<u>Termination Payment</u>") to be agreed upon between the Debtor and the Stalking Horse.

In the event that the Debtor determines to designate a Stalking Horse, the Debtor shall promptly upon execution of the Stalking Horse Agreement, file with the Bankruptcy Court,

serve on the Sale Notice Parties, a notice that contains the information about the Stalking Horse, including the proposed Stalking Horse Offer Protections, and attaches the proposed Stalking Horse Agreement (the "Notice of Stalking Horse Offer"), and, if the Debtor believes it is appropriate, a request for expedited determination.

Objections to and Approval of Designation of Stalking Horse.

Any objections (each, a "Stalking Horse Objection") to the designation of a Stalking Horse, including any Stalking Horse Offer Protections to be provided pursuant to the terms and provisions of a Stalking Horse Agreement, must (a) be in writing; (b) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; (c) state, with specificity, the legal and factual bases thereof; and (d) be filed with the Court and served on the Objection Notice Parties (as defined herein) within three (3) calendar days after service of the applicable Notice of Stalking Horse Offer.

If a timely Stalking Horse Objection is filed and served in accordance with the preceding paragraph, the proposed designations of a Stalking Horse and Stalking Horse Offer Protections will not be approved until either the Stalking Horse Objection is resolved by agreement of the objecting parties and the Debtor or by order of the Bankruptcy Court following a hearing on an expedited basis.

If no timely Stalking Horse Objection is filed and served with respect to a Stalking Horse Agreement in accordance with these Sale Procedures, the Debtor shall file a Certificate of No Objection and submit a proposed order approving the Stalking Horse Offer Protections with the Court.

Other than as provided by order of the Court, no party submitting an Offer shall be entitled to a break-up fee or expense reimbursement except for the Stalking Horse Offer Protections for any Stalking Horse. Any substantial contribution claims by any Offeror are deemed waived.

## IV.   PARTICIPATION IN SELECTION PROCESS; INITIAL OFFER DEADLINE

Any party that intends to participate in the Selection Process (each, a "Prospective Offeror") must contact Newmark.  Contact information is below:

**Thomas D. Greeley**
*Capital Markets*
**NEWMARK**
t 617-863-8621
m 617-223-1624
tom.greeley@nmrk.com

In consultation with Newmark, the Debtor will set a deadline (the "Initial Offer Deadline") for initial offers (the "Initial Offers") and may require further rounds of bidding, as set forth in the Revised

Timeline, as necessary to run a competitive process and reach the best result for the Debtor's bankruptcy estate. The Debtor may also extend the duration periods set forth in the Revised Timeline for any reason whatsoever, in its reasonable business judgment, for all or certain Offerors, without further order of the Bankruptcy Court, subject to providing notice to the Stalking Horse (if applicable) and all Qualified Offerors.

## V.   OFFER REQUIREMENTS

### A.  Qualified Offer Requirements

To qualify as a "Qualified Offer," an Initial Offer must be in writing and satisfy at least the following requirements:

1. Identification of Offeror. A Qualified Offer must fully disclose the following:

   The legal identity of each person or entity submitting an offer for a Transaction or Transactions with respect to the Property and/or otherwise sponsoring, financing (including through the issuance of debt in connection with such Offer), or participating in (including through license or similar arrangement with respect to the Property, to be acquired by a Transaction or Transactions) in connection with such Offer) and the Selection Process in connection with such Offer and the complete terms of any such participation; and (b) any past or present connections or agreements with the Debtor, any Stalking Horse, any other known Prospective Offeror or Qualified Offeror, the DIP Lenders, or any officer or director of any of the foregoing (including any current or former officer or director of the Debtor).

2. Purchased Assets. A Qualified Offer must identify the following:

   a.   the Property to be acquired by the Offeror by means of one or more Transactions, including any executory contracts and unexpired leases (collectively, the "Contracts") that, as of the submission of such Offer, the Prospective Offeror proposes to be assumed and assigned by the Debtor in connection with the proposed sale; and

   b.   the liabilities, if any, to be assumed, including any debt to be assumed.

