**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>**WATER'S EDGE LIMITED PARTNERSHIP**,<br><br>Debtor. | Chapter 11<br>Case No. 24-12445-CJP |

**DIV OA LENDER, LLC'S APPLICATION FOR ALLOWANCE OF**
**POST-PETITION FEES AND EXPENSES**

DIV OA Lender, LLC ("DIV") submits this *Application for Allowance of Post-Petition Fees and Expenses* (the "Application") seeking allowance of its fees and expenses in the total amount of $744,411.75 (the "Legal Fee Amount"), and payment of the Legal Fee Amount less a 10% discount on fees, **$669,986.40** (the "Discounted Legal Fee Amount") from Water's Edge Limited Partnership, the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), pursuant to 11 U.S.C. § 506(b), Rule 2016 of the Federal Rules of Bankruptcy Procedure, and Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Massachusetts, as set forth in greater detail below.[1] In further support of Application, DIV respectfully states as follows:

**Preliminary Statement**

1.      The Legal Fee Amount encompasses fees and expenses DIV incurred in its capacity as (i) the Debtor's prepetition, oversecured lender, recoverable under the Loan Documents (defined below) and 11 U.S.C. § 506(b), and (ii) the debtor-in-possession lender, recoverable under

---

[1] As described herein, while DIV seeks allowance of the total amount of $744,401.05 through this Application, DIV seeks payment from the estate of a discounted amount to reflect a 10% agreed upon discount to the Holland & Knight LLP legal fees.

the *Final Order (I) Authorizing the Debtor to Obtain Junior Secured Postpetition Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Status; (III) Authorizing Use of Cash Collateral; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; (VI) Scheduling a Continued Hearing; and (VII) Granting Related Relief*, ECF No. 180 (the "DIV DIP Order").

2.      Although the legal analysis of DIV's entitlement to recover the Legal Fee Amount here is simple based on the plain language of the Loan Documents and the DIV DIP Order, the circumstances of the Chapter 11 Case under which DIV was forced to act to protect its interests provide useful context.

3.      Based on the Debtor's closing of the sale of its primary assets (the "Property", as defined below) for $44.8 million, it is beyond dispute that DIV is oversecured. For the majority of the Chapter 11 Case, however, DIV was unsure whether it was oversecured or the fulcrum securityholder and was unable to get any indication from the Debtor as to market valuation of the Property. Given this uncertainty, DIV did not have the luxury of sitting idly by while the Debtor took actions that would undermine – not maximize – value for creditors in this Chapter 11 Case, for the sole benefit of equity.

4.      DIV's actions in the Chapter 11 Case have provided material benefit to the estate and its unsecured creditors. By way of example:

(a) As a result of DIV's objections, the Debtor's emergency motion for approval to enter into letter of intent with Eastern Acquisitions, LLC ("Eastern"), which provided for a no-shop provision and up to $1 million breakup fee and expense reimbursement in exchange for a non-binding joint venture transaction offer that would have generated insufficient cash to pay all creditors and impliedly valued the Property at $36 million, the Debtor withdrew that motion, and ultimately sold the Property in a transaction that paid all creditors in full or as agreement and yielded a value **nearly $9 million greater** than agreed to with Eastern;

(b) After the Debtor filed an emergency motion for approval of a DIP financing arrangement with Eastern on sub-market terms, DIV objected and offered alternative

2

financing on more favorable terms (including the lack of any tie in to the sale process, a longer borrowing period, an interest rate of approximately 8.83% vs. Eastern's 10.25%, lower closing and collateral monitoring fees, and no liens on avoidance actions or the proceeds thereof), which resulted in the withdrawal of the Debtor's motion for approval of the Eastern DIP, and approval of the less expensive DIP financing provided by DIV;

(c) DIV's objection to the replacement DIP financing arrangement proposed by Fairbridge Asset Management, LLC ("Fairbridge"), and offer of DIP financing on more competitive terms (including interest at 325 basis points lower than that proposed by Fairbridge, and without the Fairbridge proposal's $150,000 breakup fee) resulted in Fairbridge improving the pricing offered for its DIP financing.

5.    Additionally, DIV has been forced by the *Debtor's own litigiousness* to leap into action time and time again to respond to emergency motions, generally filed immediately before a holiday or weekend with a request for a hearing on the next business day, to prevent prejudice to its interests. The Debtor has requested emergency determination of nearly every request for relief it has submitted to this court. *See* ECF Nos. 23, 34, 37, 77, 79, 142, 250, 328, 346, 352, 378, 457 (emergency motions); ECF Nos. 38, 200, 241, 242, 243, 303, 335, 440, 474 (motions requesting expedited determination). DIV was left with no choice but to act in protection of its interests, and is entitled to recover its fees and expenses incurred as provided under both its contractual agreement with the Debtor and this court's order approving the debtor-in-possession financing provided by DIV, as set forth more fully below.

6.    Additionally, while the Debtor initially announced a five month process, the Chapter 11 Case is now in its thirteenth month, having undergone multiple shifts in exit vector ranging from an equity sale, a joint venture transaction, and a 363 sale. DIV suggested in January 2025 that a "fulsome section 363 sale process" be undertaken for an efficient and value maximizing disposition of the Property that could be completed prior to the maturity of the DIV DIP in May 2025. *See* ECF No. 105, ¶ 79. Had the Debtor heeded that suggestion and completed a sale process

in spring 2025, a large percentage of the fees and expenses incurred by DIV could have been avoided.

7. In light of the foregoing, DIV submits that it is entitled to recover the Legal Fee Amount, and that the Debtor's estate is required to pay the Discounted Legal Fee Amount under the Loan Documents and the DIV DIP Order.

## **Background**

### A. The Initial Stages of the Chapter 11 Case

8. As described in greater detail in prior filings with the Court,[2] DIV is the Debtor's senior secured prepetition lender as a result of a loan (the "Loan") evidenced by a Promissory Note dated May 23, 2018, as subsequently amended and restated as of March 20, 2020 (the "A&R Note" and collectively with the other documents evidencing the Loan and DIV's security therefor, the "Loan Documents"). The Loan is secured by a first priority mortgage interest in the Debtor's sole substantial asset, real property currently known and numbered as 364, 370, and 388 Ocean Avenue, Revere, Suffolk County, Massachusetts (individually and collectively, the "Property"), as well as rents and leases associated with the Property. After the occurrence of a series of Events of Default under the Loan Documents, DIV noticed a foreclosure sale of the Property for December 5, 2024.

