**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| **In re:**<br><br>**WATER'S EDGE LIMITED PARTNERSHIP**<br><br>**Debtor.** | **Chapter 11**<br><br>**Case No: 24-12445-CJP** |

**MODIFIED PLAN OF LIQUIDATION OF WATER'S EDGE LIMITED PARTNERSHIP**

Kathleen R. Cruickshank, Esq.
MURPHY& KING, P.C.
28 State Street, Suite 3101
Boston, MA  02109
Telephone No.:  (617) 423-0400
Email: kcruickshank@murphyking.com
Counsel to the Debtor


William R. Baldiga, Esq.
BROWN RUDNICK, LLP
One Financial Center
Boston, MA 02110
Telephone No.: (617) 856-8586
Email: wbaldiga@brownrudnick.com
Special Counsel to Debtor

Dated: January 27, 2026

Water's Edge Limited Partnership, the debtor and debtor-in-possession in the Bankruptcy Case (as defined below), proposes the following plan of liquidation under section 1121 of the United States Bankruptcy Code.

## ARTICLE I
## DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of the Plan, the following terms shall have the meanings specified in this Article I.  A capitalized term used but not defined in the Plan that is also used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code.  Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated.  The words "in the Plan," "the Plan," "hereto," "herein", "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, sub-section or clause contained in the Plan.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the terms of the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions the Plan.

1.1    "Administrative Expense Claim" shall mean a Claim under section 503(b) of the Bankruptcy Code and that is entitled to priority under section 507(a)(2) of the Bankruptcy Code, including Professional Fee Claims.

1.2    "Affiliate" shall mean any Person that is an affiliate of the Debtor or the Reorganized Debtor under the Bankruptcy Code.

1.3    "Allowed" shall mean, with reference to any Claim or Equity Interest:

   (a)    a Claim or Equity Interest that has been listed by the Debtor in its Schedules and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim or Equity Interest as to which a proof of claim or interest has been filed;

   (b)    a Claim or Equity Interest as to which a timely proof of claim or interest has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been allowed (whether in whole or in part) by a Final Order;

   (c)    a Claim arising from the recovery of property under section 550 or 553 of the Bankruptcy Code and allowed in accordance with section 502(h) of the Bankruptcy Code; or

   (d)    any Claim or Equity Interest expressly allowed under the Plan, pursuant to the Confirmation Order or pursuant to a Final Order of the Bankruptcy Court.

**1.4**    "Asset(s)" shall mean any real or personal property of the Debtor, whether tangible or intangible and wherever situated, together with the proceeds thereof.

**1.5**    "Avoidance Actions" shall mean Causes of Action arising or held by the Debtor under chapter 5 of the Bankruptcy Code, and/or under related state or federal statutes and common law, including fraudulent transfer laws.

**1.6**    "Bankruptcy Case" shall mean the chapter 11 bankruptcy proceedings pending in the Bankruptcy Court under docket number 24-12445-CJP.

**1.7**    "Bankruptcy Code" shall mean title 11 of the United States Code in effect in the Bankruptcy Cases.

**1.8**    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Massachusetts in which the Bankruptcy Cases are pending and, to the extent of any reference under 28 U.S.C. §157, the unit of such District Court specified pursuant to 28 U.S.C. §151.

**1.9**    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

**1.10**    "Bar Date" shall mean February 14, 2025, the date fixed by order of the Bankruptcy Court as the last date by which Persons asserting certain Claims against the Debtor must have filed a proof of claim or interest or be forever barred from asserting a Claim against the Debtor or its property, from voting on the Plan and/or sharing in distributions under the Plan.

**1.11**    "Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the Commonwealth of Massachusetts.

**1.12**    "Cash" shall mean: (a) lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders), and (b) readily marketable securities or instruments issued by a Person other than the Debtor or an Affiliate, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's Rating of "A" or better, or equivalent rating of any other nationally recognized rating service, interest-bearing certificates of deposit, or other similar obligations of domestic banks or other financial institutions.

**1.13**    "Cash Equivalents" shall mean equivalents of Cash in the form of readily marketable securities or instruments issued by a Person other than the Debtor or an Affiliate, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's Rating of "A" or better, or equivalent rating of any other nationally recognized rating service, interest-bearing certificates of deposit, or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or equivalent capital of not less than Two Hundred Million Dollars ($200,000,000).

849947 v. 1

**1.14** "Causes of Action" shall mean, without limitation, any and all actions, causes of action, choses in action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise including, without limitation, property tax abatement claims, insurance claims, claims against the City of Revere, and any Avoidance Actions that the Debtor and the Reorganized Debtor have not expressly covenanted in this Plan that they shall not commence or pursue.

**1.15** "CEI" shall mean Carabetta Enterprises, Inc.

**1.16** "CEI Affiliates" shall mean CEI, Baystate Property Management & Maintenance, Inc., Service Maintenance Co., Inc., Carabetta Management Company, and Combustion Power Company, Bay State Property Management & Maintenance, Inc. and CMC Supplies.

**1.17** "CEI Deferred Claim" shall mean the portion of the Allowed CEI Claim that will be deferred and paid in accordance with the CEI Stipulation

**1.18** "CEI Stipulation" shall mean the *Stipulation as to Claim of Carabetta Enterprises, Inc.* filed with the Court on November 26, 2025 [Doc. No. 474], Exhibit A to the CEI Stipulation, and the two letter agreements referenced therein (dated May 25, 2025 and November 25, 2025, respectively) and approved by the Court on December 2, 2025 [Doc. No. 487].

**1.19** "Claim" shall mean a claim against a Person or its property as defined in section 101(5) of the Bankruptcy Code, including, without limitation, (a) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.20** "Class" shall mean those classes designated in Article III of the Plan.

**1.21** "Collateral" shall mean any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

**1.22** "Confirmation Date" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in these Bankruptcy Cases.

**1.23** "Confirmation Hearing" shall mean the hearing on confirmation of the Plan.

**1.24** "Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan, in form and substance reasonably acceptable to the Debtor.

849947 v. 1

**1.25**    "<u>Contingent or Unliquidated Claim</u>" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or for which the event that would give rise to such a liability or debt has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

**1.26**    "<u>Cure Claim</u>" shall mean the amount necessary to cure any defaults in an executory contract or unexpired lease so that such contract or lease may be assumed pursuant to section 365(b)(1) of the Bankruptcy Code.

**1.27**    "<u>Debtor</u>" shall mean Water's Edge Limited Partnership, including, from and after the Effective Date, in its capacity as Reorganized Debtor.

**1.28**    "<u>Deficiency Claim</u>" shall mean the amount by which the Allowed Claim of a creditor exceeds the Allowed Secured Claim of such creditor.

**1.29**    "<u>DIP Claim</u>" shall mean any Claim arising under, derived from or based upon the DIP Loan Agreement.

**1.30**    "<u>DIP Loan Agreement</u>" shall mean the term sheet dated September __, 2025 as thereafter amended and restated, between the DIP Lender and the Debtor with respect to the DIP Facility and approved by the Court pursuant to the Final DIP Order dated __, 2025 [doc. no. 408], as may be further extended pursuant to an order of the Court.

**1.31**    "<u>DIP Facility</u>" shall mean the credit facility established by the DIP Loan Agreement.

**1.32**    "<u>DIP Lender</u>" shall mean Fairbridge Credit, LLC or a subsidiary or affiliate thereof in its capacity as counterparty to the DIP Loan Agreement.

**1.33**    "<u>Disclosure Statement</u>" shall mean the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.34**    "<u>Disputed Claim</u>" shall mean:

    (a)    if no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

    (b)    if a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, has been made, or which is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order; or

    (c)    a Claim that is a Contingent or Unliquidated Claim.

849947 v. 1

**1.35**    "<u>Disputed Claim Amount</u>" shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Disputed Claim in accordance with Section 502(c) of the Bankruptcy Code.

**1.36**    "<u>Disputed Claim Reserve</u>" shall have the meaning set forth in Section 6.5 of this Plan.

**1.37**    "<u>Distribution Record Date</u>" shall be the date established by the Bankruptcy Court.

**1.38**    "<u>DIV OA Lender</u>" shall mean DIV OA Lender, LLC.

**1.39**    "<u>DIV OA Lender Claim</u>" shall mean the amount that DIV OA Lender asserted was due to it on the Petition Date in its proof of claim, which is Claim No. 16-1 on the Court's claims register, plus any amounts it asserts have accrued during the post-petition period and are recoverable under the DIV OA Loan Documents and Section 506(b).

**1.40**    "<u>DIV OA Lender Escrow Amount</u>" shall mean the amount that the Debtor and DIV OA Lender agree shall be held in the Disputed Claims Reserve by the Plan Trustee to fully fund the disputed portion of the DIV OA Lender Claim, or, absent such agreement, as determined by the Court in connection with the confirmation of the Plan.

**1.41**    "<u>Effective Date</u>" shall mean the date selected by the Debtor following entry of the Confirmation Order, but in no event later than fifteen (15) days following the entry of the Confirmation Order.

**1.42**    "<u>Equity Interest</u>" shall mean the partnership interest of the general partner and the limited partner in the Debtor, and all options and/or rights, contractual or otherwise, to acquire at any time any interest in the Debtor, as such interest exists immediately prior to the Effective Date.

**1.43**    "<u>Estate</u>" shall mean the estate created in the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code.

**1.44**    "<u>Final DIP Order</u>" shall mean the *Final Order (1) Authorizing the Debtor to Obtain Junior Secured Postpetition Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Status; (III) Authorizing Use of Cash Collateral; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; (VI) Scheduling a Continued Hearing; and (VII) Granting Related Relief* [doc. no. 408].

