## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (Eastern Division)

|  |  |
|---|---|
| **In re:**<br><br>**WATER'S EDGE LIMITED PARTNERSHIP,**<br><br>Reorganized Debtor. | **Chapter 11**<br><br>**Case No. 24-12445-CJP** |

## OBJECTION BY DEBTOR TO DIV OA LENDER, LLC'S APPLICATION FOR <u>ALLOWANCE OF POST-PETITION FEES AND EXPENSES</u>

Water's Edge Limited Partnership, the above-captioned debtor (the "<u>Debtor</u>" or "<u>Water's Edge</u>") as reorganized under the *Modified Plan of Liquidation of Water's Edge Limited Partnership* [ECF No. 539], hereby objects to the *DIV OA Lender, LLC's Application for Allowance of Post-Petition Fees and Expenses* [ECF No. 530] (the "<u>Application</u>") filed by DIV OA Lender, LLC ("<u>DIV OA</u>") seeking allowance of the fees and expenses of Holland & Knight, LLP ("<u>H&K</u>") in the amount of $744,411.75 and payment from the Debtor of fees and expenses in the amount of $669,986.40.

In further support of its objection the Debtor submits the following:

### I.      <u>Factual Background</u>

1.      Water's Edge previously owned and operated the apartment buildings known as the Water's Edge Apartments located at 364 Ocean Avenue, 370 Ocean Avenue, and 388 Ocean Avenue with a total of approximately 306 apartment units situated on a 4.95-acre site in Revere, Massachusetts (collectively, the "<u>Property</u>").

2.      Water's Edge is a party to a certain Amended and Restated Term Note dated March 20, 2020, as amended from time to time (the "Note") in favor of Manufacturer's and Trader's Trust Company, a/k/a M&T Bank ("M&T Bank") in the original principal amount of $18,292,206, and a certain Mortgage in favor of M&T Bank dated May 23, 2018 (the "Mortgage") against the Property (collectively with the Note and related documents, the "Loan Documents").

3.      On September 1, 2024, the Note matured.  At maturity, the entire amount of the indebtedness under the Note became due and payable by its terms.

4.      DIV OA Lender is an affiliate of The Davis Companies, which, according to its website, is the fifteenth largest commercial property manager in Massachusetts.  It buys, develops, manages and sells assets, and its portfolio includes 39 million square feet of commercial space, 14,700 residential units and 261 investments. (www.thedaviscompnaies.com).

5.      On or about September 26, 2024, DIV OA Lender took assignment of the Loan Documents from M&T Bank with the goal of taking ownership of the Property, and immediately thereafter declared a default, and scheduled a foreclosure sale of the Property on December 5, 2024.

6.      On December 5, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in order to stay the scheduled foreclosure sale and to preserve its assets for the benefit of its creditors and stakeholders.

2

## II.     Objection

### A.  DIV OA Lender Must Demonstrate that the Legal Services For Which it Seeks Payment from the Debtor Were Reasonable and Necessary to Preserve its Interest in the Property

7.     An analysis of the Application requires a review of the agreements giving rise to DIV OA Lender's claims for attorneys' fees in order to determine DIV OA's entitlement to the fees and expenses it seeks to recover. 11 U.S.C. § 506(b) (providing, for an oversecured creditor, allowance of "reasonable fees, costs, or charges provided for under the agreement under which such claim arose."). See also, *Welzel v. Advocate Realty Invs., LLC (In re Welzel)*, 275 F.3d 1308, 1317 (11th Cir. 2001) (Court first determines if claim for legal fees is allowable under Section 502 and then if they are reasonable under Section 506(b)).

