UNITED STATES BANKRUPTCY COURT

DISTRICT OF MASSACHUSETTS

EASTERN DIVISION

In re:

WATER'S EDGE LIMITED PARTNERSHIP,

          Debtor.

**Chapter 11**

**Case No. 24-12445-CJP**

**CLAIMANTS' OPPOSITION TO DEBTOR'S OBJECTION TO CLAIM NO. 18-1 AND MOTION TO AMEND CLAIM**

**I. INTRODUCTION**

1. Claimants Duver Herrera and Girlesa Vanegas (the "Claimants"), by and through undersigned counsel, hereby oppose the Debtor's Objection to Claim No. 18-1 (the "Objection") and respectfully move for leave to amend their Claim to conform to the adjudicated damages framework established by the Massachusetts Housing Court.

2. The Debtor's Objection must be overruled because it attempts to dispute liability and minimize damages arising from the same systemic conditions already adjudicated after trial in the Massachusetts Housing Court, and instead relies on legally insufficient defenses that have been rejected in materially identical litigation involving the same Property.

**II. RELEVANT BACKGROUND**

3. Claimants commenced a civil action against the Debtor in the Massachusetts Housing Court arising from substandard, unsafe, and uninhabitable conditions at the Debtor's residential complex located at 364, 370, and 388 Ocean Avenue in Revere, Massachusetts.

4. The Claimants' allegations arise from persistent and widespread deficiencies affecting both their individual unit and the common areas of the Property, including prolonged elevator outages, unsafe and unsanitary stairwells and common spaces, inadequate security, and the Debtor's sustained failure to maintain essential building systems. These conditions were not isolated or temporary, but reflected a pattern of ongoing neglect that materially impaired the health, safety, and use of the premises throughout the Claimants' tenancy.

5. Claimants filed Claim No. 18-1 on February 12, 2025, asserting a non-priority unsecured claim in the amount of $45,000 arising from these conditions, including damages based on diminished rental value and loss of use and enjoyment.

6. In separate litigation involving the same Property and ownership structure, tenants Jocelyn Sierra and Balmiro Ruiz obtained a final, post-trial judgment in the Eastern Housing Court (Suffolk County), Docket No. 19-CV-0521, against Water's Edge Limited Partnership. That litigation arose from the conduct of the same entities responsible for the operation and maintenance of the Property, including affiliated management entities operating under Carabetta Management Co. and its principal, Evelyn Carabetta.

7. Following trial, the Housing Court found that the Defendants were responsible for systemic failures in the management and maintenance of the Property, resulting in persistent building-wide deficiencies, including unsafe and unsecured common areas, unreliable building systems, and prolonged elevator outages that rendered upper-floor units effectively inaccessible for extended periods of time.

8. The Housing Court further found that the tenants' testimony was "uncontradicted and highly credible," and that the resulting damages were the natural and foreseeable consequence of the Debtor's failure to remedy known defects and code violations. The Court determined that the Debtor failed to provide safe and habitable housing and that tenants were "directly

2

and substantially harmed by the substandard on-going conditions at the Property," concluding that tenants "never received the benefit of their bargain."

9. Based on these findings, the Housing Court applied a structured diminution-in-value analysis and determined that the tenants' rental value was substantially impaired throughout the tenancy, awarding total damages of $94,365.24, including enhanced damages under G.L. c. 93A. (See Exhibit A for Sierra Decision, dated May 27, 2025)

10. The facts supporting the findings in Sierra substantially mirror the factual allegations of Herrera and Vanegas, who were subjected to the same conditions, including prolonged elevator outages, unsafe and unsecured building access, and the Debtor's repeated failure to respond to complaints or correct known violations of the State Sanitary Code. These conditions resulted in significant physical hardship, including repeated stair use for an eleventh-floor unit despite medical limitations, as well as economic and emotional harm. (See Exhibit B for Affidavit of Duver Herrera, dated October 1, 2018.)