3. Form of Consideration.

   a.   Each Offer must include a statement confirming that the Offer is based on an all-cash offer, or if an Offer includes forms of consideration other than cash, the Offeror shall include an analysis or description of the

value of such non-cash components, including any supporting documentation, to assist the Debtor in evaluating the Offer; and

b.   <u>Credit Bidding</u>.  The Fairbridge DIP Lender and DIV OA Lender, LLC may credit bid a portion of their Offer (such bid, a "<u>Credit Bid</u>") up to the amount of their debt pursuant to section 363(k) of the Bankruptcy Code; provided, however, any existing mortgage of DIV OA Lender, LLC, if it anticipated to remain in place, shall be refinanced with a loan that is non-recourse to any existing guarantors or co-borrowers, including, without limitation, CEI, any of its officers, directors, principals, or their affiliates.

4.   <u>Proposed Offer</u>. A Qualified Offer must constitute an irrevocable offer and shall be:  (a) duly authorized and executed; (b) if a Stalking Horse has been designated, the Stalking Horse Agreement, a Proposed Offer should be based on and marked up against the Stalking Horse Agreement to reflect the proposed transaction and to show any other proposed modifications to the Stalking Horse Agreement; (c) specify the proposed consideration for the Property in U.S. dollars; (d) include all exhibits and schedules contemplated thereby (other than exhibits and schedules that, by their nature, must be prepared by the Debtor); and (e) identify any Contracts that, as of the submission of such Offer, the Prospective Offeror proposes to be assumed and assigned by the Debtor in connection with the proposed sale transaction.

5.   <u>Representations and Warranties (As-Is, Where-Is)</u>. Each Qualified Offer must include a written acknowledgement and representation that (a) the Prospective Offeror has had an opportunity to conduct any and all due diligence regarding the Property prior to making its Qualified Offer, except as specifically set forth in the Offer, (b) the Prospective Offeror has relied solely upon its own or its advisors' independent review, investigation, and/or inspection of any documents and/or the Assets in making its Qualified Offer, (c) the Prospective Offeror did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Property, or the completeness of any information provided in connection therewith or in connection with the Selection Process, except as expressly stated in the Prospective Offeror's Proposed Offer; and (d) the Property will be conveyed "as is, where is, with all faults," with limited representations and warranties, and no indemnification or guarantees by the Debtor.

6.   <u>Authorization</u>. A Qualified Offer must (a) include evidence of authorization and approval from the Prospective Offeror's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of any Offer for the Assets,

participation in the Selection Process, and closing of the sale transaction contemplated by the Prospective Offeror's Proposed Offer and Proposed Sale Order; or, (b) if the Prospective Offeror is an entity formed for the purpose of effecting the proposed sale transaction, a Qualified Offer must provide written evidence acceptable to the Debtor of authorization and the approval by the equity holder(s) of such Prospective Offeror.

7.  <u>Other Requirements</u>. A Qualified Offer must:

a.     state that the Prospective Offeror agrees to serve as a backup Offeror (a "<u>Backup Offeror</u>") if such Offeror's Qualified Offer is selected during the Selection Process as the next highest or next best Offer after the Successful Offer (as defined in Section VII.C.1 below) for the Property (each such Offer, a "<u>Backup Offer</u>");

b.     state that the Offer represents a binding, good-faith, and *bona fide* offer to purchase the Property and is not subject to or conditioned on any further due diligence, except as set forth in the Offer, and is irrevocable (i) until the selection of the Successful Offer in accordance with these Revised Sale Procedures; or (ii) if the Offer is selected as a Successful Offer or as a Backup Offer, until the Backup Offer Expiration Date (as defined in Section VII.C.2 below);

c.     for any Offeror other than the Stalking Horse, state and acknowledge that the Prospective Offeror shall not be entitled to any offer protection or payment in connection with the submission of an Offer for the Property or otherwise participating in the Selection Process;