9. On December 5, 2024 (the "Petition Date"), the Debtor filed a chapter 11 petition commencing the Chapter 11 Case.

10. Having successfully stayed the pending foreclosure, the Debtor waited 11 days before retaining counsel. Both the United States Trustee and DIV filed motions to dismiss the Chapter 11 Case based on the deficient filings. *See* ECF Nos. 6, 24.[3]

---

[2] *See, e.g., Interim Omnibus Objection of DIV OA Lender LLC to Debtor's First Day Motions* [ECF 49] and the *Supplemental Omnibus Objection of DIV OA Lender LLC to Debtor's First Day Motions* [ECF 105].

[3] The U.S. Trustee subsequently withdrew its motion to dismiss after the Debtor produced evidence of its insurance coverage, but maintained its concerns about the Chapter 11 Case. *See* ECF No. 10.

#531760967_v3

11.     The Debtor then sprang into action with a pair of interrelated emergency motions
filed over the 2024 Christmas and New Year's holiday through which the Debtor sought to enter
into (i) a DIP financing transaction with Eastern and (ii) a letter of intent (the "LOI") with Eastern
for a potential joint venture transaction, under which the Debtor was prohibited from
communicating with any other interested parties for the entirety of its exclusivity period, Eastern
was not obligated to move forward with the transaction but would be entitled to a break up fee of
up to $1 million if the Debtor did not close a deal with Eastern, all for a purchase price of $23.5
million for a 65% stake in a to-be-formed joint venture entity (an implied $36 million valuation).

*See Emergency Motion filed by Debtor Water's Edge Limited Partnership for Entry of Orders: (I)
Authorizing the Debtor to Obtain Junior Secured Postpetition Financing; (II) Granting Liens and
Providing Superpriority Administrative Expense Status; (III) Authorizing Use of Cash Collateral;
(IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; (VI) Scheduling a Final
Hearing; and (VII) Granting Related Relief* [ECF No. 34] (the "Eastern DIP Motion"); *Motion
filed by Debtor Water's Edge Limited Partnership for Entry of Order (I) Authorizing the Debtor
to Enter into Letter of Intent with Eastern Acquisitions, LLC and (II) Granting Related Relief* [ECF
No. 35] (the "LOI Motion"). Although these motions would achieve what has been the through
line in this Chapter 11 Case – ensuring that the Debtor's equity holder stays in the money – it was
clear that the motions were procedurally and substantively improper both under legal precedent
and prevailing market terms.

12.     DIV objected, asserting, among other things, that there was no market test for the
value of the Property, that the motions together presented an unconfirmable *sub rosa* plan, that
awarding an almost $1 million break up fee for a potential purchaser that was under no obligation
to consummate the transaction was not warranted, and, perhaps most importantly, the proposed

5

transaction generated insufficient funds to meet the Debtor's stated intention of paying all creditors in full. *See* ECF No. 105 at ¶¶ 72-79.

13.     DIV noted that it appeared (even based on the minimal information then available), that the Debtor was undervaluing the total of all unsecured claims and the amount necessary to ensure payment in full of those claims. ECF No. 105 at ¶¶ 32-33. DIV asserted that the proposed capital contribution of $23.5 million for a 65% share of the resulting joint venture entity and the corresponding $36 million implied valuation should be subjected to the kind of market test that comes with an open, market driven process under section 363 of the Bankruptcy Code. *Id.* at ¶ 19.[4] DIV urged the Debtor to consider an open, transparent sale process, rather than exclusive, insider-favored financing and joint venture arrangements, and noted that a standard 363 sale could achieve the Debtor's goal of closing by spring 2025. *Id.* at ¶¶ 43-49; 79.

14.     After DIV's objection was brought to the Court, the Debtor withdrew the Eastern DIP Motion and LOI Motion. *See* ECF No. 152, 153.

**B.     The DIV DIP Loan**

15.     In order to ensure that there were sufficient funds to run its then-envisioned 60 day sale process and, relatedly, ensure its own ability to receive full payment of its claim that was continuing to accrue interests and fees post-petition, DIV made an offer to extend more competitively priced post-petition financing (the "<u>DIV DIP</u>"). Specifically, the DIV DIP was not tied to a transaction relating to the Property, did not include a break up fee, carried interest at 100 basis points less than what was charged by Eastern, and carried lower closing, collateral monitoring, and exit fees. *See* ECF No. 142. As a further concession to the Debtor, DIV agreed to

---

[4] This prediction has borne true, as the Debtor has now sold the Property for $44.8 million.

defer the right to payment of its fees and expenses as DIP lender under the Approved DIP Budget.

*See DIV DIP Order* at ¶3 (a).

16.     The Debtor subsequently sought to replace the DIV DIP with alternative DIP financing from Fairbridge financing (the "Fairbridge DIP"). *See* ECF 242. DIV filed an objection to the proposed Fairbridge DIP, and offered to continue serving as the DIP lender on more competitive terms. *See* ECF 402. The Fairbridge DIP was approved only after Fairbridge made certain concessions to match DIV's terms. *See* ECF No. 408.

17.     The DIV DIP – other than DIV's associated legal fees and expenses as DIP lender which are to be added to the Loan balance pursuant to the DIV DIP Order – was paid off under the Fairbridge DIP. ECF No. 408. The maturity date for the Fairbridge DIP was extended at the option of the Debtor with Court approval through January 1, 2026. *See* ECF Nos. 472, 482.