**1.45**    "<u>Final Order</u>" shall mean an order or judgment which has not been reversed, stayed, modified or amended and, as to which (a) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending, or (b) if appeal, review, re-argument or certiorari of the order has been sought, the order has been affirmed or the request for review, re-argument or certiorari has been denied and the time to seek a further appeal, review, re-argument or certiorari has expired, and as a result of which such order shall have become final and non-appealable in accordance with applicable law; <u>provided</u>, <u>however</u>, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil

Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.46    "General Unsecured Claim" shall mean a Claim that is: (a) not a Secured Claim, (b) not entitled to priority of payment under section 507 of the Bankruptcy Code, and (c) not a Claim for an Equity Interest.

1.47    "Improvements" shall mean collectively, the three (3) apartment buildings situated at the Property with a total of approximately 316 units, including 306 apartment units and 9 commercial units, the parking garages located on the lobby and lower levels of each building,  fitness centers, laundry facilities, pools and elevators, a detached garage located near 364 Ocean Avenue, as well as all site work and other improvements on the Property and appurtenances, betterments and additions thereto and replacements thereof and all auxiliary amenities and facilities to be used or otherwise necessary in connection with the Property.

1.48    "Internal Revenue Code" shall mean Title 26 of the United States Code, as amended from time to time.

1.49    "Insider" shall have the meaning set forth in section 101(31) of the Bankruptcy Code, provided that it shall not include the Debtor.

1.50    "Lien" shall have the meanings set forth in sections 101(36) and (37) of the Bankruptcy Code; provided that (a) a lien that has been avoided in accordance with sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien, and (b) no lien shall be valid unless approved by a Final Order of the Bankruptcy Court or by agreement of the Debtor against whom the lien is asserted.

1.51    "Loan Documents" shall mean all documents evidencing a Secured Claim and/or the Lien securing such Claim, executed by the Debtor prior to the Petition Date, including, without limitation, notes, loan agreements, mortgages, security agreements, financing statements, guaranties, swap agreements, and such other documents executed in connection with such Secured Claim and/or Lien.

1.52    "Net Proceeds" shall mean for all Assets of the Debtor, including the prosecution of Causes of Action, the gross proceeds of any sale, transfer or other liquidation of any of the Assets less the aggregate of: (a) the costs and expenses of selling, transferring, prosecuting and/or liquidating the Assets, including, without limitation, professional fees and expenses related to the recovery and disposition of the Assets; (b) accrued and unpaid Real Estate Taxes and municipal liens; and (c) closing costs and other usual and ordinary recording and/or settlement charges; provided that, with respect to a Cause of Action, gross proceeds shall include only the cash received from such Cause of Action.

1.53    "Non-Appealable Order" shall mean an order or judgment which has not been reversed, stayed, modified or amended and, as to which (i) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending, or (ii) if appeal, review, re-argument or certiorari of the order has been sought, the order has been affirmed or the request for review, re-argument or certiorari has been denied and the time to seek a further appeal, review, re-argument or certiorari has expired, and as a result of

which such order shall have become final and non-appealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Non-Appealable Order.

**1.54** "On Account" shall mean, with respect to any payment made on a Claim that is not Allowed, that such payment is made without prejudice to: (a) any rights, claims and defenses with respect to such Claim, (b) the right to contest such Claim, including without limitation by filing an adversary proceeding against the holder of the Claim and/or an objection to such Claim, (c) the right to seek an allocation of such payment to principal, interest and/or costs when the Claim becomes an Allowed Claim, and (d) the right of the Debtor to recover, and the obligation of the recipient to return, the amount by which a payment On Account exceeds the Allowed amount of such Claim.

**1.55** "Original WELP Equity" shall mean the Equity Interest.

**1.56** "Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision.

**1.57** "Personalty" shall mean, collectively, any and all personal property and fixtures owned by the Debtor and at any time attached to, located in or on, or used in connection with, the ownership and operation of the Improvements, including, without limitation, all mechanical, electrical, lighting and plumbing systems, fixtures and equipment, all ventilating, air conditioning and heating systems, fixtures and equipment, all water and power systems, engines, boilers, generators, furnaces, motors, landscaping and sprinkler systems and equipment, all furniture, furnishings, appliances, supplies and other personal property (tangible and intangible) of every nature and description, all maintenance equipment, tools and supplies, and all master keys, office keys and other keys used in connection with the Property.

**1.58** "Petition Date" shall mean December 4, 2024.

**1.59** "Plan" shall mean this *Plan of Liquidation of Water's Edge Limited Partnership*, including, without limitation, all exhibits, supplements, appendices and schedules to the Plan, either in their present form or as the same may be altered, amended or modified from time to time.

**1.60** "Plan Documents" shall mean and include (a) the Purchase & Sale Agreement by and between the Debtor and E-T Ocean, LLC dated December 2, 2025 [ECF No. 491 and 493]; (b) the *Order (A) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests; (B) Approving the Purchase and Sale Agreement; (C) Approving the Assumption and Assignment Agreement; and (D) Granting Related Relief* [ECF No.495]; (c) such other agreements, instruments and documents as may be required to effectuate the terms of the foregoing and this Plan; and (d) all exhibits to any of the foregoing.

**1.61** "Plan Funding" shall mean the funds made available from the sale of the Property sufficient to pay in cash an amount equal to the amount necessary to pay Allowed Administrative

849947 v. 1

Claims, Allowed Secured Claims, Allowed Secured Tax Claims, Allowed Priority Tax Claims, Allowed Priority Claims and Allowed General Unsecured Claims, and to fund the Disputed Claim Reserve.

1.62    "Plan Supplement" shall mean the compilation of documents, agreements, papers, instruments and forms of documents associated with the Plan that will be filed in connection with the confirmation of the Plan.

1.63    "Plan Trustee" shall mean Tom White and Argus Management Corporation.

1.64    "Priority Claims" shall mean all Claims, if any, entitled to priority under section 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Expense Claims.

1.65    "Priority Tax Claims" shall mean any Claim of a governmental unit entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.66    "Professionals" shall mean those Persons (a) employed pursuant to an order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.67    "Professional Fee Claims" shall mean the fees and expenses of Professionals under sections 330, 331, or 503 of the Bankruptcy Code approved by an Order of the Bankruptcy Court.

1.68    "Property" shall mean the real property, the Improvements, the Rights, and the Personally owned by the Debtor and located at 364 Ocean Avenue, 370 Ocean Avenue and 388 Ocean Avenue, Revere, Massachusetts, a 4.95 acre parcel of land.

1.69    "Reorganized WELP Equity" shall mean the Equity Interests in the Reorganized Debtor as set forth in the Plan, to be retained by the holders of the Original WELP Equity without change or interruption.

1.70    "Reorganized Debtor" shall mean the Debtor, from and after the Effective Date.

1.71    "Reorganized WELP" shall mean WELP, from and after the Closing Date.

1.72    "Rights" shall mean, collectively, (i) all easements or rights of way hereinafter affecting or appurtenant to the Property and all rights to use the same, (ii) all of the Debtor's right, title and interest in any other rights affecting or relating to the Property.

1.73    "Schedules" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

849947 v. 1

**1.74**    "Secured Claim" shall mean any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under section 553 of the Bankruptcy Code, to the extent of such setoff.

**1.75**    "Secured Real Estate Tax Claims" shall mean real estate tax claims secured by Liens against the respective Debtor's real property.

**1.76**    "Senior" shall mean (a) with respect to an Allowed Claim, any other Allowed Claim that is entitled to a priority of distribution under the Bankruptcy Code or the Plan over the subject Allowed Claim; and (b) with respect to a Lien on an Asset, any other Lien on the same Asset that is entitled to priority over the subject Lien with respect to such Asset.

**1.77**    "WELP" shall mean Water's Edge Limited Partnership.

**1.78**    "WELP Annual Management Reserve" shall mean the $25,000 per year referenced in paragraph 5 of the CEI Stipulation for payment of WELP's ordinary business affairs while it continues to exist for the purpose of administering the case.

**1.79**    "Voting Deadline" shall mean any deadline for submitting ballots with respect to the Plan that is established by the Bankruptcy Court.

## ARTICLE II
## TREATMENT OF ALLOWED UNCLASSIFIED CLAIMS

**2.1    Non-Classification.**

As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims against the Debtor are not classified for the purposes of voting on, or receiving distributions under, the Plan.  All such Claims are instead treated separately in accordance with the terms set forth in this Article II.

**2.2    Administrative Expense Claims.**

(a)    General.  Except for Professional Fee Claims and except as otherwise agreed to by the Debtor and the holder of an Allowed Administrative Expense Claim, each such holder shall be paid in full in Cash on the later of: (i) the date such Allowed Administrative Expense Claim becomes due in accordance with its terms; and (ii) the Effective Date.  Any application for the allowance of an Administrative Expense Claim shall be filed within thirty (30) days of the Effective Date.

(b)    U.S. Trustee's Fees.  The outstanding fees due to the United States Trustee pursuant to 11 U.S.C. § 1930 shall be paid in full on or before the Effective Date.

(c)    Professional Compensation and Expense Reimbursement Claims.

(i)     Within thirty (30) days after the Effective Date, each Professional shall file a final application for the allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date.  Any such application granted by the Bankruptcy Court shall be paid by the Plan Trustee: (1) within fifteen days of the entry of the order of the Bankruptcy Court approving such application, unless a stay of the order approving the application is obtained; or (2) upon such other terms as may be mutually agreed upon between the Professional and the Debtor or Reorganized Debtor.

(ii)    All fees and expenses of Professionals for services rendered after the Effective Date shall be paid by the Plan Trustee upon receipt of reasonably detailed invoices in such amounts and on such terms as such Professional and the Reorganized Debtor may agree.  No further order or authorization from the Bankruptcy Court shall be necessary to permit the Plan Trustee to pay the fees and expenses of Professionals for services rendered after the Effective Date.