The Mortgage provides, in relevant part:

> **Expenses.**  Mortgagor shall pay to Mortgagee on demand all *reasonable* costs and expenses (including attorneys' fees and disbursements, whether for internal or outside counsel) *incurred* by Mortgagee in connection with the Indebtedness or the Mortgage, including costs of collection, of *preserving* or exercising any right or remedy of Mortgagee under this Mortgage or any related security agreement or guaranty, of workout or bankruptcy proceedings by or against Mortgagor, of defending against any claim asserted as a direct or indirect result of this Indebtedness, of any appraisal required by the Mortgagee or of performing any obligation of any Mortgagor pursuant to this Mortgage or otherwise (including payment of any amount any Mortgagor is obligated to pay pursuant to this Mortgage and performance of any obligation of Mortgagor pursuant to this Mortgage).

*Mortgage*, ¶ 27 (emphasis added).

8.     During the course of the bankruptcy case, DIV OA Lender directed its attorneys to take actions well beyond the scope of the fees allowable under the Mortgage, i.e., its costs necessary to preserve its interests in the Property.  "[W]here a lender is assured of being repaid not only principal and interest but also all costs of collection which it might incur in chasing the debtor, there is a risk that the lender will permit or

encourage its counsel to proceed with collection efforts with unbridled zeal." *In re Lederman Enters., Inc*. 106 B.R. 674, 679 (Bankr.D.Colo.1989).

9.      Not only did DIV OA Lender's actions and the resulting fees it seeks from the Debtor exceed its contractual entitlements, the services are not reasonable and therefore not compensable under 11 U.S.C. § 506(b).  "One purpose of Section 506(b) is to ensure that estate assets are not squandered by oversecured creditors who, believing the debtor will be required to foot the bills, fail to exercise restraint in the attorneys' fees and expenses they incur, perhaps exhibiting excessive caution, overzealous advocacy and hyperactive legal efforts." *In re Gwyn, 150 B.R. 150, 155* Bankr.M.D.N.C.1993).  Courts have held that a crucial factor in determining reasonableness is whether the creditor engaged in "actions that similarly situated creditors might reasonably conclude should be taken..." *Dalessio v. Dalessio (In re Dalessio),* 74 B.R. 721, 723 (9th Cir. BAP 1987) (internal quotations omitted).

10.     In considering the allowance of an oversecured creditor's fees, "the touchstone of [the Section 506(b)] analysis is a determination of what a creditor would spend if the creditor was paying the attorney's fees and costs rather than having the ability to pass those fees and costs on to the debtor." *In re Smoots*, 230 B.R. 140, 144 (Bankr.D.Minn.1996).  "[A]n oversecured creditor is not entitled to compensation for every action it takes by claiming that its rights have been effected…where services are not reasonably necessary or where action is taken because of an attorney's excessive caution or overzealous advocacy, courts have the right and duty, in the exercise of their discretion, to disallow fees and costs under § 506(b)." *In re Wonder Corp. of America*, 72 B.R. 580, 591 (Bankr.D.Conn. 1987), aff'd, 82 B.R. 186 (D.Conn. 1988); *In re*

*Reorganized Lake Diamond Associates, LLC*, 367 B.R. 858, 867 (Bankr.M.D.Fla.2007) (In passing Section 506(b), Congress intended "to ensure that oversecured creditors do not lose their reasonable claim for attorneys' fees simply due to the fact that their collateral is worth more than the underlying claim—rather than as a blank check for oversecureds to accrue legal fees beyond the scope of protecting their interest...")

**B.  DIV OA Lender Has Not Demonstrated that Its Fees and Expenses Are Reasonable or Within the Scope of its Contractual Entitlement**

11.     The burden of proof to demonstrate the reasonableness of attorney fees is on the applicant/oversecured creditor. *In re Green Valley Beer*, 281 B.R. 253, 256 (Bankr.W.D.Pa. 2002) (citations omitted).  The Court has broad discretion in determining the amount of fees and expenses that are allowable under 11 U.S.C. § 506(b). *In re Bate Land & Timber, LLC*, 541 B.R. 601, 606 (Bankr. E.D.N.C. 2015).