11. The Housing Court's findings were based on building-wide conditions affecting multiple tenants and were not limited to isolated unit-specific defects. Rather, they reflect a continuing course of conduct arising from the Defendants' failure to address known violations and maintain essential services. These findings confirm that the conditions experienced by the Claimants arise from the same systemic pattern of conduct already adjudicated after trial.

12. This adjudicated damages framework provides a reliable and judicially tested benchmark for evaluating similarly situated tenant claims.

III. ARGUMENT

**A. The Claim Is Presumptively Valid and Supported by Adjudicated Findings**

Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a properly filed proof of claim constitutes prima facie evidence of the validity and amount of the claim. The Debtor's assertion that the Claim lacks supporting documentation is insufficient to rebut that presumption, particularly where the Claim arises from widely documented, building-wide conditions that have already been established through trial. Here, the Claim is grounded not only in the Claimants' own sworn statements, but also in a final, adjudicated Housing Court decision concerning the same Property, the same ownership and management structure, and materially identical conditions.

**B. The Sierra Judgment Establishes Liability and Provides a Controlling Benchmark for Valuation**

In litigation involving the same Property, the Housing Court made extensive findings that the Debtor failed to provide habitable premises, permitted unsafe and defective common conditions to persist, and engaged in systemic violations of Massachusetts consumer protection law. The Court determined that these failures were not sporadic or incidental, but instead reflected a "chronic failure to maintain its facilities" and constituted willful conduct within the meaning of G.L. c. 93A. Critically, the Court found that tenants "never received the benefit of their bargain" at any point during their tenancy and that they were "directly and substantially harmed by the substandard on-going conditions at the Property."

These findings were based on pervasive, building-wide conditions, including prolonged elevator outages, unsafe and unsanitary stairwells, inadequate security, malfunctioning building systems, and the sustained failure to maintain essential services. The Court credited tenant testimony as "uncontradicted and highly credible," and concluded that the resulting damages were the natural and foreseeable consequence of the Debtor's failure to remedy known defects.

4

Applying established Massachusetts law, the Housing Court calculated damages using a structured diminution-in-value analysis, measuring the difference between the rental value promised and the value actually received over time. Based on that methodology, the Court awarded damages totaling $94,365.24, including enhanced damages under G.L. c. 93A, reflecting the full economic impact of the Debtor's systemic violations.

These findings are not merely persuasive; they reflect a fully adjudicated record demonstrating the Debtor's consistent and systemic failure to maintain habitable conditions at the Property.

## C. The Same Systemic Conditions Govern This Claim

The conditions underlying Claim No. 18-1 arise from the same Property, the same time period, and the same pattern of building-wide failures established in the Sierra judgment. As reflected in the Claimants' affidavit, dated October 1, 2018 these conditions included:

a.  non-functioning locks and entry systems allowing unauthorized individuals to access the building;

b.  pervasive trash, waste, and unsanitary conditions in hallways and stairwells;

c.  repeated presence of homeless individuals in common areas;

d.  unreliable or nonfunctional alarm and safety systems;\

e.  persistent pest infestations; and

f.  prolonged and complete failure of elevator service requiring tenants to traverse multiple flights of stairs on a daily basis.

These conditions resulted in substantial hardship, including physical strain from repeated use of eleven flights of stairs, exacerbation of existing medical conditions, and inability to safely access the premises following surgery.

As in Sierra, these were not isolated defects affecting a single unit, but instead constituted building-wide failures impacting multiple tenants. The Housing Court expressly found that such conditions arise from a continuing course of conduct reflecting the Defendants' failure to address known violations, maintain essential services, and ensure the safety and habitability of the Property. Accordingly, the Sierra decision provides a judicially tested, fact-based benchmark confirming both the existence of liability and the appropriate method for evaluating damages in this case.

The Debtor's Objection is, in substance, an attempt to re-litigate systemic conditions already resolved after trial, rather than a good-faith challenge to the validity of the Claim.