d.     state that the Prospective Offeror is committed to closing the sale transaction contemplated in its Offer as soon as practicable (and in no event later than November  15, 2025);

e.     expressly waive any claim or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code in connection with making an offer for any of the Assets and/or otherwise participating in the Selection Process;

f.     not contain any financing contingencies of any kind;

g.     certify that the Prospective Offeror did not collude with any other Offerors and is not otherwise a partnership, joint venture, or other entity in which more than one Offeror (or any affiliates of a Offeror) has a direct or indirect interest, unless consented to in writing by the Debtor;

h.      include a covenant to comply with the terms of these Revised Sale Procedures and the Amended and Restated Sale Procedures Order;

i.      contain such other information as may be reasonably requested by the Debtor; and

j.      contain a statement that the Prospective Offeror (i) consents to the core jurisdiction of the Court to enter any order related to the Revised Sale Procedures or any other relief requested in the Modification Motion or granted in the Amended and Restated Sale Procedures Order; (ii) waives any right to a jury trial in connection with any disputes relating to the Revised Sale Procedures or any other relief requested in the Modification Motion or granted in the Amended and Restated Sale Procedures Order; and (iii) consents to the entry of a final order or judgment in connection with any disputes relating to the Revised Sale Procedures, or any other relief requested in the Modification Motion or granted in the Amended and Restated Sale Procedures Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

## B.    Offer Review Process

In consultation with Newmark, the Debtor will evaluate Offers and, based upon their evaluation of the content of each Offer, the Debtor may, as it deems appropriate in its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, engage in negotiations with any Prospective Offeror for the purposes of (i) curing any deficiencies in an Offer that prevents them from constituting a Qualified Offer, (ii) improving the terms of the Prospective Offeror's Offer, or (iii) otherwise promoting a more competitive Selection Process with the ultimate goal of maximizing the value of the Property.

In evaluating an Offer, the Debtor may take into consideration any and all factors that the Debtor deems reasonably pertinent, including (i) the amount of the proposed consideration and proposed form of consideration; (ii) any Property included in, or excluded from, the Offer, including any Contracts to be assumed and assigned; (iii) the value to be provided to the Debtor under the Offer, including the net economic effect on the Debtor's estate (taking into account any Stalking Horse's rights with respect to any Stalking Horse Offer Protections); (iv) any benefits to the Debtor's estate from any assumption or waiver of liabilities contemplated by the Offer; (v) the structure of the proposed sale transaction and any attendant execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and general financial wherewithal to meet all commitments; and any required governmental approvals; and (vi) the impact of the proposed sale transaction on the Debtor's trade creditors and any other parties-in-interest.

The Debtor will evaluate timely Offers in consultation with Newmark and any Consultation Parties, determine which Offers qualify as Qualified Offers and notify Offerors whether they have been selected to advance to the next round of bidding as soon as practicable. A Qualified Offeror shall not (without the consent of the Debtor), modify, amend, or withdraw its Qualified Offer, unless for the purposes of increasing the purchase price or otherwise improving the terms of the Qualified Offer, as determined by the Debtor in its reasonable business judgment.

### C.    Qualified Offerors

An Offer received for the Property that the Debtor determines satisfies the requirements set forth in Sections V and VI.A above will qualify as a "Qualified Offer," and any Offeror that submits a Qualified Offer will qualify as a "Qualified Offeror."

The Debtor may, in its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, amend or waive the conditions precedent to qualifying as a Qualified Offeror.

### D.    Stalking Horse Offer Protections

Other than any Stalking Horse Offer Protections, if any, no Offeror or any other party shall be entitled to any termination or "break-up" fee, expense reimbursement, or any other Selection Process protection in connection with the submission of a Offer for the Property or otherwise participating in the Selection Process.