**C.      The Multiple Sale Processes and the Debtor's Extended Stay in Chapter 11**

18.     Five months into the Chapter 11 Case, in May 2025, the Debtor announced it was undertaking a selective process to locate another joint venture partner on terms acceptable to its principal, in light of certain negative tax implications that would be realized by that principal resulting from a sale of the Property.[5] *See* ECF No. 241. In spite of assertions by DIV and other interested parties that a transparent sale under section 363 of the Bankruptcy Code would provide the most efficient and value maximizing path through chapter 11, the Debtor elected to run a sale process behind closed doors *only* open to offerors that would agree to allow the Debtor's principal to retain a substantial degree of control over the post-transaction entity.

19.     During this time, DIV analyzed whether a potential acquisition of the Property would be the most efficient way to recover on the amounts due under the Loan Documents. After

---

[5] The Debtor, as a limited partnership, is a pass-through tax entity.

#531760967_v3

briefly considering making an offer or bid for the outright purchase of the Property, DIV pivoted

to the negotiation and documentation of a potential Plan Support Agreement or Restructuring

Support Agreement.

20.     By July 2025, DIV had determined that it was not interested in acquiring the

Property. Because DIV's diligence suggested that its senior secured debt could be the Debtor's

fulcrum security, however, DIV had a retained interest in submitting a bid that would establish a

floor value for the property that rendered it oversecured. DIV repeatedly sought some form of

assurance that it was not the fulcrum, requesting valuation information from the Debtor to shed

light on the viability of the sale and marketing efforts, including through multiple pleadings. *See,*

*e.g.,* ECF Nos. 307, 416 at ¶¶ 4-5 ("Given the Debtor's long-standing assertion that equity is in

the money, it would be more than a little surprising to learn that the Debtor's value proposition has

been downgraded to the point that its senior mortgagee—behind only approximately $4 million of

municipal lien debt—is the fulcrum security in this case. . . . The necessary data for the fulcrum

level analysis is firmly in the Debtor's hands but it has chosen to hide behind what it asserts to be

the advice of its broker to avoid disclosures that might inform the analysis").

21.     The Debtor stonewalled every inquiry, responding only with the same conclusory

assertions regarding the assured success of the sale process. Faced with a total and highly unusual

degree of lack of transparency, DIV submitted only protective offers, barely exceeding the amount

of the Debtor's prepetition secured debt so as to establish a value amount at least sufficient to

support DIV's claim to interest, default interest and payment of costs and fees. DIV's actions had

nothing to do with seeking to buy assets, and everything to do with trying to collect its debt.

8

22.     Ultimately, the Debtor's renewed search for a joint venture partner was, again, unsuccessful.[6]

23.     Only after months of selective marketing and creditor pressure did the Debtor pivot to an open sale process under section 363 of the Bankruptcy Code, and abandon its requirement that any potential transaction result in a joint venture entity with the Debtor's principal. *See* ECF Nos. 311, 317, 325.

24.     This time, the Debtor was able to locate a buyer, and on October 20, 2025, the Debtor filed a motion (the "Private Sale Motion") requesting authority on an expedited basis to sell the Property to Helge Capital, Inc. ("Helge") via private sale for a purchase price of $42.5 million subject to certain adjustments, with the Debtor retaining a contingent earnout payment. ECF Nos. 440, 447. The Debtor was so confident that its "extensive market[ing]" of the Property resulted in the highest and best offer, that it requested that the Court allow it to bypass entertaining any overbids, designate Helge as the winning bidder, and approve the sale of the Property via private sale. *Id.* at ¶¶ 37-39.

25.     Hours before the expedited hearing, this confidence was revealed to be unfounded, as Eastern objected to the Private Sale Motion and submitted a Purchase and Sale Agreement for the Property signed by E-T Ocean Ave LLC ("E-T Ocean") on nearly identical terms to Helge's offer, but with a $1 million increase in the purchase price. ECF No. 449.

---

[6] It is notable, however, that Debtor's counsel incurred a collective total of **$630,383.50** in fees in connection with just the search for a joint venture partner – only slightly less than the Discounted Legal Fee Amount DIV incurred during the entirety of this Chapter 11 Case. *See* ECF No. 251 (First Interim Fee Application filed by Murphy & King P.C. ("M&K") seeking approval of $121,263.00 for services related to the joint venture partner search); ECF No. 366 (Second Interim Fee Application filed by M&K seeking approval of $8,745.50 for services related to the joint venture partner search); ECF No. 249 (First Interim Fee Application filed by Brown Rudnick LLP ("BR") seeking approval of $122,256.50 for services related to "JV and RE Matters"); ECF No. 364 (Second Interim Fee Application filed by BR seeking approval of $378,118.50 for services related to "JV and RE Matters").

26.    In light of Eastern's submission, the Court determined that the sale process should remain open for competitive bidding, and at a live in-court auction, multiple competing overbids were submitted. The Court ultimately approved the sale of the Property to E-T Ocean for a purchase price of $44.8 million – $2.3 million higher than the Helge offer, and $8.8 million higher than the valuation of the Debtor's original deal with Eastern under the LOI. *See* ECF No. 495.

27.    The Sale closed on January 9, 2026.

## SUMMARY OF LEGAL FEES REQUESTED

28.    From the inception of the Chapter 11 Case, DIV has employed the services of H&K to assist it in preserving its secured claim. A true and correct copy of DIV's engagement letter with H&K is attached hereto as **Exhibit A.** Additionally, invoices breaking down the legal fees and expenses incurred by professional to the $1/10^{th}$ of an hour, together with a narrative summary of the services provided (redacted for privilege), are attached hereto as **Exhibit B**.

29.    The fees incurred by H&K were reasonable, necessary, and consistent with other professional fees that have been incurred and allowed in bankruptcy cases within this district. As of the filing of this application, the Legal Fee Amount is $744,411.75.

30.    DIV is oversecured by its liens that, as a result of the Sale, have attached to the proceeds of the Sale of the Property to E-T Ocean for $44.8 million.

31.    The DIV DIP Order provides that DIV is entitled to collect its fees and expenses accruing under both the DIV DIP and the Loan Documents. Additionally, as an oversecured creditor, DIV is permitted to include within its allowed, secured claim the costs, charges, and fees chargeable to the Debtor under the Loan Agreement. Such costs, charges and fees include, without limitation, reasonable attorneys' fees incurred by DIV in connection with its enforcement of Loan Agreement remedies and participation in this bankruptcy proceeding. 11 U.S.C. § 506(b).