**2.3    DIP Claim.**

(a)     Except to the extent that the Holder of the DIP Claim may agree in writing to less favorable treatment, or has been paid in full prior to the Effective Date, in full and final satisfaction, settlement, and release of and in exchange for the DIP Claim, the Holder of an Allowed DIP Claim shall be paid in full in Cash on the Effective Date .

(b)     Upon the date that the DIP Claim is paid in full, in Cash, all Liens and security interests granted to secure the DIP Facility (including as to non-Debtor property) shall be discharged and expunged.  To the extent that the DIP Lender has filed or recorded publicly any Liens and/or security interests to secure the Debtor's obligations under the DIP Facility, the DIP Lender shall take any and all commercially reasonable steps requested by the Debtor or Reorganized Debtor that are necessary to cancel and/or extinguish such publicly filed Liens and/or security interests.

**2.4    Priority Tax Claims.**

Each holder of an Allowed Priority Tax Claim against the Debtor, if any, shall be paid by the Plan Trustee, at the sole election of the Reorganized Debtor, either: (a) upon such terms as may be agreed to between the Debtor or Reorganized Debtor and the holder of an Allowed Priority Tax Claim; or (b) in full in Cash on the Effective Date.

849947 v. 1

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The Claims against and Equity Interests in the Debtor is categorized below pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes.  All holders of Claims and Interests (except for the Deferred CEI Claim, which shall be paid as agreed in accordance with the CEI Stipulation) will be paid in full in cash as provided for in Article IV of this Plan and are unimpaired and therefore not eligible to vote on the Plan. If and to the extent that the Court determines that a Class of Claims or Interests is impaired, a Claim is placed in a particular Class for the purpose of voting on the Plan, and only to the extent that such Claim is Allowed for voting purposes in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

**3.1    Claim and Equity Interest Categories.**

Claims against the Debtor and Equity Interests in the Debtor have been classified as follows:

| Class | Designation | Impairment | Entitled to Vote |
|:-----:|:-----------:|:----------:|:----------------:|
| 1 | Secured Real Estate Tax Claims | Unimpaired | No |
| 2 | Secured DIV OA Lender Claim | Unimpaired | No |
| 3 | Secured First Insurance Funding Claim | Unimpaired | No |
| 4 | Secured Intrepid Investments LLC Claim | Unimpaired | No |
| 5 | Secured Stevenson Consulting Services, Inc. Claim | Unimpaired | No |
| 6 | Secured Valere Architects Claim | Unimpaired | No |
| 7 | Priority Claims | Unimpaired | No |
| 8 | General Unsecured Claims | Unimpaired | No |
| 9 | Unsecured Deferred CEI Claim | Impaired | Yes |
| 10 | Equity Interests | Unimpaired | No |

849947 v. 1

**3.2     Elimination of Vacant Classes.**

Any Class of Claims or Equity Interests that does not contain, as of the Confirmation Date, a holder of an Allowed Claim or Equity Interest, or a holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

849947 v. 1

## ARTICLE IV
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1    Class 1 – Secured Real Estate Tax Claims.**

   (a)    <u>Classification</u>.  Class 1 consists of Secured Real Estate Tax Claims against the Debtor.

   (b)    <u>Impairment and Voting</u>.  The Secured Real Estate Tax Claims are unimpaired and the holders of such Claims are not entitled to vote to accept or reject the Plan.

   (c)    <u>Claim Treatment</u>.  In full and final satisfaction, settlement, discharge and release of the Allowed Secured Real Estate Tax Claims, the holders of such Claims shall be paid in full, at the sole election of the Reorganized Debtor either: (i) in cash on the later to occur of the Effective Date or the date the Claims become Allowed Claims, or (ii) in accordance with any post-Petition Date agreement between the claimant and the Debtor.

   (d)    <u>Retention of Liens</u>.  To secure the payment of Allowed Secured Real Estate Tax Claims, the holders of such Claims shall retain their Liens on the Net Proceeds of the Property to same extent, priority and validity of such Liens as they existed on the Petition Date.

   (e)    <u>Discharge of Liens</u>.  Upon payment in full of an Allowed Secured Real Estate Tax Claim: (i) all Liens securing the Allowed Secured Real Estate Tax Claim shall be deemed canceled, discharged and released, and (ii) the holder of the Allowed Secured Real Estate Tax Claim shall be required to deliver to the Plan Trustee, within three (3) Business Days (or within such period agreed to by the Plan Trustee) of the payment in full of the Allowed Secured Real Estate Tax Claim, all documents necessary to effect the discharge and release of the Liens that secure the Allowed Secured Real Estate Tax Claims.

**4.2    Class 2 – Secured DIV OA Lender Claim.**

   (a)    <u>Classification</u>.  Class 2 consists of the DIV OA Lender Claim against the Debtor.

   (b)    <u>Impairment and Voting</u>.  Class 2 is unimpaired and the holder of the DIV OA Lender Claim is not entitled to vote to accept or reject the Plan.

      <u>Claim Treatment</u>.  In full and final satisfaction, settlement, discharge and release of any DIV OA Lender Claim that is Allowed against the Debtor, the holder of the Allowed DIV OA Lender Claim shall be paid the full amount of the DIV OA Lender Claim that is Allowed against the Debtor,

which Allowed DIV OA Lender Claim may or may not include principal, interest, default interest and attorneys' fees and costs, and any other charges accruing from the Petition Date through the payment date in accordance with the loan documents and Section 506(b), after deduction of (i) payments received by DIV OA Lender by any party in payment of the DIV OA Lender Claim, including the interest payments made to DIV OA Lender during the Chapter 11 case and the $17,639,749.20 payment made to DIV OA Lender from the Net Proceeds of the Property on January 9, 2026 and (ii) offsets to which the Debtor may be entitled, at the election of the Reorganized Debtor, either: (i) in accordance with any pre-petition agreements between the holder of the Allowed DIV OA Lender Claim and the Debtor or Reorganized Debtor; (ii) in cash on the later to occur of the Effective Date or the date the DIV OA Lender Claim or any portion thereof becomes an Allowed Claim; or (iii) in accordance with any post-Petition Date agreement between the claimant and the Debtor.

(c)     Loan Documents.  To the extent that there is any inconsistency between the Plan and any of DIV OA Lender's Loan Documents, as to the Debtor, the terms of the Plan shall control, provided that nothing in the Plan shall alter or impact the Debtor's obligations to fund or DIV OA Lender's right to receive any additional amounts of the DIV OA Lender Claim that are Allowed against the Debtor pursuant to Section 506(b) of the Bankruptcy Code and the pertinent Loan Documents, or alter, amend or waive any claims and defenses to allowance and payment of any portion of the DIV OA Lender Claim held by the Debtor or any non-Debtor person or entity.

(d)     Retention of Liens.  To secure the payment of the Allowed DIV OA Lender Claim, the holder of the DIV OA Lender Claim shall retain its Liens, if any, against the Net Proceeds of the Sale of the Property, to same extent, priority and validity of such Liens as they existed on the Petition Date; provided however, upon the Effective Date, DIV OA Lender shall retain its Liens, if any, against the Disputed Claims Reserve to the extent of the DIV OA Escrow Amount.

(e)     Discharge of Liens.  Upon payment in full of the Allowed DIV OA Lender Claim against the Debtor: (1) all Liens against the Collateral shall be deemed canceled, discharged and released, and (2) the holder of the Allowed DIV OA Lender Claim shall deliver to the Plan Trustee, contemporaneously with the delivery of the payment in full of such Allowed DIV OA Lender Claim, all documents necessary to effect the discharge and release of the Liens against the Collateral.

**4.3     Class 3 – Secured First Insurance Funding Claim**

(a)    Classification.  Class 3 consists of the Secured First Insurance Funding Claim against the Debtor.

(b)    Impairment and Voting.  The Secured First Insurance Funding Claim is unimpaired under the Plan, and the holder of such Claim is not entitled to vote to accept or reject the Plan.

(c)    Claim Treatment.  In full and final satisfaction, settlement, discharge and release of the Allowed Secured First Insurance Funding Claim, the holders of the Allowed Secured First Insurance Funding Claim shall be paid in full, at the election of the Reorganized Debtor,  either: (i) in accordance with any pre-petition agreements between the holder of the Allowed Secured First Insurance Funding Claim and the Debtor, (ii) in cash on the later to occur of the Effective Date or the date the Claim becomes an Allowed Claim, or (iii) in accordance with any post-Petition Date agreement between the claimant and the Debtor.

(d)    Retention of Liens.  To secure the payment of the Allowed Secured First Insurance Funding Claim, the holder of the Secured First Insurance Funding Claim shall retain its Liens, if any, on the applicable Debtor's Assets to same extent, priority and validity of such Liens as they existed on the Petition Date.

(e)    Discharge of Liens.  Upon payment in full of the Allowed Secured First Insurance Funding Claim: (1) all Liens securing the Allowed Secured First Insurance Funding Claim shall be deemed canceled, discharged and released, and (2) the holder of the Allowed Secured First Insurance Funding Claim shall deliver to the Plan Trustee, contemporaneously with the delivery of the payment in full of such Claim, all documents necessary to effect the discharge and release of the Liens that secure the Allowed Secured First Insurance Funding Claim.

**4.4    Class 4 – Secured Intrepid Investments LLC Claim**

(a)    Classification.  Class 4 consists of the Secured Intrepid Investments LLC Claim against the Debtor.

(b)    Impairment and Voting.  The Secured Intrepid Investments LLC Claim is unimpaired under the Plan, and the holder of such Claim is not entitled to vote to accept or reject the Plan.