**1.  The Application Contains Heavily Redacted, Lumped and Vague Time Entries, Uncategorized by Task, Preventing Meaningful Review**

12.     It is impossible to evaluate the reasonableness of the services for which DIV OA Lender seeks to charge the Debtor due to the heavy redaction of many time entries, the lumping and vagueness of time entries, and the failure of the Application to categorize the services by task.  These deficiencies warrant a reduction in the fees sought. See, e.g., *In re Oliver*, 183 B.R. 87, 92 (Bankr.W.D.Pa.1995)("When the nature of time entries or individual portions of the time entries make it impossible to determine which items were reasonably necessary for the protection of the creditor's interests, the Court must rely on its own knowledge and experience in arriving at the proper fee award.")(citation omitted).

13.     Lack of adequate records and lumping are factors routinely considered by courts in analyzing fee applications. *In re Bate Land & Timber, LLC*, 541 B.R. at 611.  In the Application, DIV OA Lender seeks $142,222 for 133.4 hours of services performed by four attorneys whose time entries are so heavily redacted and/or vague that it is impossible for the Debtor or the Court to evaluate the type of services performed or the reasonableness of those services.  A small sample of such time entries include the following:

| DATE | TIME-KEEPER | DESCRIPTION | TIME | HOURLY RATE | AMOUNT |
|---|---|---|---|---|---|
| 1/2/15 | KSJ | Review of client questions and preparation for call | 1.2 | $795.00 | $954.00 |
| 1/25/25 | KSJ | Call regarding **[redacted]** | 1.5 | $795.00 | $1,192.50 |
| 1/10/25 | KSJ | Begin research for purposes of **[redacted]** | 4.9 | $795.00 | $3,895.50 |
| 1/7/25 | MLA | Conduct legal research re: **[redacted]**; draft a summary of research results for L. Kim: the **[redacted]** draft a summary of legal results for L. Kim re: **[redacted]** | 2.8 | $645.00 | $1,806.00 |
| 17/25 | LK | Research re: **[redacted]** | 4.7 | $655.00 | $3,078.50 |
| 1/20/25 | JJM | Series of emails with client regarding **[redacted]** series of follow up emails with client regarding **[redacted]** | .7 | $1,275.00 | $892.50 |
| 1/21/25 | JJM | Prepare for and participate in call with client and legal team | 1.1 | $1,275.00 | $1,402.50 |
| 8/7/25 | JJM | Series of emails with legal team regarding **[redacted]** drafted Memo to client regarding **[redacted]** | 2.1 | $1,275.00 | $2,677.50 |

14.     The Application also contains numerous lumped time entries.  Lumping occurs when multiple services are included in one time entry, making it impossible for the court to determine the amount of time spent on the various tasks involved, and for this reason, lumping is "universally disapproved" by bankruptcy courts.  *In re Bate Land & Timber, LLC*, 541 B.R. 601, 611 (Bankr.E.D.N.C. 2015)("Lumping hinders courts from determining reasonableness, which is why it goes hand in hand with the principal that a

vague or inadequate record will warrant adjustments to the award.") (citations omitted).

Courts reviewing a fee application that includes lumped time entries typically take one of

two approaches: some deny each lumped entry in its entirety or make a percentage

adjustment. *In re Pearson,* 2001 WL 1699657, at *5 (Bankr.M.D.N.C. Jan. 26, 2001)*;

see also Green Valley Beer, 281 B.R. at 259.* Billing entries are not sufficiently descriptive

to justify an award if services are lumped together or the record is vague. *See Davidson*

*Metals,* 152 B.R. 917, 921)(Bankr.N.D.Ohio 1993) (disallowed portion of fees that were

nondescriptive).