**D. The Debtor's Objections Are Without Merit**

The Debtor's specific objections fail as a matter of law. Its assertion of laches is unsupported, as the alleged misconduct consists of ongoing and continuous habitability violations, and the Debtor identifies no prejudice resulting from any delay. Similarly, the contention that conditions were remediated early in the relevant period is directly contradicted by the Housing Court's findings of persistent, systemic deficiencies lasting throughout tenants' occupancy. Finally, the Debtor's reliance on alleged rent arrearage does not defeat the Claim; at most, such arguments implicate setoff or recoupment, which do not eliminate liability or invalidate the underlying claim for damages.

**E. Amendment of the Claim Is Proper and Required**

Claimants seek leave to amend Claim No. 18-1 to reflect damages in the amount of $94,365.24, consistent with the adjudicated damages framework established in the Sierra decision. Amendment is appropriate because the original Claim provided timely notice of the underlying transaction and occurrence, arises from the same operative facts, and does not introduce a new theory of recovery. Rather, it conforms the Claim to a judicially established method of valuation

6

applied to identical conditions at the same Property. Courts routinely permit such amendments where they clarify or liquidate damages based on previously disclosed claims.

**F. The Debtor Suffers No Prejudice**

The Debtor cannot credibly claim prejudice arising from the requested amendment. It was the defendant in the underlying litigation, has long been aware of the systemic conditions giving rise to tenant claims, and has already litigated, and lost, materially identical issues. The amendment does not expand the scope of the Claim, but merely aligns it with the established legal and factual framework governing damages. As such, it imposes no unfair surprise or burden.

**G. Appointment of a Trustee or Structured Claims Process Is Warranted**

This Chapter 11 case involves numerous tenant claims arising from the same systemic conditions. The Debtor's approach of testing each claim individually while attempting to relitigate issues already adjudicated, threatens inconsistent outcomes and unnecessary depletion of estate resources. In these circumstances, centralized oversight is warranted. As a last resort, the Court should consider the appointment of a Chapter 11 trustee or examiner, or the implementation of a structured claims resolution process, to ensure the consistent and efficient adjudication of similarly situated tenant claims and to prevent duplicative litigation of issues already resolved.

**IV. CONCLUSION**

1. The Debtor's Objection fails as a matter of law. The Claim arises from systemic, adjudicated conditions and is supported by a well-established damages framework confirmed by the Housing Court.

2. The Sierra judgment (Exhibit A) provides a reliable benchmark demonstrating that damages arising from these conditions substantially exceed the amount originally asserted in the Claim.

3.  Because the proposed amendment merely conforms the Claim to that adjudicated standard,

the Objection should be overruled and the Claim allowed as amended.

**WHEREFORE,**

The Claimants respectfully request that this Court:

a. **OVERRULE** the Debtor's Objection to Claim No. 18-1;
b. **GRANT** leave to amend Claim No. 18-1;
c. **ALLOW** the Claim, as amended, in the amount of $94,365.24;
d. **CONSIDER** appointment of a trustee, examiner, or structured claims process to address tenant claims; and
e. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,
**Attorney for Movants, Jocelyn Sierra and Balmiro Ruiz**
**/s/ Marc E. Chapdelaine**
Marc E. Chapdelaine, BBO 655649
marc@chapdelainelaw.com
Chapdelaine, Ryan & Associates
20 Somerset Avenue
Winthrop, MA 02152
(617) 846-2427

Dated: May 27, 2026

<strong>CERTIFICATE OF SERVICE</strong>

I, Marc E. Chapdelaine, hereby certify that on May 27, 2026, I caused a true and correct copy of the foregoing **Claimants' Opposition to Debtor's Objection to Claim No. 17-1 and Motion to Amend Claim** to be served via the Court's CM/ECF system upon all parties registered to receive electronic notice in this case.

I further certify that, to the extent any party is not registered to receive electronic notice, service was made by first-class mail, postage prepaid, upon such parties at their last known addresses.

**/s/ Marc E. Chapdelaine**
Marc E. Chapdelaine, BBO No. 655649
Chapdelaine, Ryan & Associates
20 Somerset Avenue
Winthrop, MA 02152
(617) 846-2427
marc@chapdelainelaw.com