### VI.    THE SELECTION PROCESS

If the Debtor receives more than one Qualified Offer for the Assets, the Debtor will engage in a Selection Process for the Property. If any Offer, including any Stalking Horse Offer, is the only Qualified Offer received in respect of the Property, after consultation with Newmark, the Debtor may choose not to conduct a Selection Process for the Property, and may instead seek approval of such Offer by filing a motion seeking approval of the Transactions or Transaction.

If the Debtor determines not to conduct a Selection Process for some or all of the Property, the Debtor shall file with the Court and serve on the Sale Notice Parties a notice containing the following information (as applicable): (a) a statement that the Selection Process for the relevant Property has been canceled; (b) the identity of the Successful Offeror; and (c) a copy of the Successful Offer.

### A.    Participants

Only Qualified Offerors are eligible to participate in the Selection Process, subject to other limitations as may be reasonably imposed by the Debtor in accordance with these Revised Sale Procedures.

Each Qualified Offeror participating in the Selection Process will be required to confirm

in writing that (i) it has not engaged in any collusion with respect to the Selection Process or the submission of any Offer for any of the Property and (ii) its Qualified Offer that gained the Qualified Offeror admission to participate in the Selection Process and each Qualified Offer submitted by the Qualified Offeror during the Selection Process is a binding, good-faith, and *bona fide* offer to enter into a Transaction or Transactions with respect to the Property identified in such Offers.

All Prospective Offerors and Qualified Offerors (including any Stalking Horse, Successful Offeror, and Backup Offeror) shall be deemed to have (i) agreed that all proceedings in the Court related to these Revised Sale Procedures, the Selection Process, any other relief requested in the Modified Motion or granted pursuant to the Amended and Restated Sale Procedures Order, or the construction or enforcement of any agreement or any other document directly relating to the sale transaction are core proceedings as described in 28 U.S.C. § 157; (ii) waived any right to a jury trial in connection with any disputes relating to these Revised Sale Procedures, the Selection Process, any other relief requested in the Modified Motion or granted pursuant to the Amended and Restated Sale Procedures Order, or the construction or enforcement of any agreement or any other document directly relating to the Transaction or Transactions; and (iii) consented to the entry of a final order or judgment by the Court in connection with any disputes relating to these Revised Sale Procedures, the Selection Process, any other relief requested in the Modified Motion or granted pursuant to the Amended and Restated Sale Procedures Order, or the construction or enforcement of any agreement or any other document relating directly to the sale transaction, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

**B.      Selection Process Procedures**

The Selection Process shall be governed by the following procedures, subject to the Debtor's right to modify such procedures in its reasonable business judgment (in a manner consistent with its fiduciary duties) and in consultation with any Consultation Parties:

1.   The Debtor may, in its reasonable business judgment, negotiate with any and all Qualified Offerors participating in the Selection Process. The Debtor may determine, upon consultation with Newmark, that any parties selected to advance to further rounds of bidding or selected as the Successful Bidder and/or the Backup Bidder will be required to provide a good faith deposit.

2.   The Debtor shall have the right to determine, in its reasonable business judgment, after consultation with Newmark and any Consultation Parties, which Offer is the highest or otherwise best Offer with respect to the Property and after consultation with Newmark and any Consultation Parties, reject, at any time, without liability, any Offer that the Debtor deems to be inadequate, insufficient, or not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, these Revised Sale Procedures, Revised Sale Procedures, the Selection Process, any other relief requested in the Modified Motion or granted pursuant to the Amended and Restated Sale Procedures Order, or the construction or enforcement of any agreement or any other document directly relating to the Transaction or

Transactions, any order of the Court, or the best interests of the Debtor and its estate.

**C.      Selection Results**

1.      <u>Successful Offers</u>. Immediately prior to the conclusion of the Selection Process, the Debtor will (a) determine which Qualified Offer constitutes the highest or otherwise best Offer for a Transaction or Transactions with respect to the Property (such Offer, the "<u>Successful Offer</u>" and such Offeror, the "<u>Successful Offeror</u>") and which (if any) is the Backup Offer for the applicable Property, and (b) notify all Qualified Offerors participating on the Selection Process of the material terms of the Successful Offer and the Backup Offer.