Consequently, DIV, through this application, requests authority, pursuant to 11 U.S.C. § 506(b), to incorporate the Legal Fee Amount in its allowed, secured claim and allow the Debtor to pay the same from the Sale proceeds.

32.    The following is a summary of the legal fees and expenses incurred by DIV in this matter.

| Month | Fees | Reimbursable Costs |
|---|---|---|
| December 2024[7]-February 2025 | $306,090.55 | $49.05 |
| March-May 2025 | $135,528.00 | $0.00 |
| June 2025 | $20,826.50 | $0.00 |
| July 2025 | $26,611.50 | $0.00 |
| August 2025 | $35,921.00 | $0.00 |
| September 2025 | $58,619.00 | $0.00 |
| October 2025 | $71,214.00 | $0.00 |
| November 2025 | $37,411.50 | $0.00 |
| December 2025 | $52,080.50 | $109.20 |
| **Total:** | **$744,253.50** | **$158.25** |
| **Total Fees with 10% Discount:** | **$669,828.15** | |
| **Total Fees and Costs Sought to be Paid:** | **$669,986.40** | |

33.    In accordance with Local Rule 2016-1(a)(2), a table breaking down the Legal Fee Amount by professional, together with the professional's applicable hourly rate, is attached hereto as **Exhibit C**.

34.    The following is a more detailed summary, by invoice, of the legal fees and expenses incurred by DIV, broken down by timekeeper, with a narrative summary of the primary tasks that H&K performed during this period broken down into the categories of recoverable fees and expenses under the Loan Documents and/or the DIV DIP Order, as applicable.

---

[7] Time entries for December 2024 begin after the Petition Date.

**December 2024-February 2025**

**Fees and Costs: $306,090.55**

| Timekeeper | Hours | Rate | Total Fees |
|---|---|---|---|
| John J. Monaghan (1985) | 116.1 | $1,275.00 | $148,027.50 |
| John J. Monaghan (1985) | 2.8 | $1,275.00 | No Charge |
| Lynne B. Xerras (1996) | 12.9 | $925.00 | $11,932.50 |
| Lynne B. Xerras (1996) | 2.0 | $925.00 | No Charge |
| Anthony F. Pirraglia (2010) | 2.0 | $1,125.00 | $2,250.00 |
| Kathleen M. St. John (2011) | 167.5 | $795.00 | $133,162.50 |
| Christopher A. Bailey (2018) | 4.1 | $760.00 | $3,116.00 |
| Lisa Kim (2023) | 5.0 | $655.00 | $3,275.00 |
| Morgan L. Allred (2022) | 6.4 | $645.00 | $4,128.00 |
| Katherine Baer (Special Assistant) | 0.4 | $375.00 | $150.00 |
| **Totals:** | | | **$306,041.50** |

| Reimbursable Costs | Amount |
|---|---|
| Filing Fees | $28.00 |
| Transportation | $21.05 |
| **Total:** | **$49.05** |

## *Activities Performed by HK by Category*

**(1)   Efforts to collect amounts due under the Loan Documents:**

- Preparation of DIV's proof of claim with supporting documentation for amounts due under the Loan Documents.

**(2)   Negotiation or documentation of a workout or restructuring:**

- Analysis of options to support restructuring through Plan Support Agreement/Restructuring Support Agreement.

12

**(3)    Preservation of its secured creditor rights and/or realization upon any guaranty or security for the Debtor's obligations under the Loan Documents:**

- Analysis of Petition and emergency filings, including Eastern DIP Motion and LOI Motion, and impact on DIV's cash collateral and other interests;

- Conferences and correspondence with client regarding case status and strategy;

- Researching and drafting preliminary and supplemental omnibus objections to Eastern DIP Motion and LOI Motion;

- Attending various emergency hearings on Debtor's motions for relief related to cash collateral, DIP Financing, and potential sale to Eastern;

- Attending Debtor's 341 meeting;

- Analysis of Schedules and SOFA;

- Monitor Debtor's filings to ensure no negative impact to DIV's rights;

- Monitoring all activity within the Debtor's case and, where necessary, preparing objections to certain actions that may prejudice the interests of Clear Haven and/or other creditors;

- Preparing for and attending hearings;

- Multiple conferences with other creditors regarding the case status.

**(4)    Negotiation and documentation of DIV DIP and acting as the DIP Lender:**

- Negotiation and drafting term sheet and budget for competing DIP financing proposal;

- Attending hearings regarding DIP financing;

- Analysis of competing DIP financing proposals;

- Preparation of proposed order and term preparing payoff of DIV DIP;

- Coordination of Eastern DIP payoff;

- Manage draw requests and confirmations.

## <u>March 2025-May 2025</u>

**Fees and Cost: $135,528.00**

| Timekeeper | Hours | Rate | Total Fees |
|---|---|---|---|
| John J. Monaghan (1985) | 68.5 | $1,275.00 | $87,337.50 |
| Lynne B. Xerras (1996) | 26.4 | $925.00 | $24,420.00 |
| Lynne B. Xerras (1996) | 3.7 | $925.00 | No Charge |

13

| | | | |
|---|---|---|---|
| Kathleen M. St. John (2011) | 29.9 | $795.00 | $23,770.50 |
| **Totals:** | | | **$135,528.00** |

### _Activities Performed by HK_

**(1)    Efforts to collect amounts due under the Loan Documents:**

- No activities in this category in this time period.

**(2)    Negotiation or documentation of a workout or restructuring:**

- Substantial work on drafting a Plan Support Agreement/Restructuring Support Agreement and term sheet to facilitate the Debtor's reorganization;

- Conferences and negotiation with Debtor regarding form of Plan Support Agreement/Restructuring Support Agreement.