(c)    Claim Treatment.  In full and final satisfaction, settlement, discharge and release of the Allowed Secured Intrepid Investments LLC Claim, the holder of the Allowed Secured Intrepid Investments LLC Claim shall be paid in full, at the election of the Reorganized Debtor, either: (i) in

accordance with any pre-petition agreements between the holder of the Allowed Secured Intrepid Investments LLC Claim and the Debtor, (ii) in cash on the later to occur of the Effective Date or the date the Claim becomes an Allowed Claim, or (iii) in accordance with any post-Petition Date agreement between the claimant and the respective Debtor.

(d)    <u>Retention of Liens</u>.  To secure the payment of the Allowed Secured Intrepid Investments LLC Claim, the holder of the Secured Intrepid Investments LLC Claim shall retain its Liens, if any, on the Debtor's Assets to same extent, priority and validity of such Liens as they existed on the Petition Date.

(e)    <u>Discharge of Liens</u>.  Upon payment in full of the Allowed Secured Intrepid Investments LLC Claim: (1) all Liens securing the Allowed Secured Intrepid Investments LLC Claim shall be deemed canceled, discharged and released, and (2) the holder of the Allowed Secured Intrepid Investments LLC Claim shall deliver to the Plan Trustee, contemporaneously with the delivery of the payment in full of such Claim, all documents necessary to effect the discharge and release of the Liens that secure the Allowed Secured Intrepid Investments LLC Claim.

**4.5    Class 5 – Secured Stevenson Consulting Services, Inc.**

(a)    <u>Classification</u>.  Class 5 consists of the Secured Stevenson Consulting Services, Inc. Claim against the Debtor.

(b)    <u>Impairment and Voting</u>.  The Secured Stevenson Consulting Services, Inc. Claim is unimpaired under the Plan, and the holder of such Claim is not entitled to vote to accept or reject the Plan.

(c)    <u>Claim Treatment</u>.  In full and final satisfaction, settlement, discharge and release of the Allowed Secured Stevenson Consulting Services, Inc. Claim, the holders of the Allowed Stevenson Consulting Services, Inc. Claims shall be paid in full, at the election of the Reorganized Debtor, either: (i) in accordance with any pre-petition agreements between the holder of the Allowed Secured Stevenson Consulting Services, Inc. Claim and the Debtor, (ii) in cash on the later to occur of the Effective Date or the date the Claim becomes an Allowed Claim, or (iii) in accordance with any post-Petition Date agreement between the claimant and the Debtor.

(d)    <u>Retention of Liens</u>.  To secure the payment of the Allowed Stevenson Consulting Services, Inc. Claim, the holder of the Stevenson Consulting Services, Inc. Claim shall retain its Liens, if any, on the Property to same extent, priority and validity of such Liens as they existed on the Petition Date.

(e)    .Discharge of Liens.  Upon payment in full of the Allowed Stevenson Consulting Services, Inc. Claim: (1) all Liens securing the Allowed Stevenson Consulting Services, Inc. Claim shall be deemed canceled, discharged and released, and (2) the holder of the Allowed Stevenson Consulting Services, Inc. Claim shall deliver to the Plan Trustee, contemporaneously with the delivery of the payment in full of such Claim, all documents necessary to effect the discharge and release of the Liens that secure the Allowed Stevenson Consulting Services, Inc. Claim.

**4.6    Class 6 – Secured Valere Architects Claim**

(a)    Classification.  Class 6 consists of the Secured Valere Architects Claim against the Debtor.

(b)    Impairment and Voting.  The Secured Valere Architects Claim is unimpaired under the Plan, and the holder of such Claim is not entitled to vote to accept or reject the Plan.

(c)    Claim Treatment.  In full and final satisfaction, settlement, discharge and release of the Allowed Secured Valere Architects Claim, the holder of the Allowed Secured Valere Architects Claim shall be paid in full, at the election of the Reorganized Debtor,  either: (i) in accordance with any pre-petition agreements between the holder of the Allowed Secured Valere Architects Claim and the Debtor, (ii) in cash on the later to occur of the Effective Date or the date the Claim becomes an Allowed Claim, or (iii) in accordance with any post-Petition Date agreement between the claimant and the Debtor.

(d)    Retention of Liens.  To secure the payment of the Allowed Valere Architects Claim, the holder of the Valere Architects Claim shall retain its Liens, if any, on the Debtor's Assets to same extent, priority and validity of such Liens as they existed on the Petition Date.

(e)    Discharge of Liens.  Upon payment in full of the Allowed Valere Architects Claim: (1) all Liens securing the Allowed Valere Architects Claim shall be deemed canceled, discharged and released, and (2) the holder of the Allowed Valere Architects Claim shall deliver to the Plan Trustee, contemporaneously with the delivery of the payment in full of such Claim, all documents necessary to effect the discharge and release of the Liens that secure the Allowed Valere Architects Claim.

**4.7    Class 7 – Priority Claims.**

(a) <u>Classification</u>.  Class 7 consists of the Priority Claims against the Debtor.

(b) <u>Impairment and Voting</u>.  The Priority Claims are unimpaired under the Plan, and the holders of such Claims are not entitled to vote to accept or reject the Plan.

(c) <u>Claim Treatment</u>.  In full and final satisfaction, settlement, discharge and release of the Allowed Priority Claims, the holders of the Allowed Priority Claims shall be paid in full, at the election of the Reorganized Debtor,  either: (i) in accordance with any pre-petition agreements between the holder of the Allowed Priority Claim and the Debtor, (ii) in cash on the later to occur of the Effective Date or the date the Claim becomes an Allowed Claim, or (iii) in accordance with any post-Petition Date agreement between the claimant and the Debtor.

**4.8   Class 8 – General Unsecured Claims.**

(a) <u>Classification</u>.  Class 8 consists of the General Unsecured Claims against the Debtor other than the CEI Deferred Claim.

(b) <u>Impairment and Voting</u>.  Class 8 is unimpaired under the Plan and the holders of General Unsecured Claims against the Debtor are not entitled to vote to accept or reject the Plan.

(d) <u>Claim Treatment</u>.  In full and final satisfaction, settlement, discharge and release of the Allowed General Unsecured Claims against the Debtor, each holder of an Allowed Unsecured Claim shall receive payment in full, at the election of the Reorganized Debtor, either (i) in Cash on the later to occur of the Effective Date or the date the Claim becomes an Allowed Claim, or (ii) in accordance with any post-Petition Date agreement between the claimant and the respective Debtor.

**4.9   Class 9 – Unsecured CEI Deferred Claim**

(a) <u>Classification</u>.  Class 9 consists of the CEI Deferred Claim against the Debtor.

(b) <u>Impairment and Voting</u>.  Class 9 Claim is impaired under the Plan, and the holder of such Claim is entitled to vote on the Plan.

(c) <u>Claim Treatment</u>.  In full and final satisfaction, settlement, discharge and release of the Allowed CEI Deferred Claim against the Debtor, the holder of the Allowed CEI Deferred Claim shall receive, on the later to occur of the Effective Date or the date such Claim is Allowed, payment in

849947 v. 1

accordance with the terms of the CEI Stipulation, which by reference herein is fully incorporated in its entirety.

**4.10    Class 10 – Equity Interests.**

(a)    <u>Classification</u>.  Class 5 consists of the Equity Interests in the Debtor.

(b)    <u>Impairment and Voting</u>.  Class 5 is unimpaired under the Plan and the holder of the Equity Interests is not entitled to vote to accept or reject the Plan.

(c)    <u>Treatment</u>.  The holders of the Equity Interests in the Debtor shall retain such interests without change or interruption.

**4.11    Reservation of Rights.**

Except to the extent specifically set forth in the Plan, the Debtor and the Reorganized Debtor reserve the right to, among other things, (a) contest the right of the holder of any Claim to vote on the Plan, or designate the vote of the holder of any Claim, (b) contest the right of the holder of any Claim to receive distributions under the Plan, (c) seek to subordinate any Claim for inequitable conduct or otherwise, and (d) seek to estimate any claim for any purposes under the Plan.

**ARTICLE V**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**5.1    Effectuation of the Plan.**  Confirmation of the Plan shall constitute authorization for the Reorganized Debtor or the Plan Trustee, as the case may be as set forth herein,  to: (i) effectuate the Plan and to enter into all documents, instruments and agreements reasonably necessary to effectuate the terms of the Plan, including to establish the Disputed Claims Reserve provided for under Section 6.5 of the Plan, and (ii) distribute the Net Proceeds from the Sale of the Property to holders of Allowed Claims to the extent not paid from the Net Proceeds of the Property at closing; (iii) liquidate any Assets remaining after the Effective Date, including Causes of Action; and (iv) distribute the proceeds of Assets in accordance with the terms of the CEI Stipulation.  The Debtor shall remain in existence as the Reorganized Debtor after the Effective Date.

**5.2    Waiver of Stay of Confirmation Order.** Unless otherwise specifically provided in the Confirmation Order, the provisions of the Confirmation Order and all rights, remedies, privileges and benefits in favor of the Debtors and the Reorganized Debtors in the Plan and the Confirmation Order shall be effective immediately upon entry of the Confirmation Order, and the stay provided for in Federal Rules of Bankruptcy Procedure 3020(e), 6004(h) and 6006(d) shall be deemed waived.

**5.3    Sales of Assets.**  Confirmation of the Plan and the occurrence of the Effective Date shall constitute authorization for the Plan Trustee or the Reorganized Debtor, without a further order of the Bankruptcy Court, to sell, lease, exchange, transfer, convey or otherwise

dispose of any Assets remaining after the closing of the Sale of the Property free and clear of all liens, claims and interests, with all valid liens against such Assets, if any, attaching to the Net Proceeds of the sale of such Assets to the same extent, priority and validity as existed at the time of the sale.