15.    Examples of vague and lumped time detail are as follows:

| DATE | TIME-KEEPER | DESCRIPTION | TIME | HOURLY RATE | AMOUNT |
|---|---|---|---|---|---|
| 12/23/24 | JJM | Prepare for and participate in morning hearing; call with client's housing court litigation counsel; review and comment on revised form of order; series of negotiations regarding form of order; prepare for and participate in afternoon hearing; review of further revised proposed form of order; drafted memo to client **[redacted]** | 6.3 | $1,275.00 | $8,032.50 |
| 1/16/25 | JJM | Prepare for and appear at hearing; review proposed form of order; email exchange with debtor's counsel regarding form of order; work on objection to form of order; series of emails regarding Housing Court's stated intention to proceed with hearing | 3.8 | $1,275.00 | $4,845.00 |
| 1/27/25 | JJM | Call from debtor's counsel regarding DIP loan issues; call with client and legal team **[redacted]**; lengthy call with CEI's counsel regarding CEI claim, claim treatment and potential deal structure[1], drafted memo to client **[redacted]**; series of emails regarding DIP facility budget | 3.4 | $1,275.00 | $4,345.00 |

---

[1] It is hard to imagine that the entry "lengthy call with CEI's counsel regarding CEI claim, claim treatment and potential deal structure" was for any other purpose than advancing DIV OA Lender's plan to acquire the Property.

16.     In addition to the vague, redacted and/or lumped time categories, the time entries are not categorized by task, further preventing the Debtor from evaluating the reasonableness of the services.  DIV OA Lender has failed to meet its burden to demonstrate that its services were reasonable because they are not described in any meaningful way.  This deficiency warrants adjustment to any award. *See Green Valley Beer,* 281 B.R. at 259 (recourse is premised on the applicant's failure to sustain its burden of proving reasonableness).

**2.  DIV OA Lender's Fees Exceed What Was Necessary to Preserve its Claim.**

17.     Since the commencement of the case, there was never a risk that DIV OA Lender would not be paid in full.  Despite this, DIV OA Lender directed its counsel to perform services, at a cost of approximately $55,000 per month, that were materially disproportionate to what was necessary to preserve the claim of a creditor which at all times has been oversecured with a substantial equity cushion. During the course of the case, DIV OA Lender filed at least eleven objections to various forms relief sought by the Debtor. The services directed by DIV OA Lender are consistent with a lender seeking not to simply preserve its claim but to further its plan to acquire the Property by agreement or force.

18.     On December 26, 2024, the Debtor filed a motion seeking to obtain, among other things, authority to obtain junior secured postpetition financing from Eastern Acquisitions, LLC ("Eastern") [ECF No. 34] (the "First DIP Motion") and a motion seeking authority to enter into a Letter of Intent with Eastern [ECF No. 35] (the "LOI Motion").  By the First DIP Motion, the Debtor sought authority to obtain DIP financing in the total amount of $3.4 million on a junior secured basis behind DIV OA Lender's

8

mortgage and sought authority to provide adequate protection to DIV OA Lender, including by making interest payments to DIV OA Lender.  In the LOI Motion, the Debtor sought approval of its Letter of Intent (the "LOI") with Eastern, which included the proposed terms of a joint venture agreement to be effectuated through a plan of reorganization.  The agreement provided that the Debtor would contribute the Property and related assets to a joint venture entity, and would receive in exchange not only a capital contribution from Eastern sufficient to pay holders of allowed claims in full unless otherwise agreed, but also the capital needed, on commercially reasonable terms, to facilitate the repair and repositioning of the Property, and a 35% interest in the joint venture entity.

19.     The proposal by Eastern, a sophisticated developer that had conducted significant due diligence (and that, as part of a joint venture with Taurus Investments, LLC, ultimately purchased the Property) made clear that the Property had a value substantially in excess of the DIV OA Claim.  DIV OA Lender needed to take virtually no action in order to ensure that its claim would be paid in full.

20.     Instead, DIV OA Lender raised multiple objections to the motions that were focused not on preserving its claim, but rather on furthering its goal to become the owner of the Property.  Among other objections, DIV OA Lender opposed provisions requiring the Debtor to deal exclusively with Eastern, sought to ensure that the Property was exposed to the marketplace and objected to the reasonableness of the terms of the loan despite the fact that Eastern's security was junior to its own.