2.      <u>Backup Offers</u>. Notwithstanding any language to the contrary contained in a Qualified Offer or in any improvements to the Qualified Offer during the Selection Process, by participating in the Selection Process, each Qualified Offeror shall be deemed to have consented to having its last and final offer being designated as a Backup Offer.

Immediately prior to the conclusion of the Selection Process, the Debtor will (a) determine, in a manner consistent with these Revised Sale Procedures, and in consultation with Newmark and any Consultation Parties, which Qualified Offer is the Backup Offer; and (b) notify all Qualified Offerors following the conclusion of the Selection Process of the identity of the Backup Offeror and the amount of the purchase price and other material terms of the Backup Offer.

Except as otherwise provided in any Stalking Horse Agreement, a Backup Offer will remain binding on the Backup Offeror until the later of (a) the first business day after the closing of a Transaction or Transactions with the Successful Offeror for the applicable Property and (b) 30 days after a hearing seeking approval of the Transaction or Transactions (such date, the "<u>Backup Offer Expiration Date</u>"). If the Transaction with the Successful Offeror is terminated prior to the Backup Offer Expiration Date, the Backup Offeror will be deemed the new Successful Offeror for the applicable Property and shall be obligated to consummate the Backup Offer as if it were the Successful Offer at the conclusion of the Selection Process; *provided* that the Debtor may, in its reasonable business judgment (after providing notice to the Sale Notice Parties) and after consultation with any Consultation Parties, elect not to pursue the sale transaction contemplated by the Backup Offer.

3.      <u>Selections Subject to Further Court Order</u>. As soon as practicable following the selection of the Successful Offeror and the Backup

Offeror for a Transaction or Transactions, the Debtor will file with the Court and serve on the Sale Notice Parties a motion seeking approval thereof, which motion will (a) identify each Successful Offeror and the Backup Offeror; and (b) include a copy of each Successful Offer and the Backup Offer.

## VII.    SALE HEARING

The Successful Offer (including any Backup Offer that is subsequently deemed a Successful Offer) will be subject to Court approval. The Debtor will request a hearing to approve the Transaction or Transactions consummated in accordance with these Revised Sale Procedures (except in the case of the Transaction or Transactions contemplated by a Backup Offer that subsequently is deemed a Successful Offer).

At a hearing seeking approval of the Transaction or Transactions contemplated by the Successful Offer, the Debtor will seek entry of an order (a "Sale Order") approving, among other things, the Transaction or Transactions with respect to the Property with the Successful Offeror.

The Debtor in its reasonable business judgement may (after consulting with the Consultation Parties and the Successful Offeror), adjourn or reschedule a sale hearing with sufficient notice to the Sale Notice Parties, including by announcing such adjournment in Court on the date of the originally scheduled sale hearing.

The Debtor's presentation to the Court for approval of a selected Qualified Offer as a Successful Offer does not constitute the Debtor's acceptance of such Offer. The Debtor will have accepted a Successful Offer only when such Successful Offer has been approved by the Court.

## VIII.    RESERVATION OF RIGHTS TO MODIFY REVISED SALE PROCEDURES

The Debtor reserves the right to, in its reasonable business judgment after consultation with Newmark and any Consultation Parties and in a manner consistent with its fiduciary duties and applicable law, (i) modify these Revised Sale Procedures, including to, among other things, extend or waive deadlines or other terms and conditions set forth herein; adopt new rules and procedures for conducting the Selection Process so long as any such modifications are disclosed to all Prospective Offerors and Qualified Offerors, as applicable; or (ii) otherwise modify these Revised Sale Procedures to further promote competitive Offers for and maximizing the of value of the Property, in each case, to the extent not materially inconsistent with these Revised Sale Procedures or the Amended and Restated Sale Procedures Order. As provided in the Amended and Restated Sale Procedures Order, the entry of the Amended and Restated Sale Procedures Order or any of the Exhibits hereto, shall not (i) prevent the Debtor from, in the exercise of its fiduciary duties, pursuing or otherwise consummating an alternative transaction or (ii) obligate the Debtor to pursue or consummate any transaction with any

Qualified Offeror.