**(3)    Preservation of its secured creditor rights and/or realization upon any guaranty or security for the Debtor's obligations under the Loan Documents:**

- Monitoring docket activity and prepare objections where necessary to prevent negative impact on DIV's rights as secured creditor;

- Conferences and correspondence with client regarding case status and strategy;

- Coordination with other creditors regarding status of case and impact on respective rights;

- Prepare for and attend hearings;

- Analysis of the Debtor's proposed sale and bidding procedures for joint venture transaction and attend hearings regarding the same;

**(4)    Negotiation and documentation of DIV DIP and acting as the DIP Lender:**

- Management of DIV DIP and amendments to Budget;

- Analysis of Debtor's requests to court for extension of exclusivity in light of pending maturity of DIV DIP;

- Preparation for potential default under DIV DIP and analysis of options;

- Analysis and respond to Debtor's request for replacement DIP Financing and negotiation of alternative form of DIP financing to extend DIV DIP on more advantageous terms;

- Attend hearings regarding DIP Financing;

- Attend to payoff of DIV DIP under replacement DIP facility.

14

**June 2025**

**Fees and Cost: $20,826.50**

| Timekeeper | Hours | Rate | Total Fees |
|---|---|---|---|
| John J. Monaghan (1985) | 8.0 | $1,275.00 | $10,200.00 |
| Lynne B. Xerras (1996) | 5.3 | $925.00 | $4,902.50 |
| Kathleen M. St. John (2011) | 7.2 | $795.00 | $5,724.00 |
| **Totals:** | | | **$20,826.50** |

## *Activities Performed by HK*

**(1)    Efforts to collect amounts due under the Loan Documents:**

- Working on payoff calculation for amounts accrued post-petition.

**(2)    Negotiation or documentation of a workout or restructuring:**

- No activities in this category in this time period.

**(3)    Preservation of its secured creditor rights and/or realization upon any guaranty or security for the Debtor's obligations under the Loan Documents:**

- Analysis of available information regarding status of sale process including pivot to outright sale process, and respond to same where necessary;

- Analysis of valuation issues that could impact DIV's secured claim and potential over- or under-secured status;

- Conferences and correspondence with client regarding case status and strategy;

- Monitor debtor's filings and file responsive pleadings where necessary to prevent prejudice to DIV's interests;

- Analysis of potential acquisition of the Property to maximize recovery and undertake due diligence related to the same;

- Preparing for and attending hearings.

**(4)    Negotiation and documentation of DIV DIP and acting as the DIP Lender:**

- Work on payoff amounts for DIV DIP;

- Negotiation of potential replacement DIP financing.

**July 2025**

**Fees and Cost: $26,611.50**

| Timekeeper | Hours | Rate | Total Fees |
|---|---|---|---|
| John J. Monaghan (1985) | 18.0 | $1,275.00 | $23,077.50 |
| Lynne B. Xerras (1996) | 1.5 | $925.00 | $1,387.50 |
| Kathleen M. St. John (2011) | 2.7 | $795.00 | $2,146.50 |
| **Totals:** | | | **$8,806.50** |

### *Activities Performed by HK*

**(1)   Efforts to collect amounts due under the Loan Documents:**

-   No activities in this category in this time period.

**(2)   Negotiation or documentation of a workout or restructuring:**

-   Correspondence and conference with client regarding status of case and strategy.

**(3)   Preservation of its secured creditor rights and/or realization upon any guaranty or security for the Debtor's obligations under the Loan Documents:**

-   Coordination with other creditors regarding status of case and potential issues;

-   Monitor Debtor's filings and file responsive pleadings where necessary to prevent prejudice to DIV's interests;

-   Conferences and correspondence with client regarding case status and strategy;

-   Review of proposed sale process and correspondence regarding valuation issues.

**(4)   Negotiation and documentation of DIV DIP and acting as the DIP Lender:**

-   Negotiation and drafting potential alternative DIP financing proposal.

**August 2025**

**Fees and Cost: $35,921.00**

| Timekeeper | Hours | Rate | Total Fees |
|---|---|---|---|
| John J. Monaghan (1985) | 21.4 | $1,275.00 | $27,285.00 |
| Lynne B. Xerras (1996) | 6.5 | $925.00 | $6,012.50 |

#531760967_v3

| | | | |
|---|---|---|---|
| Kathleen M. St. John (2011) | 3.3 | $795.00 | $2,623.50 |
| **Totals:** | | | **$35,921.00** |

### *Activities Performed by HK*

**(1)   Efforts to collect amounts due under the Loan Documents:**

- Continue work on updated payoff calculation and correspondence with client regarding the same.

**(2)   Negotiation or documentation of a workout or restructuring:**

- No activities in this category in this time period.

**(3)   Preservation of its secured creditor rights and/or realization upon any guaranty or security for the Debtor's obligations under the Loan Documents:**

- Monitor debtor's filings and objections of other creditors, and file responsive pleadings where necessary to prevent prejudice to DIV's interests;

- Preparing for and attending hearings;

- Conferences and correspondence with client regarding case status and strategy;

- Review of statements regarding dispute between with CEI and analysis of potential impact on Debtor's ability to achieve payment to all creditors in full absent agreement;

- Monitoring Debtor's filings regarding revised sale process and correspondence with client regarding the same;

- Correspondence with client regarding possible credit bid to protect oversecured status.

**(4)   Negotiation and documentation of DIV DIP and acting as the DIP Lender:**

- No activities in this category during this time period.

## September 2025

### Fees and Cost: $58,619.00

| Timekeeper | Hours | Rate | Total Fees |
|---|---|---|---|
| John J. Monaghan (1985) | 33.4 | $1,275.00 | $42,585.00 |
| Lynne B. Xerras (1996) | 4.7 | $925.00 | $4,347.50 |

17

| | | | |
|---|---|---|---|
| Kathleen M. St. John (2011) | 14.7 | $795.00 | $11,686.50 |
| **Totals:** | | | **$58,619.00** |

### _Activities Performed by HK_

**(1)    Efforts to collect amounts due under the Loan Documents:**

- No activities in this category in this time period.

**(2)    Negotiation or documentation of a workout or restructuring:**

- No activities in this category in this time period.