**5.4    Corporate Action.** All matters provided for in the Plan involving any partnership, corporate, or other entity action required by the Debtor or the Reorganized Debtor in connection with the Plan shall be deemed to be authorized, and shall be in effect, without any requirement of further action by the Reorganized Debtor or its agents, representatives, partners, members, managers, officers, directors or Affiliates.

**5.5    Organization Documents and Good Standing.** As of the Effective Date, the Debtor's Organization Documents shall be amended as necessary to effectuate the terms of the Plan and shall become the Organization Documents of the Reorganized Debtor. To the extent the Debtor is not in compliance as of the Effective Date with any state or local law requirements necessary to remaining a partnership in good standing and/or remain authorized as a partnership to conduct business in any jurisdiction, the Debtor and/or the Reorganized Debtor, as the case may be, shall be deemed to be in compliance with any such laws if the comply with such laws within six months of the Effective Date.

**5.6    Revesting of Property.** Except as otherwise provided in the Plan, Reorganized WELP, as of the Effective Date, shall be vested with all of its Assets subject to the obligations under the Plan Documents. Except expressly provided in the Plan or in a Final Order of the Bankruptcy Court, no Assets shall be deemed abandoned and no defense, set-off, counterclaim or right of recoupment of any of the Debtor shall be deemed waived, released or compromised.

**5.7    Preservation and Resolution of Causes of Action.** Except as provided in the Plan, and unless expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, the Confirmation Order, any Non-Appealable Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, the Reorganized Debtor shall exclusively retain and may enforce, and the Debtor and the Reorganized Debtor expressly reserve and preserve for these purposes, in accordance with sections 1123(a)(5)(A) of the Bankruptcy Code, any Claims, demands, rights and Causes of Action that the Debtor or its Estate may hold against any person or entity. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to them by virtue of or in connection with the confirmation or consummation of the Plan. After the Effective Date and except as otherwise provided in the Plan, the Reorganized Debtor is authorized, without further Bankruptcy Court order, to commence, defend, compromise, settle and/or otherwise dispose of any Causes of Action.

Among the Causes of Action that are preserved are: (a) Avoidance Actions, including, without limitation, those set forth on the Debtor's Statement of Financial Affairs that have been filed with the Bankruptcy Court; (b) Rights of setoff, counterclaim and recoupment; (c) claims and defenses on contracts or for breaches of duties imposed by law; (d) the right to object to claims or interests; (e) claims and defenses pursuant to Section 362 of the Bankruptcy Code; (f) claims and defenses for fraud, negligence, conversion, mistake, duress, indemnification and

usury; (g) claims and defenses for the violation of M.G.L. c. 93A; (h) claims and defenses for unjust enrichment; (i) claims for tax refunds; (j) pre-petition litigation in which the Debtor was the plaintiff; (k) Causes of Action against the City of Revere, including without limitation claims for the abatement of Real Estate taxes and claims arising from the actions of the City of Revere described in the Disclosure Statement, claims seeking damages and other relief on account of actions taken prepetition by the City of Revere as to the Debtor (including without limitation the imposition of fines and other penalties, and the imposition of a fire watch and other purportedly remedial measures, for improper purposes and/or without proper legal or other basis and/or on account of bias or other improper motives; and (l) insurance claims, including without limitation claims in connection with losses suffered at 364 and 370 Ocean Avenue, including those arising from the flood at and resulting damage to 364 Ocean Avenue and the flood and fire at and resulting damage to 370 Ocean Avenue.

**5.8    Compromises.**  After the Effective Date and except as otherwise provided in the Plan, the Reorganized Debtor is authorized, without further Bankruptcy Court order or notice to creditors and/or parties in interest, to compromise, settle and/or otherwise dispose of any disputed Claims and/or Causes of Action.

**5.9    Trustee Powers.**  Upon the Effective Date, the Reorganized Debtor shall be vested with the standing of and with all rights, powers and benefits afforded to a "trustee" under the Bankruptcy Code.

**5.10    Default.**  No event of default under the Plan shall occur unless, in the event of a breach of the Debtor's or the Reorganized Debtor's obligations under the Plan, the holder of the Allowed Claim asserting the default shall provide written notice of such breach to the Reorganized Debtor and such breach is not cured: (a) in the event of a breach that can be cured by the payment of a sum of money, within twenty (20) days of the Reorganized Debtor's receipt of such notice; and (b) for any other breach, within forty (40) days of the Reorganized Debtor's receipt of such notice; provided that, if such non-monetary breach cannot reasonably be cured within such forty (40) day period and the Reorganized Debtor have commenced curing such breach and continue to cure such breach, the forty (40) day period shall be extended for such time as is reasonably necessary to cure such breach.

**5.11    Retention of Professionals.**  The Reorganized Debtor may retain such attorneys (including special counsel), accountants, advisors, expert witnesses, and other professionals (including the Plan Trustee) as it considers advisable without necessity of approval of the Court. Persons who served as Professionals to the Debtor prior to the Effective Date may provide services to the Reorganized Debtor and the Plan Trustee.  The fees and expenses of the Plan Trustee and the other professionals retained by the Reorganized Debtor shall be paid in the ordinary course of business without the need for the approval of the Bankruptcy Court.  The Plan Trustee shall be authorized to pay itself and the other professionals retained by the Reorganized Debtor twenty-one days following the professional's service of its invoice upon the Reorganized Debtor.  To the extent that the Reorganized Debtor has an objection to any portion of the professional's or Plan Trustee's fees, such objection must be raised within the twenty-one (21) day period, the Plan Trustee shall hold back only the portion of the professional fees to which an objection has been raised by the Reorganized Debtor.  The Bankruptcy Court shall retain

849947 v. 1

jurisdiction to determine any disputes on professional fees, with the losing party to pay its own costs and the costs of the prevailing party.

**5.12    Tax Returns.**  In the event that any required tax returns are not filed by the Debtor prior to the Effective Date, the Reorganized Debtor shall prepare or cause to be prepared, and shall file on behalf of the Debtor and the Estate, all state and federal tax returns required to be filed under applicable law, and shall pay all taxes due in connection with such returns.  The Reorganized Debtor is hereby authorized to file such returns on behalf of the Debtor.  The Reorganized Debtor shall have all of the rights and benefits of a "trustee" under Section 505 of the Bankruptcy Code for all periods until a Final Decree is entered closing the Bankruptcy Case.  No entity shall be entitled to assert any claim for any excise or property tax accruing after the Confirmation Date.

**5.13    Dissolution of the Debtor.**  Upon the completion of the administration of all of the Debtor's Assets pursuant to the Plan, the Reorganized Debtor is authorized to take appropriate actions to dissolve without further Court approval. The Reorganized Debtor shall not be required to file any documents, or take any other action, to withdraw its business operations from any state in which the Debtor was previously conducting business operations.

**5.14    Final Decree.**  It shall be the exclusive duty of the Reorganized Debtor to prepare and file a motion requesting that the Court enter a Final Decree in the Bankruptcy Case.

## ARTICLE VI
## DISTRIBUTIONS ON CLAIMS AND RESOLUTION OF DISPUTED CLAIMS

**6.1    Method of Distributions Under the Plan.**

(a)    In General.  Subject to Bankruptcy Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan to be made on behalf of the Reorganized Debtor to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules unless the Reorganized Debtor has been notified in writing of a change of address as of the Distribution Record Date, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules.  The Reorganized Debtor shall have no obligation to locate such holders whose distributions or notices are properly mailed but nevertheless returned.

(b)    Form of Distributions.  Except as otherwise provided in the Plan, any payment of Cash made by, or on behalf of, the Reorganized Debtor pursuant to the Plan shall be made by check or, upon agreement of the parties, by wire transfer.

(c)    Distributions to be on Business Days.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)    Fractional Dollars.  Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest

- 23 -

whole dollar (rounding down in the case of $0.50 or less and rounding up in the case of more than $0.50).

(e)      Distributions to Holders as of the Distribution Record Date.  As of the close of business on the Distribution Record Date, the claims register shall be closed.  The Reorganized Debtor shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date and shall instead be entitled to recognize and deal for all purposes under the Plan with only those holders of record as of the close of business on the Distribution Record Date.  This section 6.1(e) of the Plan shall not be deemed to bar or restrict the assignment of any Claim.

**6.2      Allowance of and Objections to Claims.**

(a)      Any holder of multiple Allowed Claims against the Debtor shall be entitled to one Allowed Claim that, in the aggregate, does not exceed the amount of the underlying Claims giving rise to such multiple Claims.

(b)      Except as otherwise specifically provided in the Plan or in an order of the Bankruptcy Court pursuant to section 506(b) of the Bankruptcy Code, no interest shall accrue on or be paid on account of an Allowed Claim. Notwithstanding the foregoing, nothing herein shall prejudice the rights of any holder of a Secured Claim to assert, and the rights of the Debtor to oppose, an entitlement to interest, costs and fees, including professional fees, for any period preceding its actual receipt of payment in full.

(c)      Prior to the Effective Date, any objections to Claims against the Debtor shall be prosecuted by the Debtor.  On and after the Effective Date and unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Reorganized Debtor shall have the right to the exclusion of all others (except as to the Professionals' applications for allowances of compensation and reimbursement of expenses under section 327 of the Bankruptcy Code and Rule 2014(a) of the Bankruptcy Rules) to make, file, prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court, objections to Claims. Notwithstanding any other provision of the Plan, no distributions shall be made by or on behalf of the Reorganized Debtor unless and until such Claim becomes Allowed.

(d)      After the Effective Date and except as otherwise provided in the Plan, the Reorganized Debtor is authorized, without further Bankruptcy Court order, to compromise, settle and/or otherwise dispose of any dispute regarding a Claim; provided that, until the Bankruptcy Case is closed, the Reorganized Debtor shall file a Settlement Notice with respect to any settlement of a disputed Claim.