21.     In response to the Debtor's motion to extend its DIP Loan with Eastern on a further interim basis, DIV OA Lender objected on the basis that it was willing to

provide DIP financing on more favorable terms, without the restrictions provided in the First DIP Loan. DIV OA Lender attached its own proposed term sheet to its objection. DIV OA Lender was so unconcerned about its equity cushion that its DIP financing terms provided a replacement DIP Loan to the Debtor secured by a lien behind its own first mortgage and allowed the Debtor to defer making interest payments on its first mortgage.

22.    DIV OA Lender seeks approximately $139,068[2] for approximately 142 hours of services related to the Debtor's first day motions, including the First DIP Loan and the LOI Motion, an amount that far exceeds what was necessary to preserve its claim.

23.    When the Debtor subsequently sought to replace and payoff its DIP Loan with DIV OA Lender with funds from a new junior DIP Loan from Fairbridge Asset Management, LLC ("Fairbridge") with a later maturity date, an additional $3.1 million in borrowing availability, and a budget providing for the Debtor to resume interest payments to DIV OA Lender, DIV OA Lender objected on the grounds that it would provide an extended DIP Loan matching the maturity date and borrowing availability, but on more favorable terms. By its own actions, DIV OA Lender acknowledged its substantial equity cushion and worked to stay as the DIP Lender in furtherance of its goal of owning the Property. DIV OA Lender seeks to charge the Debtor approximately $55,000 for its counsel's time in objecting to the various versions of the Fairbridge DIP Loan, far in excess of what was necessary to preserve its claim.

---

[2] As is discussed herein, the Application does not sort the time entries into categories; instead, they appear in chronological order, and contain numerous lumped, heavily redacted and/or vague time entries such that it is impossible for the Debtor to accurately analyze, leaving the Debtor to make its best estimate as to the amount of services that fall within a category.

24.     A close examination of the time detail set forth in the Application reflects that DIV OA Lender is seeking to recover from the Debtor its legal costs stemming from its participation in the bidding process to become a joint venture partner with the Debtor for the ownership of the Property.  On February 20, 2025, the Debtor and its representatives met with DIV OA Lender and its representatives regarding DIV OA Lender's interest in the acquisition of the Property through a joint venture.  Thereafter, DIV OA Lender engaged in due diligence and drafted a term sheet and agreement setting forth its proposal.  The time detail in the Application reflects that DIV OA Lender has included the substantial legal work related to this effort in the Application, totaling not less than $43,675.[3]  Fees incurred by a secured lender attempting to acquire its collateral during the Chapter 11 are not fees for collections costs that it is entitled to recover from the Debtor.  *In re Reorganized Lake Diamond Associates, LLC*, 367 B.R. 858, 869, 877 (Bankr. M.D.Fla. 2007)

25.     DIV OA Lender asserts in the Application that it was forced to take protective actions during the case due to its uncertainty over whether its first mortgage position was fully secured.  This assertion is belied by the record as described herein. Further, at no point during the case did DIV OA Lender file a motion for relief from the automatic stay to enforce its rights under the Loan Documents.[4]  In its many objections to the various forms of relief requested by the Debtor, DIV OA never submitted an appraisal and asserted that it held an insufficient equity cushion with respect to its first mortgage

---

[3] The redacted, lumped and/or vague time detail included in the Application prevent the Debtor from determining the actual amount that DIV OA Lender seeks to recover from the Debtor on account of its efforts to acquire the Property.
[4] The time records of H&K and DIV OA Lender's in-house counsel reflect that, as one would expect for a sophisticated real estate developer purchasing a first secured position against a distressed property for the purpose of owning it, that DIV OA Lender held an appraisal of the Property.

against the Property.  In fact, it was on its own initiative that DIV OA Lender agreed to make a Debtor-in-Possession loan to the Debtor on a junior secured basis behind its own first mortgage and to allow the Debtor to defer its interest payments.  DIV OA Lender was also an active bidder for the purchase of the Property and its own bids were higher than its claim. The Property ultimately sold for more than two times its asserted claim.