## IX.    NOTICING

### A.    Offer Notice Parties

Qualified Offers must be submitted in writing to the following parties (collectively, the "<u>Offer</u> Notice Parties"):

- Thomas D. Greeley, tom.greeley@nmrk.com; and
- Counsel for the Debtor: Murphy & King, P.C., 28 State Street, Suite 3101, Boston, Massachusetts 02109 (Attn: Kathleen R. Cruickshank (KCruickshank@MurphyKing.com); and Brown Rudnick LLP, On Financial Center, Boston, MA 02111, Attn: William R. Baldiga, Esq. (wbaldiga@brownrudnick.com).

### B.    Sale Notice Parties

The "<u>Sale Notice Parties</u>" shall include the following persons and entities:

- any Consultation Parties;

- counsel to any Stalking Horse, if any;

- all Qualified Offerors;

- all persons and entities known by the Debtor to have asserted any lien, claim, interest, or encumbrance in the Sale Assets (for whom identifying information and addresses are available to the Debtor);

- all relevant non-debtor parties (each, a "<u>Counterparty</u>") to any Contract that may be assumed or rejected in connection with the sale transaction;

- all of the Debtor's known creditors (for whom identifying information and addresses are available to the Debtor);

- any governmental authority known to have a claim against the Debtor in this Chapter 11 Case;

- the office of the U.S. Trustee;

- all applicable federal, state, and local taxing authorities, including the Internal Revenue Service;

- all of the parties entitled to notice pursuant to Bankruptcy Rule 2002; and

- all other parties as directed by the Court.

**C.    Sale Procedures Order Notice**

Within three business days after the entry of the Amended and Restated Sale Procedures Order, the Debtor will file with the Court and serve on the Revised Sale Procedures.

**X.    CONSULTATION BY THE DEBTOR**

Throughout the Sale Process, the Debtor and its advisors will consult with Carabetta Enterprises, Inc. ("CEI") and its counsel (collectively, the "Consultation Parties") as provided in these Revised Sale Procedures, or as otherwise necessary and appropriate, as determined in the Debtor's business judgement, except as provided herein.

The Debtor shall consult with any Consultation Parties in good faith regarding the Sale Procedures. In that regard, (i) the Debtor will share with any Consultation Parties all Prospective Offers as received, and make itself available to discuss all aspects of the same; (ii) Any CEI and its representatives may participate (in the presence of Debtor representatives, unless in each instance otherwise permitted in advance in writing by the Debtor) in discussions with prospective bidders, and may ask questions but not conduct their own negotiations,  (iii) CEI may participate fully as a Consultation Party in all aspects of the Selection Process and in connection with the Debtor's selection of any Stalking Horse Offeror; and (iv) if  CEI disagrees with the Debtor's business judgment as to its selection of any Stalking Horse Offeror or the highest and best bid at the conclusion of the Selection Process, CEI may, after good faith efforts with the Debtor to resolve that disagreement informally, present its position to the Court on an expedited basis with the full cooperation of the Debtor for the Court's resolution of that disagreement.  The Debtor shall consult with any Consultation Parties on how the Selection Process is conducted, any additional Selection Process procedures, adjourning the Selection Process, and selecting the Stalking Horse, the Successful Offeror and the Backup Offeror.

Notwithstanding the foregoing, the Debtor will not consult with or provide copies of any bids or other confidential information to any Consultation Party or any insider or affiliate of the Debtor if such party is a Prospective Offeror and/or Qualified Offeror for the Property at the applicable time.

Any consultation rights afforded to the Consultation Parties by these Revised Sale Procedures or the Amended and Restated Sale Procedures Order shall not in way limit the Debtor's discretion and shall not include the right to veto any decisions made by the Debtor in the exercise of its reasonable business judgment.