**(3)    Preservation of its secured creditor rights and/or realization upon any guaranty or security for the Debtor's obligations under the Loan Documents:**

- Monitor debtor's filings and file responsive pleadings where necessary to prevent prejudice to DIV's interests;

- Preparing for and attending hearings;

- Conferences and correspondence with client regarding case status and strategy;

- Coordination with client regarding potential bid to protect oversecured status;

- Correspondence with other creditors regarding proposal of plan after termination of Debtor's exclusivity;

- Monitor statements regarding dispute between Debtor and CEI and potential impact on outcome of case.

**(4)    Negotiation and documentation of DIV DIP and acting as the DIP Lender:**

- No activity in this category during this time period.

### October 2025

**Fees and Cost: $71,214.00**

| Timekeeper | Hours | Rate | Total Fees |
|---|---|---|---|
| John J. Monaghan (1985) | 27.7 | $1,350.00 | $37,395.00 |
| Lynne B. Xerras (1996) | 5.2 | $995.00 | $5,174.00 |
| Kathleen M. St. John (2011) | 33.7 | $850.00 | $28,645.00 |
| **Totals:** | | | **$71,214.00** |

18

### *Activities Performed by HK*

**(1)  Efforts to collect amounts due under the Loan Documents:**

- Work on payoff calculation and interest issues in relation to prepetition claim for payoff;

- Analysis of objection to DIV's proof of claim, preparing respond in opposition to request for expedited determination, preparation and attending hearing regarding the same;

- Preparation of substantiating evidence for amount of DIV's claim and correspondence with Debtor's counsel to narrow issues in dispute with respect to DIV's claim.

**(2)   Negotiation or documentation of a workout or restructuring:**

- No activity in this category during this time period.

**(3)   Preservation of its secured creditor rights and/or realization upon any guaranty or security for the Debtor's obligations under the Loan Documents:**

- Correspondence with other creditors regarding case status and strategy to best preserve parties' rights;

- Monitor debtor's filings and objections of other creditors, and file responsive pleadings where necessary to prevent prejudice to DIV's interests;

- Analysis of filings regarding sale process and results;

- Preparing for and attending hearings;

- Conferences and correspondence with client regarding case status and strategy.

**(4)   Negotiation and documentation of DIV DIP and acting as the DIP Lender:**

- No activities in this category during this time period.

## November 2025

### Fees and Cost: $37,411.50

| Timekeeper | Hours | Rate | Total Fees |
|---|---|---|---|
| John J. Monaghan (1985) | 12.5 | $1,350.00 | $16,875.00 |
| Lynne B. Xerras (1996) | 6.5 | $995.00 | $2,686.50 |
| Kathleen M. St. John (2011) | 3.3 | $850.00 | $17,850.00 |

#531760967_v3

| Totals: | | | $37,411.50 |
|---|---|---|---|

### *Activities Performed by HK*

**(1)    Efforts to collect amounts due under the Loan Documents:**

- Work on payoff issues and prepare application to support amounts due under Loan Documents for payoff;

- Correspondence with Debtor's counsel regarding potential resolution of dispute to DIV claim.

**(2)    Negotiation or documentation of a workout or restructuring:**

- No activities in this category in this time period.

**(3)    Preservation of its secured creditor rights and/or realization upon any guaranty or security for the Debtor's obligations under the Loan Documents:**

- Prepare objection to sale to prevent prejudice to DIV's entitlement to accrual of interest under the Loan Documents;

- Conferences and correspondence with client regarding case status and strategy;

- Monitor debtor's filings and objections of other creditors, and file responsive pleadings where necessary to prevent prejudice to DIV's interests.

**(4)    Negotiation and documentation of DIV DIP and acting as the DIP Lender:**

- No activities in this category in this time period.

### December 2025

**Fees and Cost: $52,179.00[8]**

| Timekeeper | Hours | Rate | Total Fees |
|---|---|---|---|
| John J. Monaghan (1985) | 16.5 | $1,350.00 | $22,275.00 |
| Lynne B. Xerras (1996) | 3.9 | $995.00 | $3,880.50 |
| Kathleen M. St. John (2011) | 30.50 | $850.00 | $25,925.00 |
| **Totals:** | | | **$52,080.50** |

---

[8] DIV has paid all fees and expenses set forth herein to H&K, other than the amounts due for fees and expenses incurred in November and December 2025.

#531760967_v3

| Reimbursable Costs | Amount |
|---|---|
| Transportation | $42.00 |
| Online Research | $67.20 |
| **Total:** | **$109.20** |

**(1) Efforts to collect amounts due under the Loan Documents:**

- Negotiation with Debtor's counsel regarding dispute regarding DIV's claim;
- Analysis of amounts recoverable under Loan Documents and Debtor's objections to the same;

**(2)   Negotiation or documentation of a workout or restructuring:**

- No activity in this category during this time period;
- Analysis of Plan and Disclosure Statement and potential impairment of DIV's rights;
- Correspondence with client regarding case status and strategy;
- Correspondence with debtor regarding sale pleadings.

**(3)   Preservation of its secured creditor rights and/or realization upon any guaranty or security for the Debtor's obligations under the Loan Documents:**

- Preparation for and attend hearings regarding sale.

**(4)   Negotiation and documentation of DIV DIP and acting as the DIP Lender:**

- No activity in this category during this time period.

## <u>ARGUMENT</u>

**I.    The DIV DIP Order Provides that DIV's Entitlement to its Fees and Expenses Incurred as the DIP Lender and as the Prepetition Lender is Unqualified**

42.    In an effort to provide the Debtor as much liquidity as possible under the DIV DIP during the Chapter 11 Case, DIV agreed to defer its fees and expenses incurred in connection with the DIV DIP. To that end the DIV DIP Order provides that both fees incurred under the Loan

21

Documents and those incurred in connection with the DIV DIP would accrue and be added to the

balance of the Loan:

> **Professional fees and expense[s] and . . . other fees and expenses under either the DIP Facility *or under the Existing Mortgage Facility* may be accrued by the DIP Lender and added to the balance of the Existing Mortgage Facility.**

*DIV DIP Order*, ¶ 3(a) (emphasis added).