**6.3      Deadline for Objecting to Claims.**

Except as otherwise provided by order of the Bankruptcy Court, the Debtor, or the Reorganized Debtor as the case may be, may file an objection to a Claim against the Debtor until the later of: (a) the date that such Claim becomes due and payable in accordance with its terms, or (b) 120 days after the Effective Date.

849947 v. 1

6.4     **Estimation of Claims.**

The Debtor or the Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Reorganized Debtor have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall have jurisdiction to estimate a Disputed Claim at any time and for any purpose, including, without limitation, for plan voting, feasibility, allowance and distribution purposes. If the Bankruptcy Court estimates a Disputed Claim, such estimation shall not preclude the Debtor or the Reorganized Debtor from pursuing any supplemental proceedings to object to any payment of such Claim. All of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not exclusive remedies. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court or by agreement between the Debtor or the Reorganized Debtor and the holder of such Disputed Claim.

6.5     **Disputed Claims Reserve.**

(a)     <u>Establishment</u>.   From the Net Proceeds of the sale of the Property, the Plan Trustee shall maintain a reserve (the "Disputed Claims Reserve") equal to 100% of the distributions to which holders of Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed Claims or such lesser amount as required by a Non-Appealable Order. The Disputed Claims Reserve shall include an amount sufficient to pay in full the disputed amounts asserted by DIV OA Lender and the City of Revere, including their reasonably projected accrued interest, fees, costs and charges to recover such amount under Section 506(b) of the Bankruptcy Code, in such amounts as the parties may agree or, absent such agreement, as determined by the Court in connection with the confirmation of the Plan.

(b)     <u>Investment of Cash</u>.  Cash in the Disputed Claims Reserve may be invested by the Plan Trustee only in Cash Equivalents having maturities sufficient to enable the Reorganized Debtor to make all necessary payments to holders of Disputed Claims if, and when, such Disputed Claims become Allowed Claims. Any interest, income, distributions or accretions on account of such investment in Cash Equivalents shall be for the sole benefit and account of the Reorganized Debtor, and the Reorganized Debtor shall be solely responsible for the payment of any income or other taxes arising therefrom.

(c)     <u>Distributions Upon Allowance of Disputed Claims</u>.  The holder of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall receive distributions of Cash from the Disputed Claims Reserve as soon as practicable following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Non-Appealable Order. Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to the holder of such a Claim under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date. No holder of a Disputed Claim shall have any claim against the Disputed Claims Reserve or Reorganized Debtor with respect to such Claim until the Disputed Claim shall become an Allowed Claim.

**6.6    Reversion of Unclaimed Checks and Disputed Claims Reserve.**

The following amounts shall revert and be vested in the Reorganized Debtor free and clear of any claim or interest of any holder of a Claim under the Plan: (a) the amount of any checks issued for distributions under the Plan that remain uncashed for a period of 180 days after the date of such distribution; and (b) to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of the amount of Cash or Cash Equivalents in the Disputed Claims Reserve attributable to such Disputed Claims over the amount of Cash actually distributed on account of such Disputed Claim.

**6.7    Obligation to Provide Tax Documents.**

No Person entitled to a payment or distribution under the Plan shall receive such distribution or payment until the Person provides the Plan Trustee with: (a) a W-9 or similar federal or state tax form, and (b) such other tax forms as are reasonably requested by the Plan Trustee (collectively the "Tax Forms").  If any Person holding an Allowed Claim fails to provide a Tax Form to the Plan Trustee after two written requests for a Tax Form, such Person's Allowed Claim shall be, on the sixtieth (60th) day following the second written request, disallowed and expunged without further order of the Bankruptcy Court.

# ARTICLE VII
# PLAN TRUSTEE

**7.1    Appointment of Plan Trustee, Administration of Reorganized Debtor.**

As of the Effective Date, Tom White of Argus Management Corp. shall be the Plan Trustee.  The Plan Trustee shall: (a) administer, manage, invest, and distribute the Reorganized Debtor's cash in accordance with this Plan; provided, however, the Reorganized Debtor shall itself (without the involvement of the Plan Trustee) itself manage and administer cash of the Reorganized Debtor constituting the WELP Annual Management Reserve.

As of the Effective Date (i) all funds in the Professional Fee Reserve shall be turned over the Plan Trustee to be maintained in a separate account for payment of professionals as provided under the terms of this Plan; (ii) all funds in the Debtor's operating account and the Debtor's account holding tenants' security deposits and last month's rent shall be turned over to the Plan Trustee for distribution in accordance with this Plan; and (iii) all funds held in the Disputed Claims Reserve shall be turned over the Plan Trustee for distribution in accordance with the Plan.

**7.2    Plan Trustee's Rights and Powers.**

The Plan Trustee's rights and powers shall include, subject to any limitations set forth in the Plan, the right and power to:

(a)      Open and close accounts on behalf of the Reorganized Debtor with any banking, financial or investment institution, make deposits and withdrawals of cash and other property into or from any such account, make or endorse checks with respect to any such account;

(b)      Pay all reasonable and necessary costs of administration, including professional fees, associated with the administration of the Plan, the Reorganized Debtor and/or the Assets;

(c)      Make the distributions in accordance with the terms of the Plan; and

(d)      Consult with counsel, brokers, consultants, custodians, investment advisors, asset services, expert witnesses, auditors, accountants, other agents and any other individuals and/or professionals for the Reorganized Debtor in connection with and as necessary to the efficient administration of the Plan, the Reorganized Debtor and/or the Assets.

### 7.3    Privileges.

The Plan Trustee shall stand in the same position as the Debtor and/or the Estate with respect to any rights or claim the Debtor, the Reorganized Debtor  and/or the Estate may have had to an attorney-client privilege, the work product doctrine, or any other privilege against production, and the Plan Trustee may to all of the Debtor's and/or the Estate's assert any such privilege as necessary or appropriate in accordance with this Plan.

### 7.4    Claims Register.

The Plan Trustee shall at all times maintain a register of the names, addresses, and amount of the Claims and Equity Interests in the Reorganized Debtor as of the Effective Date and as revised from time to time thereafter.

### 7.5    Liability of Plan Trustee.

(a)      <u>Standard of Care</u>.  The Plan Trustee shall not be liable for any action taken or omitted to be taken by him in good faith and in the exercise of reasonable judgment and believed to be within the discretion or power conferred by the Plan, or be responsible for the consequences of any act or failure to act, except for bad faith, gross negligence or willful misconduct.  The Plan Trustee shall not have any fiduciary relationship with any party by virtue of the Plan except as specifically set forth herein:

(i)      The Plan Trustee shall not, solely by virtue of his position as Plan Trustee, be liable or in any way responsible for the acts or omissions of the Reorganized Debtor, its partners, officers, employees, or agents, that occurred prior to or after the Effective Date.

(ii)     Unless indemnified to his satisfaction against liability and expense, the Plan Trustee shall not be compelled to do any act or to take any action toward the execution or enforcement of the powers created under the Plan or to prosecute or defend any suit in respect of the Plan.  If the Plan Trustee requests approval from the Bankruptcy Court with respect to any act or action in connection with the Plan, the Plan Trustee shall be entitled (but shall not be required) to refrain

(without incurring any liability to any person by so refraining) from such act or action unless and until he has received such instructions or approval.  In no event shall the Plan Trustee or any of his representatives be required to take any action which he reasonably determines could lead to criminal or civil liability.

(iii)   The Plan Trustee shall not be responsible in any manner to the Debtor, the Estate, any holder of a Claim or Interest, or any party-in-interest for:

(A)   the creditworthiness of any party and the risks involved to the Reorganized Debtor or such holder or party-in-interest;

(B)   the effectiveness, enforceability, genuineness, validity, or any due execution of the Plan as to any person other than the Plan Trustee;

(C)   any representation, warranty, document, certificate, report, or statement made herein or furnished hereunder or in connection with the Plan that does not constitute a breach of the standard of care set forth in Section 7.8(a) of the Plan on the part of the Plan Trustee;

(D)   the existence, priority or perfection of any existing Lien; or

(E)   observation or compliance with any of the terms, covenants, or conditions of the Plan on the part of any party thereto other than the Plan Trustee.

(b)   No Liability for Acts of Predecessor.  No successor Plan Trustee shall be in any way responsible for the acts or omissions of any preceding Plan Trustee, nor shall he be obligated to inquire into the validity or propriety of any such act or omission unless such successor Plan Trustee expressly assumes such responsibility.  Any successor Plan Trustee shall be entitled to accept as conclusive any final accounting and statement of Assets furnished to such successor Plan Trustee by any preceding Plan Trustee and shall be responsible only for those Assets included in such statement.

(c)   No Implied Obligations.  The Plan Trustee's liability shall be limited to the performance of such duties and obligations as are specifically set forth in the Plan.  The Plan Trustee shall not be responsible in any manner whatsoever for the correctness of any recitals, statements, representations, or warranties in the Plan, in the Disclosure Statement or in any documents or instrument evidencing or otherwise constituting a part of the Assets.  The Plan Trustee makes no representations as to the value of the Assets.

(d)   Reliance by Plan Trustee on Documents or Advice of Counsel or Other Persons.  The Plan Trustee may rely conclusively and shall be protected in acting upon any order, notice, demand, certificate, opinion or advice of counsel, statement, instrument, report or other paper or document (not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and acceptability of any information therein contained) which is believed by the Plan Trustee to be genuine and to be signed or presented by the proper persons.  Subject to his obligation to meet the standard of care in Section 7.8(a), the Plan Trustee shall have no liability for any act which he may do or omit to do in reliance upon the foregoing.