26.     DIV OA Lender's assertion in support of the Application that its actions provided a benefit to the Estate is misplaced; this assertion, which the Debtor disputes, does not support DIV OA Lender's claim for attorneys' fees under its contract or the standards of reasonableness to which its fees are subject.  DIV OA Lender is entitled to preserve its claim; whether its actions benefited the Estate is irrelevant to the Court's determination of the reasonableness of its fees.  To the extent that DIV OA Lender took actions that provided value to the Estate, it was a volunteer.

27.     DIV OA Lender additionally attempts to justify its fees with its assertion that the equity holder was motivated to preserve its equity in the Property.  The equity holder's desire to retain value for itself is unremarkable and is not a justification for fees sought by DIV OA Lender; the equity holder could not retain the Property or receive proceeds from the sale of the Property unless all creditors, including DIV OA Lender, were paid in full unless otherwise agreed.

### C.  H&K Services Representing DIV OA Lender as DIP Lender are Subject to the Reasonableness Requirement

28.     DIV OA Lender was the Debtor's DIP Lender from February 7, 2025 through May 28, 2025 under the terms of the *Interim Order (I) Authorizing the Debtor to Obtain Junior Secured Postpetition Financing; (II) Granting Liens and Providing Superpriority Expense Status; (III) Authorizing Use of Cash Collateral; (IV) Granting*

12

*Adequate Protection; (V) Modifying the Automatic Stay; (VI) Scheduling a Final Hearing; and (VII) Granting Related Relief* [ECF No. 155] (the "DIV DIP Order"). Under the terms of the DIV DIP Order, ¶3(a), DIV OA Lender's legal fees associated with DIP loan were added to its first mortgage.

29.   DIV OA Lender argues that its fees under the DIV DIP Order are not subject to a reasonableness requirement; however, DIV OA Lender's legal fees are subject to Section 506(b), which imposes a reasonableness requirement for the fees of any oversecured lender.

30.   DIV OA Lender seeks not less than $60,000 in fees for 45 hours of services with respect to its DIP Loan to the Debtor which lasted 3 ½ months, from January 31, 2025 through May 19, 2025.  This number may be materially higher due to the number of redacted and vague time entries before, during and after the period in which DIV OA Lender was the DIP Lender.   The time detail is not categorized and the Application is replete with references to DIP loan transactions without specificity as to which DIP loan transaction is the subject matter of the time entry.  As such, the Debtor can only guess as to which services are related to DIV OA Lender's DIP loan and is similarly unable to ascertain the reasonableness of the services.

### D.  DIV OA Lender's Request for Allowance of Fees It has Not Incurred Should be Denied

27.   In the Application, DIV OA Lender requests allowance of approximately $75,000 in fees that it does not owe to H&K by reason of the discount provided in the engagement agreement between DIV OA Lender and H&K.  Pursuant to the express terms of the Mortgage, DIV OA Lender is not entitled to be awarded any amounts for expenses it has not actually incurred.  See also, e.g. *In re 1095 Commonwealth Avenue*

*Corp.*, 204 B.R. 284, 289-290 (Bankr.D.Mass.1997) (In examining an oversecured creditor's request for legal fees, the underlying agreement is crucially relevant to determining what fees were incurred by the creditor and whether the underlying agreement provides for the payment of fees requested).

28.     The Debtor objects to any request by DIV OA Lender for allowance and/or payment of any amounts to DIV OA Lender did not actually incur.

WHEREFORE, the Debtor requests that the Court deny or reduce the amounts sought in the Application and grant it such other relief as is just and proper.

Respectfully submitted,

WATER'S EDGE LIMITED PARTNERSHIP,
By its counsel,

*/s/ Kathleen R. Cruickshank*
Kathleen R. Cruickshank (BBO #550675)
Murphy & King, Professional Corporation
28 State Street, Suite 3101
Boston, Massachusetts 02109
Tel. No.: (617) 423-0400
Email:  KCruickshank@murphyking.com

March 23, 2026
851454

14