43.    Notably, the DIV DIP Order does not impose a reasonableness requirement, nor

does it require DIV to file a fee application to recover such fees and expenses. Rather, in exchange

for DIV's concession in deferring its fees and expenses incurred under the DIV DIP, the Debtor

agreed, and the Court approved, that DIV was entitled to add its fees and expenses under *both* the

DIV DIP and the Loan Documents to the prepetition loan balance.

44.    Notwithstanding that entitlement, as more fully set forth below, the fees incurred

by DIV are reasonable and recoverable under any standard.

## II.    DIV is Entitled to Recover H&K's Post-Petition Fees and Expenses under the Loan Documents Pursuant to Section 506(b) of the Bankruptcy Code

### A.    DIV Is Contractually Entitled to Recover Fees and Expenses under the Loan Documents

45.    As an oversecured creditor, DIV is entitled to recover its fees and expenses incurred

under the Loan Documents pursuant to section 506(b) of the Bankruptcy Code.

46.    Section 506(b) provides that an oversecured creditor is entitled to reasonable fees,

costs, and charges provided for in the underlying loan documents. 11 U.S.C. § 506(b); *U.S. v. Ron

Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); *In re Henry A. Sarafin Testamentary Tr.*, No. 12-

30221-HJB, 2015 WL 5738234, at *4 (Bankr. D. Mass. Sept. 30, 2015); *In re Burrell*, 346 B.R.

561, 568 (B.A.P. 1st Cir. 2006).

47.    DIV is contractually entitled to collect fees and expenses incurred as the Debtor's

prepetition secured lender under the Loan Documents in efforts to (1) collect any amounts due

under the Loan Documents, (2) reach a workout or restructuring, and (3) to otherwise preserve its rights or collect upon a guaranty or security for payment of the Loan.

48.    Specifically, under the A&R Note, the Debtor agreed to pay, in addition to principal, interests, and other expenses, "**all fees and costs (including without limitation attorneys' fees and disbursements whether for internal or outside counsel) the [Lender] incurs in order to collect any amount due under this Note, to negotiate or document a workout or restructuring, or to preserve its rights or realize upon any guaranty or other security for the payment of this Note ('Expenses')**." (emphasis added).

49.    Notwithstanding the broad provision of the DIV DIP Order permitting DIV to add its fees to the principal balance of the Loan for payment, as set forth above, the fees and expenses DIV incurred under the Loan Documents fall squarely into the approved categories of recoverable fees and expenses under the Loan Documents. Specifically, DIV seeks allowance of fees and expenses incurred under the Loan Documents and the DIV DIP Order in connection with DIV's:

(i)     efforts to collect amounts due under the Loan Documents;

(ii)    negotiation or documentation of a workout or restructuring; and

(iii)   preservation of its secured creditor rights and/or realization upon any guaranty or security for the Debtor's obligations under the Loan Documents.

**B.    The Fees and Expenses Incurred by H&K are Reasonable and Should be Incorporated into DIV's claim under 11 U.S.C. § 506(b).**

50.    In the First Circuit, "reasonableness" of attorney's fees under section 506(b) is generally determined by application of the "lodestar" method, which involves multiplication of the reasonable hours by the reasonable rate of counsel to determine a presumptively reasonable fee. *In re Chase*, No. 03-10223-JMD, 2003 WL 22056652, at *3 (Bankr. D.N.H. Aug. 25, 2003). While H&K is not an estate professional, reference to the applicable factors examined in connection with

23

the allowance of compensation for estate professionals under Bankruptcy Code section 330

demonstrates that the fees and expenses incurred by H&K are reasonable and appropriate. Those

factors include:

(i)     the time spent on such services;

(ii)    the rates charged for such services;

(iii)   whether the services were necessary to the administration of, or beneficial at the
        time at which the service was rendered toward the completion of, a case under this
        title;

(iv)    whether the services were performed within a reasonable amount of time
        commensurate with the complexity, importance and nature of the problem, issue,
        or task addressed;

(v)     with respect to a professional person, whether the person is board certified or
        otherwise has demonstrated skill and experience in the bankruptcy field; and

(vi)    whether the compensation is reasonable based on the customary compensation
        charged by comparably skilled practitioners in other cases.

11 U.S.C. § 330; *see also King v. Greenblatt*, 560 F.2d 1024, 1026 (1st Cir. 1977) (adopting the

guidelines for use by lower courts when ruling on attorneys' fee requests from *Johnson v. Georgia*

*Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)).

        51.     H&K rates are commensurate with the fees of other attorneys within this district.

Moreover, H&K endeavored to staff this matter on a lean basis and had virtually no duplication of

time. When appropriate, certain partners did not bill time or indicated "no charge" to avoid

duplication. H&K was selected to assist DIV with the Debtor's bankruptcy proceedings primarily

due to its significant expertise and reputation within the business community. The services

performed by DIV's professionals were necessary for DIV to preserve its secured claim,

particularly when DIV was not sure whether it was under- or oversecured for the majority of the

Chapter 11 Case.

        35.     A notable point of comparison is that from the Petition Date through November 30,

2025, the two law firms retained by the Debtor (its lead counsel M&K together with special

counsel BR) have collectively sought a minimum of $2,107,495.85[9] in fees and expenses. *See* ECF Nos. 249, 251, 364, 366, 527.

52.     Courts in this district do not determine reasonableness in a vacuum, but consider reasonableness based on the facts and circumstances of the case. Where, as here, a lender is forced into taking an active role due to the debtor's litigiousness or delay in administering the case, reasonableness of the fees incurred is evaluated in this context. For example, in *Kittery Point Partners*, the court overruled the debtor's objection that an oversecured creditor's legal fees were unreasonable, noting that "[t]o a significant degree, [the creditor] has incurred fees of this magnitude because of the Debtor's litigation choices." *In re Kittery Point Partners*, LLC, 613 B.R. 42, 51 (Bankr. D. Me. 2019), *aff'd sub nom. Kittery Point Partners, LLC*, 623 B.R. 825 (B.A.P. 1st Cir. 2021), *aff'd sub nom. In re Kittery Point Partners, LLC*, 858 F. App'x 386 (1st Cir. 2021). Similarly, in *In re 1095 Commonwealth Ave. Corp.*, this court allowed an oversecured lender's fees incurred in part due to the debtor's lack of efficient case management, notwithstanding the creditor's significant equity cushion, explaining:

> It is true that [the secured lender] has throughout these cases been well oversecured. However, despite their abundance of assets, the Debtors made an insufficient effort to advance a reasonable and confirmable plan of reorganization in a timely manner. It was clear to the Court and to [the secured lender] from very early in these cases that the Debtors would not of their own accord move these cases forward until pressure was brought to bear. [The secured lender] was not obligated to wait forever. Forced into an active role, [the secured lender] obtained the appointment of a Chapter 11 trustee, filed a third party plan, and successfully brought its plan to confirmation. Moreover, it did so under a steady opposition from the Debtor that multiplied the costs at every turn. The fees are not excessive.