- 28 -

(e)      No Personal Obligation for the Debtor's Liabilities.  Holders of Claims and Equity Interests, and other persons transacting business with the Plan Trustee in his capacity as Plan Trustee, shall be limited to the Assets to satisfy any liability incurred by the Plan Trustee to such person in carrying out the terms of the Plan, and the Plan Trustee shall have no personal obligation to satisfy any such liability.

### 7.6      Reports.

The Plan Trustee shall prepare and submit to the Court any reports required to be filed by the United States Trustee under its operating guidelines.

### 7.7      Plan Trustee's Compensation.

The Plan Trustee shall be entitled to compensation, at an hourly fee equal to the regular rates for the Plan Trustee as then in effect, provided that such hourly rate may be adjusted from time to time in the ordinary course of business, pursuant to a customary engagement agreement with the Debtor and Reorganized Debtor.  The Plan Trustee shall be entitled to reimbursement for all reasonable out-of-pocket expenses incurred in the performance of his duties under the Plan.  The Plan Trustee shall not be entitled to a commission.

### 7.8      Plan Trustee's Indemnification.

The Plan Trustee shall be indemnified by, held harmless, and receive reimbursement from the Assets for any and all claims, actions, demands, losses, damages, expenses, and liabilities, including without limitation court costs, attorneys' fees and accountants' fees incurred, except in the event that a court of competent jurisdiction determines that such losses or claims were the result of a breach of the standard of care set forth in Section 7.5(a) of the Plan.

### 7.9      Removal of Plan Trustee.

The Plan Trustee may be removed by the Reorganized Debtor only for cause upon a motion to the Court.  If the Plan Trustee is removed for cause, the Plan Trustee shall not be entitled to any accrued but unpaid fees, reimbursements or other compensation.  The term "cause" shall mean: (a) the Plan Trustee's gross negligence or willful failure to perform his duties under the Plan, (b) the Plan Trustee's misappropriation or embezzlement of any Assets or the proceeds of the Assets, or (c) the Plan Trustee's continued or repeated negligence or failure to perform his duties under the Plan.  If a Liquidating Agent is unwilling or unable to serve by virtue of his inability to perform his duties due to death, illness, or other physical or mental disability, subject to a final accounting, such Plan Trustee shall be entitled to receive all accrued and unpaid fees, reimbursement of expenses, and other compensation incurred before his removal, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Plan Trustee.

### 7.10      Resignation of Plan Trustee.

A Plan Trustee may resign upon motion to the Bankruptcy Court, which resignation shall become effective at the time specified by the Court.  If a Plan Trustee resigns from his position hereunder, subject to a final accounting, such Plan Trustee shall be entitled to receive all accrued unpaid fees, reimbursement of expenses, and other compensation incurred before his resignation,

849947 v. 1

and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor Plan Trustee.

### 7.11   Successor Plan Trustee.

In the event that a Plan Trustee is removed, resigns, or otherwise ceases to serve as Plan Trustee, a successor Plan Trustee may be appointed by motion of a party-in-interest, subject to approval by the Bankruptcy Court, or *sua sponte* by order of the Bankruptcy Court.

## ARTICLE VIII
## VOTING ON THE PLAN AND CRAMDOWN

### 8.1   Voting of Claims; Presumed Acceptance of the Plan.

Classes 1 through 8 are unimpaired under the Plan and therefore are presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.  The Claim of CEI is impaired under the Plan, and CEI is entitled to vote to accept or reject the Plan.  If and to the extent the Court determines that any holder of an Allowed Claim is entitled to vote to accept or reject the Plan, each such creditor shall do so on a duly executed and delivered ballot and in accordance with procedures set forth in the applicable order of the Bankruptcy Court establishing Plan voting procedures.

### 8.2   Acceptance by Impaired Classes.

If and to the extent the Bankruptcy Court determines that a Class of Claims or Equity Interests is impaired and is entitled to vote to accept or reject the Plan, each such Class shall have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims or Allowed Equity Interests actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims or Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

### 8.3   Nonconsensual Confirmation.

If and to the extent any impaired Class entitled to vote does not accept the Plan by the requisite majorities provided in sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Debtor reserves the right (a) to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code; and/or (b) to amend the Plan in accordance with section 12.3 of the Plan.

849947 v. 1

## ARTICLE IX
## EXECUTORY CONTRACTS, UNEXPIRED LEASES, POST-PETITION
## CONTRACTS AND RETIREE AND COMPENSATION BENEFITS

**9.1     Assumption of Executory Contracts and Unexpired Leases.**

Pursuant to sections 1123(b)(2) and 365(a) of the Bankruptcy Code, any executory contract or unexpired lease (excluding insurance policies) that (i) has not expired by its own terms on or prior to the Confirmation Date, (ii) has not been assumed, assumed and assigned or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, (iii) is not the subject of a motion to assume or reject which is pending at the time of the Confirmation Date, or (iv) is not designated by the Debtor as being an executory contract or unexpired lease to be assumed at the time of confirmation of the Plan, shall be deemed rejected on the Effective Date.  The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumption or rejection (as the case may be) pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

Ten days prior to the Confirmation Hearing, the Debtor will file as a Plan Supplement a notice of any executory contracts and unexpired leases proposed to be assumed, with proposed Cure Claims, if applicable, and serve such notice on the counterparties to the executory contracts and/or unexpired leases.  Any objection to the assumption of an executory contract or unexpired lease, or to a Cure Claim associated therewith, shall be filed as provided by the order conditionally approving the Disclosure Statement.

**9.2     Payments Related to The Assumption of Executory Contracts and Unexpired Leases.**

(a)     <u>Payment of Claims Arising From Assumed Contracts And Leases</u>.  Any Allowed Claims arising from the assumption of an executory contract or unexpired lease will receive, in full and complete satisfaction, settlement, release and discharge of such Claims, payment in the ordinary course of business as and when such Allowed Claims become due pursuant to such executory contract or unexpired lease.

(b)     <u>Disputed Claims and Bar Date</u>.  If there is a dispute regarding (i) the amount of any claim arising from the assumption or rejection of an executory contract or unexpired lease, (ii) the ability of the applicable Debtor or any assignee to provide "adequate assurance of future performance," within the meaning of section 365 of the Bankruptcy Code, under a contract or lease to be assumed, or (iii) any other matter pertaining to the assumption or assumption and assignment of any contract or lease, the payment of any Claim related to the foregoing will be made following entry of a Final Order resolving the dispute and approving the assumption.

**9.3     Rejection Damage Claims.**

If the rejection of an executory contract or unexpired lease by the Debtor results in a Claim by the other party or parties to such contract or lease, any claim for damages, if not previously evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, the Reorganized Debtor and its property, agents, successors, or

849947 v. 1

assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before thirty (30) days following the later to occur of: (a) the rejection of such executory contract or unexpired lease, and (b) the Confirmation Date. Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim are timely filed will be treated as General Unsecured Claims subject to the provisions of the Plan. The Debtor or the Reorganized Debtor, as the case may be, shall have the right to object to any such Claim for rejection damages in accordance with the Plan.

## ARTICLE X
## RELEASE AND DISCHARGE OF CLAIMS

### 10.1    Discharge.

Except as otherwise expressly provided in section 1141 of the Bankruptcy Code or the Plan, the distributions made pursuant to and in accordance with the applicable terms and conditions of the Plan are in full and final discharge as against the Debtor and the Reorganized Debtor of any debt or obligation of the Debtor that arose before the Effective Date, and any debt of the Debtor of a kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all Claims against the Debtor or the Estate of any nature, including, without limitation, any setoff claims and/or any interest accrued on any Claim from and after the Petition Date, whether or not: (a) a proof of claim based on such debt, obligation or Equity Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is Allowed under section 502 of the Bankruptcy Code, or (c) the holder of such Claim has accepted the Plan.

### 10.2    Injunction Relating to the Plan.

As of the Effective Date, all Persons are hereby permanently enjoined from commencing, continuing or enforcing in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor, the Estate or the Reorganized Debtor, on account of, or respecting any Claims, debts, rights, obligations, Causes of Action or liabilities discharged pursuant to the Plan, except to the extent expressly permitted under the Plan.

### 10.3    Releases.

Except as otherwise set forth in the Plan or the Plan Documents, as of the Effective Date, in consideration for, among other things, the obligations of the Debtor under the Plan and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, (a) each holder of a Claim or Interest that votes in favor of the Plan and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each Person that has held, holds or may hold a Claim or Equity Interest or at any time was a creditor or equity holder of any of the Debtor and that does not vote on the Plan or votes against the Plan, in each case will be deemed to forever release, waive and discharge all claims (including any derivative claims), obligations, suits, judgments, damages, demands, rights, causes of action and liabilities (other than the right to enforce the Reorganized Debtor's obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered, or that remain in effect, under the Plan) that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or

- 32 -

prior to the Effective Date in any way relating to the Debtor, the Bankruptcy Case or the Plan that such entity has, had or may have against the Debtor, the Estate, the Estate's Assets, the Reorganized Debtor and/or the Reorganized Debtor's Assets, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise..  Nothing in this section 10.3 of the Plan shall be deemed to provide a release to a non-Debtor third party of any Claim asserted by a creditor of the Debtor.

### 10.4    Cancellation of Existing Indebtedness and Liens.

Except as is otherwise specifically provided in the Plan, on the Effective Date: (a) all credit agreements, promissory notes, mortgages, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against the Debtor, together with any and all Liens securing same, including without limitation any rights of setoff, shall be canceled, discharged and released as to the Debtor without further act or action by any Person under any applicable agreement, law, regulation, order or rule, (b) the obligations of the Debtor thereunder shall be deemed cancelled, discharged and released, and (c) all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens or other security interests, including any rights to any collateral thereunder, will revert to the Reorganized Debtor.  To the extent deemed necessary or advisable by the Reorganized Debtor, any holder of a Claim shall promptly provide the Reorganized Debtor with an appropriate instrument of cancellation, discharge or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge or release, including the cancellation, discharge or release of any Lien securing such Claim.