*In re 1095 Commonwealth Ave. Corp.*, 204 B.R. 284, 303 (Bankr. D. Mass. 1997), *aff'd as modified sub nom. In re 1095 Commonwealth Corp.*, 236 B.R. 530 (D. Mass. 1999). Courts in other

---

[9] BR has not yet filed a Third Interim Fee Application for the period of August 1, 2025 through November 30, 2025, so this figure is four months of fees for the Debtor's special counsel.

#531760967_v3

jurisdictions have similarly recognized that where a debtor's conduct has precipitated much of the lender's activity in the case, the debtor cannot then complain that the lender has been overly litigious. *See, e.g., In re Damon Cap., Ltd.*, No. 23-10063-CGB, 2024 WL 46027, at *3 (Bankr. W.D. Tex. Jan. 3, 2024) (explaining: "Because of the way the Debtor prosecuted this case, the Lender was forced to take an active role, and there is no doubt that it did so very effectively. *If the Debtor had wanted to minimize the fees that it would be obligated to pay on the Lender's behalf, it could and would have acted quite differently. The Debtor has to some degree made the bed that it has to sleep in*.") (emphasis added).

53.     So too here, DIV has been "[f]orced into an active role" – from the outset of the case when the Debtor sought approval to enter into an LOI that was little more than a *sub rosa* plan presenting insufficient value for the Debtor's sole meaningful asset, and through the meandering sale processes and myriad emergency motions that brought the case to this point.

54.     The need for action was exacerbated by the Debtor filing nearly every single request for relief in this case on an expedited or emergency basis, several on the eve of holiday weekends and requesting hearings immediately after the holiday, causing DIV to have to mobilize substantial resources in order to respond to a rapidly moving target to protect its rights.

55.     Additionally, DIV's actions have brought material benefit to the estate. DIV's objections to the Eastern DIP Motion and the LOI Motions resulted in the withdrawal of the motions, which greatly benefited the estate, enabling it to avoid a proposed break up fee of up to $1 million payable to Eastern, a complete lock up with Eastern during the entirety of its statutory exclusivity period, and agreement to a capital contribution of only $23.5 million for the joint venture stake. After the Debtor finally relented and agreed to test the market for the outright sale of the Property, it was able to garner a purchase price of $44.8 million.

#531760967_v3

56.     The DIV provided DIP financing also provided substantial benefit to the Debtor and its estate. Not only was the DIV-provided DIP financing lower priced than the Eastern alternative, DIP agreed to defer its fees and expenses under the DIV DIP Order in order to minimize the cost of the proceeding to the Debtor—there would have been a dollar for dollar increase in the amount the DIP financing needed to fund the Chapter 11 Case had DIV not agreed to the unusual provision of deferring payment of its legal fees and instead adding them to the DIV prepetition loan balance—and that legal fee payment amount would have been added to the principal balance of the DIV DIP loan, and would have accrued interest at the DIP loan provided rate.

57.     DIV's subsequent objections to the proposed Fairbridge replacement DIP financing also resulted in Fairbridge agreeing to a reduction in its DIP financing pricing to the benefit of the Debtor and its estate. As a result of DIV's objection, Fairbridge agreed to, among other things forego its originally required Exit Fee.

58.     This case has been pending for over a year. There have been many contested matters briefed and heard by the court on a compressed time frame. Notwithstanding the slow progress of the Sale, the Chapter 11 Case has been active, as the Debtor has sought to obtain DIP financing from three separate sources, extended exclusivity three times, and has run two sale processes. During this time, despite DIV's repeated requests for information as to the status of the marketing and sale processes, the Debtor shared so little information with stakeholders that DIV was not certain whether it was undersecured or oversecured – all it could obtain was vague assurances from the Debtor that all creditors would be paid in full unless otherwise agreed. Until November 26, 2025 it was far from certain that agreement would be reached with the estate's largest unsecured creditor (Debtor-affiliate CEI), with CEI challenging Debtor's retention of special counsel and

27

associated fees as late as nine months into the case. *See* ECF Nos. 411, 474, 494. In light of all of the foregoing, DIV respectfully submits that the Legal Fee Amount is reasonable and should be allowed.

WHEREFORE, DIV respectfully requests that the Court grant the Application, allow the Legal Fee Amount of $744,411.75, direct the estate to pay the Discounted Legal Fee Amount of **$669,986.40**, and to grant such other and further relief as is just and necessary.

Dated: January 22, 2026

Respectfully Submitted,

**HOLLAND & KNIGHT LLP**

By:    /s/ *John J. Monaghan*
        John J. Monaghan (BBO# 546454)
        Lynne B. Xerras (BBO# 632441)
        Kathleen M. St. John (BBO# 681565)
        10 St James Avenue, 11th Floor
        Boston, Massachusetts 02116
        Telephone: 617-854-1403
        Email: bos-bankruptcy@hklaw.com
              lynne.xerras@hklaw.com
              kathleen.stjohn@hklaw.com

*Counsel to DIV OA Lender, LLC*

28

#531760967_v3

## <u>CERTIFICATE OF SERVICE</u>

I, John J. Monaghan, counsel to DIV OA Lender, LLC, hereby certify that on the 22nd day of January 2026, a copy of the *DIV OA Lender, LLC's Application for Allowance of Post-Petition Fees* was served upon all parties registered to receive service through the Court's CM/EMF system.

/s/ John J. Monaghan

#531760967_v3