### 10.5    Exculpation.

Except as otherwise set forth in the Plan, neither the Debtor nor any of its officers, directors, attorneys, court appointed professionals, successors or assigns, shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection this Bankruptcy Case, the pursuit of confirmation of the Plan or the Disclosure Statement occurring between the Petition Date and the Effective Date, provided that the terms of this section 10.5 of the Plan shall not apply to any liability for actual fraud, willful misconduct, gross negligence or ultra vires acts.

### 10.6    Setoff.

Except as otherwise provided in the Plan, nothing contained in the Plan shall constitute a waiver or release by the Debtor, the Estate and/or the Reorganized Debtor of any rights of setoff each may have against any Person.

849947 v. 1

## ARTICLE XI
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE OF THE PLAN

### 11.1    Conditions Precedent to Confirmation.

Subject to section 10.2 of the Plan, the following are conditions precedent to the occurrence of the Effective Date:

(a)    The Confirmation Order, in form and substance reasonably acceptable to the Debtor shall have been entered by the Bankruptcy Court and shall not be subject to any stay.

### 11.2    Conditions Precedent to Effectiveness.

This Plan shall not become effective, and the Effective Date shall not occur, unless and until the Confirmation Order, in form and substance reasonably acceptable to the Debtor shall have been entered by the Bankruptcy Court not later than February 1, 2026, and shall provide that:

(a)    The Debtor, the Reorganized Debtor (or any of their successors or assigns), and the Plan Trustee are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the transactions contemplated by the Plan and all other contracts, instruments releases, leases, indentures and other agreements or documents created in connection with the Plan;

(b)    The provisions of the Confirmation Order are non-severable and mutually dependent.

(c)    The Debtor and Reorganized Debtor may, but is not required, to waive any of the conditions set forth in this Section 11.2.

### 11.3    Effect of Non-occurrence of Conditions to the Effective Date.

If the Effective Date does not occur within 180 days after the Confirmation Date, then except as extended by the Debtor in its sole discretion, the Plan shall terminate.  Upon termination, the Plan shall be null and void in all respects and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor, or (b) prejudice in any manner the rights of the Debtor or any other Person or constitute an admission, acknowledgement, offer or undertaking by the Debtor or any other Person.

### 11.4    Notice of Occurrence of Effective Date.

As soon as practicable following the Effective Date, the Reorganized Debtor shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date, that specifies, among other things, the date on which the Effective Date occurred.

- 34 -

## ARTICLE XII

## RETENTION OF JURISDICTION

**12.1**    From and after the occurrence of the Effective Date, the Bankruptcy Court shall have jurisdiction over the matters arising out of, and related to, the Bankruptcy Cases and the Plan, as legally permissible, pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code including, without limitation:

(a)    To hear and determine any and all objections to the allowance, disallowance, determination, liquidation, classification or estimation of any Claims or Equity Interests or any controversies as to the priority and classification of any Claims (or any security with respect thereto) or Equity Interests or to estimate any Disputed Claim;

(b)    To hear and determine any and all applications by Professionals for compensation and reimbursement of expenses, authorized pursuant to the Plan or the Bankruptcy Code;

(c)    To hear and determine any and all applications (whether or not pending at or on the Confirmation Date) related to the rejection, assumption or assumption and assignment of executory contracts and unexpired leases to which the Debtor is a party, and to hear, determine and allow any Claims resulting therefrom;

(d)    To enforce and adjudicate the provisions of the Plan subject to the terms of the Plan;

(e)    To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(f)    To determine any Claim or liability to a governmental unit which may be asserted as a result of the transactions contemplated in the Plan;

(g)    To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(h)    To determine such other matters as may be necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(i)    To resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, enforcement or vacatur of the Plan or any Person's obligations incurred in connection with the Plan;

(j)    To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of the Plan, except as otherwise provided herein;

(k)     To determine any other matters that may arise in connection with the Plan, the Disclosure Statement, the Confirmation Order or any other contract, instrument, release, indenture or other agreement or document created in connection with the foregoing;

(l)     To resolve any cases, controversies, suits or disputes with respect to releases, injunctions and other provisions contained in Article X hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions or other provisions;

(m)     To hear and determine any Claims, rights, demands and Causes of Action arising prior to the Effective Date preserved pursuant to the Plan; and

(n)     To enter an order and/or final decree concluding the Bankruptcy Cases.

## ARTICLE XIII
## MISCELLANEOUS

### 13.1     Continuation of Injunctions or Stays Until Effective Date.

All injunctions or stays provided for in the Bankruptcy Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, except as otherwise ordered by the Bankruptcy Court upon appropriate motion and with appropriate notice.

### 13.2     Exemption from Transfer Taxes.

In accordance with section 1146(c) of the Bankruptcy Code: (a) the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by the Plan, (b) the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money or any mortgage, deed of trust or other security interest under, in furtherance of, or in connection with the Plan, and the issuance, renewal, modification or securing of indebtedness by such means, and (c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment.  Each recorder of deeds or similar official for any county, city or governmental unit in which any instrument under the Plan is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

849947 v. 1

### 13.3    Amendment or Modification of the Plan.

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Bankruptcy Code.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. The Debtor or the Reorganized Debtor may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in the Plan and any exhibit to the Plan or in any Plan Document.

### 13.4    Severability.

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon the request of the Debtor, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alternation or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

### 13.5    Revocation or Withdrawal of the Plan.

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.

### 13.6    Binding Effect.

The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

### 13.7    Notices.

All notices, requests and demands to or upon the Debtor or the Reorganized Debtor shall only be effective if in writing and, unless otherwise expressly provided in the Plan, shall be

849947 v. 1

deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

If to the Reorganized Debtor:

> Water's Edge Limited Partnership
> 200 Pratt Street
> Meriden, CT 06450
> Attn: Ms. Evelyn Carabetta

With copies to:

> Murphy & King, Professional Corporation
> 28 State Street, Suite 3101
> Boston, MA 02109
> Attn:  Kathleen R. Cruickshank, Esq.
> Telephone: (617) 423-0400
> E-mail: kcruickshank@murphyking.com

And

> Brown Rudnick, LLP
> One Financial Center
> Boston, MA 02110
> Attn.:  William R. Baldiga, Esq.
> Telephone No.: (617) 856-8586
> Email: wbaldiga@brownrudnick.com
> Special Counsel to Debtor

### 13.8    Governing Law.

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts, without giving effect to the principles of conflicts of law of such jurisdiction.

### 13.9    Withholding and Reporting Requirements.

In connection with the consummation of the Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

### 13.10   Plan Documents.

The Debtor shall file the Plan Documents not later than two (2) Business Days prior to the hearing on confirmation of this Plan.  Upon filing with the Bankruptcy Court, the Plan Documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal

849947 v. 1

court hours.  Holders of Claims may obtain a copy of the Plan Documents upon written request to the Debtor in accordance with Section 12.7 this Plan.  The Plan Documents are incorporated into and made a part of the Plan as though fully set forth in full in this Plan.

**13.11  Post-Confirmation Fees, Final Decree.**

(a)     <u>Fees</u>.  Until the Effective Date of the confirmed plan, the Reorganized Debtor shall timely pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. §1930(a)(6)(the "Quarterly Fees").  After the Effective Date, the Reorganized Debtor, and any other authorized parties who have been charged with administering the confirmed Plan, shall timely pay the U.S. Trustee Quarterly Fees until the earlier of: (i) administrative closure of the case; (ii) the entry of a final decree; (iii) conversion of the case to a case under another chapter; or (iv) dismissal of the case.

(b)     <u>Reports</u>.  After confirmation of the Plan, the Reorganized Debtor, and any other authorized parties who have been charged with administering the confirmed Plan, will continue to file the UST Form 11-MOR, Monthly Operating Report through the Effective Date.  After the Effective Date, the Reorganized Debtor, and any other authorized parties who have been charged with administering the confirmed plan, shall file the UST Form 11-PCR, Post Confirmation Report every calendar quarter until the earlier of: (1) administrative closure of the case; (2) the entry of a final decree; (3) conversion of the case to a case under another chapter; or (4) dismissal of the case.

**13.12  Headings.**

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**13.13  Inconsistency.**

In the event of any inconsistency between the Plan and the Disclosure Statement or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

849947 v. 1

Water's Edge Limited Partnership,


   */s/ Evelyn Carabetta*
By: Evelyn Carabetta
Its: Sole Limited Partner and sole member and manager of Water's Edge Realty LLC, its General Partner

Counsel for the Debtor,

/s/ *Kathleen R. Cruickshank*
Kathleen R. Cruickshank, Esq. (BBO #550675)
MURPHY& KING, P.C.
28 State Street, Suite 3101
Boston, MA  02109
Telephone No.:  (617) 423-0400
Email:  kcruickshank@murphyking.com

And

Special Counsel for the Debtor,


/s/ William R. Baldiga, Esq.
William R. Baldiga (BBO #542125)
BROWN RUDNICK, LLP
One Financial Center
Boston, MA 02110
Telephone No.: (617) 856-8586
Email: wbaldiga@brownrudnick.com

Dated:  December 17, 2025

849947 v. 1

IN RE: WATER'S EDGE LIMITED PARTNERSHIP
BANKRUPTCY NO. 24-12445-CJP

EXHIBIT A TO

PLAN OF LIQUIDATION OF WATER'S EDGE LIMITED PARTNERSHIP

As of the date of the Plan, the Debtor does not have any executory contracts that it intends to assume.  The Debtor intends to assume all unexpired leases with its tenants at 388 Ocean Avenue.  The Debtor reserves the right to seek permission to assume any such contracts and leases.